1 | Stephen F. Yunker (CSB 110159)
YUNKER & SCHNEIDER
2 | 655 West Broadway, Suite 1400
San Diego, California 92101
3 | Telephone: (619) 233-5500
Facsimile: (619) 233-5535
4 | Email: sfy@yslaw.com

5 | Joseph N. Kravec, Jr. (PA ID No. 68992)
SPECTER SPECTER EVANS & MANOGUE, P.C.
6 | The 26th Floor Koppers Building
Pittsburgh, PA 15219
7 | Telephone: (412) 642-2300
Facsimile: (412) 642-2309
8 | Email: jnk@ssem.com

9 | James M. Pietz (PA ID No. 55406)
PIETZ LAW OFFICE
10 | Mitchell Building
304 Ross Street, Suite 700
11 | Pittsburgh, PA 15219
Telephone: (412) 288-4333
12 | Facsimile: (412) 288-4334
Email: jpietz@jpietzlaw.com

13 |

14 | Attorneys for Plaintiff MICHELLE T. WAHL, on behalf of herself and all
others similarly situated
15 |

**E-FILING**  **ADR**

# ORIGINAL FILED

JAN 2 5 2008

**Richard W. Wieking**
**Clerk, U.S. District Court**
**Northern District of California**
**San Jose**

## C08  00555  RS

16 | **UNITED STATES DISTRICT COURT**

17 | **FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

18 | MICHELLE T. WAHL, on behalf of
herself and all others similarly situated,
19 |
Plaintiff,
20 |
v.
21 |
AMERICAN SECURITY INSURANCE
22 | COMPANY; and DOES 1-50, inclusive,
23 | Defendants.
24 |
25 |
26 |
27 |
28 |

) Case No.
)
) **CLASS ACTION**
)
) COMPLAINT FOR BREACH OF
) INSURANCE CONTRACT,
) RESCISSION FOR BREACH OF
) STATUTORY DUTY TO DISCLOSE,
) RESCISSION FOR CONSTRUCTIVE
) FRAUD, RESCISSION FOR FAILURE
) OF CONSIDERATION, VIOLATIONS
) OF THE UNFAIR COMPETITION
) LAW, VIOLATIONS OF THE
) CONSUMERS LEGAL REMEDIES
) ACT, AND DECLARATORY RELIEF
)
) **DEMAND FOR JURY TRIAL**
)
)
)

1

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR
COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

1    Plaintiff MICHELLE T. WAHL, on behalf of herself and all others similarly situated, alleges

2    as follows:

3                                    **INTRODUCTION**

4    1.    This is a class action brought in federal court under California law on behalf of a

5    putative class of California consumers.  The class has claims against a defendant insurance company,

6    American Security Insurance Company, domiciled in Delaware and headquartered in Georgia.  The

7    claims are based upon defendant's unlawful business practice of charging expensive premiums for

8    "forced placed insurance" ("FPI") on the consumers' homes even though:

9            a.    The FPI overlaps with the consumers' prior homeowner insurance, and

10   therefore provides no actual coverage under the terms of defendant's own FPI policies;

11           b.    Charging premiums for FPI during the overlap is a breach under the terms of

12   defendant's own FPI policies;

13           c.    Failing to disclose the overlap is a violation of defendant's statutory duties

14   under the Insurance Code, and is constructive fraud; and

15           d.    The consumers are entitled to restitution of all FPI premiums paid during the

16   overlap, plus damages and injunctive relief.  Unless restitution is ordered, the consumers will have

17   paid defendant for "double coverage" without actually getting any additional coverage whatsoever.

18                              **JURISDICTION AND VENUE**

19   2.    This Court has original jurisdiction of this case under 28 USC section 1332(d)(2)

20   because the matter in controversy exceeds the value of $5 million, exclusive of interest and costs,

21   and because the matter is a class action in which at least one member of the plaintiff class is a citizen

22   of a state different from the defendant.  Venue is also proper within this judicial division of this

23   Court under 28 USC sections 1391(a)(2) and 1391(b)(2) because a substantial part of the events

24   giving rise to the claims herein occurred in this division and district, namely many of defendant's

25   disputed FPI policies were placed on homes located in this judicial district, including the home of

26   the named plaintiff and putative class representative.

27   / / /

28   / / /

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR
COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

**PARTIES**

3.     Plaintiff MICHELLE T. WAHL ("Mrs. Wahl") is a resident of Santa Cruz County, California.  At the material time, she was the owner of a home in that county which was insured under an FPI policy of defendant AMERICAN SPECIALTY INSURANCE COMPANY ("ASIC"). Mrs. Wahl was charged premiums by ASIC for FPI during an overlap between ASIC's policy and Mrs. Wahl's prior homeowner insurance policy.  Mrs. Wahl is informed and believes, and thereon alleges, that all members of the plaintiff class were and are similarly situated.

4.     If the plaintiff class is certified by this Court, and subject to the Court's approval thereof, Mrs. Wahl will serve as the plaintiff class representative.

5.     Defendant ASIC is an insurance company doing business throughout the United States — including in Santa Cruz County, California — as an insurer primarily writing FPI policies. ASIC is domiciled in Delaware, and its headquarters are located in Atlanta, Georgia.

6.     ASIC is a wholly owned subsidiary of Interfinancial, Inc., which is an insurance holding company that in turn is a wholly owned subsidiary of Assurant, Inc.  Assurant is a publicly traded company domiciled in Delaware and headquartered in New York City.  Assurant owns and operates the "Assurant Solutions Companies" including ASIC, which companies currently write and administer about 70% of the FPI sold in the United States.  In 2006, during which ASIC's FPI policy was in force on Mrs. Wahl's home, ASIC collected over $700 million in premiums, and Assurant collected over $6.8 billion in premiums — significant percentages of which were FPI premiums. Nearly 17% of ASIC's policies were issued in California in 2006 alone — more than in any other single state.

7.     The true names, identities, and capacities of defendants DOES 1-50, inclusive, are unknown to Mrs. Wahl, who therefore sues these defendants by such fictitious names pursuant to section 474 of the California Code of Civil Procedure.  Mrs. Wahl is informed and believes, and thereon alleges, that all of the DOE defendants are liable in some manner for the claims herein based upon their involvement in the writing and/or administration of FPI by ASIC during periods of overlap with prior homeowner insurance.  Mrs. Wahl will amend this complaint accordingly when the true names and capacities of the DOE defendants become known.

1    8.    Mrs. Wahl is further informed and believes, and thereon alleges, that all of the

2    defendants herein, including the DOE defendants, were at all material times the principal, agent,

3    parent company, subsidiary company, affiliated company, employer, employee, owner, officer,

4    director, joint venturer, aider and abettor, and/or co-conspirator of each of the remaining defendants,

5    and were acting within the course and scope of such relationship and/or conspiracy, and with the

6    consent, permission, and ratification of each other defendant.

7                    **FACTS COMMON TO ALL CAUSES OF ACTION**

8    9.    All typical home mortgages in California offered by institutional lenders require that

9    the borrower obtains a homeowner insurance policy on the mortgaged home sufficient to protect the

10   lender's interest, and that the policy includes an endorsement with a "standard mortgage clause" as

11   stated on Form 438 BFU or its equivalent.  This endorsement is commonly known as the "Lender's

12   Loss Payable Endorsement" ("LLPE"), and its terms on Form 438 BFU have been unchanged in

13   substance since 1942.  A true and correct copy of Mrs. Wahl's LLPE that was part of her

14   homeowner insurance policy on her Santa Cruz home in January 2006 is attached as Exhibit A.

15   10.    Mrs. Wahl's LLPE — like every other LLPE in every other homeowner insurance

16   policy on virtually every other home mortgaged by an institutional lender throughout California —

17   provides in pertinent part as follows:

18          **3.**    In the event of failure of the insured to pay any premium or
             additional premium which shall be or become due under the terms of
19           this policy . . . this Company agrees to give written notice to the
             Lender of such non-payment of premium after sixty (60) days from
20           and within one hundred and twenty (120) days after due date of such
             premium and it is a condition of the continuance of the rights of the
21           Lender hereunder that the Lender when so notified in writing by this
             Company of the failure of the insured to pay such premium shall pay
22           or cause to be paid the premium due within ten (10) days following
             receipt of the Company's demand in writing therefor.  If the Lender
23           shall decline to pay said premium or additional premium, the rights of
             the Lender under this Lender's Loss Payable Endorsement shall not be
24           terminated before ten (10) days after receipt of said written notice by
             the Lender.

25

26   11.    Mrs. Wahl is informed and believes, and thereon alleges, that every member of the

27   plaintiff class had an LLPE in force which was substantially similar to Mrs. Wahl's LLPE in all

28   material respects.

4

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR
COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

12.     The purpose of the LLPE is that — if the homeowner fails to pay the premiums for homeowner insurance, and that policy is cancelled as a result — then the mortgage lender will still be protected by that policy for a definite and specified period of time sufficient for the lender to obtain FPI on the home at the homeowner's expense.  Specifically, the LLPE provides that the prior policy shall remain in effect for at least 60 days after the first date of non-payment, and shall continue in effect thereafter unless and until the lender receives notice in writing from the insurer demanding payment of the unpaid premiums between 60 and 120 days after non-payment.  Even after the lender's receipt of that demand, the prior policy shall remain in effect for another ten days, assuming the lender does not pay the premiums and keep it in effect indefinitely.

13.     As a matter of California law and contract rights under the LLPE, the lender's rights under a homeowner insurance policy are separate and distinct from those of the homeowner, and cannot be terminated by anything done or not done by the homeowner, including but not limited to non-payment of premiums.  Moreover, as a further matter of California law, the mere receipt by the lender of a notice from the insurer that the homeowner policy is being terminated due to non-payment of premium will not satisfy the LLPE requirement for a written demand that will also terminate the lender's coverage.  Instead, such written demand must actually call on the lender to pay the necessary premium, and must be directed specifically to the lender for that purpose — all within the time constraints imposed by the LLPE.

14.     Notwithstanding the well-known and universal terms of the LLPE, it is commonly ignored by institutional mortgage lenders in California.  Instead, those lenders typically contract with FPI insurers to serve as their agents monitoring the homeowner insurance of their mortgage borrowers, demanding payment by the homeowners when the premiums for that insurance are not kept current, putting FPI in place if the demand is not met, and collecting premiums for the FPI — all on the lenders' letterhead.  The FPI insurers generally provide these services to the lenders free of charge — and in fact the FPI insurers usually pay the lenders a significant percentage of the FPI premiums they collect — all in return for getting the "inside track" on sales of FPI to the lenders' mortgage borrowers.  Since FPI invariably costs much more than ordinary homeowner insurance,

/ / /

5

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

1  and yet offers far less coverage, writing FPI is an extremely lucrative business for the FPI insurers,

2  and well worth the free services and sizable payments they give to the lenders.

3    15.    Mrs. Wahl is informed and believes, and thereon alleges, that this typical agency

4  arrangement was in place between her mortgage lender EMC Mortgage Corporation ("EMC") and

5  ASIC at the material time, and that ASIC had many similar agency arrangements with other

6  mortgage lenders throughout California, and that all members of the plaintiff class were similarly

7  situated in terms of ASIC and their own mortgage lenders.

8    16.    In January 2006, Mrs. Wahl fell behind on her premium payments for her homeowner

9  insurance on her home in Santa Cruz. At that point, the following events began:

10    a.    On or about 1/12/06, Mrs. Wahl failed to pay the premium then due on her

11  homeowner insurance policy. Her insurer at that time — Fire Insurance Exchange of the Farmers

12  Insurance Group of Companies — mailed her a written notice on 1/13/06 stating that her insurance

13  would be cancelled effective 1/27/06 if Farmers did not receive the missing premium payment

14  beforehand. Mrs. Wahl did not pay the premium by that deadline.

15    b.    On 2/6/06, Farmers mailed Mrs. Wahl a written notice stating that her

16  homeowner insurance had been cancelled for non-payment of premium effective 1/27/06. This

17  notice was copied to EMC as the "lienholder or other interest." A true and correct copy of Farmers'

18  2/6/06 notice is attached as Exhibit B. Mrs. Wahl is informed and believes, and thereon alleges, that

19  Farmers thereafter never sent any other written notice to EMC concerning such cancellation.

20    c.    On 2/27/06, ASIC notified Mrs. Wahl in writing on EMC letterhead that EMC

21  had purchased a temporary 60-day binder of FPI from ASIC at her expense, with the binder effective

22  as of 1/27/06. A true and correct copy of the 2/27/06 letter is attached as Exhibit C. ASIC further

23  notified Mrs. Wahl in that letter as follows:

> We have incurred expenses in placing this insurance binder and policy
> on your structure. Such expenses are recoverable by us as stated on
> your loan documents. Part of the policy premium charged to your
> escrow account may be used American Security Insurance Company
> to reimburse us for these expenses.

> This policy only insures the structure. It does not protect any personal
> property nor does it protect you from liability against accidents that
> may occur on your property. For example, if your house were

6

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR
COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

1    burglarized, this policy would not cover any loss or replacement of the
2    stolen property.

