PETER S. HECKER (Bar No. 66159)
ANNA S. McLEAN (Bar No. 142233)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California  94104-2878
Telephone:  (415) 772-6080
Facsimile:  (415) 772-6268
peter.hecker@hellerehrman.com
anna.mclean@hellerehrman.com

FRANK BURT (*Pro Hac Vice*)
DENISE A. FEE (*Pro Hac Vice*)
JORDEN BURT LLP
1025 Thomas Jefferson Street, NW
Washington, DC  20007-0805
Telephone:  (202) 965-8140
Facsimile:  (202) 965-8104
fgb@jordenusa.com
daf@jordenusa.com

Attorneys for Defendant
AMERICAN SECURITY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHELE T. WAHL, on behalf of herself and all others similarly situated,<br><br>          Plaintiff,<br><br>   v.<br><br>AMERICAN SECURITY INSURANCE COMPANY; and DOES 1-50, inclusive,<br><br>       Defendant. | Case No. C08-00555-RS<br><br>**DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:    May 14, 2008<br>Time:            9:30 a.m.<br>Courtroom:      4 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 2

II.   LEGAL STANDARD .............................................................................................. 2

III.  THE COMPLAINT ................................................................................................. 3

IV.   ARGUMENT .......................................................................................................... 6

      A.    Ms. Wahl Lacks Standing To Sue ASIC. ..................................................... 6

            1.    Ms. Wahl has no direct relationship with ASIC. ............................. 6

            2.    As an "additional insured," Ms. Wahl has no claim for
                rescission. ......................................................................................... 8

            3.    ASIC owes statutory duties to EMC, not to Ms. Wahl. .................... 9

      B.    Ms. Wahl Fails To State A Claim Upon Which Relief Can Be
          Granted. ....................................................................................................... 10

            1.    The "other insurance clauses" require proration
                between Farmers and ASIC. .............................................................. 11

                    a.    The two policies have "pro rata," "excess," and
                        "escape" clauses. ................................................................ 11

                    b.    Apportioning coverage under the policies' "other
                        insurance clauses." ............................................................. 12

            2.    EMC waived its coverage under the Farmers LLPE. ....................... 14

            3.    Ms. Wahl never engaged in a "consumer transaction"
                with ASIC .......................................................................................... 16

V.    CONCLUSION ..................................................................................................... 17

# TABLE OF AUTHORITIES

<u>**Page**</u>

## CASES

*Am. Bankers' Ins. Co. of Fla. v. Wells*,
   819 So. 2d 1196 (Miss. 2001) ........................................................... 9

*Argonaut Ins. Co. v. Transport Indem. Co.*,
   6 Cal. 3d 496 (1972) ........................................................... 14

*Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*,
   45 Cal. App. 4th 1 (1996) ........................................................... 13

*Bacon v. Am. Int'l Group*,
   415 F. Supp. 2d 1027 (N.D. Cal. 2006) ........................................................... 17

*Bell Atl. Corp. v. Twombly*,
   127 S. Ct. 1955 (2007) ........................................................... 2

*Cal. State Auto. Ass'n v. Policy Mgmt. Sys. Corp.*,
   1996 WL 45280 (N.D. Cal. Jan. 9, 1996) ........................................................... 15

*Caldwell v. Caldwell*,
   420 F. Supp. 2d 1102 (N.D. Cal. 2006) ........................................................... 3

*Cantrell v. City of Long Beach*,
   241 F.3d 674 (9th Cir. 2001) ........................................................... 7

*Cattie v. Wal-Mart Stores, Inc.*,
   504 F. Supp. 2d 939 (S.D. Cal. 2007) ........................................................... 7, 8

*Century Sur. Co. v. United Pac. Ins. Co.*,
   109 Cal. App. 4th 1246 (2003) ........................................................... 12, 13, 14

*Chase v. Nat'l Indem. Co.*,
   129 Cal. App. 2d 853 (1954) ........................................................... 16

*Civ. Serv. Employees Ins. Co. v. Super. Ct.*,
   22 Cal. 3d 362 (1978) ........................................................... 17

*Commerce & Indus. Ins. Co. v. Chubb Custom Ins. Co.*,
   75 Cal. App. 4th 739 (1999) ........................................................... 13, 14

*Dart Indus., Inc. v. Commercial Union Ins. Co.*,
   28 Cal. 4th 1059 (2002) ........................................................... 13

*Employers Reinsurance Corp. v. Phoenix Ins. Co.*,
   186 Cal. App. 3d 545 (1986) ........................................................... 14

*Fairbanks v. Super. Ct.*,
   64 Cal. Rptr. 3d 623 (Cal. Ct. App. 2007) *petition for review granted*, 68 Cal.
   Rptr. 3d 273 (2007) ........................................................... 17

*Fireman's Fund Ins. Co. v. Md. Cas. Co.*,
   65 Cal. App. 4th 1279 (1998) ........................................................... 13, 14

ii

*Fitzpatrick v. Hayes*,
   57 Cal. App. 4th 916 (1997) ................................................................... 10

*Garcia v. Truck Ins. Exch.*,
   36 Cal. 3d 426 (1984) ............................................................................. 8

*Gipson v. Fleet Mortgage Group, Inc.*,
   232 F. Supp. 2d 691 (S.D. Miss. 2002) ................................................. 9

