PETER S. HECKER (Bar No. 66159)
ANNA S. McLEAN (Bar No. 142233)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94104-2878
Telephone: (415) 772-6080
Facsimile: (415) 772-6268
peter.hecker@hellerehrman.com
anna.mclean@hellerehrman.com

FRANK BURT (*Pro Hac Vice*)
DENISE A. FEE (*Pro Hac Vice*)
JORDEN BURT LLP
1025 Thomas Jefferson Street, NW
Washington, DC 20007-0805
Telephone: (202) 965-8140
Facsimile: (202) 965-8104
fgb@jordenusa.com
daf@jordenusa.com

Attorneys for Defendant
AMERICAN SECURITY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHELE T. WAHL, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN SECURITY INSURANCE COMPANY; and DOES 1-50, inclusive,<br><br>Defendant. | Case No. C08-00555-RS<br><br>**DECLARATION OF FRANK BURT IN SUPPORT OF DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S MOTION TO DISMISS**<br><br>Hearing Date:  May 14, 2008<br>Time:  9:30 a.m.<br>Courtroom:  4 |

I, Frank Burt, hereby declare as follows:

1.     I am an attorney admitted to appear before this court *pro hac vice*. I am a member of the firm Jorden Burt LLP, attorneys of record for defendant American Security Insurance Company ("ASIC") in this action. Unless otherwise indicated, I have personal knowledge of the matters set forth herein and could testify competently to their truth.

2.     Attached hereto as Exhibit 1 are true and correct copies of the promissory note signed by Michelle Wahl and the deed of trust entered into between Ms. Wahl and Argent Mortgage Company, LLC, both executed on May 25, 2004. These documents are referred to in the First Amended Complaint and its exhibits ("FAC") and are central to plaintiff's claims. *See* FAC ¶ 9, 15 (referring to the requirement of "[a]ll typical home mortgages in California" that the borrower obtain an insurance policy on the mortgaged home; Ms. Wahl's "mortgage lender EMC Mortgage Corporation"); Exs. C, D, E (discussing the requirements of Ms. Wahl's "loan documents").

3.     Attached hereto as Exhibit 2 is a true and correct copy of Ms. Wahl's Farmers Fire Insurance Exchange policy insuring the property beginning July 29, 2005. This document is referred to extensively in the FAC and is likewise central to plaintiff's claims. *See* FAC ¶¶ 3 (referring to Ms. Wahl's "prior homeowner insurance policy"), 9-10, 16-18, 21, 23, 25, 29-31, 33-35, 38, 42, 44, 48-49, 51, 53, 59-61, 68-70, Ex. B (cancellation notice re the policy).

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed on April 2, 2008 in the District of Columbia.

Frank Burt

DECLARATION OF FRANK BURT IN SUPPORT OF DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S MOTION TO DISMISS; CASE NO. C08-00555-RS

# EXHIBIT 1

Loan No. 0058973553 - 9502

# FIXED RATE NOTE

### THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

| May 25, 2004 | Orange | CA |
|---|---|---|
| [Date] | [City] | [State] |

### 785 LOGAN CREEK ROAD, BOULDER CREEK, CA 95006
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ **465,000.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is    Argent Mortgage Company, LLC .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **6.350 %**.

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

  **(A)  Time and Place of Payments**
  I will pay principal and interest by making payments every month.
  I will make my monthly payments on the first day of each month beginning on    **August 1, 2004**.
  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    July 1, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

  I will make my monthly payments at:  **505 City Parkway West, Suite 100,  Orange, CA 92868**

  or at a different place if required by the Note Holder.

  **(B)  Amount of Monthly Payments**
  My monthly payments will be in the amount of U.S. **$2,893.40.**

**4.  BORROWER'S RIGHT TO PREPAY**
I may repay this Note at any time as provided for in this paragraph. If within the first  3.00 year(s) from the date of execution of the Mortgage, Deed of Trust or Security Deed which secures this Note, I prepay in any 12 month period an amount exceeding 20% of the original principal balance under this Note, I will pay a prepayment charge to Note Holder equal to six (6) months advance interest on the amount prepaid in excess of 20% of the original principal balance under this Note.

**5.  LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

1


**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to Pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of the date of this Security Instrument.

If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_Michelle J Wahl_____ (Seal)
Borrower: MICHELLE T WAHL
SSN

_____ (Seal)
Borrower:
SSN:

2

RECORDING REQUESTED BY
ALLIANCE TITLE COMPANY

Recording Requested By:
Argent Mortgage Company, LLC

Return To:

Argent Mortgage Company, LLC
P.O. Box 14130,
Orange, CA 92863-1530

Prepared By:Argent Mortgage Company, LLC
Stacey Franck
One City Boulevard West
Orange, CA 92868

7938

**2004-0041999**

Recorded
Official Records
County Of
SANTA CRUZ
RICHARD W. BEDAL
Recorder
CAROL D. SUTHERLAND
Assistant
12:27PM 10-Jun-2004

REC FEE    54.00

BLS
Page 1 of 16

————————[Space Above This Line For Recording Data]————————

# DEED OF TRUST

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated May 25, 2004
together with all Riders to this document.
(B) "Borrower" is MICHELLE T.  WAHL, A Married Woman, As Her Sole and Separate Property

Borrower is the trustor under this Security Instrument.
(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware

0058973553 - 9502

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005 1/01

-6(CA) (0005)
Page 1 of 15                              Initials: _MW_

VMP MORTGAGE FORMS - (800)521-7291

05/25/2004 6:20:14 PM

Lender's address is **One City Boulevard West   Orange, CA 92868**

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is **Town and Country Title Services, Inc.**

**(E) "Note"** means the promissory note signed by Borrower and dated **May 25, 2004**
The Note states that Borrower owes Lender **four hundred sixty-five thousand and 00/100**
                                                           Dollars
(U.S. $ **465,000.00**         ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **July 1, 2034** .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

0058973553 /9502
Initials:

-6(CA) (0005)            Page 2 of 15     05/25/2004 6:20:14    Form 3005 1/01

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
       County                              of          SANTA CRUZ                   :
       [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 089-461-42                                    which currently has the address of
785 LOGAN CREEK ROAD                                                                   [Street]
BOULDER CREEK                                          [City], California 95006          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0058973553 - 9502
Initials: _____

-6(CA) (0005)                       Page 3 of 16   05/25/2004 6:20:14 PM   Form 3005   1/01

5

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

8

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6(CA) (0005)

0058973553 - 9502
Initials _____

Page 7 of 15    05/25/2004 6:20:14    Form 3005 1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

0058973553 - 9502
Initials: _____

-6(CA) (0005)   Page 8 of 15   05/25/2004 6:20:14   Form 3005 1/01

10

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

0058973553 -9502
Initials: _____

-6(CA) (0005)          Page 10 of 15   05/25/2004 6:20:14   Form 3005  1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

13

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6(CA) (0005)

Page 12 of 15

0058973553/9502
Initials: _____
05/25/2004 6:20:14   Form 3005  1/01

14

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

0058973553 9502
Initials:

-6(CA) (0005)     Page 13 of 15     05/25/2004  6:20:14     Form 3005  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____                    Michelle 2Wahl ___ (Seal)
                                                      MICHELLE T WAHL                    -Borrower

_____

_____                    _____ (Seal)
                                                                                         -Borrower

_____ (Seal)                     _____ (Seal)
                          -Borrower                                                      -Borrower

_____ (Seal)                     _____ (Seal)
                          -Borrower                                                      -Borrower

_____ (Seal)                     _____ (Seal)
                          -Borrower                                                      -Borrower

                                        0058973553 - 9502

 -6(CA) (0005)          Page 14 of 16  05/25/2004  6:20:14 PM Form 3005  1/01

**State of California**

County of $Orange$     } ss:

On $\underline{29, May 2004}$     before me,     $\underline{Diana\ P.\ Bey}$
 Day/Month/Year                                      Notary Public

personally appeared     $\underline{Michelle\ T\ Wahl}$

_____

_____

_____

personally known to me (or proven to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument

Witness my hand and official seal.



DIANA P. BEY
COMM. #1338631
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
MY COMM. EXP. JAN. 10, 2006

_____ $Diana\ P.\ Bey$ _____ (Seal)
Notary Public

||| |||| | ||| ||| |||| |||| ||||

400-15CA (4/02)                Page 15 of 15                0056973553 - 9502

                                                           05/25/2004 6:20:14 PM

## DESCRIPTION

THE LAND REFERRED TO IN THIS DESCRIPTION SITUATED IN THE **STATE OF CALIFORNIA, COUNTY OF SANTA CRUZ** AND IS DESCRIBED AS FOLLOWS:

PARCEL I:

A PART OF THE LANDS IN THE NORTHWEST 1/4 OF SECTION 5 T. 9 S. R. 2 W., M. D. B. & M., AND THE LANDS SHOWN ON "RECORD OF SURVEY" FILED IN VOLUME 58 OF MAPS, PAGE 24, SANTA CRUZ COUNTY RECORDS AND MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEAST CORNER OF THE LANDS OF "MONDELLA" AS SHOWN ON SAID RECORD OF SURVEY THENCE ALONG SAID NORTHERN BOUNDARY NORTH 88° 39' 33" WEST 180.00 FEET TO THE NORTHWEST CORNER THEREOF, THENCE ALONG THE WESTERN BOUNDARY OF SAID LANDS, SOUTH 1° 20' 27" WEST 586.99 FEET TO A 1/2 INCH IRON PIPE IN THE CENTERLINE OF OLD ROAD AS SHOWN ON SAID MAP, THENCE ALONG SAID CENTERLINE SOUTH 77° 51' EAST 15.65 FEET TO A LARGE SPIKE THENCE NORTH 72° 41' 20" EAST 195.14 FEET TO A LARGE SPIKE THENCE SOUTH 85° 46' 10" EAST 50.60 FEET TO A STATION, THENCE LEAVING SAID CENTERLINE, PARALLEL TO THE WESTERN BOUNDARY THEREOF NORTH 1° 20' 27" EAST 420.65 FEET TO A STATION THENCE NORTH 88° 39' 33" WEST 72.00 FEET TO A STATION FROM WHICH THE PLACE OF BEGINNING BEARS NORTH 1° 20' 27" EAST, THENCE 1° 20' 27" EAST 110.00 FEET TO THE PLACE OF BEGINNING.

PARCEL II:

A NON-EXCLUSIVE EASEMENT FOR ROAD AND UTILITY PURPOSES 60 FEET IN WIDTH ALONG AN EXISTING ROAD AS SAID RIGHT OF WAY NOW EXISTS LEADING EASTERLY AND SOUTHERLY TO LOGAN CREEK ROAD.

PARCEL III:

A NON-EXCLUSIVE RIGHT OF WAY 60 FEET IN WIDTH FOR ROAD AND UTILITY PURPOSES OVER THE EXISTING ROAD KNOWN AS LOGAN CREEK ROAD.

PARCEL IV:

A NON-EXCLUSIVE EASEMENT 60 FEET IN WIDTH FOR INGRESS AND EGRESS AND PUBLIC UTILITIES, THE CENTER LINE OF WHICH IS DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERACTION OF THE WESTERN BOUNDARY LINE OF LOT 4 OF SECTION 5 IN TOWNSHIP 9 SOUTH, RANGE 2 WEST, MOUNT DIABLO MERIDIAN, WITH THE CENTER LINE OF AN EXISTING ROAD KNOWN AS LOGAN CREEK ROAD FROM WHICH THE NORTHWEST CORNER OF SAID LOT 4 BEARS ALONG SAID BOUNDARY LINE OF SAID SECTION, NORTH 3° 15' WEST 675.10 FEET DISTANT; THENCE FROM SAID PLACE OF BEGINNING, NORTH 86° 00' EAST 90.56 FEET; SOUTH 63° 00' EAST 83.70 FEET; NORTH 71° 00' EAST 311.17 FEET; SOUTH 58° 00' EAST 107.52 FEET; NORTH 77° 30' EAST 173.76 FEET; SOUTH 69° 00' EAST 314.65 FEET; NORTH 78° 00' EAST 160.06 FEET; SOUTH 37° 00' EAST 110.15 FEET; NORTH 67° 00' EAST 205.50 FEET; SOUTH 74° 00' EAST 189.44 FEET; SOUTH 46° 00' EAST 147.18 FEET; SOUTH 76° 00' EAST 119.58 FEET; NORTH 61° 00' EAST 320.42 FEET; NORTH 66° 00' EAST 199.76 FEET; NORTH 83° 00' EAST 157.21 FEET; NORTH 74° 00' EAST 200.27 FEET NORTH 66° 00' EAST 241.61 FEET; NORTH 82° 00' EAST 103.99 FEET; SOUTH 57° 00' EAST 154.73 FEET, AND NORTH 89° 00' EAST 94.96 FEET TO THE EASTERN BOUNDARY LINE OF LOT 3 IN THE ABOVE MENTIONED SECTION 5.

089-461-42



EXHIBIT 2

T1089102

MICHELLE WAHL

785 LOGAN CREEK RD
BOULDER CK, CA                95006-

P.O. BOX 1900
PLEASANTON, CA 94566

Non-Assessable

# 4TH EDITION

## YOUR PROTECTOR PLUS PACKAGE POLICY

## CALIFORNIA

Farmers Insurance Group of Companies®
4680 Wilshire Boulevard, Los Angeles, California 90010

---

Dear Customer:

The member Companies and Exchanges of the Farmers Insurance Group of Companies would like to take this opportunity to say "Thank You" for your recent business.

Your needs for insurance protection are very important to us. We are committed to providing you with the best customer service at the lowest cost possible.

If you haven't already done so, please take a moment to review your policy to assure you understand the coverages. This is a very important document that you'll want to keep in a safe place.

If you have any questions regarding your policy or if you would like information about other coverages, feel free to contact me.

Again, thank you for choosing us for your insurance protection. We look forward to serving you.

Sincerely,

*Tina Andreatta, lutcf*

Your Farmers® Agent

(831) 462-6100

---

http://www.farmersinsurance.com

8-98

L1008101

**THIS PAGE LEFT
INTENTIONALLY BLANK.**

T0000000

# Fire Insurance Exchange

*Proxy for Annual Meeting of Members*

*Each policyholder is entitled to vote at the Annual Meeting of Members of Fire Insurance Exchange. You may appoint a proxy to act on your behalf.*

The undersigned hereby appoints Paul N. Hopkins and Doren E. Hohl, and each of them, with full power to act without the other and with full power of substitution, as the true and lawful attorneys and proxies of the undersigned, to attend the Annual Meeting of Members of Fire Insurance Exchange to be held at 4700 Wilshire Boulevard, Los Angeles, California, on Monday, March 20, 2006 at 10:00 A.M., and any adjournments thereof, and to vote with all powers the undersigned would possess as a member of Fire Insurance Exchange if personally present:

**(1) Election of Governors.** (Nominees set forth below. Select only one box.)

Class 2 Nominees:    Dale A. Marlin    Gary A. McCarter    Richard L. Wells

☐ **VOTE FOR** the election of all of the Class 2 Nominees to serve through the 2010 Annual Meeting.

☐ **WITHHOLD AUTHORITY** to vote for all of the Class 2 Nominees.

☐ **WITHHOLD AUTHORITY** to vote for the following Class 2 Nominees (names not specified will be voted for): _____

**(2) Other Business.** At their discretion, the proxies are authorized to vote upon such other business as may properly come before the meeting.

**The Board of Governors recommends a VOTE FOR the election of the Class 2 Nominees. The proxy, when properly executed, will be voted in the manner directed herein. If no specification is made, this proxy will be voted for the nominees listed.**

**Dale A. Marlin,** Newport Beach, CA
Ms. Marlin has extensive experience in the information technology industry and was formerly employed by IBM. Her expertise has been developed by working with clients across a broad range of industries including aerospace, media and insurance.

**Gary A. McCarter,** Huntley, IL
Mr. McCarter spent his business career in the insurance industry holding various administrative, claims, management and executive positions of increasing responsibility. He is currently retired.

**Richard L. Wells,** Lake Ozark, MO
Mr. Wells began his career as an insurance agent and subsequently assumed various positions of increasing responsibility throughout the country as an insurance executive. He is currently retired.

Please sign your name exactly as it appears on your Premium Notice. You may return this form with your premium payment, or send separately to one of these Remittance Centers:

| **Kansas City** | **Texas** | **Southern California** |
|---|---|---|
| **Zone Remittance Center** | **Zone Remittance Center** | **Zone Remittance Center** |
| 10850 Lowell Ave. | 100 Farmers Circle | 13950 Ramona Avenue |
| Overland Park, KS 66210-1667 | Austin, TX 78729-1299 | Chino, CA 91710 |

Signature _____    Dated _____

Policy Number _____

# Fire Insurance Exchange

25-4097 6-05                                                                                         A4097601

THIS PAGE INTENTIONALLY
LEFT BLANK.

