1

# UNITED STATES DISTRICT COURT

2

## FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

3

4   MICHELLE T. WAHL , on behalf of )        CASE NO.:  C 08-00555 RS
    herself and all others similarly situated, )

5                              )                CLASS ACTION
                    Plaintiff,  )

6                              )
         v.                    )

7                              )                DEMAND FOR JURY TRIAL
    AMERICAN SECURITY INSURANCE )

8   COMPANY; and DOES 1-50, inclusive, )
                              )

9                   Defendants.  )

10

11          **PLAINTIFF'S MEMORANDUM IN OPPOSITION**
               **TO DEFENDANT'S MOTION TO DISMISS**

12

13

14   Joseph N. Kravec, Jr. (PA ID No. 68992)        Stephen F. Yunker (CSB 110159)
        (*Admitted Pro Hac Vice*)                   YUNKER & SCHNEIDER

15   SPECTER SPECTER EVANS                           655 West Broadway, Suite 1400
        & MANOGUE, P.C.                             San Diego, California 92101

16   The 26th Floor Koppers Building                 Telephone: (619) 233-5500
     Pittsburgh, Pennsylvania  15219                 Facsimile: (619) 233-5535

17   Telephone: (412) 642-2300                       Email: sfy@yslaw.com
     Facsimile:  (412) 642-2309

18   Email: jnk@ssem.com

19   James M. Pietz (PA ID No. 55406)
        (*Admitted Pro Hac Vice*)

20   PIETZ LAW OFFICE
     Mitchell Building

21   304 Ross Street, Suite 700
     Pittsburgh, Pennsylvania 15219

22   Telephone: (412) 288-4333
     Facsimile: (412) 288-4334

23   Email: jpietz@jpietzlaw.com

24

25

26          ***ATTORNEYS FOR PLAINTIFF MICHELLE T. WAHL,***
        ***ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED***

27

28

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1.   The First Amended Class Action Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    2.   The Motion To Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.   ASIC's LACK OF STANDING ARGUMENT IS A RED HERRING. . . . . . . . . . 5

        A.   Ms. Wahl Has Standing Under California Law Since She is a Party
            to the ASIC Policy and Paid Its Premiums. . . . . . . . . . . . . . . . . . . . . . . . 5

        B.   Ms. Wahl has Article III Standing Since She is a Party to the ASIC
            Policy and Paid Its Premiums.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        C.   Because Ms. Wahl is a Party to the ASIC Policy, ASIC's Remaining
            Standing Arguments Asserting She Has "No Power to Rescind" and
            it has "No Statutory Duty Owed" to Her Also Fail. . . . . . . . . . . . . . . . . . . 9

    II.   MS. WAHL STATES COGNIZABLE CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.   The "Other Insurance" Clauses on Which ASIC Relies are not
            Operative Because Ms. Wahl's ASIC Policy by Its Express Terms
            Automatically Cancelled. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            1.   The Plain Terms of Ms. Wahl's ASIC Policy Provides that
                  it will Automatically Cancel and Premiums will be Refunded when
                  there is Other Insurance Required by the Lender in Place. . . . . . . . 11

            2.   Ms. Wahl's Farmers Policy Provided Full, Initial Coverage
                  Required by her Lender that was Still In-Force when the ASIC
                  Policy was Issued. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            3.   Ms. Wahl's ASIC Policy By Its Express Terms Automatically
                  Cancelled At Its Inception On January 27, 2006 And Required
                  Premiums To Be Refunded To Her. . . . . . . . . . . . . . . . . . . . . . . 15

            4.   The "Other Insurance" Clauses on which ASIC Relies Provide
                  No Insurance Coverage After The ASIC Policy was Cancelled
                  and thus are Irrelevant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        B.   ASIC's Waiver Or Rightful Cancellation Defense Is Foreclosed
            By The Allegations In The Complaint And Attached Contractual
            Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

1.  The Defense Based Upon Waiver Does Not Apply As A Matter Of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

2.  The Face Of The Complaint Precludes ASIC's Waiver Defense  . . 20

3.  ASIC's Cited Cases Either Support Plaintiff Or Do Not Apply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

C.  Ms. Wahl's CLRA Claim Should Not Be Dismissed. . . . . . . . . . . . . . . . . 23

**TABLE OF AUTHORITIES**

**CASES**                                                                                          **PAGE NO.**

*Advanced Micro Devices, Inc. v. Intel Corporation*, 9 Cal.4th 362 (1994) . . . . . . . . . . . . . . . . . . . 9

*Alderson v. Insurance Company of North America*, 223 Cal. App.3d 397 (1990) . . . . . . . . . . . . . 9

*Al Maqaleh v. Gates*, 2007 WL 2059128 (D. D.C., July 18, 2007) . . . . . . . . . . . . . . . . . . . . . . . . 24

*American Deposit Ins. Co. v. Myles*, 783 So.2d 1282 (La. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Barrett Computer Services, Inc. v. PDA, Inc.*, 884 F.2d 214 (5th Cir. 1989) . . . . . . . . . . . . . . . . . 8

*Bickel v. City of Piedmont*, 68 Cal.Rptr. 2d 758 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Bocon ex rel Moroney v. Am. Int'l Group*, 415 F. Supp.2d 1027 (N.D. Cal. 2006) . . . . . . . . . . . 24

*Broughton v. Cigna Healthplans of California*, 21 Cal.4th 1066 (1999) . . . . . . . . . . . . . . . . . 23, 24

*Cal. State Auto. v. Policy Mgmt. *, 1996 WL 45280 (N.D.Cal. 1996) . . . . . . . . . . . . . . . . . . . . . . . 20

*Carmel Development Company v. RLI Insurance Company*, 126 Cal. App. 4th 502 (2005) . . . . . . 17

*Coppoletta v. California*, 2006 WL 2666091 (N. D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Civil Service Employee Ins. Co. v. Superior Court*, 22 Cal.3d 362 (1978) . . . . . . . . . . . . . . . . . . . 24

*Coe v. Farmers New World Life Insurance Company*, 209 Cal. App. 3d 600 (1989) . . . . . . . . . . . 16

*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*
    30 Cal.App.4th 54 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Duke Energy Trading and Marketing, LLC v. Davis*, 267 F.3d 1042 (9th Cir. 2001) . . . . . . . . . . . 8

*Equitable Life Assur. Soc. v. Johnson* 53 Cal. App.2d 49 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*F&H Construction v. ITT Hartford Ins. Co. of the Midwest*, 118 Cal. App.4th 364 (2004) . . . . . . 11

*Fairbanks v. Superior Court*, 64 Cal. Rptr.3d 623 (Cal. App. 2007),
    petition for review granted, 68 Cal. Rptr.3d 273 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Farmers Home Mutual v. Bank of Pocahontas*, 355 Ark 19, 129 S.W.2d 832 (2003) . . . . . . . . . . 20

*Forte Capital Partners v. Harris Cramer*, 2007 WL 1430052 (N.D. Cal. 2007) . . . . . . . . . . . . . . 15

*Fraker v. Sentry Life Insurance Company*, 19 Cal. App. 4th 276 (1993) . . . . . . . . . . . . . . . . . . . . . 16

*Garamendi v. Mission Insurance Company*, 131 Cal. App.4th 30 (2005) . . . . . . . . . . . . . . . . . . . . 11

*Garcia v. Truck Ins. Exch.*, 36 Cal.3d 426 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Glens Falls Ins. Co. v. Founders' Ins. Co.*, 209 Cal. App. 2d 157 (1st Dist. 1962) . . . . . . 19, 22, 23

1   *Hayward Lumber & Inv. Co. v. Lyders*, 139 Cal. App. 517 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . 7

2   *Heard v. Am. Sec. Ins. Co.*, 2008 WL 482404 (W.D. Mo., Feb. 19, 2008) . . . . . . . . . . . . . . . . . . 6

3   *Home Savings of America, F.S.B. v. Continental Ins. Co.*,
4        87 Cal. App. 4th 835 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 20

5   *Interinsurance Exchange Automobile Club*, 148 Cal. App.4th 1218 (2007) . . . . . . . . . . . . . . . . . 7

6   *Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

7   *Jennings v. Prudential Ins. Co.*, 48 Cal. App.3d 8 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

8   *Jiang v. Lee's Happy House*, 2008 WL 706529 (N.D. Ca., Mar. 14, 2008) . . . . . . . . . . . . . . . . . 5

9   *Klotz v. Old Line Life Ins. Co. of America*, 955 F. Supp. 1183 (N.D.Cal. 1996) . . . . . . . . . . . . . 19

10  *Lee v. American National Insurance Company*, 260 F.3d 997 (9th Cir. 2001) . . . . . . . . . . . . . . . . 9

11  *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (U.S. Minn, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 7

12  *Lyon v. Jones*, 168 F. Supp.2d 1 (D. Conn. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

13  *Marderosian v. National Casualty Co.*, 96 Cal. App. 295 (1929) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

14  *Massachusetts Mutual Life Ins. Co. v. Superior Court*,
         97 Cal. App.4th 1282 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

15
16  *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*,
         320 F.3d 920 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

17  *Northern Mut. Ins. Co. v. Farmers' Ins. Group*, 76 Cal. App.3d 1031 (1978) . . . . . . . . . . . . . . 6

18  *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal. App. 3d593 (1981) . . . . . . . . . . 17

19  *Pacific National Ins. Co. v. Webster*, 174 Cal. App.3d 779 (1985) . . . . . . . . . . . . . . . . . . . . . . . . 20

20  *Pastoria v. Nationwide Insurance*, 112 Cal. App.4th 1490 (2003) . . . . . . . . . . . . . . . . . . . . . . . . 9

21  *Protex-A-Kar Co. v. Hartford Accident & Indemnity Co.*, 102 Cal. App.2d 408 (1951) . . . . . . . . 16