3       d.    On 4/3/06 and 5/12/06, ASIC again notified Mrs. Wahl in writing on EMC

4    letterhead to the same effect as ASIC's first notice dated 2/27/06. True and correct copies of the

5    4/3/06 and 5/12/06 letters are attached as Exhibits D and E respectively.

6       e.    Additionally, the 5/12/06 letter provided Mrs. Wahl with a copy of her FPI

7    insurance policy obtained by EMC from ASIC (the "Policy"). The Policy included a "Residential

8    Property Additional Insured Endorsement" indicating that EMC was the named insured, that

9    Mrs. Wahl was an additional insured, and that the Policy went into effect on 1/27/06 (the "AI

10   Endorsement"). True and correct copies of Mrs. Wahl's 2007 renewal AI Endorsement and Policy

11   are attached as Exhibits F and G respectively, and Mrs. Wahl is informed and believes, and thereon

12   alleges, that those 2007 renewal versions are substantially similar to the 2006 original versions in all

13   material respects.

14      f.    The AI Endorsement stated that the total annual premium charged by ASIC to

15   Mrs. Wahl would be $4,052 for the first year coverage period of 1/27/06 to 1/27/07. By comparison,

16   the annual premium paid by Mrs. Wahl on her prior homeowner insurance policy with Farmers was

17   $2,457.48 for significantly more and better coverage, including coverage of Mrs. Wahl's interest in

18   her home and her personal property.

19      g.    The FPI placed by ASIC on Mrs. Wahl's home was renewed for another year

20   effective 1/27/07, and remained in effect until 7/19/07, at which time Mrs. Wahl was able to replace

21   the FPI with ordinary homeowner insurance from Farmers. The new Farmers insurance once again

22   offered more and better coverage, and cost significantly less, than the FPI provided by ASIC. The

23   total amount ASIC charged Mrs. Wahl for FPI throughout the term of her FPI coverage was in

24   excess of $4,052, which amount was paid in full, and paid in advance at the outset of both policy

25   years.

26      17.    Mrs. Wahl is informed and believes, and thereon alleges, that at no time from 1/13/06

27   to 7/19/07 did Farmers ever send a written demand for payment of premium directly to EMC as

28   required by the LLPE for termination of the Farmers policy. Consequently, Mrs. Wahl is further

7

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR
COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

1    informed and believes, and thereon alleges, that her prior homeowner insurance policy with Farmers

2    remained in effect throughout the entire term of FPI coverage provided by ASIC, and therefore the

3    Farmers and ASIC policies overlapped throughout that time. If so, then Mrs. Wahl was wrongly

4    charged by ASIC for FPI premiums of <u>at least</u> $4,052 due to that overlap throughout the entire time

5    the FPI was in effect.

6         18.    Alternatively, Mrs. Wahl is informed and believes, and thereon alleges, that — even

7    if Farmers timely sent a written demand for payment of premium directly to EMC as required by the

8    LLPE, and so her prior homeowner insurance policy with Farmers was actually terminated at some

9    point — she was still wrongly charged by ASIC for FPI for at least the initial 60 days of Farmers

10   coverage specifically preserved by the LLPE for the protection of EMC. If so, then Mrs. Wahl was

11   wrongly charged by ASIC for FPI in the <u>minimum</u> amount of $675.33 due to that 60-day overlap of

12   the Farmers and FPI policies.

13        19.    Mrs. Wahl is informed and believes, and thereon alleges, that the facts,

14   circumstances, and content of the notices sent to her by ASIC, and of the placement and/or renewal

15   of FOI on her home by ASIC, are all standard practices of ASIC, and that all members of the

16   plaintiff class were similarly situated in terms of receiving substantially the same notices and

17   treatment by ASIC.

18        20.    The ASIC Policy provides in at least three separate sections that there is no coverage

19   under the Policy whenever there is other applicable insurance in effect, and no premium will be

20   charged for the Policy during any such period of time, and any such charges will be refunded if paid:

21        a.    The "Other Insurance Endorsement" of the Policy (found on page MS1307 of

22   Exhibit F) provides in pertinent part that: "Coverage under this policy is terminated as of the

23   effective date of other acceptable coverage and unearned premium shall be calculated and refunded

24   on a *pro rata* basis";

25        b.    Section 18(a) of the "Conditions" of the Policy re "Cancellation" (found on

26   page AMSBG107 of Exhibit F) provides in pertinent part that: "Coverage under this policy shall

27   automatically and without prior notice, cancel when the Named Insured ... has been provided with

28   another policy that meets the requirements of the Named Insured ..."; and

8

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR
COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

1          c.     Section 19 of the "Conditions" of the Policy re "Return of Premium" (also

2 found on page AMSBG107 of Exhibit F) provides in pertinent part that: "When this policy is

3 cancelled, the premium for the period from the date of cancellation to the expiration date will be

4 refunded *pro rata*."

5       21.     Based on at least these three provisions, the Policy provided no coverage during any

6 period of overlap with the Farmers policy, and no FPI premium could be charged to Mrs. Wahl

7 during such overlap, and any FPI premium charged during such overlap was to be refunded to

8 Mrs. Wahl *pro rata*. Nevertheless, ASIC never refunded any premium to Mrs. Wahl — all of which

9 premium was prepaid by her for two full years of coverage under the Policy — for any such overlap.

10 The only premium ever refunded to Mrs. Wahl by ASIC was the premium prepaid by her for the

11 period after she obtained the new Farmers policy effective 7/19/07.

12       22.     Mrs. Wahl is informed and believes, and thereon alleges, that all members of the

13 plaintiff class were issued an FPI policy by ASIC that was substantially similar to her Policy in all

14 material respects, and that ASIC never made any material refunds to any members of the plaintiff

15 class for any period of overlap between ASIC's FPI policies and their own prior homeowner

16 insurance.

17       23.     Throughout these events, ASIC knew or should have known all of the following

18 material facts concerning not only Mrs. Wahl, but also concerning all members of the plaintiff class

19 similarly situated with her:

20         a.     **The long-standing and universal provisions of the LLPE**, which were

21 known to ASIC both because it had many decades of vast institutional experience with ordinary

22 homeowner insurance and FPI in California, and because it had access to the specific provisions of

23 Mrs. Wahl's homeowner insurance policy with Farmers in ASIC's capacity as EMC's agent

24 monitoring her insurance, and likewise had access to the same information for all members of the

25 plaintiff class as the agent of their respective lenders;

26         b.     **The continued force and effect of the Farmers policy throughout the**

27 **overlap period under the LLPE**, which was known to ASIC because it had access to all notices of

28 non-payment ever sent by Farmers to EMC in ASIC's capacity as EMC's agent monitoring all its

1 FPI needs, and likewise had access to the same information for all members of the plaintiff class as

2 the agent of their respective lenders; and

3    c.    **The effective dates of ASIC's FPI Policy, and the Policy provisions**

4 **barring coverage and collection of premium during any period of overlap with the prior**

5 **insurance,** which were known to ASIC in its capacity as the insurer writing and issuing the Policy

6 not only to Mrs. Wahl, but also as the insurer writing and issuing substantially similar FPI policies to

7 all members of the plaintiff class.

8    24.    Nevertheless, despite ASIC's knowledge of these material facts, ASIC never

9 disclosed any of them to Mrs. Wahl at any time before, during, or after ASIC placed the FPI Policy

10 on her home, and charged her premiums for the Policy.  Likewise, Mrs. Wahl is informed and

11 believes, and thereon alleges, that ASIC never disclosed any of these material facts at any time to

12 any member of the plaintiff class.

13    25.    This class action is needed to ensure that ASIC's wrongful charges for FPI premiums

14 during any overlap with prior homeowner insurance are recovered and returned to Mrs. Wahl and all

15 members of the plaintiff class in full as required by law, equity, and the terms of ASIC's own FPI

16 policies.

17                    **CLASS ACTION ALLEGATIONS**

18    26.    Mrs. Wahl has brought this action — on behalf of herself and all others similarly

19 situated — as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The

20 putative plaintiff class which Mrs. Wahl seeks to represent is composed of and defined as follows:

21    a.    All current and former California homeowners who were insureds or

22          additional insureds under an ASIC FPI policy; and

23    b.    Who paid premiums for an ASIC FPI policy; and

24    c.    Such payments for the ASIC FPI policy included premiums for any period of

25          FPI which overlapped prior homeowner insurance still in effect pursuant to

26          the homeowners' LLPEs.

27 Excluded from the class are persons who were ASIC's and/or the DOE Defendants' employees,

28 officers, and/or directors during the class period determined by the Court.

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR
COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

1        27.     This action has been brought and may properly be maintained as a class action on

2  behalf of the putative plaintiff class pursuant to Rule 23 for the following reasons:

3        a.    **Numerosity**:  The plaintiff class will include thousands of California

4  homeowners, and consequently the class is so numerous that it is not practical to bring all such

5  persons before the Court.  The exact number of potential class members is unknown, but can be

6  readily established from ASIC's records of its FPI insureds and additional insureds in California

7  throughout the material time.  In many instances, such persons are unaware of their claims against

8  ASIC, and/or they have sustained individual damages that are too small to justify the time and

9  expense of bringing suit individually.  Nevertheless, when aggregated, such individual damages

10  easily exceed the $5 million jurisdictional limit of this Court under 28 USC section 1332(d)(2).

11        b.    **Predominance and Commonality**:  The questions of law and fact common to

12  all members of the class overwhelmingly predominate over any question of law or fact limited to any

13  individual member of the plaintiff class.  Such common questions include, but are not limited to, the

14  following:

15        i.     Whether the claims herein arise out of form notices, standard FPI

16  policies, and common routine procedures used by ASIC in substantially similar circumstances;

17        ii.    Whether ASIC charged class members premiums for FPI during

18  periods of overlap between FPI and prior homeowner insurance still in effect under the class

19  members' LLPEs;

20        iii.    Whether such charges by ASIC for FPI during any such overlap is a

21  breach of ASIC's FPI policies issued to the class members;

22        iv.    Whether ASIC had a duty to disclose the material facts concerning any

23  such overlap to the class members;

24        v.    Whether the class members are entitled to rescind their FPI policies

25  with ASIC, and to obtain restitution of FPI premiums paid to ASIC, during any such overlap;

26        vi.    Whether ASIC's business practice of charging FPI premiums during

27  any such overlap is a violation of California Business & Professions Code section 17200 *et seq.*,

28  and/or a violation of California Civil Code section 1750 *et seq.*; and

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR
COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

1    vii.    Whether the class members are entitled to declaratory relief restraining

2    such business practice by ASIC, and/or protecting their right to restitution, and/or otherwise.

3    c.    **Typicality**: Mrs. Wahl's claims against ASIC are typical of all class

4    members' claims, and arise out of substantially similar facts and legal theories shared with all class

5    members as set forth herein. Moreover, the material LLPE provisions, FPI policy provisions, and

6    ASIC notices and business practices affecting Mrs. Wahl and all class members are substantially

7    similar as well.

8    d.    **Adequacy of Class Representative**: Mrs. Wahl is an intelligent and

9    determined individual. She is aware of her duties to the class, she is committed to fairly and

10    adequately protecting the interests of all members of the class, and she has no conflict of interest

11    with any member of the class. She is aware that she cannot settle this action without the approval of

12    this Court. Finally, she has selected experienced counsel to represent her and the plaintiff class.

13    e.    **Adequacy of Class Counsel**: Class counsel collectively have substantial

14    experience in complex insurance and consumer class action litigation, and have litigated many class

15    actions in the state and federal courts nationwide, including class actions involving insurance

16    policyholder rights. Class counsel have agreed to advance all costs to litigate this action, and are

17    representing Mrs. Wahl and the putative class on a contingent basis, and will be compensated for

18    their fees and expenses only as approved by this Court.

19    f.    **Superiority**: A class action for the plaintiff class herein is superior to all other

20    available means for the fair and efficient adjudication of this matter. This is so because the

21    substantive claims of Mrs. Wahl and all class members arise out of materially the same treatment by

22    ASIC, will require proof of the same material evidence, and will require application of the same law.

23    Moreover, individual joinder of all members of the plaintiff class is not practical, and the time and

24    expense of bringing suit makes it impractical for individual class members to seek redress by any

25    other means. A class action will allow for all similarly situated persons to prosecute this action in a

26    single forum simultaneously, efficiently, and without the duplication of effort and expense that

27    numerous individual actions would entail for the parties, and for the Court as well. Moreover, those

28    / / /

1  same numerous individual actions would create a substantial of risk of inconsistent and/or

2  contradictory outcomes.

3      g. **Manageability**: There are no known or foreseeable legal, factual, or practical

4  issues in this case that will cause management problems not normally and routinely overcome by the

5  courts overseeing class actions.  To the contrary, identification of class members, calculation of

6  damages, and administration of the class fund should be relatively simple in this case because all of

7  those tasks turn on the recent business records of ASIC — a well-funded, sophisticated, and

8  established insurer doing business in California.  Moreover, the material LLPE provisions, FPI

9  policy provisions, and ASIC notices and business practices affecting Mrs. Wahl and all class

10  members are substantially similar, thus simplifying all issues of proof.  Certification of the plaintiff

11  class herein should result in an efficient and cost-effective case relative to any other option for

12  adjudicating this matter.