*Hartford Accident & Indem. Co. v. Sequoia Ins. Co.*,
   211 Cal. App. 3d 1285 (1989) ............................................................... 13

*Herd v. Am. Sec. Ins. Co.*,
   2008 WL 482404 (W.D. Mo. Feb. 19, 2008) ........................................ 8

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) .................................................................. 3

*In re TIBCO Software, Inc.*,
   2006 WL 1469654 (N.D. Cal. May 25, 2006) ....................................... 3

*In re Verisign, Inc., Derivative Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) ................................................. 2

*Lee v. Am. Nat'l Ins. Co.*,
   260 F.3d 997 (9th Cir. 2001) .................................................................. 7

*Logsdon v. Fifth Third Bank of Toledo*,
   654 N.E.2d 115 (Ohio Ct. App. 1994) ................................................... 9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................ 7, 8

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003) .................................................................. 3

*Northwestern Mut. Ins. Co. v. Farmers Ins. Group*,
   76 Cal. App. 3d 1031 (1978) .................................................................. 8

*Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*,
   126 Cal. App. 3d 593 (1981) ............................................... 11, 12, 13, 14

*Peerless Cas. Co. v. Continental Cas. Co.*,
   144 Cal. App. 2d 617 (1956) .................................................................. 14

*Sabo v. Fasano*,
   154 Cal. App. 3d 502 (1984) .................................................................. 15

*San Diego County Gun Rights Comm. v. Reno*,
   98 F.3d 1121 (9th Cir. 1996) .................................................................. 7

*Schauer v. Mandarin Gems of Cal., Inc.*,
   125 Cal. App. 4th 949 (2005) ............................................................ 8, 17

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) .................................................................................. 7

*Spott Elec. Co. v. Indus. Indem. Co.*,
  30 Cal. App. 3d 797 (1973) ................................................................ 15, 16

*Tarleton v. De Veuve*,
  113 F.2d 290 (9th Cir. 1940) ................................................................ 16

*Travelers Cas. & Sur. Co. v. Century Sur. Co.*,
  118 Cal. App. 4th 1156 (2004) ............................................................. 13

*U.S. Bank v. Tenn. Farmers Mut. Ins. Co.*,
  2007 WL 4463959 (Tenn. Ct. App. Dec. 21, 2007) ............................... 16

*United States v. Hays*,
  515 U.S. 737 (1995) ............................................................................... 3

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .................................................................. 3

*W. Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981) .................................................................. 2

*Woody v. Lytton Sav. & Loan Ass'n*,
  229 Cal. App. 2d 641 (1964) ................................................................. 10

## STATUTES

Cal. Civ. Code § 1689(b) ........................................................................ 8

Cal. Civ. Code § 1761(d) ........................................................................ 17

Cal. Civ. Code § 1761(e) ........................................................................ 17

Cal. Civ. Code § 1770(a) ........................................................................ 17

Cal. Ins. Code § 332 ............................................................................... 9

Cal. Ins. Code § 334 ............................................................................... 9

## RULES

Fed. R. Civ. P. 12(b)(1) ...................................................................... 1, 6

Fed. R. Civ. P. 12(b)(6) .................................................................. 1, 6, 10

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on May 14, 2008, at 9:30 a.m., or as soon thereafter as counsel may be heard, before the Honorable Richard Seeborg, Magistrate Judge of the United States District Court for the Northern District of California, located at 280 South First Street, San Jose, CA 95113, defendant American Security Insurance Company ("ASIC"), by its attorneys, will and hereby does move this Court to dismiss the First Amended Complaint ("FAC") on the grounds that the Court lacks subject matter jurisdiction, and that plaintiff has failed to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(1), (6).

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities and the Declaration of Frank Burt filed in support thereof, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at or before the hearing.

DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; CASE NO. C08-00555-RS

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

In this putative class action, plaintiff Michelle Wahl alleges that ***her mortgage lender*** purchased, and charged her premium for, an ASIC insurance policy she claims provided overlapping coverage with a policy she purchased to insure the property.  The FAC asserts various causes of action ***against ASIC*** in connection with her mortgage lender exercising its contractual right to obtain insurance when the policy purchased by Ms. Wahl was cancelled for failure to pay premium.

As an initial and dispositive matter, Ms. Wahl has not alleged facts sufficient to establish her standing to sue ASIC for the alleged conduct of her lender.  Instead, the allegations of the FAC assert that she was injured by her lender, a third party not before this Court, with whom she contracted and, pursuant to that contract, she was charged for insurance premiums paid by the lender that she claims provided her no benefit.

Additionally, even if Ms. Wahl had standing to sue ASIC for the actions of her lender, the FAC fails to state any legally cognizable claim because each cause of action rests upon the incorrect assumption that the lender-purchased ASIC policy duplicated coverage provided by the policy Ms. Wahl allowed to lapse.  To the contrary, from the date of inception, the ASIC policy purchased by her lender provided substantial and non-duplicative coverage to both the lender and to Ms. Wahl.

## II.    LEGAL STANDARD

A motion to dismiss tests the legal sufficiency of the claims alleged in the complaint. *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1186-87 (N.D. Cal. 2007).  As a result, all material facts in the complaint are taken as true.  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  The Court should not, however, "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Id.*  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  The plaintiff, as the party invoking federal jurisdiction, has the burden of demonstrating that she

2

has standing to pursue the claims alleged in the complaint. *United States v. Hays*, 515 U.S. 737, 743 (1995); *accord Caldwell v. Caldwell*, 420 F. Supp. 2d 1102, 1105 (N.D. Cal. 2006).