**DETACH AND RETURN LOWER INVOICE PORTION WITH YOUR PAYMENT**
**PAYMENT DUE DATE: 10-12-2005**

25-2870 7-00                                                                                           A2870101



I N V O I C E

MAKE CHECK PAYABLE TO: FIRE INSURANCE EXCHANGE, LOS ANGELES, CALIFORNIA
PLEASE WRITE YOUR POLICY NUMBER ON YOUR CHECK, YOUR LOAN BILLED CHECK IS YOUR RECEIPT

| POLICY NUMBER | TOTAL DUE | AMOUNT ENCLOSED |
|---|---|---|
| 92723-19-41 | 2,457.48 | |

NAMED INSURED:
MICHELLE WAHL

9803969272319412457480000004

P.O. BOX 25022
SANTA ANA, CA 92799-5022

# NOTICE OF INFORMATION PRACTICES
# CALIFORNIA

### Why did we send you this notice?

The State of California requires all insurance companies to tell customers about their information practices. Information practices include things companies do to gather and share information about customers. Insurance companies need information to make decisions. They make all sorts of day-to-day decisions: who to insure, how much to charge, how to handle claims, and others.

### What are your rights?

Our information practices extend to applicants and policyholders (past and present). State and federal laws give you certain rights when you take part in transactions having to do with insurance for yourself, your family, or your household.

We send our customers a notice called the "Farmers Privacy Notice." The Farmers Privacy Notice does not limit any rights you may have - as a consumer, claimant, or beneficiary. Your state gives you additional protections. They are explained in this notice.

### How do we collect the information?

You give us most of the information we need when you apply for insurance. Much of it is made up of common, practical facts: your employment information, your driving record, your age, where you live, and other things like that. Many times, we need more information. Or we may need to verify information you've given us. When that happens, we normally ask for a report from an outside source. That source can be a consumer reporting agency or an insurance support organization. Both provide information in the form of consumer reports. Most insurance companies use these; it's a common industry practice.

Sometimes one of these outside sources needs to gather information before they can prepare an investigative consumer report. This could be done as part of a fraud investigation, for example. They might then contact you, another adult member of your household, or a neighbor by phone or in person. If this happens, you can, as the Named Insured, ask us to interview you or your spouse as well. We will make every effort to honor your request.

### What types of information do we collect?

**Auto** - While taking your application for insurance and to service policies covering your personal vehicles, we may obtain information about

- How you use your vehicle(s), including annual mileage
- Age, personal habits, and characteristics of drivers
- Credit information
- History of accidents, driving violations, arrests or convictions, and claims
- Previous insurance experience

**Property** - While taking your application for insurance and to service policies covering your real and personal property, we may obtain information about

- Type of construction and square footage of dwelling
- Heating system and other physical characteristics of the property
- Care and maintenance of the property
- Credit information
- Claims history
- Previous insurance experience
- Personal habits and characteristics of the property's occupants

25-8531  11-04                    *(Continued Next Page)*                    A8531201

## What do we do with the Information?

We use the information we collect about you to perform insurance functions. This includes

- Underwriting and servicing your policy
- Processing claims (we may obtain information relating to health and employment)
- Investigating potential fraud
- Other activities permitted by state and federal law

Here's an example: If you ask us to set up a payment by electronic funds transfer, we may obtain financial information for a particular bank account.

We may also disclose information to other parties. The law permits us to do this without your prior authorization when the information goes, for example, to these parties:

1. Your Farmers® agent - to service your policy.
2. Persons who need this information to perform normal business functions for us.
3. Persons conducting actuarial or research studies on our behalf.
4. Another insurance company or an insurance support organization - to perform an insurance transaction, or to detect or prevent criminal activity or fraud in connection with an insurance transaction.
5. A medical professional or medical care institution - to verify insurance coverage or benefits or to inform an individual of a medical problem the individual may not know about.
6. An insurance regulatory authority.
7. Law enforcement or other governmental authority.
8. A group policyholder - to report claims experience or conduct an audit of our operations, but only as needed to conduct the review or audit.
9. Affiliates, as permitted by law. The law allows us to share your financial information with our affiliates to market products or services to you, and does not allow customers to restrict that disclosure.
10. Persons that perform marketing services on our behalf, as permitted by law.
11. Other non-affiliated third parties, as permitted by law.
12. A party to a proposed or consummated sale, transfer, merger, or consolidation of all or part of the company underwriting your policy.

An insurance support organization that prepares a report may keep information it gathers and disclose that information to other persons, but only to the extent permitted by federal and state law.

## How can you see or make corrections to your personal Information?

You have these rights:

- To know what personal information about you we have in our records. That includes reports from outside sources.
- To get a copy of your personal information.
- To request that we correct, change, or remove any information you feel is incorrect.

To use these rights, you must send us a written request. Your Farmers® agent can give you the appropriate service center address.

If you request that we correct, change, or remove incorrect information, we'll check our records and make the changes if we can. We'll let you know in writing what we decide.

If we cannot make a change you asked for, you can file a statement. Write down the reasons you disagree with our decision. We'll include the statement in our records. That way, anyone who looks at the disputed personal information will also see your statement. From then on, if we disclose your information to another party, we'll include your statement. We will also send a copy to anyone who has gotten your personal information from us in the past two years. Just tell us who you would like us to send it to.

25-8531 11-04                              *(Continued Next Page)*                              A8531202

26

There are some types of information for which these rights do not apply:

- Information we collect to process an actual or anticipated claim
- Information we collect for an actual or anticipated civil or criminal proceeding
- Specific items of privileged information when an applicant or policyholder is suspected of fraud, material misrepresentation, or material nondisclosure

### We'll keep you Informed.

As required by law, we will keep you up to date on our information practices. We reserve the right to modify our practices at any time, when permitted by law.

The Fair Credit Reporting Act requires us to let you know we may make an investigation about any of these that apply: character, general reputation, personal characteristics, and mode of living. You can, within a reasonable time after you receive this notice, write to us for more information about such an investigation. We'll send it to you.

If you have questions about this notice, please call your Farmers® agent.

This notice is sent on behalf of the Farmers Insurance Group of Companies, whose members include, but are not limited to:

Farmers Insurance Exchange, Fire Insurance Exchange, Truck Insurance Exchange, Mid-Century Insurance Company, Farmers New Century Insurance Company, Farmers Insurance Company, Inc. (A Kansas Corp.), Farmers Insurance Company of Arizona, Farmers Insurance Company of Idaho, Farmers Insurance Company of Oregon, Farmers Insurance Company of Washington, Farmers Insurance of Columbus, Inc., Farmers Texas County Mutual Insurance Company, Illinois Farmers Insurance Company, Mid-Century Insurance Company of Texas, Texas Farmers Insurance Company, Civic Property and Casualty Company, Exact Property and Casualty Company, and Neighborhood Spirit Property and Casualty Company.

25-8531 11-04    A6531203

THIS PAGE LEFT
INTENTIONALLY BLANK.

## AVAILABILITY OF EARTHQUAKE AND FLOOD INSURANCE

### EARTHQUAKE PROTECTION

Your policy does not provide coverage against the peril of earthquake.

Earthquake Insurance is available through the California Earthquake Authority. See your Farmers® agent for more information.

### FLOOD INSURANCE

Everyone is aware of the severe losses suffered by persons whose businesses, homes, and possessions were destroyed or damaged by recent floods.

Almost all of these people were without flood insurance, primarily because reasonably priced flood insurance has not been available.

The Federal Government, in a joint effort with the private insurance companies, has made available a subsidized flood insurance program for those areas that have qualified.

Your Farmers® agent can advise you if your community has qualified for the Federal Flood Insurance Program and can give you information concerning rates.

25-1015 7-04                                                                                              A1015301

29

# Did you know?

Insurance. No one wants to pay more for it than they should. Did you know the premium for your home insurance can be affected by discounts and surcharges? A discount means you pay less. A surcharge means you pay more.

*Discounts* - Here are some ways to get a discount on your premium:

- Go three years without a "qualified" claim. This is a sizable discount.

  *To find out what "qualified" means, see below. Call your Farmers ® agent to find out if you qualify for the discount and how much it is.*

- Be a non-smoker.

  *Applies when everyone who lives in your household has not smoked tobacco products for at least two years.*

- Be 50 years old or older.

  *Applies when the oldest named insured is age 50 or older.*

- Have certain types of protective devices installed in your house.

  *This applies, with certain restrictions, to automatic sprinkler systems and alarms for fire, smoke, and burglar intrusion. Please call your Farmers agent for details.*

- Buy a newly constructed house or renovate your old one.

  *Applies when your home was built or renovated by a qualified contractor within the last 7 calendar years.*

- Have your life and auto policies with us.

  *Applies, with certain restrictions, when a qualifying auto or life policy is insured with a Farmers company. Your Farmers agent can help you with this.*

*Surcharges* - Here are two reasons you could pay a higher premium:

- You've had one or more qualified (we explain "qualified" below) claims in the past three years.

  *We apply a surcharge for up to four claims in the past three years. We remove the surcharge on the first renewal date after the three-year anniversary of the claim.*

- Your house has one of these kinds of roofs:
  — *Wood (shake or shingle)*
  — *Dimensional fiberglass asphalt*
  — *Sheet metal panel*

Do you have questions? Would you like a detailed explanation of any of these discounts? If yes, please call your Farmers® agent.

We provide this handout to tell you about discounts and surcharges that may apply to your premium. It is not an offer of insurance, nor is it a part of your policy.

## What Is a Qualified Claim?

A qualified claim is for damages resulting from any cause *except* the ones listed here:

- Wind
- Hail
- Lightning
- Earthquake
- Fire or smoke losses resulting from a fire catastrophe
  *The Farmers National Catastrophe Center determines which losses are "catastrophes".*

25-2574 11-04                                (Continued Next Page)                                A2574101

30

- Losses paid under Residence Glass Endorsement (E6154). Applies if the loss did not exceed the policy deductible at the time of the loss.
- Losses paid for additional living expenses (ALE) under your policy's *Prohibited Use* coverage where a civil authority prohibits your use of your home under certain circumstances. Either of these two conditions must apply:
  — There are no associated losses.
  — There are associated losses, but they result from causes excluded from the experience rating plan.

If this isn't clear to you, please call your Farmers® agent.

25-2574 11-04                                                                                          A2574102

THIS PAGE LEFT
INTENTIONALLY BLANK.

# California Residential Property Insurance Disclosure

Policy Number
92723-19-41
Agent Number
96 86 309

Insured's Name:
MICHELLE WAHL AND VICTOR WAHL

This disclosure is required by California Law (Section 10102 of the Insurance Code). It describes the principal forms of insurance coverage in California for residential dwellings. It also identifies the form of dwelling coverage you have purchased or selected.

This disclosure form contains only a general description of coverages and is not part of your residential property insurance policy. Only the specific provisions of your policy will determine whether a particular loss is covered and, if so, the amount payable. Regardless of which type of coverage you purchase, your policy may exclude or limit certain risks.

READ YOUR POLICY CAREFULLY. If you do not understand any part of it or have questions about what it covers, contact your insurance agent or company. You may also call the California Department of Insurance consumer information line at (1-800-927-HELP or 1-800-927-4357).

The cost to rebuild your home may be very different from the market value of your home since reconstruction is based primarily on the cost of labor and materials. Many factors can affect the cost to rebuild your home, including the size of your home, the type of construction, and any unique features. Please review the following coverages carefully. If you have questions regarding the level of coverage in your policy, please contact your insurance agent or company. Additional coverage may be available for an additional premium.

## FORMS OF COVERAGE FOR DWELLINGS
### (Dwelling Coverage selected or purchased)

☐ **GUARANTEED REPLACEMENT COST COVERAGE WITH FULL BUILDING CODE UPGRADE** PAYS REPLACEMENT COSTS WITHOUT REGARD TO POLICY LIMITS, AND INCLUDES COSTS RESULTING FROM CODE CHANGES.

In the event of any covered loss to your home, the insurance company will pay the full amount needed to repair or replace the damaged or destroyed dwelling with like or equivalent construction **regardless of policy limits. Your policy will specify whether you must actually repair or replace the damaged or destroyed dwelling in order to recover guaranteed replacement cost.** The amount of recovery will be reduced by any deductible you have agreed to pay.

This coverage includes all additional costs of repairing or replacing your damaged or destroyed dwelling to comply with any new building standards (such as building codes or zoning laws) required by government agencies and in effect at the time of rebuilding.

To be eligible to recover full guaranteed replacement costs with building code upgrade, you must insure the dwelling to its full replacement cost at the time the policy is issued, with possible periodic increases in the amount of coverage to adjust for inflation and increases in building costs; you must permit inspections of the dwelling by the insurance company; and you must notify the insurance company about any alterations that increase the value of the insured dwelling by a certain amount (see your policy for that amount).

25-2531  10-04    **Insured's Copy**    *(Continued Next Page)*    A2531211

☐ **GUARANTEED REPLACEMENT COST COVERAGE WITH LIMITED OR NO BUILDING CODE UPGRADE** PAYS REPLACEMENT COSTS WITHOUT REGARD TO POLICY LIMITS BUT LIMITS OR EXCLUDES COSTS RESULTING FROM CODE CHANGES.

In the event of any covered loss to your home, the insurance company will pay the full amount needed to repair or replace the damaged or destroyed dwelling with like or equivalent construction **regardless of policy limits. Your policy will specify whether you must actually repair or replace the damaged or destroyed dwelling in order to recover guaranteed replacement cost.** The amount of recovery will be reduced by any deductible you have agreed to pay.

This coverage does **not** include all additional costs of repairing or replacing your damaged or destroyed dwelling to comply with any new building standards (such as building codes or zoning laws) required by government agencies and in effect at the time of rebuilding. Consult your policy for the applicable exclusions or limits with respect to these costs.

To be eligible to recover full guaranteed replacement cost with limited or no building code upgrade, you must insure the dwelling to its full replacement cost at the time the policy is issued, with possible periodic increases in the amount of coverage to adjust for inflation and increases in building costs; you must permit an inspection of the dwelling by the insurance company; and you must notify the insurance company about any alterations that increase the value of the insured dwelling by a certain amount (see your policy for that amount).

☒ **LIMITED REPLACEMENT COST COVERAGE WITH AN ADDITIONAL PERCENTAGE** PAYS REPLACEMENT COSTS UP TO A SPECIFIED AMOUNT ABOVE THE POLICY LIMIT.

In the event of any covered loss to your home, the insurance company will pay to repair or replace the damaged or destroyed dwelling with like or equivalent construction **up to a specified percentage over the policy's limits.** See the declarations page of your policy for the limit that applies to your dwelling. **Your policy will specify whether you must actually repair or replace the damaged or destroyed dwelling in order to recover this benefit.** The amount of recovery will be reduced by any deductible you have agreed to pay.

To be eligible for this coverage, you must insure the dwelling to its full replacement cost at the time the policy is issued, with possible periodic increases in the amount of coverage to adjust for inflation; you must permit an inspection of the dwelling by the insurance company; and you must notify the insurance company about any alterations that increase the value of the insured dwelling by a certain amount (see your policy for that amount). Read your declaration page to determine whether your policy includes coverage for building code upgrades.

☐ **LIMITED REPLACEMENT COST COVERAGE WITH NO ADDITIONAL PERCENTAGE** PAYS REPLACEMENT COSTS UP TO POLICY LIMITS ONLY.

In the event of any covered loss to your home, the insurance company will pay to repair or replace the damaged or destroyed dwelling with like or equivalent construction **only up to the policy's limit.** See the declarations page of your policy for the limit that applies to your dwelling. **Your policy will specify whether you must actually repair or replace the damaged or destroyed dwelling in order to recover this benefit.** The amount of recovery will be reduced by any deductible you have agreed to pay. To be eligible to recover this benefit, you must insure the dwelling to 80 percent of its replacement cost at the time of loss. Read you declaration page to determine whether your policy includes coverage for building code upgrades.

25-2531  10-04    *(Continued Next Page)*    A2531212

☐ **ACTUAL CASH VALUE COVERAGE** PAYS THE FAIR MARKET VALUE OF THE DWELLING AT THE TIME OF THE LOSS, OR THE COST TO REPAIR, REBUILD, OR REPLACE THE DAMAGED OR DESTROYED DWELLING WITH LIKE KIND AND QUALITY CONSTRUCTION, UP TO THE POLICY LIMIT.

In the event of any covered loss to your home, the insurance company will pay either the fair market value of the damaged or destroyed dwelling (excluding the value of land) at the time of the loss or the cost to repair, rebuild, or replace the damaged or destroyed dwelling with like kind and quality construction **up to the policy limit with possible consideration of physical depreciation.** The amount of recovery will be reduced by any deductible you have agreed to pay. Read your declaration page to determine whether your policy includes coverage for building code upgrades.

☒ **BUILDING CODE UPGRADE** - ORDINANCE AND LAW COVERAGE PAYS UP TO LIMITS SPECIFIED IN YOUR POLICY. ADDITIONAL COSTS REQUIRED TO BRING THE DWELLING "UP TO CODE."