22  *Ramos v. Countrywide Home Loans, Inc.*, 82 Cal. App. 4th 615 (2000) . . . . . . . . . . . . . . . . . . . . 2

23  *Royal Surplus Lines Ins. Co. v. Ranger Ins. Co.*, 100 Cal. App.4th 193 (2002) . . . . . . . . . . . . . . 6

24  *Sabo v. Fasano*, 154 Cal. App.3d 502 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

25  *Spott Electrical Co. v. Industrial Indemnity Co.*, 30 Cal. App.3d 797 (1973) . . . . . . . . . . . . . . 22, 23

26  *State Farm Fire and Cas. Co. v. Bradford National Life Ins. Co.*,
27       1992 WL 208007, 972 F.2d 1342 (9th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20

28  *Tarleton v. De Veuve*, 113 F.2d 290 (9th Cir. 1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Plaintiff's Memorandum In Opposition to Defendant's Motion to Dismiss

*Travelers Casualty and Surety Company v. Century Sur. Co.,*
    118 Cal. App. 4th 1156 (2004) .............................................. 18

*Tyler v. Cuomo*, 236 F.3d 1124 (9th Cir. 2000) ...................................... 7, 8

*U.S. Bank v. Tenn. Farmers Mut. Ins. Co.* 2007 WL 4463959 (Tenn. Ct. App. 2007) .......... 23

*Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1 (1995) ............................... 11

*Washington Mut. Bank v. American Sterling Ins.,*
    2003 WL 21481037 ( Cal.App. 4th Dist. 2003) .................................. 2

**STATUTES AND OTHER AUTHORITIES**

Fed.R.Civ. P. 12(b)(6) ...................................................... 5, 20

Fed.R.Civ.P. 12(b)(1) ......................................................... 5

11 Witkin, Summary of Cal. Law, Equity §178 (9th ed.1990) ........................... 19

Cal. Ins. Code §481 ......................................................... 15

Cal. Ins. Code §§ 330 ......................................................... 9

E. M. Holmes, *Appleman on Insurance* § 4.16 (2nd ed. 1996) .......................... 21

L. R. Russ & T. F. Segalla, *Couch on Insurance* § 29.35 (3rd ed. 1997) ................... 21

Wright and Miller, 5 B Fed. Prac. & Proc. 3d § 1357 .................................. 18

**INTRODUCTION**

Defendant, American Security Insurance Company ("ASIC") is a forced placed insurer providing substitute property insurance at the behest of lenders for mortgaged residential properties when the borrower fails to obtain the coverage required by the lender. ASIC issued one of its forced placed policies to Plaintiff that by its express terms is to automatically cancel when Plaintiff had another policy that supplied the property insurance required by her lender. That policy also expressly requires ASIC to refund any premiums paid once cancelled.

Plaintiff's First Amended Class Action Complaint ("FAC") alleges that she and other similarly situated persons had property insurance required by the lender in place at and after the inception of the ASIC policy, causing the ASIC policy by its express terms to automatically cancel at its inception. Despite this fact, ASIC failed to refund premiums paid by Plaintiff and the Class and instead kept those premiums ignoring the fact that its policy automatically cancelled and was no longer in force. ASIC also ignored the fact that it should have never issued its policy in the first place since Plaintiff and the Class had continuing coverage required by the lender and thus ASIC's policy by its own express automatic cancellation terms would immediately cancel. It is based upon this misconduct by ASIC that Plaintiff asserts claims for herself and others similarly situated, including for breach of contract and for violations of the Unfair Competition Law, Cal. Bus. Code §17200, *et. seq.* ("UCL") and Consumer Legal Remedies Act, Cal Civ. Code §1750, *et. seq.* ("CLRA").

In its instant Motion to Dismiss, ASIC challenges only Plaintiff's individual claims, and asserts several reasons why it believes Plaintiff's claims should be dismissed. As shown *infra*, none of ASIC's proffered reasons for dismissal are applicable here.

*First*, ASIC's contention that Plaintiff lacks standing is belied by the fact that she is a party to the ASIC policy, being specifically named as an additional insured, and she paid the premiums on it. *Second*, ASIC's contention that "other insurance" clauses show it provided insurance to Plaintiff is incorrect. Those "other insurance" clauses are inapplicable because they like all of the other coverages and provisions of the policy terminated when the ASIC policy by its express terms automatically cancelled, which fact ASIC conveniently ignores in its brief. *Third*, ASIC's purported defense based upon waiver is erroneous because it is precluded by the plead facts and the applicable contracts

1  referenced in the Complaint.  *Finally*, despite its contention otherwise, ASIC fails to establish that

2  insurance transactions are not covered by the CLRA.

3         As all of ASIC's arguments for dismissal are inapplicable or incorrect as further described herein,

4  its Motion to Dismiss Plaintiff's claims must be denied.

5  **STATEMENT OF FACTS**

6  **1.**    **The First Amended Class Action Complaint**

7         Plaintiff, Michelle T. Wahl, ("Plaintiff" or "Ms. Wahl") is a homeowner and a resident of Santa

8  Cruz County, California. FAC ¶ 3.  Defendant, ASIC is an insurance company that provides "Forced

9  Placed Insurance" ("FPI")  programs for mortgage lenders in California. FAC ¶ 5, 6 1[1]. Ms. Wahl had

10  a mortgage loan as to which EMC Mortgage Corporation ("EMC") was designated as the Lender.

11  (hereinafter EMC is the "Lender"). FAC ¶ 15.  The Lender required Ms. Wahl to maintain hazard

12  insurance on her property pursuant to the terms of a standard mortgage clause on Form 438 BFU. FAC

13  ¶ 9.  Form 438 BFU is commonly known in California as the "Lenders Loss Payment Endorsement"

14  ("LLPE"). FAC ¶ 9.  The Form 438 BFU is a standard contract endorsement form, widely used

15  throughout California, whose terms have been virtually unchanged since 1942. FAC ¶ 9.  The standard

16  Form 438 BFU LLPE ("The LLPE")that Ms. Wahl was required to obtain is attached as Exhibit A to

17  the FAC. FAC ¶ 9.

18         The LLPE, quoted in material part at FAC ¶ 10,  provides a contractual method by which an

19  homeowner's existing hazard insurance will be continued and thereafter cancelled; and then for a FPI

20  policy to be *substituted* without any overlap in coverage, in the event the homeowner fails to continue

21  premium payments on the existing coverage. The purpose of the LLPE is that– if the homeowner fails

22  to pay the premiums for homeowner's insurance, and that policy is subject to cancellation as a result–

23  then the LLPE keeps the homeowner's policy in force and effect for a *definite and specified time period*

24  sufficient for the Lender to renew the borrower's existing policy or to obtain FPI on the home at the

25

26      [1] Forced Placed or Forced Order Insurance is a term commonly used to describe insurance that
is placed by a lender where the borrow does not provide for such insurance coverage.    *See, e.g.,*

27  *Washington Mut. Bank v. American Sterling Ins.,* 2003 WL 21481037 ( Cal.App. 4th Dist. 2003); *Ramos*

28  *v. Countrywide Home Loans, Inc.,* 82 Cal. App.4[th] 615 (2000).

2

1   homeowner's expense. FAC ¶ 12. Specifically, the LLPE provides that the prior policy shall remain in

2   effect for at least 60 days after the first date of non-payment, and shall continue in effect thereafter unless

3   and until the lender receives notice in writing from the insurer demanding payment of the unpaid

4   premiums, which notice may only be sent *after* 60 and *before* 120 days after non-payment. FAC ¶ 12.

5   Even after the lender's receipt of that demand, the prior policy shall remain in effect for another ten days,

6   assuming the lender does not pay the premiums and keep it in effect indefinitely. FAC ¶ 12. The LLPE

7   therefore provides a contractual method for the continuation of a homeowner's hazard insurance

8   coverage and, then for the *substitution of FPI coverage* so that there the lender's interest would be

9   protected and so that there would be no "overlap" or "double coverage" between the policies.

10      The FAC alleges that ASIC ignores and disregards the LLPE's contractual method of continuing

11  a homeowner's policy in the course of placing and charging homeowners for the FPI. FAC ¶ 14. In sum,

12  the FAC alleges that ASIC "force places" its FPI policy even though the homeowner's policy is still in

13  force and effect according to the terms of the LLPE and even though the ASIC Policy, by its own terms,

14  does not provide coverage if the homeowner's existing policy is in force and effect. FAC ¶ 14-26. In

15  sum, the FAC alleges that ASIC places and then charges homeowners for expensive FPI coverage that

16  is illusory, i.e., it appears to provide coverage, but, in fact, does not by its terms. FAC ¶ 14-26.

17      More specifically, the FAC alleges that the Lender retained ASIC (or its affiliates) as its agent

18  to monitor homeowners' payments on their hazard insurance and mortgage payments and to make

19  demands for delinquent payments, all on the Lender's letterhead. FAC ¶ 14 -15. In the event of a

20  purported lapse, ASIC's practice is to "force place" its own policy effective as of the delinquency of the

21  homeowner's premium on its existing coverage. FAC ¶ 16-26. However, under the terms of the Form

22  438 BFU LLPE, the homeowners insurance remains in force and effect well beyond the due date of the

23  premium for a period of at least 60 days or more. FAC ¶ 10.

24      Ms. Wahl thus alleges that ASIC knew that she had fully acceptable hazard insurance with Fire

25  Insurance Exchange of the Farmers Insurance Group of California. (the "Farmers policy"). ¶ 16a. In

26  January, 2006, Ms. Wahl failed to pay the premium due on the Farmers policy. FAC ¶ 16a. On February

27  6, 2006, Farmers notified Ms. Wahl and the Lender that the Farmers policy was cancelled as to her

28

3

1  effective January 27, 2006. FAC ¶ 15b and FAC Ex.B. Despite this nonpayment, however, according

2  to the terms of the LLPE, the Farmers' Policy remained in full force and effect for the Lender, EMC.