13     **FIRST CAUSE OF ACTION FOR BREACH OF INSURANCE CONTRACT**
         **(Against ASIC Only)**

14

15     28. Mrs. Wahl realleges and incorporates by reference as though fully set forth herein

16  Paragraphs 1-27 above.

17     29. The FPI policies between Mrs. Wahl and all others similarly situated with her on the

18  one hand (as the insureds or additional insureds) and ASIC on the other hand (as the insurer)

19  provided in effect that ASIC would not charge premiums, and/or that ASIC would refund premiums

20  that were charged, for any period of time during which the FPI overlapped with any prior

21  homeowner insurance.

22     30. Notwithstanding these provisions of the FPI policies, ASIC charged Mrs. Wahl and

23  all others similarly situated with her for FPI premiums during a period of time during which the FPI

24  overlapped with prior homeowner insurance still in effect pursuant to their LLPEs, and ASIC has

25  failed and refused to refund those FPI premiums, and thereby ASIC has breached its FPI policies

26  with them.

27     31. As a result of ASIC's breach of its FPI policies, Mrs. Wahl, and all others similarly

28  situated with her, have suffered damages in the amount of all FPI premiums paid by them to ASIC

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR
COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

1  during any period of time in which an ASIC FPI policy overlapped with their prior homeowner

2  insurance still in effect pursuant to their LLPEs.

3  ## SECOND CAUSE OF ACTION FOR RESCISSION
   ## FOR BREACH OF STATUTORY DUTY TO DISCLOSE

4  ### (Against ASIC Only)

5      32.    Mrs. Wahl realleges and incorporates by reference as though fully set forth herein

6  Paragraphs 1-31 above.

7      33.    Material facts establishing that ASIC's FPI policies provided no coverage during any

8  overlap, and that the homeowners had no obligation to pay FPI premiums during any overlap,

9  include but are not limited to the following: (i) the provisions of Mrs. Wahl's LLPE, and the LLPEs

10  of all others similarly situated with her; (ii) the continued force and effect of their prior insurance

11  under their LLPEs; (iii) the resulting overlap of ASIC's FPI policies and their prior homeowner

12  insurance; and (iv) the FPI policy provisions barring coverage and collection of FPI premium by

13  ASIC during any such period of overlap.

14      34.    Because ASIC was both the FPI insurer and the agent of the lender for Mrs. Wahl and

15  all others similarly situated with her, ASIC knew or should have known all such material facts

16  concerning the FPI policies, and ASIC further knew or should have known that Mrs. Wahl and all

17  others similarly situated with her did not know any such facts, and that they did not have any means

18  of ascertaining such facts because — at the time of the inception of the FPI policies — only ASIC

19  knew whether and when the lender received the notice from the prior homeowner insurer as required

20  by the LLPE and California law, the status and effective dates of their prior homeowner insurance,

21  the status and effective dates of ASIC's FPI, and the material provisions of ASIC's FPI Policy.

22      35.    Notwithstanding ASIC's knowledge of all such material facts, and the known

23  ignorance of those facts by Mrs. Wahl and all others similarly situated with her, ASIC failed and

24  refused to communicate any of those material facts to them, either at the inception of ASIC's FPI

25  policies or at any time thereafter, except that ASIC sent them copies of their AI endorsements and

26  FPI policies — but only _after_ they had been issued and premiums had been charged.  Had Mrs. Wahl

27  and members of the plaintiff class known these material facts prior to the issuance of the FPI Policy,

28  / / /

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR
COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

1    they could have insisted that ASIC not charge FPI premiums for any periods of overlap between the

2    FPI and their prior homeowner insurance.

3         36.    The California Insurance Code, in Division 1 concerning "General Rules Governing

4    Insurance," Part 1 concerning "The Contract," and Chapter 3 concerning "Negotiations Before

5    Execution," provides in pertinent part as follows:

6              a.    Section 330 re "Concealment Defined" provides that: "Neglect to

7    communicate that which a party knows, and ought to communicate, is concealment";

8              b.    Section 331 re "Effect of Concealment" provides that: "Concealment, whether

9    intentional or unintentional, entitles the injured party to rescind insurance";

10             c.    Section 332 re "Required Disclosure" provides that: "Each party to a contract

11   of insurance shall communicate to the other, in good faith, all facts within his knowledge which are

12   or which he believes to be material to the contract and as to which he makes no warranty, and which

13   the other has not the means of ascertaining"; and

14             d.    Section 334 re "Materiality" provides that: "Materiality is to be determined

15   not by the event, but solely by the probable and reasonable influence of the facts upon the party to

16   whom the communication is due, in forming his estimate of the disadvantages of the proposed

17   contract, or in making his inquiries".

18        37.    The facts concerning the FPI policies that were not communicated by ASIC to

19   Mrs. Wahl, nor communicated by ASIC to any others similarly situated with her, were concealed

20   from them under section 330, were required to be communicated to them under section 332, and

21   were material under section 334, and consequently they are entitled to rescind their FPI policies with

22   ASIC under section 331, and under California Civil Code section 1689(b)(7) as well, and Mrs. Wahl

23   hereby does so on her own behalf, and on behalf of all others similarly situated with her.

24        38.    As a result of such rescission, Mrs. Wahl, and all others similarly situated with her,

25   are further entitled under California Civil Code section 1692 to recover from ASIC all FPI premiums

26   paid by them to ASIC during any period of time in which an ASIC FPI policy overlapped with their

27   prior homeowner insurance still in effect pursuant to their LLPEs.

28   / / /

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR
COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

### THIRD CAUSE OF ACTION FOR RESCISSION
### FOR CONSTRUCTIVE FRAUD
**(Against ASIC Only)**

39.     Mrs. Wahl realleges and incorporates by reference as though fully set forth herein Paragraphs 1-38 above.

40.     California Insurance Code section 330 *et seq.* imposed a duty of disclosure on ASIC to Mrs. Wahl, and to all others similarly situated with her, which duty ASIC failed to satisfy — whether intentionally or unintentionally. Instead, ASIC concealed material facts from Mrs. Wahl and

all others similarly situated with her at the inception of ASIC's FPI policies with them, and thereafter.

41.     Consequently, under California Civil Code section 1573, ASIC committed constructive fraud against Mrs. Wahl and all others similarly situated with her, and they are entitled to rescind their FPI policies with ASIC under California Civil Code section 1689(b)(1), and Mrs. Wahl hereby does so on her own behalf, and on behalf of all others similarly situated with her.

42.     As a result of such rescission, Mrs. Wahl, and all others similarly situated with her, are further entitled under California Civil Code section 1692 to recover from ASIC all FPI premiums paid by them to ASIC during any period of time in which an ASIC FPI policy overlapped with their prior homeowner insurance still in effect pursuant to their LLPEs.

### FOURTH CAUSE OF ACTION FOR RESCISSION
### FOR FAILURE OF CONSIDERATION
**(Against ASIC Only)**

43.     Mrs. Wahl realleges and incorporates by reference as though fully set forth herein Paragraphs 1-42 above.

44.     ASIC's FPI policies in effect barred coverage and collection of FPI premiums by ASIC during any period of time in which the policies overlapped with prior homeowner insurance still in effect pursuant to the homeowner's LLPE. Since there was such an overlap throughout some or all of the period during which the disputed ASIC FPI policies were in force, Mrs. Wahl and all others similarly situated with her actually had no coverage under ASIC's FPI policies during any

///

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR
COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

1  such overlap, and therefore there was a complete failure of the consideration to be provided by ASIC

2  under the FPI policies in return for payment of FPI premiums to ASIC for the overlap periods.

3    45. Consequently, Mrs. Wahl, and all others similarly situated with her, are entitled to

4  rescind ASIC's FPI policies during those overlap periods for failure of consideration under

5  California Civil Code sections 1689(b)(2) and (4), and Mrs. Wahl hereby does so on her own behalf,

6  and on behalf of all others similarly situated with her.

7    46. As a result of such rescission, Mrs. Wahl, and all others similarly situated with her,

8  are further entitled under California Civil Code section 1692 to recover from ASIC all FPI premiums

9  paid by them to ASIC during any period of time in which an ASIC FPI policy overlapped with their

10  prior homeowner insurance still in effect pursuant to their LLPEs.

11  **FIFTH CAUSE OF ACTION FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW**

**(Against All Defendants)**

12

13    47. Mrs. Wahl realleges and incorporates by reference as though fully set forth herein

14  Paragraphs 1-46 above.

15    48. ASIC has an unlawful business practice of charging California homeowners who are

16  additional insureds under ASIC's FPI policies, including Mrs. Wahl, for FPI premiums even during

17  periods of time in which those policies overlap with the homeowners' prior insurance still in effect

18  pursuant to their LLPEs.

19    49. This unlawful business practice is a breach of ASIC's own FPI policies, which in

20  effect provide that ASIC will not charge homeowners for premiums, and/or that ASIC will refund

21  the premiums that are charged, for any period of time during which ASIC's FPI policies overlap

22  with the homeowners' prior insurance.

23    50. The material facts concerning the homeowner insurance overlap giving rise to this

24  unlawful business practice are not disclosed by ASIC to the homeowners at the inception of ASIC's

25  FPI policies, nor at any time thereafter, despite ASIC being under a statutory duty imposed by

26  California Insurance Code section 330 *et seq.* to disclose such facts.

27    51. As a result of this unlawful business practice, the homeowners paying FPI premiums

28  to ASIC for any period of time during which ASIC's FPI policies overlap with the homeowners'

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR
COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

1   prior insurance are entitled to rescind the FPI policies, and to obtain restitution of the FPI premiums

2   paid by them to ASIC during such overlap, because:

3            a.     This unlawful business practice constitutes concealment and permits

4   rescission by the homeowners under California Insurance Code sections 330 and 331;

5            b.     This unlawful business practice constitutes constructive fraud and permits

6   rescission by the homeowners under California Civil Code sections 1573, 1689(b)(1), and 1692; and

7            c.     This unlawful business practice constitutes failure of consideration and allows

8   rescission by the homeowners under California Civil Code sections 1689(b)(2) and (4), and 1692.

9       52.    This unlawful business practice by ASIC constitutes unfair competition by means of

10   unfair, unlawful, and/or fraudulent acts or practices within the meaning of California Business &

11   Professions Code section 17200, *et seq.*  Moreover, this unlawful business practice by ASIC is

12   ongoing, and there is every indication that ASIC will continue this business practice into the

13   indefinite future.

14       53.    As a result of ASIC's unlawful business practice, Mrs. Wahl, and all other

15   homeowners similarly situated with her, have at a minimum suffered actual financial damages and

16   loss in the full amount of the FPI premiums paid by them to ASIC during periods of time in which

17   ASIC's FPI policies overlapped with the homeowners' prior insurance still in effect pursuant to their

18   LLPEs.

19       54.    Mrs. Wahl, and all other homeowners similarly situated with her, are each entitled to

20   full restitution of all such FPI premiums obtained from them by ASIC as a result of ASIC's unlawful

21   business practice under California Business & Professions Code sections 17203 and 17204.

22       55.    As a further result of ASIC's unlawful business practice, Mrs. Wahl, and all other

23   homeowners similarly situated with her, are entitled to and hereby seek an injunction prohibiting

24   such business practice now and in the future pursuant to California Business & Professions Code

25   sections 17203 and 17204.

26       56.    Mrs. Wahl is informed and believes, and thereon alleges, that ASIC carries out this

27   unfair, unlawful, and/or fraudulent business practice in conjunction and/or conspiracy with each of

28   the DOE defendants, and with the consent, permission, and ratification of each of the DOE

1  defendants, and consequently all such DOE defendants are equally liable with ASIC for violation of

2  California Business & Professions Code section 17200 *et seq.*

3  **SIXTH CAUSE OF ACTION FOR VIOLATIONS OF THE CONSUMERS LEGAL
   REMEDIES ACT**

4  **(Against All Defendants)**

5      57.    Mrs. Wahl realleges and incorporates by reference as though fully set forth herein

6  Paragraphs 1-56 above.

7      58.    ASIC has an unlawful business practice of charging California consumers who are

8  additional insureds under ASIC's FPI policies, including Mrs. Wahl, for FPI premiums even during

9  periods of time in which those policies overlap with the consumers' prior homeowner insurance still

10 in effect pursuant to their LLPEs.

11     59.    This unlawful business practice by ASIC constitutes an unfair or deceptive act or

12 practice, which includes but is not limited to: (i) failing to disclose to consumers that their prior

13 homeowner insurance continues to provide coverage that overlaps with ASIC's FPI policies; (ii)

14 representing to the consumers that ASIC's FPI policies provide coverage when they do not; and (iii)

15 further representing to consumers that the transactions which result in their paying FPI premiums to

16 ASIC involve purported obligations under the consumers' LLPEs and/or under ASIC's FPI policies

17 which in fact do not exist and/or which are prohibited by law, and consequently this unfair or

18 deceptive act or practice is generally prohibited by California Civil Code section 1750 *et seq.*, and is

19 specifically prohibited by California Civil Code section 1770(a)(14).  Moreover, this unlawful

20 business practice by ASIC is ongoing, and there is every indication that ASIC will continue this

21 business practice into the indefinite future.