The Court may consider documents referenced in the complaint and documents that form the basis of the plaintiff's claim. *United States v. Ritchie,* 342 F.3d 903, 908-09 (9th Cir. 2003) (citing as an example an insurance plan in an insurance coverage dispute); *see also No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.,* 320 F.3d 920, 925 n.2 (9th Cir. 2003) ("Under the incorporation by reference doctrine, we also consider documents submitted by Defendants that were referenced in the complaint and whose authenticity has not been questioned"); *see also* footnote 1 *infra.*

## III.    THE COMPLAINT

In 2004, Ms. Wahl purchased a home in California, which she financed, in part, by delivering a promissory note secured by a Deed of Trust issued by EMC Mortgage Corporation ("EMC"), in the amount of $465,000.00.[1] Burt Declaration, Ex. 1 at 1, 4. Ms. Wahl's contract with EMC required her to secure, and at all times maintain, hazard insurance on the property. *Id*. at 8 ¶ 5. Should she fail to do so, the Deed of Trust authorized EMC to obtain insurance coverage at her expense, even if such insurance coverage "might significantly exceed the cost of insurance that [Ms. Wahl] could have obtained." *Id*.

Ms. Wahl initially obtained hazard insurance from Farmers Insurance Exchange ("Farmers") to insure the property for an amount up to $603,000.00, between July 29, 2005 and July 29, 2006. Burt Declaration, Ex. 2 (Farmers policy) at 40; *see* FAC ¶ 16(a). The

---

[1] The Deed of Trust is actually a contract between Michelle Wahl and Argent Mortgage Company, LLC, a predecessor in interest to EMC. Declaration of Frank Burt in Support of ASIC's Motion to Dismiss ("Burt Declaration"), Ex. 1 (Note and Deed of Trust). The Deed of Trust and Ms. Wahl's Farmers Insurance Exchange policy are attached to the Burt Declaration and are properly considered on a motion to dismiss, as they are referred to in the FAC and are central to plaintiff's claims. *Id.* at ¶¶ 2-3; *see also, e.g., In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *In re TIBCO Software, Inc.*, No. C 05-2146 SBA, 2006 WL 1469654, at *17 (N.D. Cal. May 25, 2006). The exhibits have been sequentially numbered for the Court's convenience.

DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; CASE NO. C08-00555-RS

Farmers policy designates EMC a "Mortgagee or Other Interest." Burt Declaration, Ex. 2 at 81. The Farmers policy also includes a Lender's Loss Payable Endorsement ("LLPE"), which contains several provisions relevant to Ms. Wahl's claims against ASIC. *Id.* at 61-62; FAC, Ex. A. First, the Farmers' LLPE provides that:

> In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy . . . this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefore. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

FAC, Ex. A ¶ 3. The LLPE also states:

> If there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the lender. . . . and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insurers contributing to said payment) to all of the Lender's rights of contribution under said other insurance.

*Id.*, Ex. A ¶ 5. And the LLPE states, "[t]his policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration ***unless an acceptable policy . . . shall have been issued by some insurance company and accepted by the Lender*.**" *Id.*, Ex. A ¶ 7 (emphasis supplied).

In January, 2006, Ms. Wahl stopped paying the premiums on her Farmers policy. She received a letter from Farmers dated January 13, 2006, stating that her insurance would be cancelled effective January 27, 2006, if she did not pay the sums due. FAC ¶ 16(a).

4

1   Ms. Wahl failed to comply, and on February 6, 2006, Farmers provided Ms. Wahl with
2   written notice that her insurance policy was cancelled effective January 27, 2006.  *Id*.
3   ¶ 16(b), Ex. B.  The notice to Ms. Wahl also listed EMC as a lienholder or other interest
4   under the Farmers policy.  *Id*., Ex. B.

5       Asserting its rights under the Deed of Trust, EMC then secured a temporary binder
6   of property insurance from ASIC and notified Ms. Wahl of that fact on February 27, 2006.
7   *Id*. ¶ 16(c), Ex. C.  EMC's letter advised Ms. Wahl that she had "the right to purchase
8   hazard insurance coverage from an insurance company of your choice," but because EMC
9   had not received a copy of any policy covering the property, the lender "secured temporary
10  insurance coverage in the form of a sixty-day binder through" ASIC.  *Id.,* Ex. C.

11      EMC twice notified Ms. Wahl that it would secure coverage beyond the temporary
12  binder:  "If you do not provide us with proof of insurance coverage before the end of the
13  binder period, we will be required to obtain a one-year policy on your property."  *Id*., Ex. D
14  (4/3/06 letter); *see also* Ex. C (2/27/06 letter).  In May 2006, EMC obtained a one-year
15  policy from ASIC and sent the policy to Ms. Wahl on May 12, 2006.  *Id.,* Ex. E.  EMC's
16  cover letter to Ms. Wahl enclosing the ASIC policy explained, as did the two prior letters,
17  that "EMC has incurred expenses in placing this insurance binder and policy on your
18  structure.  Such expenses are recoverable by us as stated in your loan documents."  *Id*., Exs.
19  C, D, E.