In the event of any covered loss, the insurance company will pay any additional costs, up to the stated limits, of repairing or replacing a damaged or destroyed dwelling to conform with any building standards such as building codes or zoning laws required by government agencies and in effect at the time of the loss or rebuilding (see your policy).

This disclosure form does not explain the types of contents coverage (Furniture, Clothing, etc.) provided by your policy. Some policies do not replace contents with new items, but instead, only pay for the current market value of an item. If you have any questions, contact your insurer or agent.

25-2531  10-04

A2531213

THIS PAGE LEFT
INTENTIONALLY BLANK.

Dear Valued Customer,

In compliance with California law, we are providing you with the address of the California Department of Insurance. However, we hope that any problem or question you may have can be solved by contacting your Farmers Agent or the Service Center servicing your policy. The Service Center addresses and phone numbers are listed below for your convenience.

CALIFORNIA INSURANCE DEPARTMENT
Consumer Service Division
300 South Spring Street
Los Angeles, CA 90013
Telephone: (800) 927-HELP (4357)
              (213) 897-8921

Section 510 of Chapter 5.3 of the California Insurance Code states that the Department of Insurance should be contacted only after the contacts between the complainant and the insurer or its agent or other representative have failed to produce a satisfactory solution to the problem.

## SERVICE CENTERS

**NORTHERN CALIFORNIA:**
11555 Dublin Canyon Rd.
Pleasanton, CA 94588-9983
(925) 847-3100

**LOS ANGELES:**
3041 Cochran St.
Simi Valley, CA 93099-2771
(805) 583-7000

**SOUTHERN CALIFORNIA:**
2500 South Fifth Ave.
Pocatello, ID 83204-1923
(208) 234-8100

25-2191 7-01

A2191401

# California Residential Property Insurance Bill of Rights

The largest single investment most consumers make is their home and related property. In order to best protect these assets, it is wise for consumers to understand the homeowner's insurance market. Consumers should consider the following:

Read your policy carefully and understand the coverage and limits provided. Homeowner's insurance policies contain sublimits for various coverages such as personal property, debris removal, additional living expense, detached fences, garages, etc.

Keep accurate records of renovations and improvements to the structure of your home, as it could affect your need to increase your coverage.

Maintaining a list of all personal property, pictures, and video equipment may help in the case of a loss. The list should be stored away from your home.

Comparison shop for insurance, as not all policies are the same and coverage and prices vary.

Take time to determine the cost to rebuild or replace your property in today's market. You can seek an independent evaluation of this cost.

You may select a licensed contractor or vendor to repair, replace, or rebuild damaged property covered by the insurance policy.

An agent or insurance company may help you establish policy limits that are adequate to rebuild your home.

Once the policy is in force, contact your agent or insurance company immediately if you believe your policy limits may be inadequate.

A consumer is entitled to receive information regarding homeowner's insurance. The following is a limited overview of information that your insurance company can provide:

The California Residential Property Insurance Disclosure.
An explanation of how your policy limits were established.

The insurance company's customer service telephone number for underwriting, rating, and claims inquiries.

An explanation for any cancellation or nonrenewal of your policy.

A copy of your policy.

The toll-free telephone number and Internet address for reporting complaints and concerns about homeowner's insurance issues to the department's consumer services unit.

In the event of a claim, an itemized, written scope of loss report prepared by the insurer or its adjuster within a reasonable time period.

In the event of a claim, notification of a consumer's rights with respect to the appraisal process for resolving claims disputes.

In the event of a claim, a copy of the Unfair Practices Act and a copy of the Fair Claims Practices Regulations.

The information provided herein is not all inclusive and does not negate of preempt existing California law. If you have any concerns or questions, the officers at our Consumer Hotline are there to help you. Please call them at 1-800-927-HELP (4357) or contact us at www.insurance.ca.gov.

25-2563 10-04                                                                                                A256310I

# Experience Rating Plan
# Disclosure Notice

Dear Valued Customer,

California insurance regulations require us to let you know when we use a rating plan that takes your claims history into account. Farmers® uses an experience rating plan that works like this:

* Households that had no claims for qualified loss in the past three years get a claims-free discount.
* Households that had a claim for qualified loss in the past three years pay a higher premium. The amount added to the premium is based on the number of qualified losses in the past three years.

**Definition of Qualified Loss**

A qualified loss is a claim paid for damages resulting from any cause *except* the ones listed here:

* Wind
* Hail
* Lightning
* Earthquake
* Fire or smoke losses resulting from a fire catastrophe.

   A fire catastrophe is defined as any loss resulting from the peril of fire, which is coded as a catastrophe using a $2 million threshold, all-companies and all-lines of insurance basis.

* Losses paid under the Residence Glass Endorsement (E6154).

   If the loss paid under this endorsement is more than the deductible, it could become a qualified loss.

* Additional living expenses (ALE) caused by a civil authority's action that either (a) caused no other associated losses, or (b) has other associated losses from causes excluded from the experience rating plan. An example of such an action is a mandatory evacuation.

**Subrogated Claims**

A claim is subrogated when we pay the insured and then attempt to collect from the responsible party. If you pay a higher premium because of a claim that we later recover through subrogation, we will remove the surcharge or reinstate the claims-free discount, and then reimburse you for the extra premium you paid because of the surcharge or the loss of the claims-free discount.

A subrogated claim could be closed because you are found to be negligent or at fault, or because you fail to cooperate with the claims representative. If this happens, a surcharge will be charged or you will lose the claims-free discount, whichever applies.

If you have any questions about the loss history information provided above or the experience-rating plan, please contact your Farmers® agent.

25-7800 9-04                                                                                                  A7800301

39

**PROTECTOR PLUS**
FIRE INSURANCE EXCHANGE, LOS ANGELES, CALIFORNIA
A Reciprocal Company

**DECLARATIONS**
**HOMEOWNERS**
Replaces all prior Declarations, if any

**TRANSACTION TYPE:** NEW BUSINESS
The Policy Period is effective (not prior to time applied for) at described residence premises.

| POLICY NUMBER | POLICY PERIOD FROM: | TO: | STANDARD TIME | POLICY EDITION |
|---|---|---|---|---|
| 92723-19-41 | 07-29-2005 | 07-29-2006 | 12:01 A.M. | 04 |

ISSUING OFFICE:
P.O. BOX 1900
PLEASANTON, CA 94566

This policy will continue for successive policy periods, if: (1) we elect to continue this insurance, and (2) if you pay the renewal premium for each successive policy period as required by our premiums, rules and forms then in effect.

**INSURED'S NAME & MAILING ADDRESS:**
MICHELLE WAHL AND VICTOR WAHL

785 LOGAN CREEK RD
BOULDER CK, CA
95006-

**LOCATION OR DESCRIPTION OF RESIDENCE PREMISES:**
(Same as mailing address unless otherwise stated.)

-

**DESCRIPTION OF PROPERTY**

| YEAR OF CONSTRUCTION | CONSTRUCTION TYPE | ROOF TYPE | NUMBER OF FAMILIES | OCCUPANCY |
|---|---|---|---|---|
| 1988 | FRAME | ASPHALT COMPOSITION | 001 | OWNER |

**COVERAGES -** We provide insurance only for those coverages indicated by a specific limit or other notation.

| SECTION I - PROPERTY | | | | SECTION II - LIABILITY | | ANNUAL PREMIUM |
|---|---|---|---|---|---|---|
| A. DWELLING OR MOBILE HOME | B. SEPARATE OTHER STRUCTURES | C. PERSONAL PROPERTY | D. LOSS OF USE | E. PERSONAL LIABILITY | F. MEDICAL PAY TO OTHERS | |
| $603,000 | $60,300 | $452,250 | $301,500 | $1,000,000 Each Occurrence | $1,000 Each Person | $2,445.48 |

**ENDORSEMENTS**

| ENDORSEMENT NUMBER | EDITION NUMBER | DESCRIPTION |
|---|---|---|
| CA015 | 1ED | ENDORSEMENT AMENDING SECTION II- LIABILITY,COV-PERSONAL L |
| CA023 | 1ED | ENDORSEMENT AMENDING SECTION I - CONDITIONS |
| E4040 | 1ED | ENDORSEMENT AMENDING SECTION II - EXCLUSION |
| E4207 | 1ED | EXCLUSION AMENDING SECTION II - LIABILITY |
| E6008 | 2ED | AMENDING PERSONAL INJURY - PROTECTOR PLUS |
| E6179 | 1ED | AMENDING SECTION II - LIABILITY EXCLUSIONS |
| E6268 | 1ED | AMENDING DEBRIS REMOVAL COVERAGE AND POLLUTION EXCLUSION |
| H6106 | 1ED | SPECIAL LIMITS ON SPORTS CARDS |
| S9049 | 3ED | SPECIAL STATE PROVISIONS - CALIFORNIA |
| S9072 | 1ED | ENDORSEMENT AMENDING RETURN OF PREMIUM |
| | | IMPORTANT NOTICE - ADDITIONAL ENDORSEMENTS SHOWN ON BACK |

**DISCOUNTS**

50 PLUS, NON SMOKER, AND EXPERIENCE RATING PLAN DISCOUNTS HAVE BEEN APPLIED TO YOUR POLICY.

**DEDUCTIBLES**

| $1,000 | Deductible is applicable to covered losses under Coverage A, B, C. |
|---|---|

**POLICY ACTIVITY** (SUBMIT AMOUNT DUE WITH ENCLOSED INVOICE)

| $ | Previous Balance |
|---|---|
| 2,445.48 | Premium |
| 12.00 | Fees |
| | Payments or Credits |
| $ 2,457.48 | Total DUE |
| INSURED PAYS | |

ANY "TOTAL" BALANCE OR CREDIT $7.00 OR LESS WILL BE APPLIED TO YOUR NEXT BILLING. BALANCES OVER $7.00 ARE DUE UPON RECEIPT.

This Declarations page is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

Countersignature

**AGENT:** Tina Andreatta,lutcf
**AGENT PHONE:** (831) 462-6100    **AGENT NUMBER:** 96 86 309

Authorized Representative

# Your Protector Plus Homeowners Package Policy

# INDEX

Agreement ........................................................... 3
Definitions ........................................................... 3

## SECTION I - PROPERTY

Coverages:
Coverage A - Dwelling ....................................... 4
Coverage B - Separate Structures .................... 4
Coverage C - Personal Property ...................... 5
   Special Limits on Certain Personal Property ..... 5
   Personal Property not covered ...................... 6
Coverage D - Loss of Use ............................... 6
Additional Coverages ....................................... 6

Losses Insured:
Coverage A - Dwelling ....................................... 7
Coverage B - Separate Structures .................... 7
Coverage C - Personal Property ...................... 8

SECTION I - LOSSES NOT INSURED
Applying to
Coverage A and B - Dwelling and
Separate Structures and
Coverage C - Personal Property ...................... 9

## SECTION I - CONDITIONS

Your Duties After Loss ..................................... 11

## SECTION II - LIABILITY

Coverages:
Coverage E - Personal Liability ...................... 13
Coverage F - Medical Payments to Others ....... 13
Additional Coverages ....................................... 14

## SECTION II - EXCLUSIONS

Applying to Coverage E ..................................... 15
Applying to Coverage F ..................................... 15
Applying to Coverage E and F .......................... 15
Applying to Additional Coverages .................... 16

## SECTION II - CONDITIONS

Duties After Loss ............................................. 17

## GENERAL CONDITIONS

Applying to the Entire Policy .......................... 18

## RECIPROCAL PROVISIONS ................... 20

This policy is a legal contract between you (the policyholder) and us (the Company).
IT CONTAINS CERTAIN EXCLUSIONS.

READ YOUR POLICY CAREFULLY.

56-5036  4TH EDITION  4-89                 1                 G-02                CS036401

```
┌─────────────────────────────┐
│     THIS PAGE LEFT          │
│  INTENTIONALLY BLANK.       │
└─────────────────────────────┘
```

## AGREEMENT

We will provide the insurance described in this policy. In return you will pay the premium and comply with all policy conditions.

## DEFINITIONS

Throughout this policy, "you" and "your" mean the "named insured" shown in the Declarations and spouse if a resident of the same household. "We," "us" and "our" mean the Company named in the Declarations which provides this insurance. In addition, certain words appear in bold type. They are defined as follows:

1. **Actual Cash Value** - means fair market value of the property at the time of loss.
2. **Aircraft** - means any device used or designed for flight including self-propelled missiles and spacecraft, except model or hobby aircraft not used or designed to carry people or cargo.
3. **Annual aggregate limit** - means the total amount we will pay for all **occurrences** which happen in each 12 month period, beginning with the inception date of this policy, regardless of the number of such **occurrences.**
4. **Bodily injury** - means bodily harm, sickness or disease, including care, loss of services and death resulting from that injury.
5. **Business** - means any full or part-time trade, profession or occupation.
6. **Business property** - means property pertaining to or intended for use in **business.**
7. **Earthquake** - means shaking or trembling of the earth, whether caused by volcanic activity, tectonic processes or any other cause.
8. **Earth Movement** - means movement of earth, including, but not limited to the following:
   a. **earthquake,** landslide or mudflow, all whether combined with **water** or not.
   b. collapse, settling, cracking, shrinking, bulging, subsidence, erosion, sinking, rising, shifting, expanding, or contracting of earth, all whether combined with **water** or not.
   c. volcanic eruption, including explosion, lava flow and volcanic action.
9. **Insured** - means you and the following persons if permanent residents of your household:
   a. your relatives,
   b. anyone under the age of 21,

   Under Section II - Liability, **insured** also means:
   c. any **person** or organization legally responsible for animals or watercraft owned by you, or anyone included in 9a or 9b, and covered by this policy. Any **person** or organization using or having custody of these animals or watercraft in the course of any **business** or without permission of the owner is not an **insured.** However, this definition does not apply to Section II - Liability, Additional Coverage 5, *Workers' Compensation and Employers' Liability.*
   d. any **person** while employed by you or anyone in 9a or 9b with respect to any vehicle covered by this policy.
10. **Insured location** - means:
    a. the **residence premises;**
    b. any other premises you acquire during the policy period for use as a residence;
    c. that part of any other premises shown in the Declarations which you use as a residence;
    d. any premises you use in connection with the premises included in 10a, 10b or 10c.
    e. that part of a premises not owned by any **insured** but where an **insured** is temporarily residing.
    f. that part of a premises occasionally rented to any **insured** for non-**business** purposes.
    g. vacant land, other than farm land, owned by or rented to any **insured** and shown in the Declarations.
    h. land owned by or rented to you and on which you are building a one or two family dwelling to be used as your residence.
    i. cemetery plots or burial vaults of an **insured.**
11. **Motor vehicle** - means:
    a. a motorized land vehicle, including a trailer, semi-trailer or motorized bicycle, designed for travel on public roads.
    b. any vehicle while being towed or carried on a vehicle described in 11a.
    c. any other motorized land vehicle designed for recreational use off public roads.

S6-5026 4TH EDITION 4-89                                    3                              6-02                        CS036403

None of the following is a **motor vehicle.**

    a. a motorized golf cart while on the golf course and used for golfing purposes.

    b. a motorized land vehicle, not subject to **motor vehicle** registration, used only on an **insured location.**

    c. any watercraft or camp, home or utility trailer *not* being towed or carried on a vehicle described in 11a.

12. **Nuclear hazard** - means nuclear reaction, radiation, radioactive contamination, or any result of these. This includes the negligent, defective or improper design, construction or maintenance of a nuclear facility, or any other act or omission which results in a **nuclear hazard.**

13. **Occurrence** means an accident including exposure to conditions which results during the policy period in **bodily injury** or **property damage.** Repeated or continuous exposure to the same general conditions is considered to be one **occurrence.**

    **Occurrence** does not include accidents or events which take place during the policy period which do not result in **bodily injury** or **property damage** until after the policy period.

14. **Person** or **persons** - means and includes you and any other individual, group, corporation, company, firm, association, partnership, trust, estate or governmental body, or any other legal entity.

15. **Property Damage** - means physical injury to or destruction of tangible property covered by this policy and resulting loss of use.

16. **Residence Employee** - means an employee of an **insured** whose duties pertain to the ownership, maintenance, or use of the **residence premises.** This includes the performance of household domestic services, or the performance of similar duties elsewhere which do not pertain to **business** pursuits of an **insured.**

17. **Residence Premises** - means the one or two family dwelling and separate structures or that part of any other building where you reside, and which is shown in the Declarations. Under Section ll - Liability, **residence premises** includes the grounds on which the dwelling and separate structures are located.

18. **Water** - means water (H2O) alone, whether frozen or not or any liquid or sludge which contains **water**, whether or not combined with other chemicals or impurities.