3  FAC ¶ 10.   Ignoring the LLPE, ASIC, on February 27, 2006, notified Ms. Wahl on the Lender's

4  letterhead that EMC had purchased a temporary 60 day binder of FPI from ASIC at her expense. FAC

5  ¶ 16c. Similar notices were sent April 3, 2006 and May 12, 2006. FAC ¶ 16d.  The May 12, 2006 notice

6  provided that the ASIC Policy was effective January 27, 2006, even though according to the terms of

7  The LLPE, the Farmers Policy was still in force and effect.  FAC ¶ 16d.; Ex. D.

8         However, a series of express contract provisions in ASIC's policy demonstrate that it had no

9  force or effect and would otherwise "automatically cancel" where there was in effect other valid,

10  collectible insurance or acceptable insurance. FAC ¶ 20 a to d.  A copy of the ASIC Policy is attached

11  as FAC Ex. F. ASIC's policy further promises that ASIC would provide a return of premiums for

12  periods of time where other acceptable coverage was in force and effect. FAC ¶ 20d. The FAC thus

13  alleges that ASIC "forced-placed" its policy and charged Ms. Wahl for exorbitant FPI knowing that

14  other acceptable coverage was in place and had never been cancelled according to the terms of The

15  LLPE. FAC ¶ 23 a to c.   The FAC alleges that ASIC knew that Ms. Wahl had existing coverage with

16  Farmers that contained an LLPE. FAC.¶  9-14; 23. ASIC knew that the LLPE provided coverage to

17  the Lender for an extended time-period pursuant to the LLPE. FAC.¶ 23b.  Despite all this, ASIC never

18  disclosed these material facts and then "forced-placed" and charged for Ms. Wahl and others similarly

19  situated for its insurance, even though ASIC knew it provided no coverage.  FAC ¶ 23 and 24.

20         Based upon these alleged facts, the FAC seeks compensatory, injunctive and declaratory relief

21  ("Prayer For Relief p. 22-23) alleging seven (7) causes of action including: (1) Breach of the ASIC

22  Policies for charging Ms. Wahl for FPI coverage that did not apply; (2) Breach of the Statutory Duty

23  To Disclose Material Facts (3) Recission For Constructive Fraud; (4) Recission For Failure of

24  Consideration; (5) Violation of Unfair Competition Law: (6) Violation of Consumers Legal Remedies

25  Act and (7) Declaratory Relief. FAC ¶¶ 58-71

26

27

28

4

1          **2.      The Motion To Dismiss**

2          Initially, ASIC contends that the FAC should be dismissed for lack of subject matter jurisdiction

3  pursuant to Fed.R.Civ.P. 12(b)(1)  because the Ms. Wahl purportedly lacks standing.  Alternatively,

4  ASIC contends that the FAC fails to state a claim pursuant to Fed.R.Civ. P. 12(b)(6) because: (1) the

5  doctrine of equitable apportionment purportedly would apply so as to somehow prevent or ameliorate

6  the alleged overlap in coverage caused by its FPI practices; (2) The LLPE's contractual terms were

7  purportedly "waived" or "cancelled" by The Lender; (3) The Sixth Cause Of Action under the CLRA

8  does not state a claim because Ms. Wahl did not engage in a "consumer transaction".

9          Each of ASIC's purported defenses to Ms. Wahl's claims are meritless and fully refuted below.

10                                  **STANDARD OF REVIEW**

11         As this Court has succinctly stated, "[o]n a motion to dismiss under Rule 12(b)(6) the issue is

12  not what plaintiff has or will be able to prove, but whether the allegations, which are presumed true, are

13  sufficient" to state a cognizable claim.  *Jiang v. Lee's Happy House*, 2008 WL 706529, *1 (N.D. Ca.,

14  Mar. 14, 2008)(Seeborg, m.j.)(citation omitted).  Here, Ms. Wahl's FAC not only sufficiently alleges

15  each of her causes of action, but those allegations are also supported by the insurance contracts and

16  other documents attached to her FAC and incorporated by reference.  *No. 84 Employer-Teamster Joint*

17  *Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003)(a court

18  may consider on a motion to dismiss documents incorporated by reference in plaintiff's complaint).

19                                        **ARGUMENT**

20  **I.      ASIC's LACK OF STANDING ARGUMENT IS A RED HERRING.**

21         **A.      Ms. Wahl Has Standing Under California Law Since She is a Party to the ASIC**
                   **Policy and Paid Its Premiums.**

22
           ASIC's entire standing argument is premised on its incorrect contention that Ms. Wahl has no
23
    standing to bring a claim on her residential property insurance policy contract issued by ASIC because
24
    she allegedly is not a party to the policy.  ASIC Br., pp. 7-8.  ASIC's contention is belied by its own
25
    admissions, the allegations of the FAC and applicable law.
26

27

28
                                              5

First, ASIC concedes, as it must, that Ms. Wahl is expressly and specifically named as an additional insured in the ASIC policy. ASIC Br., pp. 7-8. *See also* FAC, Exh. F (ASIC Policy at the 3rd page of the exhibit). The California Court of Appeal has expressly held that:

> An additional insured has standing to sue an insurer for breach of contract and breach of the implied covenant [of good faith].

*Royal Surplus Lines Ins. Co. v. Ranger Ins. Co.*, 100 Cal. App.4th 193, 200 (2002)(citations omitted). In *Royal Surplus*, the additional insured was specifically named in the policy just like Ms. Wahl is here. *Id.*, 100 Cal. App.4th at 197 n. 3. *Compare* FAC, Exh. F (ASIC Policy at the 3rd page of the exhibit).

ASIC's citation to *Northern Mut. Ins. Co. v. Farmers' Ins. Group*, 76 Cal. App.3d 1031, 1041-42 (1978) and *Garcia v. Truck Ins. Exch.*, 36 Cal.3d 426, 435-36 (1984), are inapposite. Both cases, unlike *Royal Surplus*, involved an insured or additional insured who were <u>not</u> specifically named in the policy contract, but rather were considered insureds or additional insureds by virtue of being in the class of persons generally defined in the policy as being covered. This is a far cry from *Royal Surplus* where the additional insured was specifically named in the policy and hence was considered a contracting party with standing to sue. Clearly, Ms. Wahl solely by virtue of being named as an additional insured in the policy is a party to the ASIC policy and has standing to sue ASIC under California law.[2]

Second, ASIC concedes that its policy provided Ms. Wahl at least $138,000 of property insurance directly to her and her alone. ASIC Br., p. 10. As ASIC explains in its brief, the ASIC policy insured her property for its full value of $603,000, but the lender, EMC, had an insurable interest in Ms. Wahl's property of only $465,000, the amount due under the Deed of Trust. *Id.* Thus, the balance of $138,000 of insurance coverage (i.e., $603,000 minus $465,000) was provided only to Ms. Wahl since the lender, EMC, admittedly did not have an insurable interest in that amount. <u>Id.</u> Indeed, under California law, coverage issued to an insured in excess of his insurable interest would be void. <u>See</u> Cal. Ins. Code §280; *Hayward Lumber & Inv. Co. v. Lyders*, 139 Cal. App. 517 (1934). ASIC's admission

---

[2] ASIC's additional citation to *Heard v. Am. Sec. Ins. Co.*, 2008 WL 482404 (W.D. Mo., Feb. 19, 2008), a Missouri case under Missouri law where the plaintiff admitted he was not a party to the policy, clearly does not apply to Ms. Wahl's policy that is governed by California law under which it is clear that she is a party to the ASIC policy.

1  that it issued at least $138,000 of insurance coverage under the policy to Ms. Wahl and to Ms. Wahl

2  alone evidences a direct contractual relationship under the policy between Ms. Wahl and ASIC since the

3  only other party to the policy, EMC, could not have legally insured the $138,000 of value in which it had

4  no insurable interest.

5       This direct contractual relationship between Ms. Wahl and ASIC is further confirmed by

6  allegations in her FAC that ASIC charged and that she paid premiums for the ASIC policy at issue.

7  FAC, ¶¶ 3, 17, 18, 21, 30, 31, 35, 38, 46, 48, 53.  Under California law, an insurance company that

8  accepts premiums from an insured in return for insurance coverage creates a direct contractual relation

9  with that person.  *See Interinsurance Exchange Automobile Club*, 148 Cal. App.4th 1218, 1230 n.6

10  (2007)("[T]he plain and ordinary meaning of the word premium is the consideration paid by an insured

11  to an insurer for a contract of insurance.")(citation omitted); *Marderosian v. National Casualty Co.*, 96

12  Cal. App. 295, 302 (1929)(insurer's issuance of an "insurance policy contract" accepted by the insured

13  and the insurer's acceptance of the insured's payment of premiums therefor creates a binding contract

14  of insurance between the insurer and the insured who paid the premium).

15       For all of these reasons, Ms. Wahl clearly has standing to bring her claim against ASIC under

16  California law.

17      **B.**    **Ms. Wahl has Article III Standing Since She is a Party to the ASIC Policy and Paid Its Premiums.**

18

19       ASIC contends, however, that even if Ms. Wahl has standing to bring her claims under California

20  law, she does not have standing to bring her claims in federal court under Article III of the United States

21  Constitution.  "To satisfy constitutional standing, plaintiffs bear the burden of showing that they meet

22  three requirements: (1) they suffered an 'injury in fact;' (2) the injury is fairly traceable to the challenged

23  action of defendant; and (3) it is 'likely,' as opposed to 'speculative,' that the injury will be redressed

24  by a favorable decision." *Tyler v. Cuomo*, 236 F.3d 1124, 1131-32 (9th Cir. 2000), *citing Lujan v.*

25  *Defenders of Wildlife*, 504 U.S. 555, 560-61 (U.S. Minn. 1992).