22     60.    As a result of ASIC's violation of California Civil Code sections 1750 *et seq.* and

23 1770(a)(14) involving its charges for FPI premiums, Mrs. Wahl, and all other consumers similarly

24 situated with her, are entitled to and hereby seek an injunction prohibiting ASIC's unlawful business

25 practice now and in the future pursuant to California Civil Code section 1780(a)(2).

26     61.    As a further result of ASIC's violation of California Civil Code sections 1750 *et seq.*

27 and 1770(a)(14) involving its charges for FPI premiums, Mrs. Wahl, and all other consumers

28 / / /

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR
COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

1  similarly situated with her, are entitled to recover their reasonable court costs and attorney's fees

2  incurred herein should they prevail pursuant to California Civil Code section 1780(d).

3      62.     Mrs. Wahl is informed and believes, and thereon alleges, that ASIC carries out its

4  unlawful business practice in conjunction and/or conspiracy with each of the DOE defendants, and

5  with the consent, permission, and ratification of each of the DOE defendants, and consequently all

6  such DOE defendants are equally liable with ASIC for violation of California Civil Code sections

7  17200 *et seq.* and 1770(a)(14).

8      63.     On behalf of Mrs. Wahl, and all other consumers similarly situated with her,

9  Mrs. Wahl's counsel is placing ASIC on written notice of its violations of the Consumers Legal

10 Remedies Act as alleged above, and is providing ASIC with at least 30 days notice to stop such acts

11 or practices, and to cure the harm caused to all such consumers thereby, pursuant to California Civil

12 Code section 1782(a).

13     64.     In the event that ASIC fails to take timely corrective action, and does not properly

14 respond in good faith to such notice as required by the Consumer Legal Remedies Act, then

15 immediately upon the expiration of the 30-day notice period allowed by California Civil Code

16 section 1782(a), Mrs. Wahl will file an amended complaint herein seeking actual and punitive

17 damages from ASIC and all DOE defendants pursuant to California Civil Code sections 1780(a)(1)

18 and (4).

19              **SEVENTH CAUSE OF ACTION FOR DECLARATORY RELIEF**
                              **(Against All Defendants)**
20

21     65.     Mrs. Wahl realleges and incorporates by reference as though fully set forth herein

22 Paragraphs 1-64 above.

23     66.     An actual controversy has arisen between Mrs. Wahl and all others similarly situated

24 with her on the one hand, and ASIC and all the DOE defendants on the other hand.  Such

25 controversy concerns their respective rights and duties under the provisions of ASIC's FPI policies

26 imposed on homeowners as insureds or additional insureds, and the homeowners' LLPEs, and the

27 resulting obligations between the parties to pay or return FPI premiums.

28 / / /

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR
COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

1    67.    Mrs. Wahl contends that ASIC's charges for FPI premiums during periods of time in

2  which ASIC's FPI policies overlap with the homeowners' prior insurance still in effect pursuant to

3  their LLPEs constitute, among other things, a breach of ASIC's FPI policies, statutory grounds for

4  rescission of the FPI policies and restitution of some or all of the FPI premiums charged by ASIC,

5  violation of the unfair competition law of California, and violation of the Consumers Legal

6  Remedies Act of California.  Ms Wahl is informed and believes, and thereon alleges, that ASIC and

7  the DOE defendants contend the contrary.

8    68.    Consequently, declaratory relief is both necessary and proper in this action to

9  determine the rights and duties which exist between the parties to ASIC's FPI policies, and any other

10  parties affiliated with them.  Since the pertinent business practices of ASIC concerning its FPI

11  policies and premiums are ongoing, and apparently will continue into the indefinite future,

12  Mrs. Wahl, and all others similarly situated with her, have no adequate remedy at law to protect

13  themselves from such ongoing practices by ASIC other than by seeking declaratory relief.

14    69.    The allegations in this Cause of Action are to be deemed to be made as to each Cause

15  of Action asserted in this Complaint for which declaratory or injunctive relief is available.

16                                   **PRAYER FOR RELIEF**

17    WHEREFORE, Mrs. Wahl prays on her own behalf, and on behalf of all others similarly

18  situated with her, for the following relief:

19    1.    For an order determining that this action may be maintained as a class action,

20  appointing Mrs. Wahl as plaintiff class representative, and appointing her undersigned counsel as

21  counsel for the class;

22    2.    For compensatory damages according to proof for those Causes of Action asserted

23  herein for which they are available under applicable law, except for the Sixth Cause of Action;

24    3.    For an order enjoining the unlawful business practices of ASIC pursuant to California

25  Business & Professions Code sections 17203 and 17204, and pursuant to any other Cause of Action

26  asserted herein for which such relief is available;

27    4.    For an order requiring ASIC to make restitution of all FPI premium payments

28  unlawfully obtained from Mrs. Wahl, and from all others similarly situated with her, pursuant to

21

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR
COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

1 | California Business & Professions Code sections 17203 and 17204, and pursuant to any other Cause

2 | of Action asserted herein for which such relief is available;

3 |      5.    For an order enjoining the deceptive business practices of ASIC pursuant to

4 | California Civil Code section 1780(a)(2), and pursuant to any other Cause of Action asserted herein

5 | for which such relief is available;

6 |      6.    For an order that, pending the final resolution of this action and entry of judgment

7 | herein, a constructive trust be imposed upon all FPI premiums unlawfully obtained by ASIC from

8 | Mrs. Wahl, and from all others similarly situated with her;

9 |      7.    For an order granting Mrs. Wahl, and all others similarly situated with her, such other

10 | and further declaratory or injunctive relief as may be required by the interests of justice;

11 |      8.    For punitive damages according to proof for those Causes of Action asserted herein

12 | for which they are available under applicable law, except for the Sixth Cause of Action;

13 |      9.    For attorneys' fees and costs incurred herein, awarded pursuant to California Civil

14 | Code section 1780(d) of the Consumers Legal Remedies Act;

15 |      10.    For costs of suit incurred herein according to law;

16 |      11.    For pre-judgment interest incurred herein according to law; and

17 |      12.    For such other and further relief as the Court deems just and proper.

18 | ### DEMAND FOR JURY TRIAL

19 |     Plaintiff, for herself and all members of the plaintiff class, demands a trial by jury on all

20 | Causes of Action for which it is available under applicable law.

21 | Dated:    January 24, 2008        SPECTER SPECTER EVANS & MANOGUE, P.C. *

22 |                 PIETZ LAW OFFICE *

23 |                 YUNKER & SCHNEIDER

24 |

25 |                 By:

26 |                     Stephen F. Yunker, one of the attorneys for Plaintiff Michelle T. Wahl and the Plaintiff Class

27 |           * Pro hac vice petition to be filed upon issuance of case number

28 |

COMPLAINT FOR BREACH OF INSURANCE CONTRACT, RESCISSION, VIOLATIONS OF THE UNFAIR
COMPETITION LAW AND CONSUMERS LEGAL REMEDIES ACT, AND DECLARATORY RELIEF

# EXHIBIT A

The endorsement shown below applies only if indicated in the Declarations.

Further, it applies only to buildings insured under Coverages A and B. As to Coverages A and B, it replaces the Mortgage Clause in Section I Conditions of the Policy.

## LENDER'S LOSS PAYABLE ENDORSEMENT

Form 438BFU NS
(Rev. May 1, 1942) x

1. Loss or damage, if any, under this policy, shall be paid **to the Payee named in the Declarations of this policy,** its successors and assigns, hereinafter referred to as "the Lender", in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

2. The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto, by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property.

3. In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

4. Whenever this Company shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and this Company, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.

5. If there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Fallen Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insurers contributing to said payment) to all of the Lender's rights of contribution under said other insurance.

25-4160 10-98

*(Continued Next Page)*

A4160101

6. This Company reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and shall then cease.

7. This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender.

8. Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue for the term thereof for the benefit of the Lender but, in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such property.

9. All notices herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch described in the Declarations of the policy.

Approved:

Board of Fire Underwriters of the Pacific,
California Bankers' Association,
Committee on Insurance.

# EXHIBIT B



FARMERS

FIRE INSURANCE EXCHANGE, LOS ANGELES, CALIFORNIA
## YOUR POLICY IS OUT OF FORCE

INSURED'S NAME AND ADDRESS:
MICHELLE WAHL AND VICTOR WAHL

785 LOGAN CREEK RD
BOULDER CK, CA
95006-

POLICY NUMBER:
92723-19-41

LOAN NUMBER: 0007852643

PROPERTY LOCATION:
785 LOGAN CREEK RD
BOULDER CK, CA
95006-

DATE MAILED:
02-06-2006

CANCELLATION DATE:

JANUARY 27, 2006

EFFECTIVE AT:

12:01 A.M. Standard Time



| AMOUNT DUE ON CANCELLATION | REFUND (IF ANY) | TOTAL PREMIUM | EARNED PREMIUM DUE (IF ANY) |
|---|---|---|---|
| $1228.74 | $0.00 | $1228.74 | |

YOUR POLICY WAS CANCELED FOR NON-PAYMENT OF PREMIUM ON THE CANCELLATION DATE
SHOWN ABOVE AND AS NOTED ON THE CANCELLATION NOTICE SENT TO YOU EARLIER.
IF YOU WOULD LIKE TO REINSTATE THE POLICY, PLEASE SEND THE 'AMOUNT DUE ON
CANCELLATION' WITHIN 60 DAYS FROM THE DATE OF CANCELLATION.
IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT YOUR FARMERS AGENT.
THANK YOU.


INSURED PAYS PREMIUM.


CANCELLATION AND FAILURE TO RENEW CERTAIN PROPERTY INSURANCE
(APPLICABLE TO POLICIES INSURING RESIDENT PROPERTY NOT EXCEEDING FOUR
DWELLING UNITS AND PERSONAL PROPERTY OF OCCUPANTS OF SUCH RESIDENTIAL
PROPERTIES), UPON WRITTEN REQUEST OF THE NAMED INSURED, THE INSURER
SHALL FURNISH THE FACTS ON WHICH THE CANCELLATION IS BASED.


LIENHOLDER OR OTHER INTEREST:
EMC MORTGAGE

PO BOX 7589
SPRINGFIELD, OH
45501-7589

SERVICE CENTER ADDRESS:
P.O. BOX 1900
PLEASANTON, CA 94566

Agent Name:
Tina Andreatta

Agent No:
96 86 309

Agent Phone:
(831) 462-6100

254139 5-00

02-06-2006    C42  A4139101

# EXHIBIT C

EMC MORTGAGE CORPORATION
ITS SUCCESSORS AND/OR ASSIGNS
P O BOX 7589
SPRINGFIELD, OH 45501-7589



**EMC**
**MORTGAGE**
**CORPORATION**

02/27/2006

2522

MICHELLE T WAHL
785 LOGAN CREEK ROAD
BOULDER CREEK, CA  95006-8700

|           | Subject: | Loan Number:      | 0007852643 |
|-----------|----------|-------------------|------------|
|           |          | Hazard Insurance: | 06 |
|           |          | Property Address: | 785 LOGAN CREEK ROA |
|           |          |                   | BOULDER CREEK, CA  95006 |

Dear Customer:

Please read this letter carefully as it contains important information that could affect your monthly mortgage payment and the insurance coverage of your home.  If you have any questions, please call our Customer Service Department at the number shown below.

You have the right to purchase hazard insurance coverage from an insurance company of your choice. However, our records show that we have not received a new or renewal policy covering your house. It appears that you do not have any insurance coverage as of the expiration date above.  Please contact your agent or company and purchase coverage.  If you have already done so, please request proof of coverage and send it to the address below.  Please be sure your policy includes your loan number and a Mortgagee Clause or Lender Loss Payable Endorsement made out to:

EMC MORTGAGE CORPORATION
ITS SUCCESSORS AND/OR ASSIGNS
P O BOX 7589
SPRINGFIELD, OH  45501-7589
Attention:  Insurance Department
Loan Number:      0007852643

Your loan documents require that hazard insurance be maintained on the property.  Until we receive your policy, we have secured temporary insurance coverage in the form of a sixty-day binder through American Security Insurance Company .  This binder cannot be renewed.

If proof of insurance is not supplied within 60 days, EMC will be required to obtain adequate insurance coverage at your expense.  The amount of the premium will be charge to your escrow account.  If you do not have an escrow account, one will be established on your behalf.  Your monthly payments will increase due to the cost of this coverage.

Any policy we purchase on your behalf may be cancelled at any time by providing proof of acceptable insurance coverage.  ('Acceptable insurance' is provided by a carrier with a Best Key Rating of B+ or better in the amount of your unpaid principal balance or the insurable value of your home, whichever is less.)  You will then be charged only for the period of time this policy was in effect.  Any unused premium will be refunded to your escrow account.



**MBA**
**MEMBER**

Two MacArthur Ridge, 909 Hidden Ridge Drive, Suite 200, Irving, Texas 75038
MAILING ADDRESS: P.O. Box 141358, Irving, Texas 75014-1358

AMSBNF01

Since this policy will insure your house without inspection, the cost may be much higher than you would normally pay if you obtain coverage through an agent of your choice.   The coverage provided may be less than you had before.