20      The ASIC policy insured the property for up to $603,000.00—which included both
21  the amount of Ms. Wahl's debt to EMC and the property value she previously insured with
22  Farmers.  *Id.,* Ex. G.  The ASIC policy obtained by EMC was effective on January 27,
23  2006, the date Ms. Wahl's Farmers policy lapsed.  *Id*.  One of the conditions of the ASIC
24  policy was that, "[i]f there is any other valid or collectible insurance which would attach if
25  the insurance under this policy had not been effected, this insurance shall apply only as
26  excess and in no event as contributing insurance and then only after all other insurance has
27  been exhausted."  *Id., Ex.* F at AMSBG104.  The named insured under the ASIC policy was
28  EMC, with Ms. Wahl listed as an additional insured.  *Id*., Exs. F, G.  As the named insured,

5

EMC "is authorized to act for such Additional Insured in all matters pertaining to this insurance." *Id.,* Ex. G. Coverage under the ASIC policy terminated on July 19, 2007, when Ms. Wahl purchased another homeowner's policy. *Id.* ¶ 16(g). ASIC refunded the portion of the prepaid premium for coverage after the policy's termination. *Id.* ¶ 21.

Ms. Wahl brought this putative class action on behalf of herself and other California residents who she claims were charged "expensive premiums" for ASIC policies she contends "provide[] no actual coverage." *Id.* ¶ 1(a). The crux of the complaint is that the ASIC policy allegedly "overlapped" with Ms. Wahl's cancelled Farmers policy, and thus the ASIC policy provided no coverage for the premiums paid. Ms. Wahl also alleges ASIC knew that EMC paid premiums for a policy that provided no benefits, and therefore ASIC violated statutory duties it owed to her. *Id.* ¶¶ 34-37. Ms. Wahl seeks money damages for breach of contract, violation of the Unfair Competition Law (UCL), and violation of the Consumers Legal Remedies Act (CLRA). *Id.* ¶¶ 29-31, 48-57, 59-66. She also seeks to rescind the ASIC policy on the grounds that ASIC breached statutory duties to disclose, committed constructive fraud, and for failure of consideration. *Id.* ¶¶ 33-46. And she requests a declaration of the "rights and duties which exist between the parties to ASIC's [] policies." *Id.* ¶¶ 68-71.

## IV.    ARGUMENT

This Court must dismiss the FAC for lack of subject matter jurisdiction because Ms. Wahl does not have standing to pursue her claims against ASIC. Fed. R. Civ. P. 12(b)(1). Alternatively, even if Ms. Wahl had standing to sue ASIC, her allegations fail to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

### A.    Ms. Wahl Lacks Standing To Sue ASIC.

Ms. Wahl does not have standing to pursue the claims alleged in the FAC because she has no direct relationship with ASIC; she is not a party to the insurance contract between ASIC and EMC; and ASIC owes statutory duties to EMC, not Ms. Wahl.

### 1.    Ms. Wahl has no direct relationship with ASIC.

Ms. Wahl cannot meet the heightened federal standing requirements because she

6

cannot show harm "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)); *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) (finding that plaintiffs lacked standing where "it is third-part[ies]—not the government defendants"—who caused them injury).[2]    Where the allegations in the complaint are insufficient to show that the defendant "was involved in the alleged wrongdoing against Plaintiff," she "has not adequately shown her injury is traceable to the actions" of that defendant. *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007) (granting motion to dismiss based on lack of standing where plaintiff made no specific allegations as to how one corporate defendant "participate[d] directly in the wrongdoing").

Neither the FAC nor the materials it references evidence any direct relationship between ASIC and Ms. Wahl.  Rather, Ms. Wahl complains that **EMC** solicited, agreed to procure, and did procure insurance from ASIC for both parties' interests in the property, as is evidenced by EMC's letters to Ms. Wahl.  FAC, Ex. C ("*we* have secured temporary insurance coverage in the form of a sixty-day binder through [ASIC]"), Ex. D ("*we* will be required to obtain a one-year policy on your property"), Ex. E ("[e]nclosed is the insurance policy *EMC* has obtained on your behalf") (emphasis supplied).  **EMC** paid all of the premiums to ASIC.  *Id.*, Exs. C, D, E ("EMC has incurred expenses in placing this insurance binder and policy on your structure").  And **EMC**, not Ms. Wahl, is identified as the named insured on the ASIC policy.  *Id.*, Exs. F, G.

Moreover, Ms. Wahl, who is listed as an additional insured, is not a party to the

---

[2] Although Ms. Wahl asserts state law claims, she must meet the heightened federal standing requirements as a prerequisite to federal jurisdiction.  *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001) ("A party seeking to commence suit in federal court must meet the stricter federal standing requirements of Article III"); *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001) ("a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury.").

insurance contract between ASIC and EMC.  *Northwestern Mut. Ins. Co. v. Farmers Ins. Group*, 76 Cal. App. 3d 1031, 1041-42 (1978) (deciding that the additional insured was not a "contracting party" but rather a "third party beneficiary"); *Garcia v. Truck Ins. Exch.*, 36 Cal. 3d 426, 435-36 (1984) (finding an insured who was not a contracting party to be a third party beneficiary and not a party to the contract); *Herd v. Am. Sec. Ins. Co.*, No. 06-4284-CV-C-NKL, 2008 WL 482404, at *4 (W.D. Mo. Feb. 19, 2008) ("[i]t is undisputed that EMC and ASIC were parties to the forced-place insurance policy.  The [plaintiffs] admit that they were not a party to the contract. . . . Additionally, the [plaintiffs] admit that there was no privity between them and ASIC").