19. **Water damage** - means loss caused by, resulting from, contributed to or aggravated by any of the following, whether occurring on or away from the **residence premises:**

    a. **Water** from rain or snow, surface **water**, flood, waves, tidal **water**, overflow or escape of a body of **water**, or spray from any of these, whether or not driven by wind;

    b. **water** which backs up through sewers or drains;

    c. **water** which escapes from any system designed to drain **water** away from the dwelling or **residence premises,** including but not limited to roof gutters, downspouts, sump-pumps, sump-pump wells, leach fields, seepage pits, septic tanks or drainage channels;

    d. **water** below ground level whether occurring naturally or not, including **water** which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, wall, foundation, swimming pool or any portion of the **residence premises.**

## SECTION I - PROPERTY

### Coverages
### Coverage A - Dwelling

We cover:

1. The dwelling, including attached structures, on the **residence premises** used principally as your private residence.

2. Material and supplies on or adjacent to the **residence premises** for use in construction of the dwelling or other structures on the **residence premises.**

    Wall-to-wall carpeting attached to the dwelling is part of the dwelling.

    We do not cover land or the value of land, including land on which the dwelling is located, or the cost to restore, replace, repair or rebuild land. If a covered loss causes damage to the dwelling and to the land on the **residence premises** we do not cover any increased cost to repair or rebuild the dwelling because of damage to the land.

### Coverage B - Separate Structures

We cover other structures on the **residence premises** separated from the dwelling, or connected to the dwelling by only a fence, utility line, sidewalk, driveway, patio or similar connection.

Wall-to-wall carpeting attached to the structure is part of the structure.

We do not cover land or the value of land, including land on which the separate structure is located or the cost to restore, replace, repair or rebuild land. If a covered loss causes damage to a separate structure and to the land on the **residence premises**, we do not cover any increased cost to repair or rebuild the separate structure because of damage to the land.

We do not cover separate structures which are intended for use in **business** or which are actually used in whole or in part for **business** purposes.

## Coverage C - Personal Property

We cover personal property owned or used by an **insured** while it is anywhere in the world. At your request after a loss we will also cover personal property:

a.  owned by others while the property is on the part of the **residence premises** occupied by an **insured**. However, property of tenants not related to the **insured** is not covered.

b.  owned by a guest while the property is in any residence occupied by an **insured**.

c.  owned by and in the physical custody of a **residence employee** while in the service of an **insured** anywhere in the world.

## Special Limits On Certain Personal Property

The limits shown below do not increase the Coverage C limit of insurance shown in the Declarations. The limit for each numbered group is the total limit for any one loss for all property in that group.

1.  $1000 or 10% of Coverage C limit (whichever is greater) on personal property usually located at an **insured's** residence, other than the **residence premises**.

    This limit does not apply to personal property in a newly acquired principal residence for 45 days after moving begins.

2.  $100 on money, bank notes, medals, coins, bullion, platinum, gold and silver other than goldware and silverware, and collections of all such property.

3.  $1,000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamp collections.

4.  $1,000 on watercraft, and windsurfers, including their trailers, furnishings, equipment and outboard motors.

5.  $1,000 on trailers not used with watercraft.

6.  Jewelry, watches, precious and semi-precious stones, and furs, including articles for which fur represents the principal value, are insured for accidental direct physical loss or damage. The following exclusions and limitations apply:

    a.  on loss caused by theft, $1,000 on any one article and $2,500 total limit.

    b.  on loss caused by perils named under Coverage C of this policy other than theft, the limit shown in the Declarations for Coverage C will apply.

    c.  on loss caused by perils not named and not excluded in this policy, $1,000 on any one article and $2,500 total limit.

    d.  We do not cover loss or damage resulting from any process of refinishing, renovating, repairing, restoration or retouching; moths, vermin, insects, wear and tear, deterioration, inherent defects or faulty manufacturing.

7.  $2,500 on theft of silverware, goldware and pewterware, including articles for which such metal represents the principal value.

8.  firearms are insured for accidental direct physical loss or damage. The following exclusions and limitations apply:

    a.  $1,000 on loss caused by theft.

    b.  on loss caused by perils named under Coverage C of this policy other than theft, the limit shown in the Declarations for Coverage C will apply.

    c.  $1,000 on loss caused by perils not named and not excluded in this policy.

    d.  We do not cover loss or damage resulting from any process of refinishing, renovating, repairing, restoration or retouching; dampness or extremes in temperatures; vermin, insects, wear and tear, deterioration, inherent defects, faulty manufacturing, rust, fouling or explosion; marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances.

9. $200 on **business property,** not including electronic data processing equipment or the recording or storage media used with such equipment.
10. $2,500 on theft of any imported rugs or carpets, even if such items are considered art work or used as decoration. Imported means made or manufactured in whole or in part outside of the United States.
11. $5,000 on electronic data processing equipment and accessories including recording or storage media used with such equipment, whether or not it is **business property;** however, if it is **business property,** the equipment or media must be located on the **residence premises** at the time of loss to qualify for this coverage. Recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market is not covered.

## PERSONAL PROPERTY NOT COVERED

We do not cover:
1. Personal property separately described and specifically insured in this or any other policy;
2. Animals, birds or fish;
3. **Motor vehicles,** including their parts or accessories while in or on any **motor vehicle.**
4. Any sound equipment operated from the electrical system of any **motor vehicle,** motorized land conveyances, watercraft, camp or home trailers while such equipment is in, on, or installed in a **motor vehicle,** motorized land conveyance, watercraft, camp or home trailer. This equipment includes: citizen band radios, radio or cellular telephones, radio transceivers, radio transmitters, two-way mobile radios, scanning monitor receivers, radar detectors, car radio receivers, tape or disc players and recorders and any accessories or antennas, or any tapes, discs, reels, cassettes, cartridges, carrying cases or other devices used with such sound equipment.
5. **Aircraft,** including their parts or equipment.
6. Property in an apartment on the **residence premises** which is regularly rented or held for rent to others by an **insured.**
7. Property away from the **residence premises** rented or available for rent to others by an **insured.**

## COVERAGE D - LOSS OF USE

The limit of insurance for Coverage D is the total limit for all the following coverages:

1. *Additional Living Expense.* If a covered property loss makes the **residence premises** unfit to live in, we cover the necessary increase in living expense incurred by you so that your household can maintain its normal standard of living. We pay for the shortest time needed to (a) repair or replace the damaged property, or (b) permanently relocate, but in no event for more than 12 months.
2. *Loss of Rents.* If a covered property loss makes that part of the **residence premises** rented to others or held for rental by you unfit to live in, we cover the loss of rents less any expense that does not continue during the loss period. We pay for the shortest time needed to (a) repair or replace the damaged property, or (b) permanently relocate the rental premises, but in no event for more than 12 months. Loss of rents due to cancellation of a lease or agreement is not covered.
   The time period in 1 and 2 above is not limited by expiration of this policy.
3. *Prohibited Use.* If a civil authority prohibits you from use of the **residence premises** because of direct damage to neighboring premises by a loss which would have been covered under SECTION I - PROPERTY COVERAGES if it occurred on the **residence premises,** we cover the resulting additional living expense or loss of rents for not more than two weeks during which use is prohibited.
   No deductible applies to 1, 2, or 3 above.

## ADDITIONAL COVERAGES

1. *Debris Removal.* We pay for reasonable debris removal expense following a loss covered under SECTION I - PROPERTY. If the amount of loss, including debris removal expense, exceeds the limit of insurance, we pay up to an additional 5% of the limit of insurance of the damaged property.
2. *Emergency Repairs.* We pay the cost you incur for necessary emergency repairs made solely to protect covered property from further damage if a loss covered under SECTION I - PROPERTY causes the damage. This coverage does not increase the limit of insurance applying to the property being repaired.
3. *Trees, Shrubs, Plants and Lawns.* We cover trees, shrubs, plants and lawns on the **residence premises** for loss caused by the following perils: fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned or operated by any **insured,** vandalism and theft. Property grown for **business** purposes is not covered.

The limit of insurance, including debris removal, for any one loss will not exceed 5% of the limit applying to the dwelling, nor more than $500 for any one tree, shrub or plant. This coverage is in addition to the limit applying to the dwelling.

4. *Fire Department Service Charge.* We pay up to $500 as an additional amount of insurance for service charges made by a fire department when called to protect covered property from an insured loss. In no event will we pay more than $500 in charges resulting from any one service call. No deductible applies to this coverage.

5. *Emergency Removal of Property.* We pay for direct loss from any cause to covered property:
   a. while being removed from a premises endangered by a loss covered under LOSSES INSURED, and
   b. while removed for not more than 30 days from the date of removal.

   This coverage does not change the amount of insurance applying to the covered property.

6. *Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.* We pay up to $1,500 as an additional amount of insurance for loss to an **insured** caused by:
   a. theft or unauthorized use of credit or fund transfer cards issued to an**insured.**
   b. forgery or alteration of a check or other negotiable instrument.
   c. acceptance in good faith of counterfeit United States or Canadian paper money.

   No deductible applies to a, b or c above.

   We do not cover:
   a. **business** pursuits or dishonest acts of any **insured.**
   b. use of any card by a resident of your household or any **person** entrusted with any card if an **insured** has not met the terms under which such card is issued.

   Defense of a claim or suit against any **insured** or any **insured's** bank for liability under this coverage:
   a. We may investigate and settle any claim or suit we consider proper. Our duty to defend any claim or suit ends when we pay a loss equal to the limit of insurance.
   b. We defend at our expense and with attorneys of our choice a claim made or suit brought against any **insured** for payment under Credit or Fund Transfer Card Coverage.
   c. At our option and expense we may defend the **insured** or the **insured's** bank against a suit to enforce payment under Forgery Coverage.

7. *Collapse of Buildings.* We cover accidental direct physical loss to covered property covered in A and B if caused by collapse which occurs due to:
   a. weight of ice, snow, sleet or rain which collects on a roof;
   b. weight of people, contents or equipment while on a roof.

8. *Freezer Food Spoilage.* We will pay for the cost of loss or damage to food in a freezer on the **residence premises** which thaws due to interruption of power or other utility service which originates off the**residence premises.**

9. *Guaranteed Replacement Cost Coverage - Buildings.* We will settle covered loss to buildings under Coverage A - Dwelling and Coverage B - Separate Structures at replacement cost regardless of the limits of insurance shown on the Declarations Page, subject to the following provisions:
   a. You have insured your dwelling and separate structures to 100% of their replacement cost as determined by our Building Replacement Cost Guide.
   b. You have accepted each annual adjustment in building amounts in accordance with Value Protection Clause in the policy.
   c. You have notified us within 90 days of the start of any physical changes which increase the value of your insured buildings by $5,000 or more, and pay any additional premium. This includes any new structures and any additions to or remodeling of your dwelling or other structures on the**residence premises.**
   d. You have complied with all of the "Loss Settlement" provisions shown in Condition 3 of Section I of the policy applicable to Coverages A and B.

   We do not cover any costs required to replace, rebuild, stabilize or otherwise restore the land.

## LOSSES INSURED

### Coverage A - Dwelling

### Coverage B - Separate Structures

We insure for accidental direct physical loss to property described in Coverage A and B, except as provided in **Section I - Losses Not Insured.**

## Coverage C - Personal Property

We insure for accidental direct physical loss to property described in Coverage C, but only if caused by one or more of the following perils:

1. Fire or lightning.
2. Windstorm or hail. This peril does not include loss to property contained in a building if the loss is caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.
   This peril includes loss to watercraft and their trailers, furnishings, equipment and outboard motors but only while inside a fully enclosed building.
3. Explosion.
4. Riot or civil commotion, including direct loss from looting.
5. **Aircraft.**
6. Vehicles.
7. Smoke, if loss is sudden and accidental.
8. Vandalism.
9. Theft, including attempted theft and loss of property from a known location when it is likely that the property has been stolen.
   Personal property placed in these locations for safekeeping is considered to be on the **residence premises**: banks, trust, or safe deposit company, public warehouse or an occupied dwelling not owned, occupied or rented to an **insured.**
   This peril does not include loss caused by theft:
   a. committed by any **insured;**
   b. committed by any **person** regularly residing on the **insured location.** However, theft committed by a **residence employee** is covered;
   c. in or to a dwelling under construction or of construction materials and supplies until the dwelling is completed and occupied;
   d. from any part of a **residence premises** rented to others;
   e. at any other dwelling or premises owned, occupied by or rented to any **insured** unless an **insured** is temporarily residing there. Property of a student **insured** is covered at a residence away from home if the student has been there at any time 45 days before the loss;
   f. of watercraft and their equipment, campers and trailers away from the **residence premises.**
   Theft does not include property taken by someone who claims a right to such property under a written or oral agreement with any **insured** unless a court rules that a theft did occur.
10. Falling objects. This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included. This peril does not include loss caused by objects which fall as a result of any loss excluded under **SECTION I - LOSSES NOT INSURED.**
11. Weight of ice, snow or sleet which causes damage to property contained in a building.
12. Collapse of a dwelling or any part of a dwelling, if the collapse itself was caused by a loss not excluded under **SECTION I - LOSSES NOT INSURED.**
13. Sudden and accidental discharge or overflow of **water** or steam from within a plumbing, heating or air conditioning system, or from within a household appliance, but not for deterioration, rust, mold, wet or dry rot due to the presence of **water** over a period of time.
    This peril does not include loss:
    a. to the system or appliance from which the **water** or steam escaped;
    b. caused by or resulting from freezing;
    c. to personal property on the **residence premises** when the sudden and accidental discharge or overflow occurs away from the **residence premises;**
    d. caused by sudden and accidental discharge or overflow from roof gutters, downspouts, sump-pumps, sump-pump wells, leach fields, seepage pits, septic tanks, drainage channels or any other device used to drain **water** away from the **residence premises.**

14. Sudden and accidental tearing apart, cracking, burning or bulging of a steam, hot water or air conditioning system, or appliance for heating **water**.
This peril does not include loss caused by or resulting from freezing.

15. Freezing of a plumbing, heating, air conditioning system or household appliance.
This peril does not include loss on the **residence premises** while the dwelling is unoccupied *unless* you have used reasonable care to:
a. maintain heat in the building, or
b. shut off the **water** supply and drain the system and appliance of **water**.

16. Sudden and accidental damage from artificially generated electrical current.
This peril does not include loss to a tube, transistor, microchip or similar electronic component.

## SECTION I - LOSSES NOT INSURED

Applying to Coverage A and B - Dwelling and Separate Structures and Coverage C - Personal Property

We do not insure for loss either consisting of, or caused directly or indirectly by:

1. **Earth Movement.**
Acts or omissions of **persons** can cause, contribute to or aggravate **earth movement**. Also, **earth movement** can occur naturally to cause loss, or combine with acts or omissions of **persons** to cause loss. Whenever **earth movement** occurs, the resulting loss is always excluded under this policy, however caused; except we do cover direct loss by fire or explosions resulting from **earth movement**.

The following examples are set forth to help you understand this exclusion and are not meant to be all-inclusive.

**EXAMPLE 1:**
Rain falls on soil inadequately compacted or maintained by a builder, neighbor or you. As a result, **earth movement** occurs, causing loss to the dwelling or personal property. Such loss is not covered by this policy.

**EXAMPLE 2:**
Cracks occur in your dwelling or separate structure because it is built on natural or fill soil which is expansive and the dwelling or structure is not designed or constructed to withstand the soil movement. Such loss is not covered under this policy.

**EXAMPLE 3:**
**Water** leaks from a pipe which causes settling, and the settling causes loss to the dwelling, separate structure, or personal property. Such loss is not covered by this policy, regardless of the cause or causes of the **water** leak.

2. **Water damage.**
Acts or omissions of **persons** can cause, contribute to or aggravate **water damage**. Also **water damage** can occur naturally to cause loss or combine with acts or omissions of **persons** to cause loss. Whenever **water damage** occurs, the resulting loss is always excluded under this policy, however caused; except we do cover direct loss to the dwelling, separate structures, or personal property if caused by fire or explosion resulting from **water damage**.

The following examples are set forth to help you understand this exclusion and are not meant to be all-inclusive.

**EXAMPLE 1:**
Rain **water** collects on or soaks into the ground surface. Because of faulty design, construction or maintenance of the **residence premises**, your neighbor's property or **water** diversion devices, the **water** causes loss to the dwelling, separate structure, or personal property. Such loss is not covered by this policy.

**EXAMPLE 2:**
A pipe under your sink breaks, and **water** damages your wallpaper, carpeting and personal property. The **water** also gets under the dwelling or separate structure causing **earth movement** which results in cracking of the foundation and walls. The loss to the wallpaper, carpeting and personal property is covered, but the loss to the foundation and walls is not covered by this policy.

**EXAMPLE 3:**
**Water** which has backed up through sewers or drains, or **water** below ground level causes loss to the dwelling, separate structure or personal property. Such loss is not covered by this policy.