26       Here, Ms. Wahl's FAC alleges that: i) she was a named party (*i.e.*, named additional insured) in

27  an insurance policy contract with ASIC insuring her residential property and paid the premiums therefor

28  (FAC, ¶ 16 e, f, g); ii) that ASIC's insurance policy contract expressly provided that if Ms. Wahl had

7

1  other required insurance on the property that the ASIC policy would automatically cancel and that

2  premiums paid on the ASIC policy for the overlapping coverage period would be returned to her (FAC,

3  ¶ ¶ 20-21); iii) that Ms. Wahl did in fact have other required property insurance for her residence from

4  Farmers during the ASIC policy's coverage period (FAC, ¶ 17); and iv) that ASIC breached its insurance

5  policy contract by failing to cancel its insurance coverage and by failing to return to Ms. Wahl the

6  premium she paid for the overlap coverage period (FAC, ¶ 21). These allegations are also supported

7  by the insurance contracts and other documents attached to or referenced in Ms. Wahl's FAC and clearly

8  show that Ms. Wahl meets the Article III standing requirements. *See* FAC, Exh. F (ASIC policy, p.7

9  at ¶18 ("Cancellation" provision) and ¶19 ("Return of Premium" provision)); Declaration of Frank Burt

10  (Docket No. 21), Exh. 2 (Ms. Wahl's Farmers' policy, at 61-62 ("Lender's Loss Payable Endorsement"

11  stating that policy coverage will continue for at least 70 days after the date of cancellation); FAC, Exh.

12  E (letter from EMC acknowledging that Ms. Wahl's ASIC policy coverage began on 1/27/06 (despite

13  continuing Farmers coverage until at least 3/27/06) and confirming that Ms. Wahl paid the ASIC policy

14  premiums).

15       Indeed, courts routinely find Article III standing, where, as here, a plaintiff is a party to or has

16  a beneficial interest in a contract that is alleged to have been breached or interfered with by defendant,

17  causing plaintiff harm. *See, e.g., Duke Energy Trading and Marketing, LLC v. Davis*, 267 F.3d 1042,

18  1050-51 (9th Cir. 2001)(the Court of Appeals held that the energy supplier was a beneficial interest-

19  holder in the liquidation value of energy supply contracts at issue, such that the Governor's

20  commandeering of those contractual rights was an injury-in-fact traceable to the Governor's actions and

21  thus the energy supplier had Article III standing to bring this action against the Governor); *Tyler v.*

22  *Cuomo*, 236 F.3d 1124, 1134-35 (9th Cir. 2000)(lower-income housing development agreement with the

23  City of San Francisco that provides that members of the public can raise objections gives neighboring

24  homeowners Article III standing to bring claims seeking injunctive, declaratory and monetary relief as

25  third-party beneficiaries of the agreement); *Barrett Computer Services, Inc. v. PDA, Inc.*, 884 F.2d 214,

26  217-18 (5th Cir. 1989)(evidence of plaintiff's contractual privity with defendant through the assignment

27

28

8

1    to him of contractual rights to software programs found sufficient to sustain plaintiff's Article III

2    standing on summary judgment).

3        Because Ms. Wahl is undisputedly listed as an "additional insured" in the ASIC policy, ASIC

4    admits that that policy issued $603,000 of insurance coverage including at least $138,000 of coverage

5    exclusively to Ms. Wahl, and Ms. Wahl alleges she paid the premiums for this ASIC Policy and that

6    ASIC breached its policy contract by failing to return premiums she paid on the ASIC policy when she

7    had other required insurance in place, Ms. Wahl clearly has standing under Article III and California law

8    to pursue the claims asserted in her FAC against ASIC involving the ASIC policy issued to her. *Cf. Lee*

9    *v. American National Insurance Company*, 260 F.3d 997, 1002 (9th Cir. 2001)(indicating that a person

10    who buys a policy from an insurer has Article III standing to bring a claim against the insurer on the

11    policy). ASIC's contentions to the contrary are belied by the applicable law, ASIC's own admissions

12    and the allegations of the FAC and therefore must be rejected.

13    **C.    Because Ms. Wahl is a Party to the ASIC Policy, ASIC's Remaining Standing**
      **Arguments Asserting She Has "No Power to Rescind" and it has "No Statutory**
14    **Duty Owed" to Her Also Fail.**

15

16        ASIC's remaining standing-related contentions that Ms. Wahl cannot assert rescission of her

      ASIC policy and that ASIC owes Ms. Wahl no statutory duties under California Insurance Code §§ 330,
17
      332 and 334 on her ASIC policy are premised solely on ASIC's legally incorrect contentions that Ms.
18
      Wahl is not a party to the ASIC policy contract. ASIC Br., pp. 8-10. These contentions are without
19
      merit as shown above and must likewise be rejected. *See, e.g., Alderson v. Insurance Company of North*
20
      *America*, 223 Cal. App.3d 397, 404 (1990)(finding that an additional insured has the same rights as an
21
      insured and noting that that includes the right to challenge reformation of a policy). *Cf. Advanced Micro*
22
      *Devices, Inc. v. Intel Corporation*, 9 Cal.4th 362, 390 (1994)(acknowledging that contract remedies
23
      include equitable remedies such as reformation and rescission). *See also Pastoria v. Nationwide*
24
      *Insurance*, 112 Cal. App.4[th] 1490 (2003)(sustaining UCL, fraud and negligent non-disclosure claims
25

26

27

28

9

1   premised on violations of Cal. Ins. Code §§ 330, 332 and 334 brought by insureds who also purchased

2   the subject health insurance policies).[3]

3   ## II.    MS. WAHL STATES COGNIZABLE CLAIMS

4   Ms. Wahl asserts seven causes of action in her FAC, including claims under the UCL, CLRA and

5   for breach of contract. FAC ¶¶ 28-71. Each of Ms. Wahl's claims are premised on ASIC's misconduct

6   involving its obligations related to the ASIC policy it issued to Ms. Wahl. *Id.* Although ASIC fails to

7   specify so in its brief, its arguments based on "other insurance" clauses and "waiver" appear addressed

8   to each of Ms. Wahl's claims. ASIC's final argument concerning the purported lack of a "consumer

9   transaction" with Ms. Wahl is addressed only her CLRA claim.

10   For the reasons discussed below, ASIC's contentions that Ms. Wahl has failed to state any claims

11   are belied by the allegations of the FAC and the insurance contracts and documents referenced therein

12   and established precedent. Accordingly, ASIC's motion to dismiss should be denied.

13   ### A.    The "Other Insurance" Clauses on Which ASIC Relies are not Operative Because Ms. Wahl's ASIC Policy by Its Express Terms Automatically Cancelled.

14
15   ASIC spends several pages of its brief discussing "other insurance" clauses, such as so-called

16   "excess" and "escape" clauses in its policy issued to Ms. Wahl and a "pro-rata" clause in Ms. Wahl's

17   Farmers policy. ASIC Br., pp. 10-14. ASIC postulates that these "other insurance" clauses show that

18   the coverage on its policy was not duplicative of the Farmers policy, but rather coverage was equitably

19   apportioned between the two insurers. *Id.* These provisions are completely irrelevant here.

20   Indeed, ASIC completely ignores in its analysis the "Cancellation" and "Return of Premium"

21   provisions in its policy that by their express terms automatically cancel the ASIC policy at its inception

22   and require ASIC to refund all premiums to Ms. Wahl. FAC, Exh. F at p. 7(a/k/a p.

23   AMSBG107)("Cancellation") and p. MS1235 (California Amendatory Endorsement . . "Return of

24   Premium"). As demonstrated below, the "Cancellation" provision becomes operative and requires the

25   ASIC policy to automatically cancel at its inception because of the coverage Ms. Wahl already had in

26   _____

27   [3]   ASIC's citation in its brief to three cases from Mississippi and Ohio have no bearing on the
issue of whether ASIC owes Ms. Wahl a duty under applicable California statutes since Ms. Wahl's

28   ASIC policy was issued in California where she resides and insures a property located in California. *See* ASIC Br., p. 9. *Compare* FAC ¶ 3 and Exh. F (ASIC policy).

1   place with Farmers. *Id.* Once cancelled, the "Return of Premium" provision requires ASIC to return

2   the premiums paid to Ms. Wahl who paid them. *Id.*

3       When the "Cancellation" and "Refund of Premium" provisions are properly construed, it is clear

4   that the "other insurance" clauses on which ASIC relies never came into play since the ASIC policy

5   automatically cancelled at its inception and provided no coverage after it was cancelled. Accordingly,

6   Ms. Wahl's ASIC policy by its express terms automatically cancelled, her premiums were to be returned

7   and ASIC violated its contractual obligations by failing to do so. Ms. Wahl's breach of contract, UCL,

8   CLRA and other claims premised on ASIC's misconduct are cognizable. FAC, ¶¶ 28-71.

9       **1.    The Plain Terms of Ms. Wahl's ASIC Policy Provides that it will**
         **Automatically Cancel and Premiums will be Refunded when there is Other**
10       **Insurance Required by the Lender in Place.**

11      In construing an insurance contract, the Court must "look first to the language of the [policy]

12  in order to ascertain its plain meaning." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18 (1995).

13  "Where the meaning is clear and unambiguous, we apply that meaning." *F&H Construction v. ITT*

14  *Hartford Ins. Co. of the Midwest*, 118 Cal. App.4th 364, 371 (2004)(citations omitted).

15      The plain meaning of policy language is "the meaning a layperson would ordinarily attach to it."

16  *Garamendi v. Mission Insurance Company*, 131 Cal. App.4th 30, 42 (2005)(citations omitted). "The

17  test is not what the insurer or its attorneys intended the policy to mean but what a reasonable person in

18  the position of the insured would have understood the words [of the policy] to mean."    *Id.* (citation

19  omitted). "Although each term must be read in its 'ordinary and popular sense,' it must also be

20  interpreted in context and with regard to its intended function and the structure of the policy as a whole."