We have incurred expenses in placing this insurance binder and policy on your structure.  Such expenses are recoverable by us as stated on your loan documents.  Part of the policy premium charged to your escrow account may be used by American Security Insurance Company to reimburse us for these expenses.

This policy only insures the structure.  It does not protect any personal property nor does it protect you from liability against accidents that may occur on your property.  For example, if your house were burglarized, this policy would not cover any loss or replacement of the stolen property.

We thank you for your assistance.  If you or your insurance agent has any questions or believes there is an error in our records, please call us at 1-877-406-4372 , Monday through Friday between 8:00 a.m. and 6:00 p.m. Central Time, and one of our Customer Service representatives will be happy to assist you.


Sincerely,

Customer Service Representative

**If your loan is currently in bankruptcy, this is not an attempt to collect a debt.**

# EXHIBIT D

EMC MORTGAGE CORPORATION
ITS SUCCESSORS AND/OR ASSIGNS
P O BOX 7589
SPRINGFIELD, OH 45501-7589



04/03/2006

MICHELLE T WAHL
785 LOGAN CREEK ROAD
BOULDER CREEK, CA 95006-8700

| Subject: | Loan Number: | 0007852643 |
| | Hazard Insurance: | 01/27/2006 |
| | Property Address: | 785 LOGAN CREEK ROA |
| | | BOULDER CREEK, CA 95006 |

Dear Customer:

Please read this letter carefully as it contains important information that could affect your monthly mortgage payment and the insurance coverage of your home. If you have any questions, please call our Customer Service Department at the number shown below.

Approximately thirty days ago, EMC Mortgage Corporation (EMC) notified you that our records indicate that we had not received a new or renewal insurance policy covering your house. To date it appears that you do not have insurance coverage on your home. Your loan documents require that hazard insurance be maintained on the property. Failure to do so is a breach of that requirement.

The temporary insurance coverage we secured is in the form of a sixty-day binder through American Security Insurance Company and is now 30 days old. This binder cannot be renewed. It covers your house for risks of direct loss subject to the terms of the policy. It does not protect your personal property, nor does it protect you from liability against injuries that may occur on your property. For example, if your house were burglarized, it would not cover the loss or replacement of stolen property.

Any policy purchased on your behalf may be cancelled at any time by providing proof of acceptable insurance. ('Acceptable insurance' is insurance provided by a carrier with a Best Key Rating of B+ or better and is in the amount of your unpaid principal balance or the insurable value of your home, whichever is less.) You will then be charged only for the period of time this policy was in effect. Any unused premium will be refunded to your escrow account.

If you do not provide us with proof of insurance coverage before the end of the binder period, we will be required to obtain a one-year policy on your property. The full year premium for this policy is shown on the attached binder. This premium will be charged to your escrow account at the end of the binder period. If you do not have an escrow account, one will be established. Your monthly mortgage payment will increase to include the cost of this policy.

The amount of insurance shown on the binder is based on the last known amount on your lapsed policy. If you have information to verify that the amount should be different, please notify us. This request must be in writing and should be sent to the address shown below. Please include your account number on your letter.



Two MacArthur Ridge, 909 Hidden Ridge Drive, Suite 200, Irving, Texas 75038
MAILING ADDRESS: P.O. Box 141358, Irving, Texas 75014-1358

AMSBDT01

Since this policy will insure your house without inspection, the cost may be much higher than you would normally pay if you purchase a policy from an agent and/or insurance company of your choice.   The coverage amount provided may be less than you had before.

We have incurred expenses in placing this insurance binder and policy on your structure. Such expenses are recoverable by us as stated in your loan documents. Part of the policy premium charged to your escrow account may be used by American Security Insurance Company to reimburse us for these expenses.

This policy only insures the structure. It does not protect any personal property nor does it protect you from liability against accidents that may occur on your property. For example, if your house were burglarized, this policy would not cover any loss or replacement of the stolen property. You have the right to purchase hazard insurance coverage from an insurance company of your choice. Please contact your agent or company and purchase coverage. If you have already done so, please request proof of coverage and send it to the address below. Please be sure your policy includes your loan number and a Mortgagee Clause or Lenders Loss Payable Endorsement made out to:

> EMC MORTGAGE CORPORATION
> ITS SUCCESSORS AND/OR ASSIGNS
> P O BOX 7589
> SPRINGFIELD, OH 45501-7589
> Attention:  Insurance Department
> Loan Number:    0007852643

Upon receipt of your policy, this binder will be promptly cancelled. There is no charge to you if there has been no lapse in coverage. You will however be charged for any lapse of coverage between your last policy and the new policy, if any.

We thank you for your assistance. If you or your insurance agent has any questions or believes there is an error in our records, please call our Customer Service Department at 1-877-406-4372 , Monday through Friday between 8:00 a.m. and 6:00 p.m. Central Time.

Sincerely,

Customer Service Representative

If your loan is currently in bankruptcy, this is not an attempt to collect a debt.

AMSBDT02

# EXHIBIT E

EMC MORTGAGE CORPORATION
ITS SUCCESSORS AND/OR ASSIGNS
P O BOX 7589
SPRINGFIELD, OH 45501-7589



05/12/2006

to

MICHELLE T WAHL
785 LOGAN CREEK ROAD
BOULDER CREEK, CA 95006-8700

| Subject: | Loan Number: | 0007852643 |
| --- | --- | --- |
| | Hazard Insurance: | 01/27/2006 |
| | Property Address: | 785 LOGAN CREEK ROA |
| | | BOULDER CREEK, CA 95006 |

Dear Customer:

Enclosed is the insurance policy EMC Mortgage Corporation (EMC) has obtained on your behalf in accordance with our rights in the mortgage documents and/or Deed of Trust securing your loan. American Security Insurance Company now insures on your behalf the above referenced property. The annual premium shown on the policy has been charged to your escrow account. If you do not have an escrow account, one has been established.

In the mortgage documents that signed, you agreed to keep insurance on your home. Failure to do so is a breach of the requirements on your mortgage. You have the right to obtain insurance coverage from an agent/insurance company of your choice. By providing evidence that you have obtained acceptable insurance coverage, this concern can be eliminated. ('Acceptable insurance' is that insurance provided by an insurance carrier with a Best Key Rating of B+ or better and is in the amount of the unpaid principal balance or the insurable value of your home, whichever is less.) You will be charged only for the period of time that this policy is effective. Any unused premium will be refunded to your escrow account.

The amount of insurance shown on the policy is based on the last known amount on your lapsed policy. If you have information to verify that the amount should be different, please notify us. This request must be in writing and should be sent to the below address. Please include your account number on your letter.

Since this policy will insure the property without the benefit of an inspection, the cost may be much higher than you would normally pay, if you purchase a policy yourself. The amount of coverage provided may be less than you had before.

EMC has incurred expenses in placing this insurance binder and policy on your structure. Such expenses are recoverable by us as stated in your loan documents. Part of the policy premium charged to your escrow account may be used by American Security Insurance Company to reimburse us for these expenses.

This policy insures the property structure only. It does not protect personal property nor does it protect you from liability against accidents that may occur on your property. For example, if your house were burglarized, it would not cover the cost or replacement of any stolen property.



Two MacArthur Ridge, 909 Hidden Ridge Drive, Suite 200, Irving, Texas 75038
MAILING ADDRESS: P.O. Box 141358, Irving, Texas 75014-1358

AMSBOV01

Please contact your agent or company and purchase coverage. If you have already done so, please request proof of coverage and send it to the address below. Please be sure your policy includes the loan number and a Mortgagee Clause or Lenders Loss Payable Endorsement made out to:

> EMC MORTGAGE CORPORATION
> ITS SUCCESSORS AND/OR ASSIGNS
> P O BOX 7589
> SPRINGFIELD, OH 45501-7589
> Attention: Insurance Department
> Loan Number:     0007852643

If you or your insurance agent have any questions or believes there is an error in our records, please call our Customer Service Department at 1-877-406-4372, Monday through Friday between 8:00 a.m. and 6:00 p.m. Central Time.

Sincerely,

Customer Service Representative



**If your loan is currently in bankruptcy, this is not an attempt to collect a debt.**

AMSBDV02

# EXHIBIT F

| AGENCY | | | |
|---|---|---|---|
| Major | Sub | Minor | State |
| 07786 | 104 | 150 | |

**American Security Insurance Company**

PO BOX 50355, ATLANTA, GA 30302

03/02/2007

POLICY NUMBER:
04HOC7852643
RENEWAL

**RESIDENTIAL PROPERTY**
**ADDITIONAL INSURED ENDORSEMENT**

ADDITIONAL INSURED-Name and Address (Street No., City, State, Zip)

MICHELLE T WAHL
785 LOGAN CREEK ROAD
BOULDER CREEK, CA  95006-8700

NAMED INSURED/MORTGAGEE-Name and Address
EMC MORTGAGE CORPORATION
ITS SUCCESSORS AND/OR ASSIGNS
P O BOX 7589
SPRINGFIELD, OH  45501-7589
1-877-406-4372
LOAN NUMBER   0007852643

Coverage is provided where a premium or limit of liability is shown for the coverage, subject to all conditions of this policy.

| POLICY PERIOD ONE YEAR | | COVERAGES | LIMITS OF LIABILITY | PREMIUM |
|---|---|---|---|---|
| EFFECTIVE DATE 01/27/2007   EXPIRATION DATE  01/27/2008 | | DWELLING | $           603,000 | $  4,052.00 |
| EFFECTIVE TIME    NOON ☐   12:01 A.M. ☒ | | | $ | $ |
| DESCRIBED LOCATION (If different from mailing address above) | | | $ | $ |
| 785 LOGAN CREEK ROA | | | | |
| BOULDER CREEK, CA  95006 | | | | |
| | | | 0.00 | $           0.00 |
| SECURITY INTEREST: | | | 0.0 | $         0.00 |
| The limit of liability for this structure is based on an estimate of the cost to rebuild your home, including an approximate cost for labor and materials in your area, and specific information that you have provided about your home. | | | | |
| **THIS POLICY DOES NOT INCLUDE BUILDING CODE UPGRADE COVERAGE** | | ANNUAL PREMIUM AMOUNT | | 4,052.00 |
| | | ANNUAL TOTAL CHARGED | | $   4,052.00 |
| Forms and endorsements which are made a part of this policy at time of loss | | | | |
| SEE BACK FOR LIST OF FORMS ATTACHED | | | | |

Subject to the terms and provisions of the Mortgage Service Program, Residential Property Mortgagee's Policy, including but not limited to the Residential Property coverage form attached hereto, it is agreed that the insurance applies to the property described above and to any person shown as an Additional Insured with respect to such property, subject to the following additional provisions:

a.  The above Named Insured Mortgagee is authorized to act for such Additional Insureds in all matters pertaining to this insurance including receipt of Notice of Cancellation, and return premium, if any.

b.  The above Named Insured Mortgagee is authorized to advance all funds to be recovered from the Additional Insured for the insurance afforded.

c.  Loss, if any, shall be adjusted with and payable to the above Named Insured Mortgagee, and the Additional Insureds as their interests may appear, either by a single instrument so worded or by separate instruments payable respectively to the Named Insured Mortgagee and the Additional Insured, at our option.