The absence of any direct relationship between Ms. Wahl and ASIC precludes Ms. Wahl from demonstrating an injury "fairly traceable to the challenged action of the defendant;" rather, any alleged injury was the result of "the independent action of some third party not before the court."  *Lujan*, 504 U.S. at 560.  Consequently, Ms. Wahl lacks standing to bring any of the claims asserted in the FAC against ASIC.

### 2.    As an "additional insured," Ms. Wahl has no claim for rescission.

Ms. Wahl is not a party to the insurance contract between EMC and ASIC, but is instead a third party beneficiary.  *Northwestern Mut. Ins. Co.*, 76 Cal. App. 3d at 1041-42; *Garcia*, 36 Cal. 3d at 435-36.  A person may not rescind a contract to which she is not a party.  "Not only do the relevant statutes demand making rescission unavailable to a third party beneficiary, but common sense compels the conclusion. . . . Plaintiff, not having participated in the agreement, not having undertaken any duty or given any consideration, is a stranger to the agreement, with no legitimate interest in voiding it."  *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 959-60 (2005); *see* Cal. Civ. Code § 1689(b) ("A *party to a contract* may rescind the contract") (emphasis supplied).  Because Ms. Wahl has no standing to rescind the ASIC policy, she has no standing to bring her Second, Third, and Fourth causes of action seeking rescission.

### 3.    ASIC owes statutory duties to EMC, not to Ms. Wahl.

The FAC asserts causes of action predicated on ASIC's alleged breach of duties Ms. Wahl claims are owed to her under the California Insurance Code.  FAC ¶¶ 36-37, 40, 51. The cited Code sections address required disclosures of *"parties"* to an insurance contract, and thus are inapplicable to Ms. Wahl.  *See* Cal. Ins. Code § 332 ("Each party to a contract of insurance shall communicate to the other"), § 334 ("Materiality is to be determined … by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract").  The plain intent of the statutory scheme is to impose mutual duties to disclose so that each party can determine whether to enter into the insurance contract.  Ms. Wahl is not a party to the insurance contract between EMC and ASIC; nor does she allege she ever engaged in any communications with ASIC regarding the ASIC policy prior to its purchase. She therefore has no standing to seek the protections of the statutes upon which her claims rely.

Courts in other jurisdictions have found that insurance companies issuing lender-placed coverage, such as the ASIC policy purchased by EMC, owe no duties to the borrowers.  *See Gipson v. Fleet Mortgage Group, Inc.*, 232 F. Supp. 2d 691, 701 (S.D. Miss. 2002) (imposing no duty because the insurer was not a party to the mortgage permitting the lender to obtain forced-place insurance); *Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1206 (Miss. 2001) (finding no duty owed by the insurer to the borrowers, stemming from the fact that the insurer "had no contractual relationship" with the borrowers); *Logsdon v. Fifth Third Bank of Toledo*, 654 N.E.2d 115, 120 (Ohio Ct. App. 1994) (insurer had no duty to borrower because "[i]t was [the lender], and not [the borrower], which procured the insurance policy . . . We do not find the mere fact that [the insurer] mailed notices to [the borrower] concerning the insurance policy created any special relationship").

Additionally, this case may be analogized to the numerous cases finding that an insurer does not have any duty to recommend that an insured procure additional coverage.

1   *See Fitzpatrick v. Hayes*, 57 Cal. App. 4th 916, 920-29 (1997).  Like the insurers in those

2   cases, ASIC had no duty to advise Ms. Wahl "of inadequacies in coverage of which

3   plaintiffs should, as reasonable persons, have themselves been aware."  *Id.* at 921 (citation

4   omitted).

5        Because Ms. Wahl has failed to allege any connection with ASIC, is unable to bring

6   a claim for rescission, and does not benefit from the imposition of any duties under either

7   the Insurance Code or common law, this action must be dismissed for lack of subject matter

8   jurisdiction.

9        **B.     Ms. Wahl Fails To State A Claim Upon Which Relief Can Be Granted.**

10       Even if Ms. Wahl had standing to pursue her claims, which she does not, her

11   substantive allegations fail to state a claim upon which relief may be granted.  Fed. R. Civ.

12   P. 12(b)(6).  Ms. Wahl's allegations rest on the incorrect assumption that the Farmers LLPE

13   and the ASIC policy obtained by EMC provided duplicate coverage.

14       As an initial matter, Ms. Wahl does not—and cannot—claim any overlap in coverage

15   as to her interest in the property, which she insured for a value of $603,000.00.  EMC's

16   insurable interest under the Farmers LLPE was no more than $465,000.00, the amount due

17   under the Deed of Trust.  Burt Declaration, Ex. 1 at 1, 4; *see Woody v. Lytton Sav. & Loan

18   Ass'n*, 229 Cal. App. 2d 641, 644 (1964) ("[w]here a policy issued to the mortgagor is made

19   payable to the mortgagee as his interest may appear, the mortgagee is entitled to recover to

20   the extent of his interest, the amount of the mortgage debt").  Ms. Wahl's insurable interest

21   of at least $138,000.00 would have been without any coverage if the ASIC policy had not

22   taken effect on January 27, 2006, the same day her Farmers policy was terminated.  The

23   overlap Ms. Wahl alleges is that her terminated Farmers policy and the EMC-placed ASIC

24   policy provided double coverage of EMC's interest because, she claims, EMC continued to

25   be insured under the Farmers LLPE.  FAC ¶¶ 1(a), 17, 21.