3. **Nuclear Hazard.**

   Acts or omissions of **persons** can cause, contribute to or aggravate **nuclear hazard.** Also, **nuclear hazard** can occur naturally to cause loss, or combine with acts or omissions of **persons** to cause loss. Whenever **nuclear hazard** occurs, the resulting damage is always excluded under this policy, however caused; except we do cover direct loss by fire resulting from **nuclear hazard.**

   Acts or omissions of **persons** can cause, contribute to or aggravate the losses set forth in items 4-13 below. Also, these losses could occur naturally or combine with acts or omissions of **persons.** Whenever the losses listed in items 4-13 occur, the resulting loss is always excluded, however caused, unless specifically indicated otherwise.

4. Faulty, inadequate or defective planning, zoning, development, surveying, siting, design, specifications, workmanship, construction, grading, compaction, maintenance repair materials, construction, remodeling, or maintenance of part or all of any property (including land, structures or any improvements) whether on or off the **residence premises.** However, we do cover ensuing loss by fire, explosion or sudden and accidental discharge of **water. Earth movement** is never covered under this policy, however caused.

5. Enforcement of any ordinance or law regulating construction, repair or demolition of a building or other structure, unless endorsed to this policy.

   We do cover loss caused by order of civil authorities to prevent the spread of fire from a covered loss.

6. Interruption of power or other utility service which originates off the **residence premises.** If a covered loss ensues *on* the **residence premises** we pay only for loss caused by the ensuing peril.

7. Neglect of an **insured** to use all reasonable means to protect covered property at and after the time of loss, or when property is endangered by a covered loss under **SECTION I - Property Coverage.**

8. War, including undeclared war, civil war, insurrection, rebellion, revolution or warlike act by military personnel. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

9. Freezing of and any resulting discharge, leakage or overflow from a plumbing, heating, air-conditioning system or household appliance while the dwelling is vacant or unoccupied *unless* you have used reasonable care to:
   a. maintain heat in the building, or
   b. shut off the **water** supply and drain the system and appliance of **water.**

10. Freezing, thawing or pressure of **water** or ice, whether wind driven or not to a fence, pavement, patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock.

11. Theft in or to a dwelling under construction, or of construction materials if the dwelling has been vacant for more than 30 days just before the loss. A dwelling under construction is not considered vacant.

12. Vandalism, breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 days just before the loss. A dwelling under construction is not considered vacant.

13. a. wear and tear, marring, deterioration;
    b. mechanical breakdown;
    c. birds, insects, vermin, rodents, or domestic animals;
    d. rust, mold, wet or dry rot;
    e. smog, smoke from agricultural smudging or industrial operations;
    f. release, discharge or dispersal of contaminants, pollutants, insecticides, or hazardous gasses or chemicals;
    g. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings.
    h. pressure from any root system to a foundation, patio, pavement, wall, driveway, or fence;
    i. soil conditions, including but not limited to corrosion, erosion, chemicals, compounds, elements, suspensions or gels in the soil or the formation of crystals in the soil.

    If any of the perils listed in a - i above cause **water** to escape suddenly and accidentally from a plumbing, heating, or air conditioning system or household appliance, we cover loss not otherwise excluded to the dwelling or separate structure caused by **water** but not for deterioration, rust, mold, wet or dry rot due to the presence of **water** over a period of time. If loss is caused by **water** or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the dwelling or separate structure necessary to repair the system or appliance. We do not cover the system or appliance from which the **water** or steam escaped.

    If any of the perils listed in a - i above cause a fire or explosion, we cover direct loss by such fire or explosion.

    **Earth Movement** is never covered under this policy, however caused.

## SECTION I - CONDITIONS

1. *Insurable Interest and Limit of Insurance.*

   Even if more than one **person** has an insurable interest in the covered property, we pay the smallest of the following amounts.

   a. an amount equal to the **insured's** interest, or

   b. the applicable limit of insurance.

2. *Your Duties After Loss.*

   If a covered loss occurs, you will perform the following duties:

   a. give written notice to us or our agent without unnecessary delay. In case of theft, also notify the police. In case of loss under the Credit or Fund Transfer Card Coverage, also notify the issuer of the card.

   b. protect the property from further damage. Make any emergency repairs needed to protect the property from further damage. Keep records of repair costs.

   c. make a list of all damaged or destroyed personal property showing in detail the quantity, description, **actual cash value** and amount of loss. Attach all bills, receipts and related records that support your figures.

   d. as often as we reasonably require:

   (1) exhibit damaged property.

   (2) provide us with records and documents we may request, including banking or other financial records, if obtainable, and permit us to make copies.

   (3) submit to examination under oath and sign a transcript of same.

   e. send us within 60 days after our request your signed sworn statement showing:

   (1) time and cause of loss,

   (2) interest of the **insured** and all others in the property involved,

   (3) all legal claims against the property involved,

   (4) other insurance which may cover the loss,

   (5) changes in title or occupancy of the property during the term of the policy,

   (6) specifications and detailed repair estimates of any damaged building,

   (7) a list of damaged or destroyed personal property described in 2c,

   (8) receipts and records that support additional living expenses and loss of rents,

   (9) evidence which states the amount and cause of loss to support a claim under Credit or Fund Transfer Card, Forgery and Counterfeit Money Coverage.

3. *Loss Settlement.*

   *Coverage A and B*

   Covered loss to Buildings under Coverage A and B will be settled at replacement cost without deduction for depreciation, subject to the following methods:

   (1) Settlement under replacement cost will not be more than the *smallest* of the following:

   (a) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises.

   (b) the amount actually and necessarily spent to repair or replace the building intended for the same occupancy and use.

   (2) When the cost to repair or replace is *more* than $1,000 or *more* than 5% of the limit of insurance in this policy on the damaged or destroyed building, whichever is less, we will pay no more than the **actual cash value** of the damage *until* repair or replacement is completed.

   (3) At your option, you may make a claim under this policy on an **actual cash value** basis for loss or damage to buildings. Within 180 days after loss you may make a claim for any additional amount on a replacement cost basis if the property has been repaired or replaced.

   *Coverage C -*

   a. The following types of property will be settled at full current cost of repair or replacement at the time of loss, without deduction for depreciation.

   (1) personal property and structures that are not buildings.

   (2) carpeting, domestic appliances, awnings, outdoor equipment and antennas, all whether or not attached to buildings.

We will pay the current cost of repair or replacement at the time of loss, on any one item or items of personal property, but not exceeding the smallest of the following amounts.

(1) 400% of the **actual cash value** at time of loss,
(2) Replacement cost at the time of loss,
(3) The full cost of repair to personal property.
(4) The limit of insurance of Coverage C.
(5) Any special limits stated in the policy or Declarations.

When the identical article is no longer manufactured or is not available, we will pay the cost of a new article similar to that damaged or destroyed and which is of comparable quality and usefulness.

You may make a claim on an **actual cash value** basis but such election shall not prejudice your right to make further claim under this replacement cost provision within 180 days after loss.

b. Covered loss to the following types of property will be settled at **actual cash value**. Payments will not exceed the amount necessary to repair or replace the damaged property, or the limit of insurance applying to the property, whichever is less.

(1) Property, the age or condition of which has rendered it obsolete or unusable for the purpose for which it was originally intended.
(2) Paintings, etchings, pictures, tapestries, art glass windows, or other bonafide works of art of rarity, historical value or artistic merit (such as valuable rugs, statuary, marble, bronzes, antique furniture, rare books, antique silver, manuscripts, porcelains, rare glass or bric-a-brac).
(3) Photographs or negatives, or to articles whose age or history contribute substantially to their value, including but not limited to memorabilia, souvenirs, and collector's items.

4. *Value Protection Clause.* We may increase the limit of insurance applying to Coverage A, B, C and D to reflect changes in costs of construction and personal property values. Any such increase will be made on the renewal date of this policy, or on the anniversary date of 3-year policies paid annually.

5. *Other Insurance.* If this and other insurance both apply to the same loss, we will pay our share. Our share will be the amount that this insurance bears to the total limit of all insurance applying to the loss, collectible or not.

6. *Deductible Clause.* We pay for loss to covered property less the Deductible amount shown in the Declarations. The deductible shown applies separately to each loss.

7. *Loss to a Pair or Set.* We may elect to:
   a. repair or replace any part of the pair or set to restore it to its value before the loss, or
   b. pay the difference between the **actual cash value** of the property before and after the loss.
   Loss to a part does not mean a total loss of the pair or set.

8. *Glass Replacement.* Glass damage caused by a loss covered under LOSSES INSURED will be replaced with safety glazing materials when required by law.

9. *Appraisal.* If you and we fail to agree on the amount of loss, either one may make a written demand for appraisal. Each party will choose an able and impartial appraiser and notify the other of the appraiser's name within 20 days after the demand is received. The appraisers will choose an impartial umpire. If the appraisers cannot agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to choose an umpire.
   The appraisers will then set the amount of loss. If the appraisers submit a written agreement to us, the agreed amount will be the amount of loss. If the appraisers cannot agree, they will submit their differences to the umpire. A written agreement signed by any two will set the amount of loss.
   Each party will pay the appraiser it chooses. The umpire and all other expenses of the appraisal will be paid equally by you and us.

10. *Permission Granted.*
    a. The **residence premises** may be vacant or unoccupied without limit of time, except where this policy states otherwise.
    b. You may make alterations, additions and repairs to the **residence premises** and complete structures under construction.

11. *Intentional Acts.* If any **insured** directly causes or arranges for a loss to covered property in order to obtain insurance benefits, this policy is void. We will not pay you or any other **insured** for this loss.

12. *Suit Against Us.* We may not be sued unless there has been full compliance with all the terms of this policy. Suit on or arising out of this policy must be brought within one year after the loss occurs.

13. *Our Options.* We may repair or replace the damaged property with equivalent property. We may also take all or part of the damaged property at the agreed or appraised value. We will give you written notice of our intention within 30 days after receipt of your signed sworn statement of loss.

14. *Loss Payment.* We will adjust all losses with you. We will pay you unless another payee is named in the policy. We will pay within 60 (30 if a fire loss) days after:
    a. we reach agreement with you, or
    b. a court judgment, or
    c. an appraisal award.

    A loss payment will not reduce the applicable limit of insurance.

15. *Abandoned Property.* We need not accept property abandoned by an **insured**.

16. *Mortgage Clause.* The word "mortgagee" includes trustee or loss payee. If a mortgagee is named in this policy, a covered loss will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of the mortgages.

    If we deny your claim, such denial will not apply to a mortgagee's valid claim if the mortgagee:
    a. knows and notifies us of any change of ownership, occupancy or substantial change in risk.
    b. pays on demand any premium due if you have failed to do so.
    c. submits a signed, sworn statement of loss within 60 days after we notify the mortgagee of your failure to do so.
       Policy conditions relating to *Other Insurance, Appraisal, Suit Against Us and Loss Payment* apply to the mortgagee.

    We will give the mortgagee 10 days notice before cancelling this policy.

    If we pay the mortgagee for any loss and deny payment to you:
    a. we have right of recovery against any party responsible for the loss, or
    b. at our option, we may pay off the entire mortgage debt to the mortgagee. In this event, we receive full transfer of the mortgage.

    A mortgagee's claim will not be impaired by transfer of a right of recovery.

17. *No Benefit to Bailee.* This insurance will not benefit any **person** or organization who may be caring for or handling property for a fee.

## SECTION II - LIABILITY

### Coverages

### Coverage E - Personal Liability

We pay those damages which an **insured** becomes legally obligated to pay because of **bodily injury, property damage** or personal injury resulting from an **occurrence** to which this coverage applies. Personal injury means any injury arising from:
    (1) false arrest, imprisonment, malicious prosecution and detention.
    (2) wrongful eviction, entry, invasion of rights of privacy.
    (3) libel, slander, defamation of character.
    (4) discrimination because of race, color, religion or national origin. Liability prohibited by law is excluded. Fines and penalties imposed by law are covered.

At our expense and with attorneys of our choice, we will defend an **insured** against any covered claim or suit. We are not obligated to pay defense costs, including attorneys' fees of any claim or suit where you select an attorney not chosen by us because there is a dispute between you and us over coverage. We may investigate and settle any claim or suit that we consider proper. Our obligation to defend any claim or suit ends once we have paid out limit of liability.

### Coverage F - Medical Payments To Others

We pay the necessary medical expenses for services furnished to a **person** other than you or any resident of your household within 3 years from the date of an **occurrence** causing **bodily injury**. Medical expenses mean reasonable charges for medical, surgical, x-ray and dental services, prosthetic devices, eyeglasses, hearing aids, pharmaceuticals, ambulance, hospital, licensed nursing and funeral services.

This coverage applies to:

(a) **persons** on the **insured location** with permission of an **insured**; or

(b) **persons** off the **insured location** if the **bodily injury:**
    (1) is the result of a condition on the **insured location** or the adjoining ways;
    (2) is caused by the activities of an **insured;**
    (3) is caused by a **residence employee** in the course of employment by an **insured;**
    (4) is caused by an animal owned by or in the care of an **insured.**

This coverage does not apply to **persons** injured as a result of their intentional acts.

## Additional Coverages

In addition to the limits of liability we pay the following:

1. *Claim Expenses.*

    We pay:
    a. all costs we incur in the settlement of a claim or defense of a suit with attorneys of our choice.
    b. premiums on bonds required in a suit we defend, but not for bond amounts greater than the Coverage E limit of liability. We are not obligated to apply for or furnish a bond.
    c. reasonable expenses incurred by an **insured** at our request to help us investigate or defend a claim or suit. These include loss of earnings (but not other income) of up to $60 per day.
    d. interest after entry of judgment on any amount that does not exceed our limit of liability.

2. *First Aid Expenses.* We pay necessary first aid expenses incurred by an **insured** at the time of an **occurrence** for **bodily injury** to others covered by this policy. We do not pay for first aid to you or any other **insured.**

3. *Damage to Property of Others.* At your request, we pay up to $500 per **occurrence** for **property damage** to property of others caused by an **insured.** Coverage applies when an **insured** is not legally liable for the damage.

4. *Loss Assessment Coverage.* We pay your share of any assessment levied against you during the policy period by a corporation or association of property owners up to $1,500 per **occurrence** as a result of:
    a. direct loss of the common property caused by a peril covered under Section I - Coverage A of this policy.
    b. an **occurrence** to which Section II of this policy would apply.
    c. loss by personal injury for which the corporation or association becomes liable.

5. *Workers' Compensation and Employers' Liability* - Coverage of Residence Employees.

    *Coverage I (Workers' Compensation)* - We pay all compensation and other benefits required of the **insured** under the Workers' Compensation Law for **residence employees.**

    *Coverage II (Employers' Liability)* - We pay all sums on your behalf which you become legally obligated to pay as benefits. Benefits are payable in the event of **bodily injury,** caused by accident or disease sustained by any **residence employee.** Such **bodily injury** is covered when it arises out of and in the course of the employee's employment by you while:
    a. in the United States of America, its territories or possessions, or Canada, or
    b. temporarily anywhere else in the world if the injured **residence employee** is a citizen or resident of the United States or Canada.

    *Limitations: Coverages I and II apply only to.*
    a. a **residence employee** who during the 90 calendar days immediately preceding the date of **bodily injury:**

        (1) has been employed by you for at least 52 hours, and

        (2) has earned at least one hundred dollars ($100) in wages from you.

    b. **bodily injury** to a **residence employee** which:

        (1) occurs during the policy period;

        (2) arises out of and in the course of employment and

        (3) occurs while the employee is exposed to conditions which produce a disability over a period of time.

## SECTION II - EXCLUSIONS
### Applying To Coverage E - Personal Liability

We do not cover:

1. Liability of an **insured** assumed under any contract or agreement relating to a **business** of an **insured**. Liability of **persons** other than an **insured** assumed under any contract or agreement, whether **business** or non-business, is not covered. Liability of any agreement between an **insured** and a corporation or association of property owners is not covered except as provided under Loss Assessment Coverage.
2. Punitive or exemplary damages or the cost of defense related to such damages.
3. **Property damage** to property owned by an **insured** or any other resident of your household.
4. **Property damage** to non-owned property in the care, custody or control of an **insured**. We do cover such damage caused by Fire, Smoke or Explosion.
5. **Bodily injury** to any **person** if an **insured** has or is required to have a policy providing workers' compensation, occupational disease or non-occupational disability benefits covering the **bodily injury.**
6. **Bodily injury** to any resident of the **residence premises** except a **residence employee** who is not covered under Workers' Compensation or Employers' Liability Coverage.
7. **Bodily injury** or **property damage** when an **insured** is covered under any nuclear energy liability policy. This exclusion applies even if the limits of that policy have been exhausted.
8. Personal injury caused by a violation of penal law or ordinance committed by or with the knowledge or consent of any **insured.**
9. Personal injury sustained by any **person** as a result of an offense directly or indirectly related to the employment of this **person** by the **insured.**
10. Personal injury arising from or during the course of civic or public activities performed for pay by an **insured.**
11. Personal injury to any resident of the **residence premises.**
12. Any loss, cost, or expense resulting from the clean-up, detoxification, or treatment of any site used by you or any **person** acting on your behalf for the disposal, storage, handling, processing or treatment of waste.