21  *Id.* (citation omitted). "In so doing, we must give meaning to each word in the contract."    *F&H*

22  *Construction v. ITT Hartford Ins. Co. of Midwest*, 118 Cal. App.4th at 371. "[W]hen construing the

23  terms of an insurance contract, a court may not render some words meaningless." *Id.*, 118 Cal. App.4th

24  at 376-77.

25      Here, ASIC urges this Court to simply ignore the "Cancellation" and "Return of Premium"

26  provisions in its policy and to thereby render them meaningless. This the Court may not do. *Id.*

27

28

11

1    ASIC improperly attempts to discount the cancellation and refund of premium provisions as

2    being solely contained in a so-called "flood endorsement" that ASIC contends was inadvertently included

3    since the ASIC policy expressly excludes flood coverage.[4] ASIC Br., p. 12 n.3. This is simply false.

4    In fact, the "Cancellation" and "Return of Premium" provisions are also expressly stated in the

5    main part of the ASIC policy under the heading "CONDITIONS," which state in relevant part:

6    18.    Cancellation.

7    a.    Coverage under this policy shall automatically and without prior
        notice, cancel when the Named Insured [i.e., the lender, EMC][5]
8        no longer has an interest in the Described Property or when the
        Named Insured [i.e., the lender, EMC] has been provided with
9        another policy that meets the requirements of the Named Insured
        [i.e., the lender, EMC] as set forth in the mortgage agreement
10       applicable to the Described Property.

11    19.    Return of Premium. When this policy is canceled, the premium for the
        period from the date of cancellation to the expiration date will be
12       refunded pro rata. . . . The return of premium is not a condition of
        cancellation.[6]

13

FAC, Exh. F, p. 7 (a/k/a AMSBG107) (ASIC Policy) (bracketed material added).

14

15    Curiously, ASIC never mentions these provisions in its brief. Nor does it argue that these

16    provisions are unclear or inapplicable.

17

18    [4] Significantly, at the same time ASIC contends the "flood endorsement" was inadvertently
included and does not apply, ASIC also cites that very flood endorsement in support of its purported
19    "escape" clause argument under which it contends its liability coverage under the ASIC policy is
extinguished if other applicable coverage exists. ASIC Br., p. 12. Obviously, ASIC cannot have its
20    cake and eat it too. Either the flood endorsement does not apply at all because it was inadvertently
included as ASIC contends or it applies in toto such that the cancellation, refund of premium and escape
21    provisions of the flood endorsement all apply. In the latter case, Plaintiff's contention that the ASIC
policy automatically cancelled because of her existing coverage and she was entitled to the return of her
22    premium would be independently established based on those provisions.

23

24    [5] The ASIC Policy identifies the "Named Insured" as Ms. Wahl's lender, EMC. See FAC, Exh.
F, p. MS0519.

25    [6] This relevant language is identical to the language contained in the amended "Return of
26    Premium" provision contained in the California Amendatory Endorsement. See FAC, Exh. F, p.
MS1235. The only change to the "Return of Premium" provision by the amendment is to the second
27    sentence that is not quoted above which addresses only the timing of when ASIC will send the premium
refund and does not affect the entitlement to a premium refund. Id.; Compare FAC, Exh. F, p. 7 (a/k/a
28    p. AMSBG107).

12

1    Reading these "Cancellation" and "Return of Premium" provisions as an average layperson as

2    the Court must, the plain and ordinary meaning is clear, *i.e.*, that coverage on the ASIC policy will

3    automatically cancel when the lender, EMC, has been provided with another policy that meets the

4    requirements the lender, EMC, set forth in its mortgage agreement with Ms. Wahl.  Once cancelled, the

5    "Return of Premium" provision clearly requires ASIC to refund any premium Ms. Wahl paid.

6    Moreover, ASIC is also required to refund premiums to Ms. Wahl upon cancellation of its policy

7    by Cal. Ins. Code §481. *See Jennings v. Prudential Ins. Co.,* 48 Cal. App.3d 8, 18, (1975) *quoting*

8    *Equitable Life Assur. Soc. v. Johnson,* 53 Cal. App.2d 49, 73-74 (1942)("section 481 [requiring an

9    insurer to refund unused premiums upon cancellation of a policy] is 'obviously applicable to insurance

10    such as fire insurance").

11    **2.    Ms. Wahl's Farmers Policy Provided Full, Initial Coverage Required by her
       Lender that was Still In-Force when the ASIC Policy was Issued.**

12
       Ms. Wahl obtained a Farmers hazard insurance policy that took effect on July 29, 2005.

13    Declaration of Frank Burt ("Burt Decl."), Exh. 2 (Farmer's Policy, p. 40).  It can hardly be disputed that

14    the Farmers policy met the requirements of the lender, EMC, set forth in its mortgage agreement with

15    Ms. Wahl since EMC accepted that insurance from its effective date of July 29, 2005 through January

16    27, 2006, and did not seek to obtain substitute insurance before then.  Indeed, Ms. Wahl's Deed of Trust

17    with EMC required her to obtain hazard insurance on the mortgage property for the "Lender" "up to

18    the amount of the outstanding loan balance," and required that the hazard policy contain a "standard

19    mortgage clause."  Burt Decl., Exh. 1, p. 8.  Ms. Wahl's Farmers' policy does just that by including a

20    "Lender's Loss Payable Endorsement."[7]

21

22
       ───────────────────────

23    [7]    The Farmers' policy provides hazard insurance on her residence and includes a Lender's Loss
       Payable Endorsement" that makes it clear that Ms. Wahl and her "Lender" are persons entitled to receive

24    the Farmers policy benefits.  *Id.*, Exh. 2, pp. 40, 61.  ("Loss or damage, if any, under this policy, shall
       be paid to the Payee named in the Declarations of this policy, its successors and assigns, hereinafter

25    referred to as "the Lender."  The "Declarations" page names Ms. Wahl and her husband).  Moreover,
       the "Lender's Loss Payable Endorsement" is a standard mortgage clause. *cf. Home Savings of America,*

26    *F.S.B. v. Continental Ins. Co.,* 87 Cal. App. 4th 835, 842-43 (2001) (defining standard mortgage clauses

27    as including the same types of provisions as those in the "Lender's Loss Payable Endorsement" of Ms.
       Wahl's Farmers policy).  *Compare* Burt Decl., Exh. 2 ("Lender's Loss Payable Endorsement" of Ms.

28    Wahl's Farmers policy).

13

1    Significantly, the "Lender's Loss Payable Endorsement" provides that in the event Ms. Wahl fails

2    to pay the premium Farmers:

> agrees to give written notice to the Lender of such non-payment of premium *after* sixty (60) days from and within one hundred and twenty (120) days after due date of such premium. . . . If the Lender shall decline to pay said premium or additional premium, the rights of the Lender under this Lender's Loss Payable Endorsement shall not be terminated before ten (10) days after receipt of said written notice by the Lender.
>
> •••• •••
>
> this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and then shall cease.

Burt Decl., Exh. 2, p. 61 (¶ 3).[8]  Therefore, because this Endorsement requires Farmers to wait at least

60 days after default of payment of premium to send Lender written notice and then Lender has 10

additional days to pay the premium before the Lender's coverage terminates, Ms. Wahl's Farmers policy

provided her Lender, EMC coverage for at least 70 days <u>after</u> the date of cancellation.

Here, on February 6, 2006, Farmers mailed Ms. Wahl a notice showing the Farmers policy was

cancelled on January 27, 2006. FAC, Exh. B. Under the terms of the Farmers policy "Lender's Loss

Payable Endorsement," that cancellation could not take effect as to the Lender, EMC, until at least April

7, 2006, seventy (70) days after Farmers' cancellation date. Thus, the Lender, EMC, had the coverage

it required from Farmers in effect from the inception of the Farmers policy on July 29, 2005 through at

least April 7, 2006.[9]

---

8    In its brief, ASIC creatively quotes only the "10 day" continuance provision in the Lender's Loss Payable Endorsement, fails to mention the 60 day waiting period before cancellation notice can be sent, and improperly intimates that Lender's insurance continues for only 10 days after notice of cancellation under the Farmers policy. ASIC Br., p. 15.

9    ASIC intimates in its brief that it provided Ms. Wahl an extra $138,000 of coverage on the ASIC policy that she would not otherwise had. ASIC Br., p. 10. Of course, whether ASIC's policy provided Ms. Wahl extra coverage is irrelevant since all coverage including the purported extra coverage to Ms. Wahl ceased when the ASIC policy by its express terms automatically cancelled. Indeed, this is quite clear since nothing in the ASIC policy indicates that it could partially cancel or could automatically reinstate itself after cancellation.

14

1           **3.**    **Ms. Wahl's ASIC Policy By Its Express Terms Automatically Cancelled At Its Inception On January 27, 2006 And Required Premiums To Be Refunded To Her.**

2

3         ASIC's policy, as shown in Section A.2 of this brief, states that *"[c]overage under this policy*

4 *shall automatically and without prior notice, cancel ... when the Named Insured [i.e., the lender, EMC]*

5 *has been provided with another policy that meets the requirements of the Named Insured [i.e., the*

6 *lender, EMC] as set forth in the mortgage agreement applicable to the Described Property."* FAC,

7 Exh. F, p. 7 (a/k/a AMSBG107) (ASIC Policy) (emphasis and bracketed material added).  The ASIC

8 policy purportedly began its coverage on January 27, 2006 (FAC ¶16(e), Exh. G), at which time Ms.

9 Wahl's Farmers policy was still in force providing the coverage required by the Lender, EMC, set forth

10 in its mortgage agreement as shown in proceeding section.  Thus, under ASIC's automatic cancellation

11 provision, the ASIC policy automatically cancelled at its inception on January 27, 2006.