**Deductibles:**

With respect to all perils except Theft or Vandalism and Malicious Mischief, the sum of $ 1000 shall be deducted from the amount which would otherwise be recoverable for each loss separately occurring. With respect to Theft or Vandalism and Malicious Mischief a $ 1000 per loss deductible applies. With respect to vacant property a $ 1000 per loss deductible applies for Theft or Vandalism and Malicious Mischief.

| ALL OTHER INQUIRIES | CLAIMS INFORMATION ONLY |
|---|---|
| 1-877-406-4372 | 1-800-652-1262 |

Countersignature Date
03/02/2007

Agency at

_____
Authorized Representative

PMS-A(Rev.3/02)

MS1206

FORMS ATTACHED WITH THIS POLICY PACKAGE:


MSP−NOT−CA (7/94)

EQ−COV−REQ−FORM

CP13000A−R0605

MS0899

# EXHIBIT G

# American Security Insurance Company

## P.O. BOX 50355, ATLANTA, GA 30302

A STOCK INSURANCE COMPANY
HEREIN CALLED THIS COMPANY
INCORPORATED UNDER
THE LAWS OF DELAWARE

MICHELLE T WAHL
785 LOGAN CREEK ROAD
BOULDER CREEK, CA  95006-8700

## READ YOUR POLICY CAREFULLY



# Residential Property Policy

**This policy provides limited coverage. Please read your policy and all endorsements carefully.**

THIS POLICY JACKET TOGETHER WITH RESIDENTIAL DWELLING FORM,DECLARATIONS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THIS POLICY

MSP-RES-J(8/88)

AMSBGS01

## YOUR RESIDENTIAL DWELLING POLICY
## QUICK REFERENCE

### DECLARATIONS PAGE
Your Name
Location of Your Residence
Policy Period
Coverages
Amounts of Insurance
Deductible

| | Beginning On Page | | Beginning On Page |
|---|---|---|---|
| AGREEMENT | 1 | Our Option | 6 |
| DEFINITIONS | 1 | Reinstatement | 6 |
| COVERAGES | 1 | Loss to a Pair or Set | 6 |
| PERILS INSURED AGAINST | 1 | Glass Replacement | 6 |
| Other Coverages | 3 | Loss Payment | 6 |
| Other Structures | 3 | Appraisal | 6 |
| Debris Removal | 3 | Our Rights of Recovery | 6 |
| Reasonable Repairs | 3 | Suit Against Us | 7 |
| Property Removed | 4 | Abandonment of Property | 7 |
| Collapse | 4 | No Benefit to Bailee | 7 |
| CONDITIONS | 4 | Cancellation | 7 |
| Policy Period | 4 | Return of Premium | 7 |
| Other Insurance | 4 | Liberalization Clause | 7 |
| Insurance Interests & Limits Of Liability | 4 | Waiver of Change of Policy Provisions | 7 |
| Concealment or Fraud | 5 | Assignment | 7 |
| Your Duties After Loss | 5 | | |
| Loss Settlement | 5 | | |
| Salvage and Recoveries | 6 | | |

**PLEASE NOTE: THERE MAY BE AMENDATORY ENDORSEMENTS.**

CONSUMER ASSISTANCE NOTICE

The following is provided for your assistance should you have any questions concerning your coverage:

California Department of Insurance
300 South Spring Street
Los Angles, CA 90013

Toll Free Telephone Number:  1-800-927-HELP
[4357]

AMSBGS02

03/02/2007

American Security Insurance Company

EARTHQUAKE COVERAGE REQUEST FORM

Additional Insured (Borrower)

MICHELLE T WAHL
785 LOGAN CREEK ROAD
BOULDER CREEK, CA  95006-8700

Named Insured (Mortgagee)

EMC MORTGAGE CORPORATION
ITS SUCCESSORS AND/OR ASSIGNS
P O BOX 7589
SPRINGFIELD, OH  45501-7589

Loan #    0007852643                                        Client #    07786

**YOUR HAZARD POLICY DOES NOT PROVIDE COVERAGE AGAINST THE PERIL OF EARTHQUAKE.**

**CALIFORNIA LAW REQUIRES THAT EARTHQUAKE COVERAGE BE OFFERED TO YOU AT YOUR OPTION.**

**WARNING:  THESE COVERAGES MAY DIFFER SUBSTANTIALLY FROM AND PROVIDE LESS PROTECTION THAN THE COVERAGE PROVIDED BY YOUR HOMEOWNERS INSURANCE POLICY. THERE ARE EXCLUSIONS AND LIMITATIONS SUCH AS OUTBUILDINGS, SWIMMING POOLS, MASONRY FENCES, AND MASONRY CHIMNEYS.  THIS DISCLOSURE FORM CONTAINS ONLY A GENERAL DESCRIPTION OF COVERAGES AND IS NOT PART OF YOUR EARTHQUAKE INSURANCE POLICY.  ONLY THE SPECIFIC PROVISIONS OF YOUR POLICY WILL DETERMINE WHETHER A PARTICULAR LOSS IS COVERED AND, IF SO, THE AMOUNT PAYABLE.**

The coverage, subject to policy provisions, may be purchased at additional cost on the following terms:

A.    Amount of dwelling coverage: $____603,000_____

B.    Applicable Deductible: $ ____30150____ . If your loss is below this amount, you may not receive any payment from your coverage.  Your insurance company or agent will provide written notice as to how the deductible applies to the market value of your coverage, the insured value of your coverage, or the replacement value of your coverage.

C.    Contents Coverage: $_____
       If your loss does not exceed the deductible for the dwelling, you will not receive any payment for this coverage.  A separate deductible applies if you have purchased this coverage.

D.    Additional Living Expenses: $ _Inc._____

E.    The premium is: $ 24,120.00 . This premium is in addition to your hazard insurance premium.

YOU MUST ASK THE COMPANY TO ADD EARTHQUAKE COVERAGE WITHIN 30 DAYS FROM THE DATE OF MAILING OF THIS NOTICE OR IT SHALL BE CONCLUSIVELY PRESUMED THAT YOU HAVE NOT ACCEPTED THIS OFFER.

This coverage will be effective on the day all the requirements listed below are met:

1.    Receipt of your signed request form.

2.    Approved application.

3.    Approved physical inspection of your dwelling property.

4.    $ 24,120.00  in the form of cashier's check or money order is received by the company.

I request earthquake insurance coverage.  Please forward an earthquake application.

_____          _____
Signature of Additional Insured (Applicant)                    Date

SEND ALL CORRESPONDENCE TO:            American Security Insurance Company
                                       260 Interstate North Circle, NW
                                       Atlanta, Georgia  30339-2111

                                       ATTN:  Hazard Underwriting Manager

MS0519

## MANDATORY ENDORSEMENT
## CALIFORNIA

**THIS ENDORSEMENT CHANGES YOUR POLICY AND/OR CERTIFICATE. PLEASE READ IT CAREFULLY.**

It is understood and agreed that the following provisions are added:

### Requirements in case loss occurs

The insured shall give written notice to this company of any loss without unnecessary delay, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within 60 days after the loss, unless the time is extended in writing by this company, the insured shall render to this company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required and obtainable, verified plans and specifications of any building, fixtures or machinery destroyed or damaged. The insured, as often as may be reasonably required and subject to the provisions of Section 2071.1, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made.

The insurer shall inform the insured that tax returns are privileged against disclosure under applicable state law but may be necessary to process or determine the claim.

The insurer shall notify every claimant that they may obtain, upon request, copies of claim-related documents. For purposes of this section, 'claim-related documents' means all documents that relate to the evaluation of damages, including, but not limited to, repair and replacement estimates and bids, appraisals, scopes of loss, drawings, plans, reports, third party findings on the amount of loss, covered damages, and cost of repairs, and all other valuation, measurement, and loss adjustment calculations of the amount of loss, covered damage, and cost of repairs. However, attorney work product and attorney-client privileged documents, and documents that indicate fraud by the insured or that contain medically privileged information, are excluded from the documents an insurer is required to provide pursuant to this section to a claimant. Within 15 calendar days after receiving a request from an insured for claim-related documents, the insurer shall provide the insured with copies of all claim-related documents, except those excluded by this section. Nothing in this section shall be construed to affect existing litigation discovery rights.

### Appraisal

In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of the request. Where the request is accepted, the appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon the umpire, then, on request of the insured or this company, the umpire shall be selected by a judge of a court of record in the state in which the property covered is located.

ECAF2520-0502

Appraisal proceedings are informal unless the insured and this company mutually agree otherwise. For purposes of this section, 'informal' means that no formal discovery shall be conducted, including depositions, interrogatories, requests for admission, or other forms of formal civil discovery, no formal rules of evidence shall be applied, and no court reporter shall be used for the proceedings.

The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by the parties equally.

In the event of a government-declared disaster, as defined in the Government Code, appraisal may be requested by either the insured or this company but shall not be compelled.

**Adjusters**

If, within a six-month period, the company assigns a third or subsequent adjuster to be primarily responsible for a claim, the insurer, in a timely manner, shall provide the insured with a written status report. For purposes of this section, a written status report shall include a summary of any decisions or actions that are substantially related to the disposition of a claim, including, but not limited to, the amount of losses to structures or contents, the retention or consultation of design or construction professionals, the amount of coverage for losses to structures or contents and all items of dispute.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY AND/OR CERTIFICATE REMAIN UNCHANGED.**

ECAF2520-0505
AMSBMG01

# CALIFORNIA RESIDENTIAL PROPERTY INSURANCE DISCLOSURE

This disclosure is required by California law (Section 10102 of the Insurance Code). It describes the principal forms of insurance coverage in California for residential dwellings. It also identifies the form of dwelling coverage you have purchased or selected. A checkmark in the box in the 'Dwelling Coverage Selected or Purchased' column below identifies the form of dwelling coverage you have purchased or selected.

This disclosure form contains only a general description of coverage and is not part of your residential property insurance policy. Only the specific provisions of your policy will determine whether a particular loss is covered and, if so, the amount payable. Regardless of which type of coverage you purchase, your policy may exclude or limit certain risks.

This disclosure form does not explain the types of contents coverage (furniture, clothing, etc.) provided by your policy. Some policies do not replace contents with new items, but instead, only pay for the current market value of an item. If you have any questions, contact your insurer or agent.

The cost to rebuild your home may be very different from the market value of your home since reconstruction is based on primarily on the cost of labor and materials. Many factors can affect the cost to rebuild your home, including the size of your home, the type of construction, and any unique features. Please review the following coverages carefully. If you have questions regarding the level of coverage in your policy, please contact your insurance agent or company. Additional coverage may be available for an additional premium.

READ YOUR POLICY CAREFULLY. If you do not understand any part of it or have questions about what it covers, contact your insurance agent or company. You may also call the California Department of Insurance consumer information line at (800) 927-HELP (4357).

| FORMS OF COVERAGE FOR DWELLINGS | Dwelling Coverage Selected Or Purchased |
|---|---|
| **GUARANTEED REPLACEMENT COST COVERAGE WITH FULL BUILDING CODE UPGRADE**<br><br>PAYS REPLACEMENT COSTS WITHOUT REGARD TO POLICY LIMITS, AND INCLUDES COSTS RESULTING FROM CODE CHANGES.<br><br>In the event of any covered loss to your home, the insurance company will pay the full amount needed to repair or replace the damaged or destroyed dwelling with like or equivalent construction regardless of policy limits. Your policy will specify whether you must actually repair or replace the damaged or destroyed dwelling in order to recover guaranteed replacement cost. The amount of recovery will be reduced by any deductible you have agreed to pay.<br><br>This coverage includes all additional costs of repairing or replacing your damaged or destroyed dwelling with any new building standards (such as building codes or zoning laws) required by government agencies and in effect at the time of rebuilding.<br><br>To be eligible to recover full guaranteed replacement costs with building code upgrade, you must insure the dwelling to its full replacement cost at the time the policy is issued with possible periodic increases in the amount of coverage to adjust for inflation and increases in building costs; you must permit an inspections of the dwelling by the insurance company; and you must notify the insurance company about any alterations that increase the value of the insured dwelling by a certain amount (see your policy for that amount). | ☐ |
| **GUARANTEED REPLACEMENT COST COVERAGE WITH LIMITED OR NO BUILDING UPGRADE**<br><br>PAYS REPLACEMENT COSTS WITHOUT REGARD TO POLICY LIMITS BUT LIMITS OR EXCLUDES COSTS RESULTING FROM CODE CHANGES.<br><br>In the event of any covered loss to your home, the insurance company will pay the full amount needed to repair or replace the damaged or destroyed dwelling with like or equivalent construction regardless of policy limits. Your policy will specify whether you must actually repair or replace the damaged or destroyed dwelling in order to recover guaranteed replacement cost. The amount of recovery will be reduced by any deductible you have agreed to pay. | ☐ |

**GUARANTEED REPLACEMENT COST COVERAGE WITH LIMITED OR NO BUILDING UPGRADE**

PAYS REPLACEMENT COSTS WITHOUT REGARD TO POLICY LIMITS BUT LIMITS OR EXCLUDES COSTS RESULTING FROM CODE CHANGES. (continued) This coverage does not include all additional costs of repairing or replacing your damaged or destroyed dwelling to comply with any new building standards (such as building codes or zoning laws) required by government agencies and in effect at the time of rebuilding. Consult your policy for applicable exclusions or limits with respect to these costs.

To be eligible to recover full guaranteed replacement cost with limited or no building code upgrade, you must insure the dwelling to its full replacement cost at the time the policy is issued, with possible periodic increases in the amount of coverage to adjust for inflation and increases in building costs; you must permit an inspection of the dwelling by the insurance company; and you must notify the insurance company about any alterations that increase the value of the insured dwelling by a certain amount (see your policy for that amount).

**EXTENDED REPLACEMENT COST COVERAGE**

PAYS REPLACEMENT COSTS UP TO A SPECIFIED AMOUNT ABOVE THE POLICY LIMIT.

In the event of any covered loss to your home, the insurance company will pay to repair or replace the damaged or destroyed dwelling with like or equivalent construction up to a specified percentage over the policy's limits of liability. See the Declarations Page of your policy for the limit that applies to your dwelling. Your policy will specify whether you must actually repair or replace the damaged or destroyed dwelling in order to recover extended replacement costs. The amount of recovery will be reduced by any deductible you have agreed to pay.

To be eligible to recover extended replacement cost coverage, you must insure the dwelling to its full replacement cost at the time the policy is issued with possible periodic increases in the amount of coverage to adjust for inflation; you must permit an inspection of the dwelling by the insurance company; and you must notify the insurance company about any alterations that increase the value of the insured dwelling by a certain amount (see your policy for that amount). Your policy will specify whether or not you must actually repair or replace the damaged or destroyed dwelling in order to recover extended replacement cost. Read your Declaration Page to determine whether your policy includes coverage for building code upgrades

**REPLACEMENT COST COVERAGE**

PAYS REPLACEMENT COSTS UP TO POLICY LIMITS.