26       Ms. Wahl is incorrect for two alternative reasons.  First, the coverage provided to

27   EMC by the Farmers LLPE and the ASIC policy was equitably apportioned between the

28   two insurers as a matter of law.  Second, by procuring the ASIC policy, EMC waived any

lender coverage under the Farmers policy LLPE. Under either theory, ASIC provided non-duplicative insurance coverage to both EMC and to Ms. Wahl for the entire period it was in force.

Finally, Ms. Wahl's CLRA claim fails because at no time did she engage in a consumer transaction with ASIC, much less one that involved the sale of goods and services as defined by the Act.

### 1. The "other insurance clauses" require proration between Farmers and ASIC.

Both the Farmers policy and the ASIC policy contain clauses defining the coverage each contract will provide in the event there is other insurance on the property. The FAC misapprehends the effect of the policies' respective "other insurance clauses," which preclude overlapping coverage.

#### a. The two policies have "pro rata," "excess," and/or "escape" clauses.

The "other insurance clause" in the Farmers LLPE is a "pro rata" clause, stating that, if there is other insurance on the property, Farmers "shall be liable under this policy as to the Lender *for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance* of similar character on said property under policies held by, payable to and expressly consented by the lender." FAC, Ex. A ¶ 5 (emphasis supplied). A "pro rata" clause, like the one in the Farmers LLPE, "provides that if there is other valid and collectible insurance, then the insurer shall not be liable for more than [its] pro rata share of the loss." *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal. App. 3d 593, 597 (1981). In other words, Farmers will be liable for its "proportion" of the loss, based on the entire pool of insurance on the property.

The ASIC policy contained two provisions concerning its liability when other insurance covered the property—both an "excess" clause and an "escape" clause. "If there is any other valid or collectible insurance which would attach if the insurance under this policy had not been effected, *this insurance shall apply only as excess and in no event as*

---

*contributing insurance* and then only after all other insurance has been exhausted." FAC, Ex. F at AMSBG104 (emphasis supplied). An "excess" clause "provides that if there is other valid and collectible insurance, then the insurer shall not be liable except to the extent that the loss exceeds such other valid and collectible insurance." *Olympic Ins. Co.*, 126 Cal. App. 3d at 598. The "escape" clause, the third category of "other insurance clause," "provides that the insurer is not liable for any loss that is covered by other insurance (*i.e.*, the existence of other insurance extinguishes insurer's liability to the extent of such other insurance.)". *Id.* Thus, the ASIC policy would either apply *after* all other insurance was exhausted (the "excess" clause), or it would provide *no coverage at all* (the "escape" clause). FAC, Ex. F at AMSBG104, MS1307.[3]

### b.    Apportioning coverage under the policies' "other insurance clauses."

Ms. Wahl misapprehends the ASIC "excess" and "escape" clauses as "provid[ing] no coverage during any period of overlap with the Farmers policy." *Id.* ¶¶ 20-21. That interpretation of the ASIC "excess" and "escape" clauses would render the Farmers "pro rata" clause a nullity, and it is contrary to well-settled California law. When faced with such competing clauses, California courts "ignore all of the [other insurance] clauses and require some equitable pro rata apportionment" among all insurers. *Century Sur. Co. v. United Pac. Ins. Co.*, 109 Cal. App. 4th 1246, 1260 (2003). California courts have had numerous opportunities to consider similar competing clauses to determine the respective obligations of the insurers. The cases distinguish between "primary" and "excess" insurance: "[p]rimary coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to

---

[3] The ASIC policy includes an endorsement under the heading "Residential & Commercial Flood Coverage" which provides that "Coverage under this policy is *terminated as of the effective date of other acceptable coverage* and unearned premium shall be calculated and refunded on a pro rata basis. In no event shall this insurance apply as excess or contributing insurance when other applicable insurance that is in force on the date of loss." *Id.*, Ex. F at MS1307 (emphasis supplied). Since the ASIC policy expressly excludes flood coverage (*see Id.*, Ex. F at AMSBG102 ¶ 3(c)(1)), inclusion of this flood endorsement was inadvertent and has no force or effect.

liability." *Olympic Ins. Co.*, 126 Cal. App. 3d at 597. Excess insurance "is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted." *Id.* Because liability under both the Farmers policy and the ASIC policy attach immediately upon any occurrence giving rise to liability, and neither is conditioned upon the exhaustion of other primary coverage, both policies provide for "primary" insurance coverage.

The issue, then, is how California courts apportion liability between a primary insurance policy with a "pro rata" clause (the Farmers policy) and another primary insurance policy with "escape" and "excess" clauses (the ASIC policy). Assuming that it has any application, the ASIC endorsement captioned "Residential & Commercial Flood Coverage" is an escape clause. FAC, Ex. F at MS1307 ("In no event shall this insurance apply as excess or contributing insurance when other applicable insurance that is in force on the date of loss."). Regardless of the two descriptors, both ASIC provisions are treated the same for the purpose of this analysis. *Commerce & Indus. Ins. Co. v. Chubb Custom Ins. Co.*, 75 Cal. App. 4th 739, 744 (1999) ("When 'excess only' clauses are found in primary liability policies, they are treated the same way as escape clauses.").