### Applying To Coverage F - Medical Payments To Others

We do not cover **bodily injury:**

1. To you or any resident of your **residence premises** except a **residence employee.**
2. To a **residence employee** who is off the **insured location** and not in the course of employment by an **insured.**
3. To any person eligible to receive benefits provided or mandated under any workers' compensation, occupational disease or non-occupational disability law.
4. Resulting from any **nuclear hazard.**

### Applying To Coverage E and F - Personal Liability and Medical Payments To Others

We do not cover **bodily injury, property damage** or personal injury which:

1. arises from or during the course of **business** pursuits of an **insured.**

   But we do cover:
   a. that part of a residence of yours which is rented or available for rent:
      (1) on an occasional basis for sole use as a residence.
      (2) to no more than two roomers or boarders for sole use as a residence.
      (3) as an office, studio or private garage.
   b. part-time services performed directly by an **insured** under age 21 who is a resident of your household. "Part-time" means no more than 20 hours per week.
2. results from the rendering or failure to render **business** or professional services.
3. is either:
   a. caused intentionally by or at the direction of an **insured;** or

   b. results from any **occurrence** caused by an intentional act of any **insured** where the results are reasonably foreseeable.

4. results from the legal liability of any **insured** because of home care services provided to any **person** on a regular basis by or at the direction of:

   a. any **insured**;

   b. any employee of any **insured**;

   c. any other **person** actually or apparently acting on behalf of any **insured.**

Regular basis means more than 20 hours per week.

This exclusion does not apply to:

   a. home care services provided to the relatives of any **insured**;

   b. occasional or part time home care services provided by any **insured** under 21 years of age.

5. results from an **insured** transmitting a communicable (including sexually transmitted) disease.

6. results from an existing condition on an uninsured location owned by or rented to an **insured.**

7. results from the ownership, maintenance, use, loading or unloading of:

   a. **aircraft**

   b. **motor vehicles**

   c. jet skis and jet sleds or

   d. any other watercraft owned or rented to an **insured** and which:

      (1) has more than 50 horsepower inboard or inboard-outdrive motor power; or

      (2) is powered by one or more outboard motors with more than 25 total horsepower; or

      (3) is a sailing vessel 26 feet or more in length.

Exclusions 7c, and d do not apply while jet skis, jet sleds or watercraft are stored.

Exclusions 7a, b, c, and d do not apply to **bodily injury** to a **residence employee** in the course of employment by an **insured.**

8. results from the entrustment of any **aircraft, motor vehicles,** jet skis, or jet sleds to any **person.** Entrustment means the permission you give to any **person** other than you to use any personal **aircraft, motor vehicles,** jet skis, or jet sleds owned or controlled by you.

9. results from the entrustment of watercraft described in 7d above.

10. is caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, or warlike act by military personnel. Discharge of a nuclear weapon, whether or not accidental, is deemed a warlike act.

11. arises out of the sale or transfer of real property including but not limited to the following:

   a. known or unknown property or structural defects;

   b. known or hidden defects in the plumbing, heating, and electrical systems.

   c. known or unknown soil conditions or drainage problems;

   d. concealment or misrepresentation of any known defects.

## Applying To Additional Coverages

1. Under *Damage to Property of Others* we do *not* cover damage:

   a. to property covered under Section I of this policy.

   b. to property owned by or rented to an **insured**, a tenant of an **insured**, or any resident of your household.

   c. purposely caused by an **insured** 13 years of age or older.

   d. arising out of:

      (1) **business** pursuits;

      (2) any act or omission relating to a premises owned, rented or controlled by an **insured**, other than the **insured location**;

      (3) the ownership, maintenance, loading or unloading or use of a **motor vehicle**, aircraft, jet ski, jet sled, or watercraft.

2. Under *Workers' Compensation and Employer's Liability* - Coverage of **Residence Employees**

We do not cover:

a. under Coverages I and II, liability arising from any person employed by his or her parent, spouse, or child.

b. under Coverages I and II, liability for additional compensation imposed on an **insured** under Sections 4553 and 4557, Division IV, Labor Code of the State of California, by reason of the serious and willful misconduct of an **insured** or any representative of an **insured** or by reason of injury to a **residence employee** under 16 years of age and illegally employed at the time of injury.

c. under Coverages I and II, liability for compensation due to a **residence employee** for injury or illness sustained while engaged in services in connection with the **business** of an **insured.**

d. under Coverage II, any suit brought in or any judgment rendered by any court outside the United States of America, its territories or possessions, or Canada, or to any action on such judgment.

e. under Coverage II, liability assumed by an **insured** under any contract or agreement.

f. under Coverage II, **bodily injury** by disease or resulting death unless a written claim is made or suit brought against an **insured** for damages within 36 months after the end of the policy period.

g. under Coverage II, any obligation for which an **insured** or that **person's** insurance company may be held liable under the Workers' Compensation Law of California, any other Workers' Compensation or Disability Benefits Law, or under any similar law.

## SECTION II - CONDITIONS

1. *Limit of Liability.* The Limit of liability shown in the Declarations for Coverage E is the **Annual Aggregate Limit.** This is the most we will pay in each 12 month policy period regardless of the number of:

a. **insureds;**

b. claims made or suits brought; or

c. **persons** making claims or bringing suits.

Subject to the **Annual Aggregate Limit,** the most we will pay under Coverage F for all medical expenses for **bodily injury** to one **person** in any one **occurrence** is the amount shown in the Declarations.

The amount of the **Annual Aggregate Limit** is the same as the per **occurrence** limit of Personal Liability as shown on the Declarations Page.

The **Annual Aggregate Limit** will be reinstated at each annual or anniversary date of this policy.

The **Annual Aggregate Limit** does not apply to Additional Coverage 5, *Workers' Compensation and Employers' Liability.*

Under Additional Coverage 5, *Employers' Liability,* Coverage II our total liability for all damages for **bodily injury** caused by accident or disease sustained by one or more **residence employees** of the **insured** will not exceed $100,000 for any one **occurrence.**

2. *Separate Insurance.* This insurance applies separately to each **insured.** This Condition does not increase our limit of liability for any one 12 month period.

3. *Duties After Loss.* In case of an **occurrence** the **insured** will perform the following duties:

a. give written notice to us or our agent as soon as possible stating:

(1) the policy number and name of **insured.**

(2) the time, place and circumstances of the **occurrence.**

(3) names and addresses of claimants and witnesses.

b. promptly send us any legal papers received relating to a claim or suit.

c. cooperate with and assist us in any matter relating to a claim or suit.

d. under *Damage to Property of Others Coverage,* send us a sworn statement of loss within 60 days of the loss. Also exhibit any damaged property which is within the **insured's** control.

e. the **insured** will not, except at the **insured's** own cost, voluntarily make any payment, assume any obligation or incur any expense except First Aid Expenses.

4. *Duties of an Injured Person - Coverage F - Medical Payments to Others.* The injured **person** or someone acting on behalf of the injured **person** will:

a. give us written proof of claim as soon as possible, under oath if required.

b. authorize us to obtain medical records and reports.

The injured **person** will submit to physical examination by a doctor we choose as often as we reasonably require.

5. *Payment of Claim - Coverage F - Medical Payments to Others.* Payment under this coverage is not an admission of liability by an **insured** or us.

6. *Suit Against Us.* We may not be sued unless there has been full compliance with the terms of this policy. No one has any right to make us a party to a suit to determine the liability of a **person** we insure. We may not be sued under Coverage E - Personal Liability until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. *Bankruptcy of an Insured.* Bankruptcy or insolvency of an **insured** will not relieve us of our duties under this policy.

8. *Other Insurance - Coverage E - Personal Liability.* This insurance is excess over any other valid and collectible insurance. But if other insurance is specifically written as excess coverage over this policy, the limit of this policy applies first.

   If other insurance is written by us, only the highest limit of any one policy applies to the loss.

   *Other Insurance - Additional Coverage 5 - Workers' Compensation and Employers' Liability.*

   This insurance does not apply to any loss with respect to which other valid and collectible Workers' Compensation or Employers' Liability Insurance applies.

9. *Provisions Applying to Additional Coverage 5 - Workers' Compensation and Employers' Liability.*

   a. We will be directly and primarily liable to any **residence employee** of an **insured** entitled to the benefits of the Workers' Compensation Law under this policy.

   b. When a **residence employee** incurs **bodily injury** and notifies you, this shall be deemed notice of knowledge on our part.

   c. The jurisdiction of an **insured** will, for the purpose of the law imposing liability for compensation, be our jurisdiction.

   d. We will be bound by and subject to the orders, findings, decisions or awards rendered against an **insured** under the provisions of the law imposing liability for compensation, subject to the provisions, conditions and limitations of the policy. This policy shall govern as between an **insured** and us as to payments by either in discharge of an **insured's** liability for compensation.

## GENERAL CONDITIONS

### Applying To The Entire Policy

1. *Entire Contract.* This policy, the Declarations and any endorsements include all the agreements between you and us relating to this insurance.

2. *Policy Period.* This policy applies only to loss under Section I or **bodily injury, property damage** or personal injury under Section II which occurs during the policy period as shown in the Declarations.

3. *Concealment or Fraud.* This entire policy is void if any **insured** has knowingly and willfully concealed or misrepresented any material fact or circumstance relating to this insurance before or after the loss.

4. *Coverage Changes.* We may change this policy or replace it to conform to coverage currently in use. If we broaden coverages without charge during or within 60 days prior to the policy period, the broadened coverage will apply immediately. If we restrict any coverages, these restrictions will not apply until the next renewal date. The change or new policy will be delivered to you or mailed to you at your mailing address shown on the Declarations at least 30 days before its effective date.

   No other change or waiver in this policy is valid except by endorsement, new Declarations, or new policy issued by us.

   If a premium adjustment is necessary, we will make the adjustment as of the effective date of the change.

5. *Cancellation.*

   a. You may cancel this policy by:

   (1) returning it to us, or

   (2) notifying us in writing when cancellation is to take effect.

b. We may cancel this policy by mailing or delivering written notice to you, or your representative. Such notice will be mailed or delivered to the last address known to us. The mailing of it will be sufficient proof of notice.

**Cancellation Reasons**

We may cancel this policy only for the following reasons:

(1) Non-payment of premium, whether payable to us or our agent. We may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

(2) Any reason, when this policy has been in effect for less than 60 days and is not a renewal with us. We shall notify you at least 10 days before the date cancellation takes effect.

If the policy period is longer than one year and has been in effect for 60 days or more we may cancel at the anniversary date for any reason. We will notify you at least 45 days before the cancellation takes effect.

(3) If this policy has been in effect for 60 days or more, or at anytime if it is a renewal with us, we may cancel only for one or more of the following reasons.

(a) You have been convicted of a crime having as one of its necessary elements an act increasing any hazard insured against.

(b) Discovery of fraud or material misrepresentation by the **insured** or the **insured's** representative in either obtaining this policy or pursuing a claim under this policy.

(c) Discovery of grossly negligent acts or omissions by the **insured** or the **insured's** representative which substantially increases any of the hazards insured against.

(d) Physical changes in the insured property which result in its becoming uninsurable.

We will notify you in writing at least 31 days before the cancellation takes effect.

c. Return of Premium:

Cancellation of or changes in this policy may result in a premium refund. If so we will send it to you within 30 days after the cancellation or change takes effect.

(1) If you cancel this policy, we will return the short rate unused share of the premium.

(2) If we cancel this policy, we will return the pro-rated unused share of the premium.

6. *Non-Renewal.*

We may elect:

a. not to renew this policy; or

b. to condition its renewal on a reduction of limits or a reduction or elimination of coverages.

We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 45 days before the expiration date of this policy. The mailing of it will be sufficient proof of notice.

If this policy is written for a period of less than one year we agree not to refuse to renew except at the end of an annual period beginning with the original or renewal effective date.

7. *Assignment.* Your interest in this policy may not be transferred to another **person** without our written consent. If you should die, we cover:

a. any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises.**

b. your legal representative, but only with respect to your premises and property covered under the policy at the time of death.

c. any **person** having proper custody of your insured property until a legal representative is appointed.

8. *Subrogation.* An **insured** may waive in writing before a loss all rights of recovery against any **person**. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us. If we seek an assignment, an **insured** will help us to secure these rights and do nothing to impair them.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. *Conflict of Terms.* If there are terms of this policy which conflict with laws of the state where issued, the terms are amended to conform to such statutes.

10. *Policy Fees.* (Applies only if policy is issued in Mid-Century Insurance Company.) If you pay a Policy Fee it is fully earned when the policy is issued. It is not part of the premium. It is not returnable. However, you may apply it as a credit toward policy fees required for other insurance accepted by us.

## RECIPROCAL PROVISIONS
### (Applicable Only If This Policy Is Issued By The Fire Insurance Exchange Or Farmers Insurance Exchange)

This policy is made and accepted in consideration of your premium payment to us. It is also in consideration of the power of attorney you signed as part of your application and the information you gave to us on your application. Some of your statements actually become a part of the policy which we call "The Declarations."

When you signed the power of attorney authority on your application, you authorized the Underwriters Association to execute interinsurance policies between you and other subscribers.

Nothing in this policy is intended, or shall be construed, to create either:

1. A partnership or mutual insurance association.

2. Any joint liability.

We may sue or be sued in our own name, as though we were an individual, if necessary to enforce any claims which arise under this policy. In any suit against us, service of process shall be upon the Underwriters Association, Attorney-in-Fact.

Membership fees which you pay are not part of the premium. They are fully earned when you are granted membership and coverage is effective. They are not returnable. However, they may be applied as a credit to membership fees required of you for other insurance which we agree to write.

We hold the Annual Meeting of the members of the Fire Insurance Exchange at our Home Office at Los Angeles, California, on the first Monday following the 15th day of March of each year at 10:00 a.m. If this policy is issued by the Farmers Insurance Exchange, we hold such meeting at the same place on the same day each year at 2:00 p.m.

The Board of Governors may elect to change the time and place of the meeting. If they do so, you will be mailed a written or printed notice at your last known address at least ten (10) days before such a time. Otherwise, no notice will be sent to you.

The Board of Governors shall be chosen by subscribers from among yourselves. This will take place at the Annual Meeting or at any special meeting which is held for that purpose. The Board of Governors shall have full power and authority to establish such rules and regulations for our management as are not inconsistent with the subscriber's agreements.

Your premium for this policy and all payment made for its continuance shall be payable to us at our Home Office or such location named by us in your premium invoice.

The funds which you pay shall be placed to your credit on our records. They will be applied to the payment of your proportion of losses and expenses and to the establishment of reserves and general surplus. The Board of Governors or its Executive Committee has the authority to deposit, withdraw, invest, and reinvest such funds. You agree that any amount which the Board of Governors allocates to our surplus fund may be retained by us. Also, after provision is made for all of our liabilities, it may be applied to any purpose deemed proper and advantageous to you and other policyholders.

This policy is non-assessable.

This policy shall not be effective unless countersigned on the Declarations Page by a duly authorized representative of the Company named on the Declarations.

The Company named on the Declarations has caused this policy to be signed by the Officers shown below.

**FIRE INSURANCE EXCHANGE®**
by Fire Underwriters Association,
Attorney-in-Fact
**FARMERS INSURANCE EXCHANGE®**
by Farmers Underwriters Association,
Attorney-in-Fact
**MID-CENTURY INSURANCE COMPANY®**

*Secretary*                                                        *Vice President*

56-6036  4TH EDITION  4-89                    20                    G-02                    C503040K

The endorsement shown below applies only if indicated in the Declarations.

Further, it applies only to buildings insured under Coverages A and B. As to Coverages A and B, it replaces the Mortgage Clause in Section I Conditions of the Policy.

Form 438BFU NS

## LENDER'S LOSS PAYABLE ENDORSEMENT   (Rev. May 1, 1942) x

1. Loss or damage, if any, under this policy, shall be paid **to the Payee named in the Declarations of this policy,** its successors and assigns, hereinafter referred to as "the Lender", in whatever form or capacity its interests may appear and whether said interest be vested in said Lender in its individual or in its disclosed or undisclosed fiduciary or representative capacity, or otherwise, or vested in a nominee or trustee of said Lender.

2. The insurance under this policy, or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and assigns, shall not be invalidated nor suspended: (a) by any error, omission, or change respecting the ownership, description, possession, or location of the subject of the insurance or the interest therein, or the title thereto; (b) by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage or trust deed; (c) by any breach of warranty, act, omission, neglect, or non-compliance with any of the provisions of this policy, including any and all riders now or hereafter attached thereto, by the named insured, the borrower, mortgagor, trustor, vendee, owner, tenant, warehouseman, custodian, occupant, or by the agents of either or any of them or by the happening of any event permitted by them or either of them, or their agents, or which they failed to prevent, whether occurring before or after the attachment of this endorsement, or whether before or after a loss, which under the provisions of this policy of insurance or of any rider or endorsement attached thereto would invalidate or suspend the insurance as to the named insured, excluding herefrom, however, any acts or omissions of the Lender while exercising active control and management of the property.