12         Once cancelled, the ASIC "Return of Premium" provision provided that *"the premium for the*

13 *period from the date of cancellation to the expiration date will be refunded pro rata"* by ASIC.  FAC,

14 Exh. F, p. 7 (a/k/a AMSBG107).  This is also required by Cal. Ins. Code §481.

15         Because the date of automatic cancellation of the ASIC policy is also the date coverage

16 purportedly began on that policy, the entire premium paid should be refunded.  To the extent ASIC may

17 argue that not all premiums paid on its policy should be refunded, that would be irrelevant to whether

18 Ms. Wahl has stated a claim for ASIC's failure to refund premiums to her.  Such an argument instead

19 goes only to the amount of premiums (or damages) due her which is not a ground for dismissal of her

20 claim for a failure to state a claim.  *See, e.g., Forte Capital Partners v. Harris Cramer* , 2007 WL

21 1430052 (N.D. Cal. 2007)(plaintiff's allegation that he suffered damage is sufficient to overcome a

22 motion to dismiss. An issue over the precise amount of "Plaintiff's damages is a question of fact subject

23 to proof, and is inappropriate to support this motion to dismiss.").

24         Ms. Wahl has clearly demonstrated that her claims based upon ASIC's failure to acknowledge

25 the cancellation of the policy issued to her are well grounded and adequately pled based not only on the

26 allegations of the FAC, but also by the plain language of the insurance contracts and other documents

27 referenced therein which are all before the Court.  That the amount of premium to be refunded may be

28

15

1   disputed by ASIC shows only that Ms. Wahl is entitled to some refund and that she has stated a claim

2   therefor.  ASIC's motion to dismiss for failure to state a claim must be denied.

3        **4.    The "Other Insurance" Clauses on which ASIC Relies Provide No**
         **Insurance Coverage After The ASIC Policy was Cancelled and thus are**
4        **Irrelevant.**

5        ASIC's entire "other insurance" clauses argument operates from a false premise, _i.e._, that the

6   automatic cancellation provision of the ASIC policy does not exist or apply and instead the ASIC policy

7   remained in-force and continued to provide coverage. ASIC Br., pp. 11-14.  Of course, as previously

8   demonstrated herein, ASIC completely ignores in its brief the express "Cancellation" provision in the

9   main part of the ASIC policy.  That "Cancellation" provision as demonstrated herein operated to

10  automatically cancel ASIC's policy at its inception on January 27, 2006 because Ms. Wahl had a Farmers

11  policy that met the requirements of her Lender in place at that time.

12        It is well-established under California law that once an insurance policy is cancelled, **all** of the

13  coverage and provisions of the policy terminate and are no longer effective. _See Fraker v. Sentry Life_

14  _Insurance Company,_ 19 Cal. App. 4th 276, 284 (1993)(insured's right to receive reimbursement for

15  medical expenses under group health policy was not effective through insured's lifetime, but rather was

16  terminated by the termination of the master group policy.  If this were not the case, '[s]uch [termination]

17  provisions would be rendered meaningless," which interpretation would violate applicable rules of

18  insurance contract construction.); _State Farm Fire and Cas. Co. v. Bradford National Life Ins. Co.,_

19  2008 WL 208007, 972 F. 2d 1342 (9th Cir. 1992)('there is no question [the first business insurance

20  policy] was cancelled in writing _before_ the alleged libel occurred the next month.  Accordingly, we find

21  that the first policy was not in effect when the alleged libel occurred" and thus it provided no coverage.);

22  _Coe v. Farmers New World Life Insurance Company,_ 209 Cal. App. 3d 600, 607 (1989)("The policy

23  having been terminated before commencement of any grace period, the provisions of the grace period

24  have no application."); _Jennings v. Prudential Insurance Company,_ 48 Cal. App. 3d 8, 17 (1975)("It

25  is well-established that when the insured surrenders his life insurance policy to the insurance company

26  for its cash surrender value, the insurer's liability for the risk covered in the policy is terminated.");

27  _Protex-A-Kar Co. v. Hartford Accident & Indemnity Co.,_ 102 Cal. App.2d 408, 413 (1951)(although

28  the product liability policy had a specified coverage period of October 10, 1947 to October 10, 1948,

16

1   the policy also allowed cancellation "in which event the end of the policy period would be the date of

2   cancellation."   The Court held that because the policy was cancelled on November 13, 1947, "the

3   insurance company cannot be held liable for accidents occurring after that period," but before the

4   expiration of the original coverage period ending on October 10, 1948. "To construe it otherwise would

5   give effect only to the clause declaring the policy period and would ignore the provisions of the

6   cancellation clause," which would be improper.).

7           Here, as previously established, ASIC's policy by its express terms automatically cancelled at its

8   inception on January 27, 2006 because Ms. Wahl had a Farmers policy in place at the time that met the

9   requirements of the Lender set forth in her mortgage agreement.   No liability claim had been made

10  relative to Ms. Wahl's property prior to the ASIC policy's cancellation.   Therefore, under well-

11  established law, when her ASIC policy automatically cancelled so too did all of the coverages and

12  provisions thereunder, including the various "excess," "escape" and "other insurance" clauses in the

13  ASIC policy upon which ASIC relies in its brief for its claim that it provided Ms. Wahl coverage.

14          Moreover, ASIC's reliance on a "pro rata" clause in the Farmers policy is also inapplicable here.

15  In its brief, ASIC concedes that:

16          [a] 'pro rata' clause, like the one in Farmers LLPE, 'provides that if there is other valid
            and collectible insurance, then the insurer shall not be liable for more than [its] pro rata
17          share of the loss.' *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal. App.
            3d 593, 597 (1981).   In other words, Farmers will be liable for its 'proportion' of the
18          loss, based on the entire pool of insurance on the property.

19  ASIC Br., p. 11.   Of course, the ASIC policy is not in that "pool of insurance" for Ms. Wahl's property

20  once it automatically cancelled on January 27, 2006 since thereafter it provided no "valid" insurance

21  which ASIC concedes would be necessary for the Farmers' "pro rata" obligation to come into play.

22          Likewise, the numerous cases ASIC cites in its brief for the operation of "other insurance"

23  clauses and equitable apportionment are all inapplicable here for one simple reason:   all of those cases

24  involve two policies providing simultaneous conflicting coverage.   Indeed, it is well-established that

25  without two policies providing simultaneous conflicting coverage, equitable apportionment simply does

26  not apply under California law. *See, e.g., Carmel Development Company v. RLI Insurance Company,*

27  126 Cal. App. 4th 502, 516-17 (2005)(finding that equitable apportionment did not apply where the two

28  policies at issue did not provide simultaneous conflicting coverage since one was primary only coverage

17

1    and the other excess only coverage so "it was irrelevant that they both contained excess-only 'other

2    insurance' clauses."); *Travelers Casualty and Surety Company v. Century Sur. Co.,* 118 Cal. App. 4th

3    1156, 1160 (2004)(under California law, equitable apportionment applies "where the policies of two or

4    more insurers of a common insured, providing primary coverage for the same risk, contain conflicting

5    'other insurance' clauses."). Here, there was no simultaneous coverage after the ASIC policy

6    automatically cancelled and thus there were not two valid policies in place for a conflict between them

7    to arise. None of ASIC's proffered cases holds that simultaneous coverage somehow continues for the

8    purposes of "other insurance" clauses and equitable apportionment     *after* one of the policies was

9    cancelled. Indeed, such a holding would not only be illogical, but it would also violate well-established

10   California law and rules of insurance contract construction nullifying coverage and any obligation

11   thereunder for events occurring after an insurance policy is cancelled as previously explained.

12       ASIC's contention that its policy provided Ms. Wahl or her Lender, EMC, any form of coverage,

13   whether direct or through "other insurance" clauses, after the ASIC policy automatically cancelled by

14   its express terms on January 27, 2006, is without merit. Because the ASIC policy expressly required it

15   to return premiums Ms. Wahl paid for coverage after cancellation and because ASIC failed to do so, Ms.

16   Wahl's breach of contract, UCL, CLRA and other claims premised on this violation are adequately pled.

17   ASIC's motion to dismiss for failure to state a claim must be denied.

18       **B.     ASIC's Waiver Or Rightful Cancellation Defense Is Foreclosed By The Allegations
             In The Complaint And Attached Contractual Documents**

19

20       ASIC's "waiver of coverage" defense again evades the terms of the contracts. ASIC Br. at p.

21   14-16. ASIC argues that EMC purportedly "waived" its coverage under the Farmers' LLPE. What

     ASIC really is arguing is that EMC exercised a right to early cancellation of its Farmers' coverage. The

22
     FAC and attachments refute ASIC's contention, demonstrating that the Farmers' LLPE provided EMC
23
     an election to continue or to cancel its coverage. The Complaint alleges that EMC failed to cancel and
24
     elected to continue its coverage under the Farmers' LLPE. FAC ¶¶ 17-18.
25
         A defense such as "waiver" cannot be asserted via a Fed.R.Civ. P. 12(b)(6) motion to dismiss
26
     unless the face of the complaint discloses an absolute defense or bar to recovery. *Jablon v. Dean Witter*
27
     *& Co.*, 614 F.2d 677, 682 (9th Cir.1980). *See also* Wright and Miller, 5 B Fed. Prac. & Proc. 3d § 1357
28

                                              18

1   and *Coppoletta v. California,* 2006 WL 2666091 *5 (N. D. Cal. 2006). The face of Plaintiffs' FAC

2   does not establish a "waiver" or early cancellation. To the extent that ASIC contends that waiver or

3   cancellation arises outside the terms of the contract, the validity of such a defense is doubtful, but in any

4   event, a question of fact.