In the event of any covered loss to your home, the insurance company will pay to repair or replace the damaged or destroyed dwelling with like or equivalent construction up to the policy's limit of liability. See the Declarations Page of your policy for the limit that applies to your dwelling. Your policy will specify whether you must actually repair or replace the damaged or destroyed dwelling in order to recover replacement costs. The amount of recovery will be reduced by any deductible you have agreed to pay. To be eligible to recover replacement cost, you must insure the dwelling to N/A percent of its replacement cost at the time of loss. Read your declaration page whether your policy includes coverage for building code upgrades

**XX**

**ACTUAL CASH VALUE COVERAGE**

PAYS THE FAIR MARKET VALUE OF THE DWELLING AT THE TIME OF LOSS, UP TO POLICY LIMIT.

In the event of a covered loss to your home, the insurance company will pay either the depreciated fair market value of the damaged or destroyed dwelling at the time of the loss or the cost of replacing or repairing the damaged or destroyed dwelling with like or equivalent construction up to the policy limit. The amount of recovery will be reduced by any deductible you have agreed to pay. Read your Declaration Page to determine whether your policy includes coverage for building code upgrades.

**BUILDING CODE UPGRADE - ORDINANCE AND LAW COVERAGE**

PAYS UP TO LIMITS SPECIFIED IN YOUR POLICY. ADDITIONAL COSTS REQUIRED TO BRING THE DWELLING 'UP TO CODE.'

In the even of any covered loss, the insurance company will pay any additional costs, up to the stated limits, of repairing or replacing a damaged or destroyed dwelling to conform with any building standards such as building codes or zoning laws required by government agencies and in effect at the time of loss or rebuilding (see your policy).

Applicant / Insured Signature:                                                    Date:

CA-NOT-2 (01-05)                          Page 2 of 2                                    AMSBGN02

### OTHER INSURANCE ENDORSEMENT

Coverage under this policy is terminated as of the effective date of other acceptable coverage and unearned premium shall be calculated and refunded on a pro rata basis.

In no event shall this insurance apply as excess or contributing insurance when other applicable insurance that is in force on the date of loss.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**CALIFORNIA**

**AMENDATORY ENDORSEMENT**

**NOTICE - Definitions**

Throughout the policy and/or endorsements, the term spouse includes an individual registered under California law as a domestic partner with the "Additional Insured".

**Conditions 6. Loss Settlement, Paragraph A. is deleted and replaced with the following:**

6. **Loss Settlement.** Covered property losses are settled as follows:
   A. Buildings at replacement cost without deduction for depreciation, subject to the following:
      (1) We will pay the cost to repair or replacement without deduction for depreciation, but not exceeding the smallest of the following amounts:
         (a) the limit of liability under this policy applying to the building;
         (b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or
         (c) the amount actually and necessarily spent to repair or replace the damaged building.

      If the full cost to repair or replace the damaged property is more than $1,000 or 5% of the limit of liability for the Dwelling, we will pay no more than the actual cash value until repair or replacement is completed.

      You may disregard these replacement cost loss settlement provisions when making a claim. You may claim loss to buildings on actual cash value basis. If you do, you may make further claim within:
         (a) 24 months after our payment for actual cash value if the loss or damage relates to a state of emergency under California law; or
         (b) 12 months after our payment for actual cash value in all other cases; for any specific additional cost to you actually incurred within that period in replacing the damaged property on a replacement cost basis.

**Conditions 18. Cancellation is amended by adding the following Paragraph:**

18. **Cancellation**
   e. In the event of a total loss to the dwelling, we will not cancel while any structure at the described location is being rebuilt except for the reason stated in Paragraph a. of this Condition 18. Cancellation.

**Conditions 19. Return of Premium is deleted and replaced with the following:**

19. **Return of Premium.** When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata. If the return premium is not returned with the notice of cancellation or when this policy is returned to us, we will refund it within 25 days after we either, send the cancellation notice to you or, we receive your cancellation request. The return of premium is not a condition of the cancellation.

## California Residential Property Insurance Bill of Rights

### Introduction

This Bill of Rights is a summary of your rights provided in order to comply with California Insurance Code SEC. 3. Section 10103.5 (a) mandating that a California Residential Property Insurance Bill of Rights must accompany every California Residential Property Insurance Disclosure. If the insurer provides the Insured with an electronic copy of a policy, the bill of rights may also be transmitted electronically. The Bill of Rights outlines the insured's rights and responsibilities in relation to the policy. This Bill of Rights is a summary of your rights and does not become a part of your policy.

### Information

The largest single investment most consumers make is their home and related property. In order to best protect these assets, it is wise for consumers to understand the homeowner's insurance market. Consumers should consider the following:

* Read your policy carefully and understand the coverage and limits provided. Homeowner's insurance policies contain sub limits for various coverages such as personal property, debris removal, additional living expense, detached fences, garages, etc.

* Keep accurate records of renovations and improvements to the structure of your home, as it could affect your need to increase your coverage.

* Maintaining a list of all personal property, pictures, and video equipment may help in the case of a loss. The list should be stored away from your home.

* Comparison shop for insurance, as not all policies are the same and coverage and prices vary.

* Take time to determine the cost to rebuild or replace your property in today's market. You can seek an independent evaluation of this cost.

* You may select a licensed contractor or vendor to repair, replace, or rebuild damaged property covered by the insurance policy.

* An agent or insurance company may help you establish policy limits that are adequate to rebuild your home.

* Once the policy is in force, contact your agent or insurance company immediately if you believe your policy limits may be inadequate.

A consumer is entitled to receive information regarding homeowner's insurance. The following is a limited overview of information that your insurance company can provide:

* The California Residential Property Insurance Disclosure.

* An explanation of how your policy limits were established.

* The insurance company's customer service telephone number for underwriting, rating, and claims inquiries.

* An explanation for any cancellation or nonrenewal of your policy.

* A copy of your policy.

* The toll-free telephone number and Internet address for reporting complaints and concerns about homeowner's insurance issues to the department's consumer services unit.

* In the event of a claim, an itemized, written scope of loss report prepared by the insurer or its adjuster within a reasonable time period.

* In the event of a claim, notification of a consumer's rights with respect to the appraisal process for resolving claims disputes.

* In the event of a claim, a copy of the Unfair Practices Act and a copy of the Fair Claims Practices Regulations.

**NOTE:** The insurer reports claim information to one or more claims information databases. The claim information is used to furnish loss history reports to insurers. If you are interested in obtaining a report from a claims information database, you may do so by contacting ISO at 1-800-888-4476 or at www. info.claimssearch.iso.com.

**NOTE:** The following information is provided by the California Department Of Insurance.

---

The information provided herein is not all-inclusive and does not negate or preempt existing California law. If you have any concerns or questions, the officers at our Consumer Hotline are there to help you. Please call them at 1-800-927-HELP (4357) or contact us at www.insurance.ca.gov.



ASSURANT
Solutions

### Assurant Group Privacy Policy

You are a valued customer and we strive to meet your privacy concerns. We want to make sure your personal information is protected and that you understand the policies that protect you. There are several legal terms in our privacy policy that we are required to use. We've tried to provide easy-to-understand explanations of the most frequently used legal terms. You'll find the same terms used in many companies' privacy policies.

Assurant Solutions companies and other insurers that operate under the Assurant Solutions Privacy Policy ("we") provide insurance, service contracts and membership products. Our products are offered on behalf of other companies and through our agents. These other companies may be banks; finance companies; retailers; utilities; automobile dealers; manufactured housing and mortgage companies. Those companies that qualify as financial institutions must give our Privacy Policy to you each year. If you have asked not to be solicited, that request is still in effect. You do not need to contact us again. This is not a solicitation. You do not need to respond.

This Privacy Policy gives you examples of the types of data we collect, use, share or disclose; and the kinds of companies with whom we may share such data. These examples serve only as illustrations; they should not be considered all of the data we may collect, use or share. Also, we will comply with state privacy laws that may apply to data about you. Below is our privacy pledge to you:

*Our Privacy Principles:*
- We do not sell your personal information.
- We do not share customer medical information with anyone within the Assurant Solutions family of companies unless you expressly authorize the sharing, or it is permitted or required by law.
- We do not allow those with whom we do business to use our customer information for their own marketing purposes.
- We contractually require any person or business providing products or services on our behalf to safeguard Assurant Solutions customer information.

*Information We May Collect*
Types of information we may collect and how we gather it:
- From you (or provided to us on your behalf), on applications and other forms you submit to us; for example: your name; address; telephone number; employer; and income.
- For your transactions with our companies or other nonaffiliated parties; for example: your name; address; telephone number; age; credit card use; insurance coverage; transaction history; claims history; and premiums.
- From consumer reporting agencies, public records and data collection agencies; for example: your obligations with others and your creditworthiness.
- From health care providers, such as doctors and hospitals; for example: your past or present health condition. Health data will be collected *only* if we need to find out if you are eligible for coverage, process claims, prevent fraud, as authorized by you or as the law may permit or require. NOTE: We collect health data *only* to manage a health-related product or service; for example: life or disability insurance, for which you applied.
- From you when you enroll, request a service, or file a claim on one of our websites; for example: your name, address, contract number, credit card issuer and account number, personal identification number, e-mail address, service contract and claim information.
- In some cases, from your visits to our internet websites; for example: session number and user id. By reviewing the legal notice, terms of use, site agreement or similar named link appearing on any of our websites that you visit you may learn of any "cookies" utilized by us and of any additional information that may be collected from you on that site.

*Information We May Disclose or Share and with Whom*
We may share customer information with other entities as needed to deliver products and services to you, provide customer service, or handle your account.

CP13000A-R0605

### Disclosures Permitted by Law

We may share customer information as described above and as permitted by law.

### Disclosures for Joint Marketing and Servicing

We may share customer information with persons or organizations inside or outside our family of companies that perform marketing services for us or with whom we have joint marketing agreements.

### Information Regarding Former Customers

We treat the information of prospective and former customers in the same manner as existing customers with respect to the use of personal information.

### Our Security Procedures

We restrict access to customer information to those employees whom we know have a valid business purpose to have access to such data. We maintain physical, electronic and procedural safeguards. We require those who provide services for us and to whom we provide your data to keep your information safeguarded and confidential.

### Changes to this Privacy Policy

We reserve the right to change this Privacy Policy at any time. If we make material changes, we will provide current customers a new notice that describes our new practices and will post it on our Internet websites.

### Notice of Insurance Information Practices

We may collect personal information from persons other than the individual or individuals proposed for coverage. Personal information as well as other personal or privileged information subsequently collected by us may in certain circumstances be disclosed to a third party without your authorization. You have the right to access and correct all personal information collected. A more complete Notice of Insurance Information Practices will be furnished to you upon request.

### New Mexico and Vermont Residents

As required by state law, we will not share your financial or health data without your permission except as allowed by applicable New Mexico or Vermont law.

The following affiliated companies underwrite or market services under the Assurant Solutions service mark or adhere to the Assurant Solutions Privacy Policy. We value our relationship with you. Should you have any questions about our Privacy Policy, please write to us at Assurant Solutions Privacy Office, Post Office Box 979047, Miami, FL 33197-9047 or e-mail us your question at theprivacyoffice@assurant.com.

| | |
|---|---|
| American Association for Financial Institution Services | MS Life Insurance Company |
| American Bankers General Agency, Inc. | National Insurance Agency |
| American Bankers Insurance Company of Florida | PAS Financial Group |
| American Bankers Life Assurance Company of Florida | Reliable Lloyds Insurance Company |
| American Bankers Management Company, Inc. | Roadgard Motor Club, Inc. |
| American Reliable Insurance Company | Service Delivery Advantage, LLC |
| American Security Insurance Company | Standard Guaranty Insurance Company |
| Caribbean American Insurance Agency Company | Sureway, Inc. |
| Caribbean American Life Assurance Company | Time Insurance Company |
| Caribbean American Property Insurance Company | Union Security Insurance Company |
| Commerce National Insurance Company | Union Security Life InsuranceCompany |
| Consumer Assist Network Association, Inc. | Union Security Life Insurance Company of New York |
| Federal Warranty Service Corporation | United Family Life Insurance Company |
| Financial Insurance Exchange | United Service Protection, Inc. |
| Insureco, Inc. | United Service Protection Corporation |
| Insureco Services, Inc. | Voyager Indemnity Insurance Company |
| Life Insurance Company of Mississippi | Voyager Property and Casualty Insurance Company |
| MS Casualty Insurance Company | Voyager Service Programs, Inc. |
| MS Diversified Life Insurance Company | Voyager Service Warranties, Inc. |

CP13000A-R0605

RESIDENTIAL PROPERTY
COVERAGE
MSP-RES

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

Throughout this policy "you" and "your" refer to the "Named Insured," (Mortgagee) and the "Additional Insured" (Mortgagor) shown in the Declarations. "We," "our," and "us" refer to the Company providing this insurance.

## COVERAGES

This insurance applies to the Dwelling Property described in the Additional Insured Endorsement which has been issued and is Eligible Real Estate within the description of property covered below, and which is not otherwise excluded.