The California case law is clear in requiring contributions from ***all primary insurers on a pro rata basis***. "[T]he modern trend is to require equitable contributions on a pro rata basis from all primary insurers regardless of the type of 'other insurance' clause in their policies." *Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28 Cal. 4th 1059, 1080 (2002).[4]

---

[4] *See also Travelers Cas. & Sur. Co. v. Century Sur. Co.*, 118 Cal. App. 4th 1156, 1160 (2004) ("in cases of conflict between liability insurance policies stating coverage is excess over all other available insurance and liability insurance policies providing for pro rata contribution, the 'excess-only' policies must contribute pro rata to the coverage afforded by the 'proration-only' policies") (citations omitted); *Century Sur. Co. v. United Pac. Ins. Co.*, 109 Cal. App. 4th 1246, 1260 (2003) ("the only proper result is to ignore all of the clauses and require some equitable pro rata apportionment"); *Commerce & Indus. Ins. Co. v. Chubb Custom Ins. Co.*, 75 Cal. App. 4th 739, 749 (1999) ("the recent trend is to prorate the loss between the carriers"); *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 65 Cal. App. 4th 1279, 1307 (1998) ("the trial court correctly made a pro rata allocation of the two insurers' obligations"); *Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 52 (1996) ("[t]he general rule, when multiple policies share the same risk but have inconsistent 'other insurance' clauses, is to prorate according to the policy limits"); *Hartford Accident & Indem. Co. v. Sequoia Ins. Co.*, 211 Cal. App. 3d 1285 (1989)

(continued next page)

DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; CASE NO. C08-00555-RS

One rationale for this interpretation is that escape and excess clauses "are disfavored" and courts have developed equitable apportionment as "a method of overriding them." *Commerce & Indus. Ins. Co.*, 75 Cal. App. 4th at 744.  Another justification is that "imposing the entire liability for a loss on the insurer with a policy providing for pro rata coverage would annul that policy's language, and create the anomaly that courts will only predictably enforce proration between policies when they all have conflicting 'excess other , insurance' language *barring* proration."  *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 65 Cal. App. 4th 1279, 1306 (1998) (emphasis in original).

> Regardless of the rationale, excess/escape clauses and pro rata clauses
>
> > are ***mutually repugnant***.  If we enforce [the excess/escape] clause, then we cannot enforce the clauses of the other primary insurers.  Thus, the only proper result is to ignore all of the clauses and require some equitable pro rata apportionment.  This result is consistent with the public policy disfavoring escape clauses whereby promised coverage evaporates in the presence of other insurance.

*Century Sur. Co.*, 109 Cal. App. 4th at 1260 (emphasis supplied).  Therefore, ***as a matter of law***, ASIC was obligated to provide coverage to EMC for the entire period that the ASIC policy was in effect, notwithstanding any prior existing coverage under the Farmers LLPE. In addition, ASIC at all times insured Ms. Wahl's interest in her property.  Thus, ASIC did not breach its contract, and its consideration did not fail, because it provided a benefit in exchange for the premiums paid.

### 2.    EMC waived its coverage under the Farmers LLPE.

Alternatively, this Court should find that EMC, by procuring the ASIC policy, waived its coverage under the LLPE to the Farmers policy and therefore *only* was insured

---

(prorating excess insurance); *Employers Reinsurance Corp. v. Phoenix Ins. Co.*, 186 Cal. App. 3d 545, 557 (1986) ("When two or more applicable policies contain excess insurance clauses, both liability and the costs of defense should ordinarily be prorated according to the amount of coverage afforded") (quoting *Argonaut Ins. Co. v. Transport Indem. Co.*, 6 Cal. 3d 496, 507 (1972)); *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal. App. 3d 593, 599 (1981) ("California courts have consistently ignored the conflicting clauses and prorated the loss among the primary insurers"); *Peerless Cas. Co. v. Continental Cas. Co.*, 144 Cal. App. 2d 617, 623 (1956) (upholding "proportionate liability" in the face of conflicting pro rata and escape clauses).

by the ASIC policy from that policy's inception.  "Under California law, a contractual provision, including one requiring written notice, may be waived by the party for whose benefit the provision was inserted."  *Cal. State Auto. Ass'n v. Policy Mgmt. Sys. Corp.*, No. C-93-4232 CW, 1996 WL 45280, at *7 (N.D. Cal. Jan. 9, 1996); *see Sabo v. Fasano*, 154 Cal. App. 3d 502, 504-05 (1984).

The LLPE was intended to benefit EMC in the event Ms. Wahl stopped making premium payments and allowed the Farmers policy to lapse:  "In the event of failure of the insured to pay any premium . . . this Company agrees to give written notice to the Lender of such non-payment of premium."  FAC, Ex. A ¶ 3.  Both Ms. Wahl's Deed of Trust and the LLPE contemplate that EMC may secure other insurance to protect its interest in the property.

The Farmers LLPE states that, "[t]his policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration ***unless an acceptable policy . . . shall have been issued by some insurance company and accepted by the Lender***."  *Id.*, Ex. A ¶ 7 (emphasis added).  EMC was not ignorant of Ms. Wahl's failure to pay premiums, and exercised its option to obtain "an acceptable policy" from another insurer.  *See id.*, Exs. B, C.  EMC secured a temporary binder from ASIC, insuring the property effective the very same day as the cancellation of the Farmers policy became effective.  *Id.*, Ex. G.  Thus, although the LLPE was in place to protect EMC's interest in the property, EMC knew that its interest was at risk and took steps to minimize that risk.