3. In the event of failure of the insured to pay any premium or additional premium which shall be or become due under the terms of this policy or on account of any change in occupancy or increase in hazard not permitted by this policy, this Company agrees to give written notice to the Lender of such non-payment of premium after sixty (60) days from and within one hundred and twenty (120) days after due date of such premium and it is a condition of the continuance of the rights of the Lender hereunder that the Lender when so notified in writing by this Company of the failure of the insured to pay such premium shall pay or cause to be paid the premium due within ten (10) days following receipt of the Company's demand in writing therefor. If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.

4. Whenever this Company shall pay to the Lender any sum for loss or damage under this policy and shall claim that as to the insured no liability therefor exists, this Company, at its option, may pay to the Lender the whole principal sum and interest and other indebtedness due or to become due from the insured, whether secured or unsecured, (with refund of all interest not accrued), and this Company, to the extent of such payment, shall thereupon receive a full assignment and transfer, without recourse, of the debt and all rights and securities held as collateral thereto.

5. If there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the Lender. Any Contribution Clause included in any Fallen Building Clause Waiver or any Extended Coverage Endorsement attached to this contract of insurance is hereby nullified, and also any Contribution Clause in any other endorsement or rider attached to this contract of insurance is hereby nullified except Contribution Clauses for the compliance with which the insured has received reduction in the rate charged or has received extension of the coverage to include hazards other than fire and compliance with such Contribution Clause is made a part of the consideration for insuring such other hazards. The Lender upon the payment to it of the full amount of its claim, will subrogate this Company (pro rata with all other insurers contributing to said payment) to all of the Lender's rights of contribution under said other insurance.

25-4160 10-95                        *(Continued Next Page)*                        A4160101

6. This Company reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and shall then cease.

7. This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender.

8. Should legal title to and beneficial ownership of any of the property covered under this policy become vested in the Lender or its agents, insurance under this policy shall continue for the term thereof for the benefit of the Lender but, in such event, any privileges granted by this Lender's Loss Payable Endorsement which are not also granted the insured under the terms and conditions of this policy and/or under other riders or endorsements attached thereto shall not apply to the insurance hereunder as respects such property.

9. All notices herein provided to be given by the Company to the Lender in connection with this policy and this Lender's Loss Payable Endorsement shall be mailed to or delivered to the Lender at its office or branch described in the Declarations of the policy.

Approved:

Board of Fire Underwriters of the Pacific,
California Bankers' Association,
Committee on Insurance.

25-4160 10-98

A4160102

62

## ENDORSEMENT AMENDING SECTION II - LIABILITY EXCLUSIONS

**E6179**
**1st Edition**

Under Section II - Exclusion Applying to Coverage E and F Personal Liability and Medical Payments to Others, the last sentence of exclusion 7 is deleted and replaced with:

Exclusions 7a, b, c, and d do not apply to bodily injury to a **residence employee** in the course of employment by an **Insured**.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

91-6179 1ST EDITION 6-90                                    B-97                E6179101

---

## CHILD MOLESTATION EXCLUSION
## SECTION II - LIABILITY

**E4207**
**1st Edition**

We do not cover actual or alleged injury or medical expenses caused by or arising out of the actual, alleged, or threatened molestation of a child by:

1. any **insured**; or
2. any employee of any **insured**; or
3. any volunteer, **person** for hire, or any other **person** who is acting or who appears to be acting on behalf of any **insured**.

Molestation includes but is not limited to any act of sexual misconduct, sexual molestation or physical or mental abuse of a minor.

We have no duty to defend or settle any molestation claim or suit against any **insured**, employee of any **insured**, or any other **person**.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

91-4207 1ST EDITION 12-91                                    I-97                E4207101

## AMENDING PERSONAL INJURY
### YOUR PROTECTOR PLUS HOMEOWNERS PACKAGE POLICY

**E6008**
2nd Edition

It is agreed that the definition of personal injury under SECTION II - LIABILITY, Coverage E - Personal Liability is amended as follows:

Item (2) is deleted and replaced with the following:

(2) the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, home, or premises that a **person** occupies when committed by or on behalf of its owner, landlord, or lessor.

Item (4) is deleted and replaced with the following:

(4) discrimination because of race, color, religion or national origin.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

91-6008 2ND EDITION 7-95                     B-97                     E6008201

---

**S9072**
CALIFORNIA
1st Edition

## ENDORSEMENT AMENDING RETURN OF PREMIUM

It is agreed that your policy is amended as follows:

Under General Conditions Applying to the Entire Policy, Cancellation Reasons, Item c. Return of Premium, is deleted and replaced with the following:

c. Return of Premium
Cancellation of or changes in this policy may result in a premium refund. If so, we will mail it to you, or your agent, within 25 days after the cancellation or change takes effect, or we will pay 10 percent interest per annum after the first 25 days on the amount of the refund until we send it. Interest payments will be the only penalty against us. Our mailing or offering of a refund is not a condition of cancellation.

(1) If you cancel this policy, we will return the short rate unused share of the premium.

(2) If we cancel this policy we will return the pro-rated unused share of the premium.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms and conditions of the policy.

90-9072 1ST EDITION 1-94                     B-97                     S9072101

## SPECIAL LIMITS ON SPORTS CARDS

### н6106
1st Edition

The following provisions apply when this endorsement is attached to your policy:

Under SECTION I, Coverage C - Special Limits On Certain Personal Property:

Item 12. is added as follows:

12. $200 per card and $1,000 in the aggregate on sports cards, including but not limited to baseball cards.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

92-6106 1ST EDITION 9-96                    A-97                    H6106101

## ENDORSEMENT AMENDING SECTION II - LIABILITY, COVERAGE E - PERSONAL LIABILITY

### cA015
1st Edition

Paragraph two under **Section II - Liability, Coverage E - Personal Liability** has been deleted in its entirety and replaced with the following:

At our expense and with attorneys of our choice, we will defend an insured against any covered claim or suit. We may investigate and settle any claim or suit that we consider proper. Our obligation to defend any claim or suit ends once we have paid our limit of liability.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

94-0441 1ST EDITION 9-02                    W0441101

## ENDORSEMENT AMENDING SECTION I - CONDITIONS

ca**023**
**CALIFORNIA**
**1st Edition**

The following is added under Section I - Conditions of your policy:

*Adjusters.* If, within a six-month period, the company assigns a third or subsequent adjuster to be primarily responsible for a claim, the insurer, in a timely manner, shall provide the insured with a written status report. For purposes of this section, a written status report shall include a summary of any decisions or actions that are substantially related to the disposition of a claim, including, but not limited to, the amount of losses to structures or contents, the retention or consultation of design or construction professionals, the amount of coverage for losses to structures or contents and all items of dispute.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

94-0723 1ST EDITION 11-04

W0723101

**ENDORSEMENT**
**AMENDING SECTION II - EXCLUSIONS**

ɛ**4040**
**1st Edition**

(For Protector Plus Homeowners Package Policy):

Under **SECTION II - EXCLUSIONS - Applying To Coverage E and F - Personal Liability and Medical Payments to Others,** the following item, Exclusion 12., is added:

12. arises out of, results from, is caused by, is contributed to, or is aggravated by, whether directly or indirectly, rust, mold, fungus, or wet or dry rot.

   This includes:

   (a) the cost of testing, monitoring, abating, mitigating, removing, remediating or disposing of rust, mold, fungus, or wet or dry rot;

   (b) any supervision, instruction, disclosures, or failures to disclose, recommendations, warnings, or advice given, or which allegedly should have been given, in connection with **bodily injury, property damage** or personal injury arising out of, resulting from, caused by, contributed to, or aggravated by, whether directly or indirectly, rust, mold, fungus, or wet or dry rot, or the activities described in Exclusion 12., Subpart(a) above; and

   (c) any obligation to share with or repay another who must pay damages because of injury or damage of the type described in Exclusion 12. This applies regardless of any other cause that contributed, directly or indirectly, concurrently or in any sequence to the **bodily injury, property damage** or personal injury.

(For Special Form Homeowners Package Policy):

Under **SECTION II - EXCLUSIONS - Applying To Coverage E and F - Personal Liability and Medical Payments to Others,** the following item, Exclusion 13., is added:

13. arises out of, results from, is caused by, is contributed to, or is aggravated by, whether directly or indirectly, rust, mold, fungus, or wet or dry rot.

   This includes:

   (a) the cost of testing, monitoring, abating, mitigating, removing, remediating or disposing of rust, mold, fungus, or wet or dry rot;

   (b) any supervision, instruction, disclosures, or failures to disclose, recommendations, warnings, or advice given, or which allegedly should have been given, in connection with **bodily injury** or **property damage** arising out of, resulting from, caused by, contributed to, or aggravated by, whether directly or indirectly, rust, mold, fungus, or wet or dry rot, or the activities described in Exclusion 13., Subpart(a) above; and

   (c) any obligation to share with or repay another who must pay damages because of injury or damage of the type described in Exclusion 13. This applies regardless of any other cause that contributed, directly or indirectly, concurrently or in any sequence to the **bodily injury** or **property damage.**

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

91-4040 1ST EDITION 12-02                                                                                           E4040101

67

# SPECIAL STATE PROVISIONS ENDORSEMENT - CALIFORNIA

**s9049**
**CALIFORNIA**
**3rd Edition**

Under Section I, Conditions, Condition 14. (Condition 13. in Basic and Special Form Mobile Homeowners policies.) Loss Payment, the words "60 days" are changed to "30 days".

Under General Conditions, Condition 5 *Cancellation,* is amended as follows:

The words "31 days" in b(2) any reason, are changed to "45 days."

b(3) is deleted and replaced with the following:

b(3). If this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons:

    (a) You have been convicted of a crime having as one of its necessary elements an act increasing any hazard insured against.

    (b) Discovery of fraud or material misrepresentation by the **insured** or the **insured's** representative in either obtaining this policy or pursuing a claim under this policy.

    (c) Discovery of grossly negligent acts or omissions by the **insured** or the **insured's** representative which substantially increase any of the hazards insured against.

    (d) Physical changes in the insured property which result in its becoming uninsurable.

We shall notify you in writing at least 31 days before the date cancellation takes effect.

We shall notify you in writing when cancellation takes effect. This cancellation notice may be delivered to you or mailed to you at your mailing address shown in the Declarations. The mailing of it will be sufficient proof of notice.

Cancellation of or changes in this policy may result in a premium refund. If so we will send it to you within 25 days after the cancellation or change takes effect.

If you cancel this policy we shall return the short rate unused share of the premium. If we cancel this policy we shall return the pro rated unused share of the premium.

Under General Condition 6, *Non-Renewal,* the words "30 days" are changed to "45 days" and the following paragraph is added.

If this policy is written for a period of less than one year we agree not to refuse to renew except at the end of an annual period beginning with the original or renewal effective date.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

90-9049 3RD EDITION 8-00                                                                                                    S9049301

THIS PAGE LEFT
INTENTIONALLY BLANK.

## ENDORSEMENT ADDING DEFINITIONS; AMENDING
## DEBRIS REMOVAL COVERAGE AND POLLUTION EXCLUSION

**E6268**
**1st Edition**

When this endorsement is attached to your policy the following provisions apply:

Under **DEFINITIONS**, the following definitions are added:

**Pollutant** or **pollutants** mean any solid, liquid, gaseous, or thermal or biological irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste, carbon monoxide, microorganisms or biological pathogens. Biological pathogens includes bacteria, bacterium, viruses, or any part or by-product of bacteria, bacterium or viruses, including bacterial toxins. Waste includes materials to be recycled, reconditioned or reclaimed.

**Pollutant** or **pollutants** does not mean smoke, soot or fumes from a fire caused by one or more of the Section I - Losses Insured.

## SECTION I - PROPERTY - ADDITIONAL COVERAGES

1. *Debris Removal* is deleted and replaced with the following:

1. *Debris Removal.* We will pay your reasonable expenses to remove debris caused by a covered loss to covered property under SECTION I - PROPERTY. However, we will not pay any expenses incurred by you or anyone acting on your behalf to:

   a. extract **pollutants** from land or water or the dwelling, separate structures or personal property.

   b. remove, restore or replace polluted land or water, dwelling, separate structures or personal property.

   If the amount of loss, including debris removal expense exceeds the limit of insurance, we will pay up to an additional 5% of the limit of insurance on the damaged property.

## SECTION I - LOSSES NOT INSURED - Applying to Coverage A and B and Separate Structures and Coverage C - Personal Property. The following is added:

14. **Pollution.** We do not cover loss consisting of, caused by, contributed to, aggravated by or resulting from discharge, dispersal, seepage, migration, release or escape of **pollutants**, whether on or off the **residence premises**.

   **Acts or omissions of persons** can cause, contribute to or aggravate discharge, dispersal, seepage, migration, release or escape of **pollutants**, whether on or off the **residence premises**. Also discharge, dispersal, seepage, migration, release or escape of **pollutants**, whether on or off the **residence premises**, can occur naturally to cause a loss or combine with acts or omissions of persons to cause loss. Whenever discharge, dispersal, seepage, migration, release or escape of **pollutants**, whether on or off the residence premises, occurs, the discharge, dispersal, seepage, migration, release or escape of **pollutants**, whether on or off the **residence premises**, is always excluded under this policy, however caused.

   We do not cover expenses incurred by you or anyone acting on your behalf to:

   a. extract **pollutants** from land or water, or the dwelling, separate structures or personal property.

   b. remove, restore or replace polluted land, water, dwelling, separate structures or personal property.

## SECTION II - LIABILITY - EXCLUSIONS
## (For Special Form Homeowners Package, Townhouse and Condominium Owners Package Policy and Broad Form Renters Package Policy)

Under **SECTION II - EXCLUSIONS - Applying to Coverage E - Personal Liability** item 8. is deleted and replaced with the following:

8. A. We do not cover **bodily injury** or **property damage** resulting from the actual, alleged or threatened discharge, dispersal, seepage, release, migration or escape of **pollutants**;

91-6268 1ST EDITION 3-02                    *(Continued Next Page)*                    E6268101

(1) at or from the **insured location;**

(2) at or from any premises, site or location which is or was at any time owned or occupied by or rented or loaned to you or any **insured;**

(3) at or from any premises, site or location which is or was at any time used by or for you or any **person** acting on your behalf for the handling, storage, disposal, processing or treatment of any **pollutant;**

(4) which are or were at any time transported, handled, stored, treated, disposed of or processed as waste by or for you or any **person** or organization for whom you may be legally responsible; or

(5) at or from any premises, site or location on which you or any **person** or organization acting directly or indirectly on your behalf are performing operations to:

(a) transport any **pollutant** on or to any site or location used for the disposal, storage, handling, processing or treatment of **pollutants;** or

(b) test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **pollutants.**

B. We do not cover any loss, cost or expense arising out of any:

1. request, demand, or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **pollutants;**

2. claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of **pollutants.**

The following exclusion is added:

Any claim or suit for actual, alleged, threatened or feared **bodily injury** or **property damage** for which you or any insured may be held legally liable for the actual, alleged, threatened or feared **bodily injury** or **property damage** caused by lead or lead poisoning.

Lead poisoning includes, but is not limited to:

a. actual **bodily injury** due to exposure to lead or products, objects or substances containing lead.

b. accidental or deliberate ingestion of lead in any form or substance.

We have no duty to defend any claim or suit, whether or not false or fraudulent, for any actual, alleged, threatened or deared **bodily injury** or **property damage** by lead or lead poisoning.

## SECTION II - LIABILITY - EXCLUSIONS
## (For Protector Plus Homeowners Package Policy)

Under **SECTION II - EXCLUSIONS - Applying to Coverage E - Personal Liability** item 12. is deleted and replaced with the following:

12. A. We do not cover **bodily injury, property damage** or personal injury resulting from the actual, alleged or threatened discharge, dispersal, seepage, release, migration or escape of **pollutants:**

(1) at or from the **insured location;**

(2) at or from any premises, site or location which is or was at any time owned or occupied by or rented or loaned to you or any **insured;**

(3) at or from any premises, site or location which is or was at any time used by or for you or any **person** acting on your behalf for the handling, storage, disposal, processing or treatment of any **pollutant;**

(4) which are or were at any time transported, handled, stored, treated, disposed of or processed as waste by or for you or any **person** or organization for whom you may be legally responsible; or

91-6268 1ST EDITION 3-02                 *(Continued Next Page)*                 16268102

    (5) at or from any premises, site or location on which you or any **person** or organization acting directly or indirectly on your behalf are performing operations to:

        (a) transport any **pollutant** on or to any site or location used for the disposal, storage, handling, processing or treatment of **pollutants**; or

        (b) test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **pollutants.**

  B. We do not cover any loss, cost or expense arising out of any:

    1. request, demand, or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **pollutants;**

    2. claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of **pollutants.**

The following exclusion is added:

Any claim or suit for actual, alleged, threatened or feared **bodily injury, property damage** or personal injury for which you or any insured may be held legally liable for the actual, alleged, threatened or feared **bodily injury, property damage** or personal injury caused by lead or lead poisoning.