5              1.    **The Defense Based Upon Waiver Does Not Apply As A Matter Of Law**

6              ASIC's "waiver" argument is meritless because the Farmers policy could not have been cancelled

7   by a unilateral act of ASIC or EMC– mutual consent and conduct was required. In California, an insured

8   can only cancel a policy of insurance by the "terms of the policy" or by "mutual consent". *See Glens*

9   *Falls Ins. Co. v. Founders' Ins. Co.,* 209 Cal. App. 2d 157, 165-166(1st Dist. 1962). As the *Glens Falls*

10  *Ins.* court recognized, an existing insurance contract cannot be cancelled merely by the insured's

11  unilateral act of obtaining substituted insurance. *Id.* at 169. Therefore, "waiver" cannot apply here

12  because it involves action by one party.

13             The test for waiver in the context of insurance contracts parallels the general rules for finding a

14  waiver. *Klotz v. Old Line Life Ins. Co. Of America,* 955 F. Supp. 1183, 1186 (N.D.Cal. 1996). To

15  constitute a waiver, there must be an existing right, a knowledge of its existence, an actual intention to

16  relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable

17  belief that it has been relinquished. *Id.* Crucially, a waiver does not exist if consent of the other party

18  is required. *See Bickel v. City of Piedmont,* 68 Cal.Rptr. 2d 758, 764 (1997):

19             The doctrine of waiver, by contrast, focuses on the conduct of only one party; consent of the
             other party is irrelevant. As has been said: "Waiver refers to the act, or the consequences of
20           the act, of one side. Waiver is the intentional relinquishment of a known right after full
             knowledge of the facts and depends upon the intention of one party only. Waiver does not
21           require any act or conduct by the other party." *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum
             Cafe & Takeout III, Ltd.* (1994) 30 Cal.App.4th 54, 59, 35 Cal.Rptr.2d 515; accord, 11 Witkin,
22           Summary of Cal. Law (9th ed. 1990) Equity, § 178, pp. 860-861.)

23             Here, it was legally and factually impossible for ASIC or EMC to have "waived" coverage under

24  the Farmers' policy because, as explained below, the Farmers' contract contains an explicit provision

25  for cancellation that requires conduct and consent by Farmers. Moreover, whether there has been a

26  waiver is a question of fact. *Id.* at 1053. The FAC pleads that the Farmers' LLPE coverage continued

27  since EMC failed to cancel it and therefore elected to continue its coverage under the LLPE. FAC ¶¶

28  17-18. If ASIC wishes to contradict these allegations, it will have to offer evidence to do so. At the

19

1   motion to dismiss stage, no evidentiary record has been established.  Therefore, even if this defense has

2   merit, it presents a factual question that cannot be resolved by a motion to dismiss.[10]

### 2.    The Face Of The Complaint Precludes ASIC's Waiver Defense

4       The FAC alleges that when the ASIC Policy was "forced placed", the Farmers' policy was in full

5   force and effect according to the terms of the Farmers' LLPE.  FAC ¶¶ 17-18.   The FAC alleges that

6   ASIC "forced-placed" its policy knowing that other acceptable coverage was in place and had never

7   been cancelled under the terms of the Farmers' LLPE. FAC ¶¶ 9-15. Under Fed.R.Civ.P. 12(b)(6), these

8   alleged facts must be accepted as true.

9       These allegations are supported by the contractual documents.  Where an insurance contract

10  provides the method for cancellation, it must be followed. *Pacific National Ins. Co. v. Webster*, 174 Cal.

11  App.3d 779, 783-84 (1985).  *See also State Farm Fire and Cas. Co. v. Bradford National Life Ins. Co.*,

12  1992 WL 208007, 972 F.2d 1342 (9th Cir.1992). Here, the LLPE provided the contractual conditions

13  for cancellation.    Under the operation of the LLPE, EMC stepped "into the shoes" of Plaintiff and

14  became the insured under the Farmers' policy.  The LLPE provided, "The insurance under this policy,

15  or any rider or endorsement attached thereto, as to the interest only of the Lender, its successors and

16  assigns, shall not be invalidated nor suspended: . . ." by any act of the insured. FAC Ex. F, LLPE ¶ 2

17  page A4160101. *See also Home Savings of America v. Continental Ins. Co.*, 87 Cal.App. 4th 835,

18  842(2001)(". . . there are two contracts of insurance within the policy-one with the lienholder and the

19  insurer and the other with the insured and the insurer." ); *Tarleton v. De Veuve*, 113 F.2d 290, 297-98

20  (9th Cir. 1940); *Farmers Home Mutual v. Bank of Pocahontas*, 355 Ark 19, 129 S.W.2d 832

21  (2003)("When a standard mortgage clause is utilized, "the mortgagee's rights under the policy are those

22  of an additional 'insured'").

23      As explained above, the Farmers' LLPE provides the method for continuing and then cancelling

24  EMC's coverage in ¶¶ 3, 6 and 7 thereof. Under Paragraph 6, Farmers retained the right to cancel

25

26      [10]   ASIC's reliance on *Cal. State Auto. v. Policy Mgmt.*, 1996 WL 45280 (N.D.Cal. 1996) and
    *Sabo v. Fasano*, 154 Cal. App.3d 502, 504-05 (1984), is misplaced.  These cases are limited to the

27  principle that an party to a contract can waive a requirement of written notice to be given to that party
    under the contract either affirmatively or by conduct.  A cancellation of coverage under an insurance

28  contract is decidedly different that a waiver of a right to a notice.

20

1  coverage at any time, but only after 10 days after written notice was given to the Lender.  Paragraph 3

2  of the LLPE provides that *after* 60 days but *before* 120 days after a non-payment by the insured,

3  Farmers was to provide written notice to the Lender. FAC Ex. F, LLPE ¶ 3. Then, under the terms of

4  the LLPE, the Lender had an election: the Lender could (1) decline to pay the premium and give notice

5  to Farmers, thus cancelling the policy. FAC Ex. F, LLPE ¶ 3. ; or (2)  "renew" the policy by paying the

6  premium instead of the original insured. FAC Ex. F, LLPE ¶ 3.  As alleged in the FAC, Farmers elected

7  to continue the coverage for EMC according to the terms of the LLPE notwithstanding that Plaintiff

8  failed to pay the premium, and EMC took no action to cancel or waive that coverage.  FAC ¶¶ 10, 17-

9  18.

10  Paragraph 7 further provides an additional 10 day period for cancellation of the Lender's

11  coverage after Farmers' written notice providing that it would cancel after 10 days after its expiration

12  unless the Lender renewed it:

13  > This policy shall remain in full force and affect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy *in renewal thereof with loss*

14  > *thereunder payable to the Lender in accordance with the terms of this Lenders' Loss Payable Endorsement,* shall have been issued by some insurance company and accepted by the Lender.

15  ASIC seems to suggest this Paragraph 7  provided a right to cancel the Farmers' coverage at an earlier

16  point in time, but ASIC totally misquotes Paragraph 7 by redacting the portion that is italicized above.

17  The unredacted Paragraph 7 does not provide for earlier waiver.  It provides the absolute last deadline

18  for cancellation of the Lender's coverage under the policy stating that such coverage would ultimately

19  cancel unless the Lender elected to *renew* the policy *according to the terms of the LLPE.*

20  Thus, Paragraph 7 does not provide a contractual option to cancel early as ASIC misquotes it,

21  it provides that ASIC has an option to obtain a "renewal policy." A "renewal policy" means a "renewal"

22  of the Farmers' policy. *See e.g. American Deposit Ins. Co. v. Myles,* 783 So.2d 1282, 1287  (La.

23  2001)("as a general rule, when a policy is renewed, the same terms and conditions of the prior policy

24  will apply to the renewal policy. 1 Eric Mills Holmes, *Appleman on Insurance* § 4.16, p. 463 (2nd ed.

25  1996); 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 29.35 (3rd ed. 1997)"). Importantly,

26  this provision is referring to the obligation to pay "renewal premiums". *See Farmers policy,* stating that

27  **"This policy will continue for successive policy periods, if:** (1) we elect to continue this insurance,

28

21

1  and (2) if you pay the renewal premium for each successive period as required by our premiums, rules,

2  forms then in effect." Burt Decl. Ex. 2, Declarations page.

3  Perhaps, EMC could have elected to cancel its coverage provided by Farmers' earlier, but this

4  cancellation could only be effective upon notice to Farmers. The Farmers' policy provides that it could

5  be cancelled by the insured, but only upon written notice to Farmers. Burt Decl. Ex. 2, Declarations

6  page. Further, the Farmers' policy specifically states as to coverage changes, "No other change or

7  waiver in this policy is valid except by endorsement, new Declarations, or new policy issued by us." Burt

8  Decl. Ex. 2, Declarations page. The FAC does not allege or provide that EMC cancelled or otherwise

9  waived the Farmers' coverage as required by the contract, nor do any of the documents referenced by

10  the FAC show that EMC cancelled or waived the Farmers' coverage. Thus, ASIC offers no plead facts

11  on which to base its waiver contention.

12  ### 3.    ASIC's Cited Cases Either Support Plaintiff Or Do Not Apply

13  ASIC's reliance on *Spott Electrical Co. v. Industrial Indemnity Co.,* 30 Cal. App.3d 797 (1973)

14  is erroneous because *Spott,* as applied to the alleged facts in the FAC, supports Plaintiffs.