1.    Property Covered

   We cover:

   a.    of any kind the dwelling on the Described Location, used principally for dwelling purposes not to exceed four (4) living units including, but not limited to, individually owned townhouses or permanently situated mobile homes;

   b.    structures attached to the dwelling;

   c.    materials and supplies on or adjacent to the Described location for use in the construction, alteration, or repair of the dwelling or other structures on this location; and

   d.    if not otherwise covered in this policy, building equipment and outdoor equipment used for the service of and located on the Described Location.

2.    Property Not Covered

   a.    Personal Property of any kind.
   b.    Outdoor trees, shrubs, plants, and lawns.
   c.    Outdoor swimming pools; fences, piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls not constituting a part of buildings; walks; roadways; and other paved surfaces.
   d.    Cost of excavations, grading or filling.
   e.    Foundations of buildings, machinery, boilers or engines which foundations are below the surface of the ground.
   f.    Pilings, piers, pipes, flues, and drains which are underground.
   g.    Pilings which are below the low water mark.
   h.    Land (including land on which the property is located).

## PERILS INSURED AGAINST

We insure against risks of direct loss to covered property only if that loss is a physical loss to property. However, we do not insure losses which are excluded below:

1.    We do not insure for loss involving collapse, other than as provided in Other Coverages
   a.    However, any ensuing loss not excluded or excepted is covered.

2.    We do not insure for loss caused by:

   a.    freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:
      (1)  fence; pavement, patio or swimming pool;
      (2)  foundation, retaining wall or bulkhead; or
      (3)  pier, wharf or dock;

MSP-RES(8/88)                              1                              AMSBGI01

RESIDENTIAL PROPERTY
COVERAGE
MSP-RES

    b.  theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

    c.  constant or repeated seepage or leakage of water or steam over a period of weeks,  months or years from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or from within a household appliance;

    d.  (1) wear and tear, marring, deterioration;

        (2) inherent vice, latent defect, mechanical breakdown;

        (3) smog-rust, mold, wet or dry rot;

        (4) smoke from agricultural smudging or industrial operations;

        (5) release, discharge or dispersal of contaminants or pollutants;

        (6) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls floors, roofs, or ceilings; or

        (7) birds, vermin, rodents, insects or domestic animals.

If any of these cause water damage not otherwise excluded, to escape from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this escaped.

However, under this Paragraph 2., any ensuing loss not excluded or excepted is covered.

3.    We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

  a. Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, unless specifically provided under this policy.

  b. Earth Movement, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mudflow; earth sinking, sinkhole, mine subsidence, rising or shifting; unless direct loss by:

    (1) fire;

    (2) explosion; or

    (3) breakage of glass or safety glazing material which is part of a building, storm door or storm window;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

One or more volcanic eruptions that occur within an hour period will be considered as one volcanic eruption.

  c. Water Damage, meaning:

    (1) flood, surface water, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

    (2) water which backs up through sewers or drains. This includes water emanating from a  sump pump, sump pump well or similar device designed to prevent overflow, seepage or leakage of subsurface water; or

    (3) water below the surface of the ground, including water which exerts pressure on or seeps  or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

  d. Power Failure, meaning the failure of power or other utility service if the failure takes place off the described premises. But, if a Covered Cause of Loss ensues on the described premises, we will pay only for that ensuing loss.

Loss ensues on the described premises, we will pay only for that ensuing loss.

RESIDENTIAL PROPERTY
COVERAGE
MSP-RES

e. Neglect, meaning your neglect to use all reasonable means to save and preserve property at and after the time of loss.

f. War, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. Nuclear Hazard, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke.

   This coverage does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from nuclear hazard is covered.

h. Intentional Loss, meaning any loss arising out of any act committed
   (1) by you or at your direction; and
   (2) with the intent to cause a loss.

4. We do not insure for loss caused by any of the following. However, any ensuing loss not excluded or excepted is covered.

   a. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 3. above to produce the loss;

   b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body;

   c. Faulty, inadequate or defective:
      (1) planning, zoning, development, surveying, siting;
      (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
      (3) materials used in repair, construction, renovation or remodeling; or
      (4) maintenance;
      of part or all of any property whether on or off the described premises.

# OTHER COVERAGES

1. Other Structures
   Subject to the provisions of this article, we cover other structures on the Described Location, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line or similar connection are considered to be other structures.

   We do not cover other structures:

   a. used in whole or in part for commercial, manufacturing or farming purposes; or

   b. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

   The amount of insurance on other structures shall be limited to 10% of the dwelling coverage as an additional amount of insurance.

2. Debris Removal
   We will pay the reasonable expense incurred by you for the removal of debris from a property loss covered by this policy. Debris removal expense is included in the limit of liability applying to the damaged property.

3. Reasonable Repairs
   We will pay the reasonable cost incurred by you for necessary repairs made solely to protect the property covered by this policy from further damage if there is coverage for the peril causing the loss. Use of this coverage is included in the limit of liability that applies to the property being repaired.

RESIDENTIAL PROPERTY
COVERAGE
MSP-RES

4.    Property Removed
Covered property while being removed from a premises endangered by a Peril Insured Against and for not more than 30 days while removed, is covered for direct loss from any cause. This coverage does not change the limit of liability that applies to the property being removed.

5.    Collapse
We insure for risk of direct physical loss to Property Covered involving collapse of a building or any part of a building caused only by one or more of the following:

a.    Fire or lightning, windstorm or hail, explosion, riot or civil commotion, aircraft, vehicles, smoke, vandalism, or malicious mischief, breakage of glass or safety glazing material, burglars, falling objects, weight of ice, snow or sleet, accidental discharge or overflow of water or steam from within a plumbing, heating or air conditioning system or from within a household appliance, sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning system or an appliance for heating water, freezing of plumbing, heating or air conditioning system or of a household appliance.

b.    Hidden decay,
c.    Hidden insect or vermin damage,
d.    Weight of content, equipment, animals or people,
e.    Weight of rain which collects on a roof,
f.    Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling, or renovation.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

Collapse does not apply to loss to the following unless damage is caused directly by collapse of a building:

Awnings, fences, pavements, patios, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations, retaining walls, bulkheads, piers, wharves, or docks.

Coverage for collapse is included in the limit of liability applying to the damaged Covered Property.

# CONDITIONS

1.    Policy Period. This Policy applies only to loss which occurs during the policy period.

2.    Other Insurance. If there is any other valid or collectible insurance which would attach if the insurance under this policy had not been effected, this insurance shall apply only as excess and in no event as contributing insurance and then only after all other insurance has been exhausted.

3.    Insurance Interest and Limit of Liability. Even if more than one person has an insurable interest in the property covered, we shall not be liable:

a.    for an amount greater than the interest of the persons insured under this policy; or

b.    for more than the limit of liability that applies, whichever is less.

If the Described Property is vacant and the mortgage on the property has been declared in default by the mortgagee at the time of a loss, we shall be liable for no more than the Named Insured's interest in the property at the time of the loss.

The Named Insured's interest is represented by the mortgagor's unpaid balance, less unearned interest and finance charges, less unearned insurance premiums, less collection and foreclosure expenses, and less late charges and penalties added to the mortgagor's unpaid balance after the inception date of this policy.

RESIDENTIAL PROPERTY
COVERAGE
MSP-RES

4.  Concealment or Fraud.  We do not provide coverage if you have intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.  We do not provide coverage if you have acted fraudulently or made false statements relating to this insurance whether before or after loss.

5.  Your Duties After Loss.  In case of a loss to which this insurance may apply, you shall see that the following duties are performed:
   a.  give immediate notice to us or our agent;
   b.  protect the property from further damage, make reasonable and necessary repairs required to protect the property, and keep an accurate record of repair expenditures;
   c.  exhibit the damaged property as often as we reasonably require;
   d.  submit to signed statements and examinations under oath; and
   e.  submit to us, within 60 days after we request, your signed, sworn statement of loss which sets forth, to the best of your knowledge and belief:
      (1)  the time and cause of loss;
      (2)  the interest of you and all others in the property involved and all encumbrances on the property;
      (3)  other insurance which may cover the loss;
      (4)  changes in title or occupancy of the property during the term of the policy; and
      (5)  specifications of any damaged building and detailed estimates for repair of the damage.

6.  Loss Settlement.  Covered property losses are settled as follows:
   A.  Buildings at replacement cost without deduction for depreciation, subject to the following:
      (1)  We will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:
         (a)  the limit of liability under this policy applying to the building;
         (b)  the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or
         (c)  the amount actually and necessarily spent to repair or replace the damaged building.

      If the full cost to repair or replace the damaged property is more than $1,000 or 5% of the limit of liability for the Dwelling, we will pay no more than the actual cash value until actual repair or replacement is completed.

      You may disregard these replacement cost loss settlement provisions when making a claim. You may claim loss to buildings on actual cash value basis.  If you do, you may make further claim within 180 days after the loss based upon and for any specific additional cost to you actually incurred within that period in replacing the damaged property on a replacement cost basis.

   B.  Loss to the following types of property will be settled at the actual cash value of the damaged property at the time of loss.  Actual cash value includes deduction for depreciation.
      (1) Structures that are not buildings.
      (2) Antennas, carpeting, awnings, domestic appliances and outdoor equipment, all whether or not attached to buildings.

      We will not pay more than the smallest of:
      (1) the cost to repair or replace the damaged property with property of like kind and quality;
      (2) the actual cash value of the damaged property; or
      (3) the limits of liability of this policy applying to the property.

RESIDENTIAL PROPERTY
COVERAGE
MSP-RES

7.  Salvage and Recoveries: When, in connection with any loss covered by this policy, any salvage or recovery is received subsequent to the payment of such loss, the loss shall be refigured on the basis of what it would have been settled for had the amount of salvage or recovery been known at the time the amount of loss was originally determined. Any amounts thus found to be due any party, including us, shall be promptly paid or reimbursed.

8.  Our option. If we give you written notice within 30 days after we receive your signed, sworn statement of loss, we may repair or replace any part of the property damaged with equivalent property.

9.  Reinstatement: It is understood and agreed that any claim under this policy shall not reduce the amount of insurance stated on the Declarations page for any other loss occasion.

10. Loss to a Pair or Set. In case of loss to a pair or set, we may elect to:
    (a) repair or replace any part to restore the pair or set to its value before the loss; or
    (b) pay the difference between actual cash value of the property before and after the loss.

11. Glass Replacement. Covered loss to glass shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

12. Loss Payment. We will adjust all losses with the Named Insured. Payment for loss will be made within 60 days after we reach agreement with the Named Insured, entry of a final court judgement, or the filing of an approved award with us. Loss will be made payable to the Named Insured and the Additional Insured as their interests appear, either by a single instrument so worded or by separate instruments payable respectively to the Named Insured and the Additional Insured, at the Company's option. No coverage will be available to any mortgagee other than that sworn as the Named Insured on the Declarations page of this policy.

13. Appraisal. If the Named Insured and we fail to agree on the actual cash value or amount of loss, either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, the Named Insured or we can ask a judge of a court of record in the state of the Described Location to select an umpire.

    The appraisers will appraise the loss, based on the method of payments specified in the policy for each item. If the appraisers submit a written report of an agreement to us, that amount will be the actual cash value or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by any two will determine the amount of loss.

    Each party will pay the appraiser it chooses and his expenses, and equally pay expenses for the umpire and all other expenses of the appraisal.

14. Our Rights of Recovery (Subrogation). In the event of any claim under this policy, we are entitled to all your rights of recovery against another person. You must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights and do nothing after loss to prejudice our rights.

    When you have made a claim under this policy and also recover from another person, the amount recovered from the other person shall be held by you in trust for us and reimbursed to us to the extent of any damages paid by us under this policy.

RESIDENTIAL PROPERTY
COVERAGE
MSP-RES

15. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss.

16. **Abandonment of Property.** You must take all reasonable steps to protect the property which a prudent interested party would take in the absence of this or other insurance. We need not accept any property abandoned by you.

17. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

18. **Cancellation.**
    a. Coverage under this policy shall automatically and without prior notice, cancel when the Named Insured no longer has an interest in the Described Property or when the Named Insured has been provided with another policy that meets the requirements of the Named Insured as set forth in the mortgage agreement applicable to the Described Property.
    b. This policy may also be cancelled by the Named Insured by returning it to us or notifying us in writing of the date cancellation is to take effect.
    c. We may cancel this policy by mailing notice of cancellation to the Named Insured at the address shown on the Additional Insured Endorsement or by delivering the notice not less than 30 days prior to the effective date of cancellation.
    d. We will mail to the Named Insured at the address shown on the Additional Insured Endorsement notice of non renewal not less than 30 days before the end of the policy period, if we decide not to renew or continue this policy.

19. **Return of Premium.** When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata. If the return premium is not refunded with the notice of cancellation or when the policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect. The return of premium is not a condition of the cancellation.

20. **Liberalization Clause.** If we adopt any revision which would broaden the coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

21. **Waiver or change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights. No course of conduct nor any indulgences, waivers, extensions, forebearances, non-enforcement of policy conditions, or the like, extended at or over any time or from time to time by the Company to the Named Insured or anyone shall waive, nullify, or modify any policy provision as to any other occasion or waive, nullify, or modify any other policy provision.

22. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

In Witness Whereof, we have caused this policy to be executed and attested, and , if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary

President