In proactively obtaining acceptable coverage from ASIC, EMC acted in the same manner as the plaintiffs in *Spott Elec. Co. v. Indus. Indem. Co.*, 30 Cal. App. 3d 797 (1973). In *Spott*, the plaintiffs' agent secured a temporary 30-day binder from its current insured, Industrial, to continue coverage for an additional month.  *Id.* at 803.  The binder provided insurance for 30 days unless another policy issued, which would cancel the binder.  *Id*.  The agent subsequently obtained an oral binder from a second insurer, California, effective for the same dates.  *Id*.  The Court of Appeal found that "it was proper for the court to infer that the agreement plaintiffs and California made was to cancel by substitution the binder of

15

Industrial." *Id*. at 805-06. The court supported its conclusion by noting that, under the terms of the Industrial binder, the policy could be cancelled when another policy issued. *Id*. at 806 The court distilled the entire case into the following question, "***must*** an insured keep coverage it does not want or need," to which it answered, "No." *Id*. at 807 (emphasis supplied).

The *Spott* court's characterization perfectly describes—and rejects—Ms. Wahl's argument for finding duplicate coverage. She contends that EMC ***must*** keep the coverage under the Farmers LLPE, "coverage it d[id] not want or need," after it purchased the ASIC policy upon learning that Ms. Wahl stopped paying premiums. Not only is Ms. Wahl's theory nonsensical, it is contrary to the terms of the two policies and to the law. The Farmers LLPE contemplates that a lender will find other coverage, and states that the endorsement will not remain in effect if the lender finds other acceptable insurance. FAC, Ex. A ¶ 7. Similarly, courts do not construe provisions similar to the LLPE to provide perpetual coverage to the lender in the absence of notice from the insurance company. *See, e.g., U.S. Bank v. Tenn. Farmers Mut. Ins. Co.*, No. W2006-02536-COA-R3-CV, 2007 WL 4463959 (Tenn. Ct. App. Dec. 21, 2007).[5] This Court should find that, by procuring the ASIC policy, EMC "cancel[led] by substitution" its coverage under the Farmers LLPE. *Spott Elec. Co.*, 30 Cal. App. 3d at 806.

### 3. Ms. Wahl never engaged in a "consumer transaction" with ASIC.

Ms. Wahl cannot bring a CLRA claim against ASIC, as her claims do not fall within the scope of that Act's protections. The CLRA prohibits certain acts committed "in a

---

[5] Cases holding that strict compliance with the LLPE is required on behalf of the insurer do not compel a contrary conclusion. Rather, those cases typically mandate the protection of a lender who is ignorant of its borrower's default. *See Chase v. Nat'l Indem. Co.*, 129 Cal. App. 2d 853, 861 (1954) ("[i]n this case, however, there is no testimony of any act by the [lender] indicating that it had accepted the substitution or ratified the conduct of the insured and the agent in making the purported substitution"). Indeed, the cases indicate that a strict adherence to the notice provisions is not mandatory when faced with a knowing lender: "in the absence of knowledge on the part of the mortgagee ***which would constitute a waiver***, ten days notice before cancellation was essential to extinguish the mortgagee's interest in the policy." *Id*. (quoting *Tarleton v. De Veuve*, 113 F.2d 290, 298 (9th Cir. 1940)) (emphasis supplied).

DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; CASE NO. C08-00555-RS

transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). A consumer is an individual who seeks or acquires household services. Cal. Civ. Code § 1761(d). A transaction is "an agreement between a consumer and any other person." Cal. Civ. Code § 1761(e). Ms. Wahl's claims meet none of these definitional requirements. She did not enter into any agreement with ASIC; rather, EMC did. EMC is not a consumer, as it is not an individual seeking household services. Cal. Civ. Code § 1761(d). Because Ms. Wahl's interest in the ASIC policy "was not acquired as a result of her own consumer transaction with defendant," her CLRA claim must fail. *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 960 (2005).

The FAC further fails to state a claim under the CLRA because the Act applies only to transactions "intended to result or which result[] in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Homeowners insurance is "technically neither a 'good' nor a 'service' within the meaning of the [CLRA]." *Civ. Serv. Employees Ins. Co. v. Super. Ct.*, 22 Cal. 3d 362, 368 (1978); *see also Bacon v. Am. Int'l Group*, 415 F. Supp. 2d 1027, 1035-36 (N.D. Cal. 2006) (insurance products "are neither goods nor services within the meaning of the CLRA").[6]

## V.    CONCLUSION

For all of the foregoing reasons, this Court should dismiss the FAC because: (1) Ms Wahl lacks standing to pursue her claims, and (2) the FAC fails to state a claim upon which relief can be granted.

Dated: April 3, 2008                    HELLER EHRMAN LLP


By: */s/ Peter S. Hecker*
                    PETER S. HECKER
Attorneys for Defendant
AMERICAN SECURITY INSURANCE
COMPANY

---

[6] The California Supreme Court recently granted a petition to review the determination that insurance is not a good or service under the CLRA. *Fairbanks v. Super. Ct.*, 64 Cal. Rptr. 3d 623 (Cal. Ct. App. 2007), *petition for review granted*, 68 Cal. Rptr. 3d 273 (2007).

DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; CASE NO. C08-00555-RS