Lead poisoning includes, but is not limited to:

    a. actual **bodily injury** or personal injury due to exposure to lead or products, objects or substances containing lead.

    b. accidental or deliberate ingestion of lead in any form or substance.

We have no duty to defend any claim or suit, whether or not false or fraudulent, for any actual, alleged, threatened or feared **bodily injury, property damage** or personal injury by lead or lead poisoning.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

# ENDORSEMENT AMENDING
## REPLACEMENT COST COVERAGE AND LOSS SETTLEMENT CONDITIONS

**CA037**
**1st Edition**

Under **SECTION I - PROPERTY, ADDITIONAL COVERAGES**, 9. *Guaranteed Replacement Cost Coverage - Buildings* is deleted and replaced with the following:

9. *Extended Replacement Cost Coverage - Coverage A.* We will pay to repair or replace covered loss under Coverage A - Dwelling up to 125% of the limits of insurance for Coverage A - Dwelling.

You must agree to and comply with the following additional policy provisions:

a. You must insure your dwelling to 100% of the replacement cost.

b. You must notify us within 90 days of the start of any physical changes which increase the value of your insured buildings by $5,000 or more, and pay any additional premium. This includes any new structures and any additions to or remodeling of your dwelling on the **residence premises.**

We do not cover any costs required to repair, replace, rebuild, stabilize or otherwise restore the land.

This coverage does *not* apply to Coverage B - Separate Structures.

This endorsement replaces any Guaranteed Replacement Cost provision otherwise in your policy.

Under **SECTION I - CONDITIONS**, 3. *Loss Settlement* is deleted and replaced with the following:

3. *Loss Settlement.*

*Coverage A and Coverage B*

Covered loss to buildings under Coverage A - Dwelling and Coverage B - Separate Structures will be settled at replacement cost without deduction for depreciation, subject to the following methods:

(1) Settlement under replacement cost will not be more than the *smallest* of the following:

(a) the limit of insurance under this policy that applies to the damaged or destroyed dwelling or separate structure.

(b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises.

(c) the amount actually and necessarily spent to repair or replace the building intended for the same occupancy and use.

(2) When the cost to repair or replace *is more* than $1,000 or *more* than 5% of the limit of insurance in this policy on the damaged or destroyed building, whichever is less, we will pay no more than the **actual cash value** of the damage *until* repair or replacement is completed. You have 12 months from the time we make the first payment toward **actual cash value** to make a claim for any additional payment for loss or damage on a replacement cost basis. Additional extensions of six months shall be provided if good cause can be shown. If the loss is related to an event for which a "state of emergency" as defined in Section 8558 of the Government Code was declared, you will have 24 months from the time of the first payment toward **actual cash value** to make a claim for any additional payment for loss or damage on a replacement cost basis.

(3) At your option, you may make a claim under this policy on an **actual cash value** basis for loss or damage to buildings. If you repair or replace the damaged building, you have 12 months from the time we make the first payment toward **actual cash value** to make a claim for any additional payment for loss or damage on a replacement cost basis. Additional extensions of six months shall be provided if good cause can be shown. If the loss is related to an event for which a "state of emergency" as defined in Section 8558 of the Government Code was declared, you will have 24 months from the time of the first payment toward **actual cash value** to make a claim for any additional payment for loss or damage on a replacement cost basis.

94-0747 1ST EDITION 1-05                    *(Continued Next Page)*                    W0747101

*Coverage C -*

Covered property losses are settled as follows:

a. Covered loss to the following types of property will be settled at **actual cash value.** Payments will not exceed the amount necessary to repair or replace the damaged property or the limit of insurance applying to the property, whichever is less.

  (1) Property, the age or condition of which has rendered it obsolete or unusable for the purpose for which it was originally intended.

  (2) Paintings, etchings, pictures, tapestries, art glass windows, or other bonafide works of art, of rarity, historical value or artistic merit (such as valuable rugs, statuary, marble, bronzes, antique furniture, rare books, antique silver, manuscripts, porcelains, rare glass or bric-a-brac).

  (3) Photographs or negatives, or to articles whose age or history contribute substantially to their value, including but not limited to memorabilia, souvenirs, and collector's items.

  (4) Fences and decks constructed of wood and above-ground swimming pools.

b. Personal property and structures other than listed above that are not buildings, carpeting, domestic appliances, awnings, outdoor equipment and antennas, whether or not attached to buildings at replacement cost without deduction for depreciation, subject to the following:

  (1) We will pay the current cost of repair or replacement but not exceeding the smallest of the following amounts:

    (a) replacement cost at the time of loss;

    (b) the full cost of repair;

    (c) the limit of insurance of Coverage C;

    (d) any special limits stated in the policy or declarations.

  When the identical item is no longer manufactured or is not available, we will pay the cost of a new article similar to that damaged or destroyed and which is of comparable quality and usefulness.

  (2) Loss to property not repaired or replaced will be settled at **actual cash value.** If you repair or replace the damaged personal property, you have 12 months from the time we make the first payment toward **actual cash value** to make a claim for any additional payment for loss or damage on a replacement cost basis. Additional extensions of six months shall be provided if good cause can be shown. If the loss is related to an event for which a "state of emergency" as defined in Section 8558 of the Government Code was declared, you will have 24 months from the time of the first payment toward **actual cash value** to make a claim for any additional payment for loss or damage on a replacement cost basis.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

94-0747 1ST EDITION 1-05                                                                 W0747102

74

Keep with your policy showing the same policy number as this endorsement.

## BUILDING ORDINANCE OR LAW COVERAGE ENDORSEMENT

E**6044**

4th Edition

Effective
Date: _07-29-2005_

| 96 86 309 | 92723-19-41 |
|-----------|-------------|
| Agent | Policy Number |

Policy Number
of the Company designated
in the Declarations

Under **Section I - Property, Losses Not Insured** or **Losses Not Covered**, the following exclusion is deleted:

Enforcement of any ordinance or law regulating construction, repair or demolition of a building or other structure, unless endorsed on this policy.

Under **Section I - Property, Additional Coverages**, the following coverage is added:

### Building Ordinance or Law Coverage

1. Our limit of liability for this coverage will not be more than ___10%___ of the total limit of insurance applying to the covered property under Coverage A - Dwelling or Coverage B - Separate Structures, shown in the declarations or premium notice, whichever is most recent at the time of loss. This endorsement applies to all coverages whether in the policy contract or subsequently added by endorsement.

   a. If there is a covered loss and you decide not to repair or replace the damaged building, we shall pay the **actual cash value** not to exceed the limits of insurance that apply to the damaged portion of the building. If you repair or replace the damaged building, you have 12 months from the time we make the first payment toward **actual cash value** to make a claim for any additional payment for loss or damage on a replacement cost basis. Additional extensions of six months shall be provided if good cause can be shown. If the loss is related to an event for which a "state of emergency" as defined in Section 8558 of the Government Code was declared, you will have 24 months from the time of the first payment toward **actual cash value** to make a claim for any additional payment for loss or damage on a replacement cost basis.

   b. This coverage does not increase the limit of insurance applying to the covered property under Coverage A - Dwelling or Coverage B - Separate Structures.

2. We will pay for the costs you actually and necessarily incur up to the applicable Building Ordinance or Law Limit of Insurance in making any change to the undamaged portion of the building or separate structure when such change is required to comply with an ordinance or law which is in force at the time of the construction, demolition, renovation, repair or replacement of the damaged property caused by a covered accidental direct physical loss.

3. We will pay for the increased costs you actually and necessarily incur due to the enforcement of any ordinance or law in force at the time which requires or regulates:

   a. The construction, demolition, remodeling, renovation, repair, or replacement of that part of a covered building or other structure damaged by a covered accidental direct physical loss.

   b. The demolition and reconstruction of the undamaged part of a covered building or other structure which must be totally demolished due to damage caused by a covered accidental direct physical loss to another part of the covered building or other structure.

91-6044 4TH EDITION 1-05                    *(Continued Next Page)*                    E6044401

    c. The remodeling, renovation, or replacement of the undamaged part of a covered building or other structure necessary to complete the remodeling, renovation, or replacement of that part of the covered building or other structure damaged by a covered accidental physical loss.

    d. The legally required modifications to any undamaged portion of the structure which are caused by the enforcement of any building ordinance or law, zoning or land use ordinance if the law enforcement is directly caused by a covered accidental physical loss.

4. We do not cover:

    a. the loss in value to any covered building or other structures due to the requirements of any ordinance; or

    b. the cost to repair, replace, rebuild, stabilize or otherwise restore land.

    c. the costs to comply with any ordinance or law which requires an insured or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **pollutants** on any covered building or other structure.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

91-6044 4TH EDITION 1-05                                                                 E6044402

## ENDORSEMENT AMENDING DEFINITIONS, SECTION I - LOSSES INSURED AND SECTION I - LOSSES NOT INSURED

**H6114**
**2nd Edition**

Under **DEFINITIONS**, item 18. **Water** is deleted in its entirety and replaced by the following:

18. **Water** means water (H2O) alone, whether frozen or not or any liquid or sludge which contains **water,** whether or not combined with other chemicals or impurities. It includes, but is not limited to, snow, sleet, slush, ice, dampness, vapor, condensation, moisture, steam and humidity.

Under **DEFINITIONS**, item 19. **Water damage,** the following paragraph is added:

(e) **water** which seeps, leaks, drips, escapes or is released out of any plumbing, heating or air conditioning system, or from within a household appliance, other than a sudden and accidental release of **water.**

Under **SECTION I - LOSSES INSURED, Coverage C - Personal Property,** item 13. is deleted in its entirety and replaced by the following:

13. Sudden and accidental discharge or overflow of **water** from within a plumbing, heating or air conditioning system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the **water** escaped;
b. caused by or resulting from freezing;
c. to personal property on the **residence premises** when the sudden and accidental discharge or overflow occurs away from the **residence premises;**
d. caused by sudden and accidental discharge or overflow from roof gutters, downspouts, sump-pumps, sump-pump wells, leach fields, seepage pits, septic tanks, drainage channels or any other device used to drain **water** away from the **residence premises.**

Under **SECTION I - LOSSES NOT INSURED,** item 2. **Water damage** is deleted in its entirety and replaced by the following:

2. **Water damage.**
Acts or omissions of **persons** can cause, contribute to or aggravate **water damage.** Also **water damage** can occur naturally to cause loss or combine with acts or omissions of **persons** to cause loss. Whenever **water damage** occurs, the resulting loss is always excluded under this policy, however caused; except we do cover:

1. Direct physical loss to the dwelling or separate structures caused by **water damage** resulting from build-up of ice on portions of the roof or roof gutters.
2. Loss or damage to the interior of any dwelling or separate structures, or to personal property inside the dwelling or separate structures caused by **water damage** resulting from a peril described under **SECTION I - LOSSES INSURED - Coverage C - Personal Property.**
3. Direct loss to the dwelling or separate structures or personal property if caused by fire or explosion resulting from **water damage.**

We never, under any circumstances, cover rust, mold, fungus, or wet or dry rot, even if resulting from exceptions 1, 2, or 3 above.

924114 2ND EDITION 7-00

*(Continued Next Page)*

H6114201

The following examples are set forth to help you understand this exclusion and are not meant to be all-inclusive.

**EXAMPLE 1:**

Rain water collects on or soaks into the ground surface. Because of faulty design, construction or maintenance of the **residence premises**, your neighbor's property or water diversion devices, the water causes loss to the dwelling, separate structures, or personal property. Such loss is not covered by this policy.

**EXAMPLE 2:**

A pipe under your sink breaks suddenly and accidentally, and water damages your wallpaper, carpeting and personal property. The water also gets under the dwelling or separate structures causing **earth movement** which results in cracking of the foundation and walls. The loss to the wallpaper, carpeting and personal property is covered, but the loss to the foundation and walls is not covered by this policy.

**EXAMPLE 3:**

Water which has backed up through sewers or drains, or water below ground level causes loss to the dwelling, separate structures or personal property. Such loss is not covered by this policy, regardless of the cause or causes of such **water damage.**

Under **SECTION I - LOSSES NOT INSURED,** item 4 is deleted in its entirety and replaced with the following:

4. Faulty, inadequate or defective planning, zoning, development, surveying, siting, design, specifications, workmanship, construction, grading, compaction, maintenance, repairs, or materials, whether used in construction, remodeling, maintenance or repair of part of or all of any property (including land, structures or any improvements) whether on or off the **residence premises.** However, we do cover ensuing loss by fire, explosion or sudden and accidental discharge of water. **Earth movement,** rust, mold, fungus, or wet or dry rot are never covered under this policy, however caused.

Under **SECTION I - LOSSES NOT INSURED,** item 13. is deleted in its entirety and replaced by the following:

13.
   a. wear and tear, marring, deterioration;
   b. mechanical breakdown;
   c. birds, insects, vermin, rodents, or domestic animals;
   d. smog, smoke from agricultural smudging or industrial operations;
   e. release, discharge or dispersal of contaminants, pollutants, insecticides, or hazardous gasses or chemicals;
   f. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
   g. pressure from or presence of (1) any trees, shrubs, plants or lawn, or (2) any root system from any trees, shrubs, plants or lawn;
   h. soil conditions, including but not limited to corrosion, erosion, chemicals, compounds, elements, suspensions or gels in the soil or the formation of crystals in the soil.

If any of the perils listed in a-h above cause **water** to escape suddenly and accidentally from a plumbing, heating, or air conditioning system or household appliance, we cover loss not otherwise excluded to the dwelling or separate structure caused by **water.** If loss is caused by **water** not otherwise excluded, we will cover the cost of tearing out and replacing any part of the dwelling or separate structure necessary to repair the system or appliance. We do not cover the system or appliance from which the **water** escaped.

If any of the perils listed in a-h above cause a fire or explosion, we cover direct loss by such fire or explosion.

**Earth Movement** is never covered under this policy, however caused.

Under **SECTION I - LOSSES NOT INSURED,** the following item, item 14. Rust, mold, fungus, or wet or dry rot, is added:

14. Rust, mold, fungus, or wet or dry rot.

Acts or omissions of **persons** can cause, contribute to or aggravate rust, mold, fungus, or wet or dry rot. Also, rust, mold, fungus, or wet or dry rot can occur naturally to cause a loss or combine with acts or omissions of **persons** to cause loss. Whenever rust, mold, fungus, or wet or dry rot occurs, the rust, mold, fungus, wet or dry rot and any resulting loss is always excluded under this policy, however caused.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

92-6114 2ND EDITION 7-00                                                                                          H6114203

THIS PAGE LEFT
INTENTIONALLY BLANK.

| Additional Premises Section II - Purpose of use is residential, unless stated otherwise. | Outboard Motor over 25 horsepower (Singly or Combined) - Section II<br><br>MOTOR A:<br>MOTOR B: |

**MESSAGES**

THE LIMIT OF LIABILITY FOR THIS STRUCTURE (COVERAGE A) IS BASED ON AN ESTIMATE OF THE COST TO REBUILD YOUR HOME, INCLUDING AN APPROXIMATE COST FOR LABOR AND MATERIALS IN YOUR AREA, AND SPECIFIC INFORMATION THAT YOU HAVE PROVIDED ABOUT YOUR HOME.


ASK YOUR FARMERS AGENT ABOUT MORTGAGE PROTECTION.


INSURED PAYS PREMIUM.
THIS POLICY DOES INCLUDE BUILDING CODE UPGRADE COVERAGE.
IN THE EVENT OF A LOSS, AT ANY TIME, CALL US AT 1-800-HELPPOINT (1-800-435-7764)

**MORTGAGEE OR OTHER INTEREST:**

LOAN NUMBER   0007852643

EMC MORTGAGE
PO BOX 141358
IRVING, TX

75014-1358

**MORTGAGEE'S BILLING ADDRESS:**

EMC MORTGAGE

PO BOX 141358
IRVING, TX
75014-1358

**ADDITIONAL MORTGAGEE OR OTHER INTEREST(S):**

**ADDITIONAL ENDORSEMENTS**

| | | |
|---|---|---|
| H6114 | 2ED | AMEND SECTION I - LOSS NOT INSUR NB-SPF TP PTP |
| 438BFU | 542 | LENDER'S LOSS PAYABLE ENDORSEMENT |
| 258531 | 1104 | CALIFORNIA NOTICE OF INFORMATION PRACTICES |
| E6044 | 4ED | BUILDING ORDINANCE OR LAW COVERAGE ENDORSEMENT |
| CA037 | 1ED | AMENDING REPLACEMENT COST COV. AND LOSS SETTLEMENT COND. |

56-5279 4TH EDITION 1-05

C5279412