15  In *Spott,* the plaintiff, an electrical company, had insurance coverage coming up for renewal. *Id.*

16  at 803. The company had its insurance broker seek bids on new coverage. *Id.* A different insurer outbid

17  the existing insurer and orally agreed to provide the new coverage upon expiration of the existing

18  coverage. *Id.* To ensure continuation of coverage in this transition, the broker obtained "temporary

19  insurance", which provided coverage until the new insurer's policy was in place. *Id.* The written terms

20  of the binder provided that it would automatically cancel, stating "The issuance of a Policy shall cancel

21  this Binder." *Id.* With this binder from the existing insurer in place, the new insurer issued an "oral"

22  binder agreeing to provide a new policy effective to March 1, 1966. *Id.* A new policy was issued April

23  14, 1966, but was effective as of March 1, 1966. *Id.* at 804. In the interim, a fire occurred, subjecting

24  the insured to liability. *Id.*

25  The *Spott* court held that the new policy provided coverage because the existing policy was

26  cancelled according to its contractual terms. Applying *Glens Falls Ins. Co., supra,* 209 Cal. App. 2d

27  at 165-166, the court stated that, " in order for cancellation to take place by the substitution of one

28  policy for another it must be done by mutual consent or agreement." *Spott, supra* at 806. The court

22

1    further stated, that the guiding principle was that "A contract must be so interpreted as to give effect

2    to the mutual intention of the parties as it existed at the time of contracting, so far as the same is

3    ascertainable and lawful." *Id.* Applying these principles, the *Spott* court held that the new insurer was

4    100% liable because: 1) the contracts provided that the existing insurer's coverage would automatically

5    cancel on the placement of the new coverage; and 2) because the broker was acting as the agent of each

6    insurer and clearly knew the intention of the company to substitute the policies. *Id.*

7         *Spott* thus supports Plaintiffs' position. Here, unlike in *Spott,* the existing insurer, Farmers, had

8    a contract providing that it would not cancel, but would remain in force according to the terms of the

9    LLPE. Additionally, unlike in *Spott,* the purported new insurer (ASIC) had a provision that its

10    insurance would "automatically cancel" if other insurance existed. Moreover, like in *Spott,* the new,

11    purported insurer (ASIC) was acting as an agent of EMC, the Lender-insured, and, therefore, knew the

12    terms of the LLPE when it forced-placed. Therefore, applying the legal principle of *Spott,* as derived

13    from *Glens Falls Ins.,* the policy of the existing insurer, Farmers, remained in force and effect, and the

14    policy of the new insurer, ASIC, had no force or effect for, at least, the time periods that the Farmers'

15    policy was not cancelled. [11]

16         **C.**    **Ms. Wahl's CLRA Claim Should Not Be Dismissed.**

17         ASIC contends that Ms. Wahl may not bring a CLRA claim on her ASIC policy against ASIC

18    because it does not believe insurance transactions are within the types of "goods" and "services"

19    covered by the CLRA. ASIC Br., pp. 16-17. However, the California Supreme Court in *Broughton*

20    *v. Cigna Healthplans of California,* 21 Cal.4th 1066, 1072, 1079-80 (1999), sustained a CLRA claim

21    for injunctive relief by insureds against their health insurer. Specifically, the California Supreme Court

22    held that CLRA requires that an insured's claim under the CLRA to enjoin the deceptive conduct of its

23

24        [11]    ASIC's further reliance on *U.S. Bank v. Tenn. Farmers Mut. Ins. Co.* 2007 WL 4463959

25    (Tenn. Ct. App. 2007) has no application here. The "standard mortgage clause" in that case is
      substantially different that the Form 438BFU LLPE endorsement that is at issue in this case and which

26    is alleged to be universally used in California. FAC ¶ 12-14. As demonstrated, the Form 438BFU LLPE

27    extends coverage automatically. FAC Ex. A, ¶ 2. In contrast, the "standard mortgage clause" in *U.S.*
      *Bank* provided an extension of coverage, only if the Lender provided notice of "any increase in hazard".

28    *Id.* at *2.

                                           23

1   health insurer under its health care plan must be adjudicated by a court rather than by an arbitrator

2   pursuant to the policy's arbitration clause. *Cf. Massachusetts Mutual Life Ins. Co. v. Superior Court*,

3   97 Cal. App.4th 1282 (2002)(affirming the Superior Court's certification of class involving CLRA

4   claims of insureds against their life insurer for deceptive conduct in selling them life insurance policies).

5          ASIC fails to even mention *Broughton* in its brief. It instead cites a California Supreme Court

6   decision decided more than 20 years before *Broughton* in which the Supreme Court, in *dicta*, stated that

7   insurance is "technically neither a 'good' nor a 'service' within the meaning of the [CLRA]." *Civil*

8   *Service Employee Ins. Co. v. Superior Court*, 22 Cal.3d 362, 368 (1978).[12] This *dicta* in *Civil Service*

9   cannot trump the California Supreme Court's decision some 20 years later in *Broughton* specifically

10  directing that an insured's CLRA injunctive relief claim against an insurer proceed in court.

11         In a footnote, ASIC mentions that the California Supreme Court has recently granted a petition

12  to review a determination that insurance is not a good or service under the CLRA. *See Fairbanks v.*

13  *Superior Court*, 64 Cal. Rptr.3d 623 (Cal. App. 2007), *petition for review granted*, 68 Cal. Rptr.3d

14  273 (2007). Obviously, the California Supreme Court intends to shortly resolve any question as to

15  whether its *dicta* in *Civil Service* that insurance is not a good or service under the CLRA or its more

16  recent decision in *Broughton* allowing an insured can bring a CLRA claim against his insurer in court,

17  is the applicable law.

18         Under similar circumstances, federal district courts have denied a motion to dismiss a claim

19  without prejudice to refiling once a high court has resolved a pending appeal on the very issue defendant

20  claims supports dismissal. *See, e.g., Al Maqaleh v. Gates*, 2007 WL 2059128, *2 (D. D.C., July 18,

21  2007)(district court denied motion to dismiss without prejudice to refiling after Supreme Court's ruling

22  on pending appeal in another case that involved the same legal issue as that asserted by defendant as a

23  basis for dismissal); *Lyon v. Jones*, 168 F. Supp.2d 1, 5 n.1 (D. Conn. 2001)(stating that because the

24  issue of whether individual defendants can be sued under the Connecticut statute at issue is pending

25  resolution before the Connecticut Supreme Court in another action, the court would not grant any

26  ───────────────

27      [12]    ASIC also cites *Bocon ex rel Moroney v. Am. Int'l Group*, 415 F. Supp.2d 1027, 1035-36
    (N.D. Cal. 2006) that relies on the same *dicta* from *Civil Service* and likewise is not controlling in light
28  of *Broughton*.

24

1  individual defendants' motion to dismiss until the Connecticut Supreme Court rules in the other action).

2      Denial of ASIC's motion to dismiss Ms. Wahl's CLRA claim without prejudice to refiling after

3  the California Supreme Court rules in *Fairbanks* is likewise the best course here. Such a decision will

4  minimize the prejudice to either party. Indeed, it preserves both plaintiff's CLRA claim and defendant's

5  right to challenge that claim. Further, proceeding with discovery with that claim will not increase the

6  parties' burden since plaintiff has six other causes of action that require the same discovery as the CLRA

7  claim does.

8                              **CONCLUSION**

9      For the reasons specified herein, Defendant's Motion to Dismiss Plaintiff's First Amended Class

10  Action Complaint should be denied in its entirety.

11

12  Dated: April 21, 2008                **SPECTER SPECTER EVANS**
                                         **& MANOGUE, P.C.**
13

14                                       By:  s/Joseph N. Kravec, Jr.
                                              Joseph N. Kravec, Jr. (Pa. I.D. #68992)
15
                                         The 26th Floor, Koppers Building
16                                       Pittsburgh, PA  15219
                                         Telephone: (412) 642-2300
17                                       Facsimile: (412) 642-2309
                                         Email: jnk@ssem.com
18
                                         James M. Pietz (PA ID No. 55406)
19                                       PIETZ LAW OFFICE
                                         Mitchell Building
20                                       304 Ross Street, Suite 700
                                         Pittsburgh, PA  15219
21                                       Telephone:  (412) 288-4333
                                         Facsimile:   (412) 288-4334
22                                       Email:  jpietz@jpietzlaw.com

23                                       Steve Yunker, Esquire
                                         YUNKER & SCHNEIDER
24                                       655 West Broadway, Suite 1400
                                         San Diego, CA 92101
25                                       Telephone:  (619) 233-5500
                                         Facsimile:  (619) 233-5535
26                                       SFY@yslaw.com

27                                       ***ATTORNEYS FOR PLAINTIFF***

28
                                         25

**PROOF OF SERVICE**

STATE OF PENNSYLVANIA      )
                            )ss.:
COUNTY OF ALLEGHENY       )

      I am employed in the county of Allegheny, Commonwealth of Pennsylvania, I am over the age of 18 and not a party to the within action; my business address is The 26th Floor Koppers Building, Pittsburgh, Pennsylvania 15219.

      On April 21, 2008, using the Northern District of California's Electronic Case Filing System, with the ECF ID registered to Joseph N. Kravec, Jr., I filed and served the document(s) described as:

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

      The ECF System is designed to automatically generate an e-mail message to all parties in the case, which constitutes service. According to the ECF/PACER system, for this case, the parties served are as follows:

Joseph N. Kravec, Jr., Esq.                jnk@ssem.com

James Pietz, Esq.                        jpietz@jpietzlaw.com

Stephen Francis Yunker, Esq.           sfy@yslaw.com

**Attorneys for Plaintiff**

Frank G. Burt, Esq.                    fgb@jordenusa.com

Denise A. Fee, Esq.                   daf@jordenusa.com

Peter S. Hecker, Esq.                 phecker@hewm.com

Anna S. McLean, Esq.                Anna.McLean@hellerehrman.com
                                      bill.henn@hellerehrman.com
                                      Catherine.Lubiszewski@hellerehrman.com
                                      Peter.Hecker@hellerehrman.com

Dawn B. Williams, Esq.               dbw@jordenusa.com

**Attorneys for Defendant**

      I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

      I further declare under penalty of perjury under the laws of the United States that the above is true and correct.

      Executed on April 21, 2008, at Pittsburgh, Pennsylvania 15219.


                                          **/S/ MARCIA Z. CARNEY**
                                           Marcia Z. Carney