PETER S. HECKER (Bar No. 66159)
ANNA S. McLEAN (Bar No. 142233)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94104-2878
Telephone: (415) 772-6080
Facsimile: (415) 772-6268
peter.hecker@hellerehrman.com
anna.mclean@hellerehrman.com

FRANK BURT (*Pro Hac Vice*)
DENISE A. FEE (*Pro Hac Vice*)
JORDEN BURT LLP
1025 Thomas Jefferson Street, NW
Washington, DC 20007-0805
Telephone: (202) 965-8140
Facsimile: (202) 965-8104
fgb@jordenusa.com
daf@jordenusa.com

Attorneys for Defendant
AMERICAN SECURITY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHELE T. WAHL, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN SECURITY INSURANCE COMPANY; and DOES 1-50, inclusive,<br><br>Defendant. | Case No. C08-00555-RS<br><br>**DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>Hearing Date: May 21, 2008<br>Time: 9:30 a.m.<br>Courtroom: 4 |

## TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

A. Ms. Wahl Lacks Standing ........ 1

1. A Non-Contracting Party May Not Sue for Benefits Allegedly Owed to A Contracting Party ........ 2

2. Ms. Wahl Has Alleged No Injury Resulting from the Actions of ASIC ........ 4

3. Ms. Wahl May Not Sue to Rescind A Contract to Which She Was Not a Party ........ 4

B. The FAC Fails to State a Claim Upon Which Relief May Be Granted ........ 5

1. EMC Waived its Coverage Under the Farmers Policy ........ 5

(a) The Issue of Waiver May Be Decided as a Matter of Law ........ 6

(b) EMC Cancelled the Farmers Policy Pursuant to its Own Terms ........ 6

2. Absent EMC's Waiver of Coverage, Both Policies Provided Coverage Under the Doctrine of Equitable Proration ........ 8

(a) The Cancellation Provision Applies Only to Subsequently Provided Policies ........ 8

(b) Ms. Wahl Did Not Provide EMC with Another Policy that Met its Requirements ........ 9

(c) The ASIC Policy Was Equitably Prorated ........ 10

3. The CLRA Does Not Apply to Ms. Wahl's Claims ........ 10

(a) Ms. Wahl Did Not Engage in a Consumer Transaction ........ 10

(b) The CLRA Does Not Apply to Insurance ........ 11

III. CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bacon v. Am. Int'l Group*, 415 F. Supp. 2d 1027 (N.D. Cal. 2006) ........ 11

*Barrett Computer Servs., Inc. v. PDA, Inc.*, 884 F.2d 214, 217 (5th Cir. 1989) ........ 4

*Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066 (1999) ........ 11

*Century Sur. Co. v. United Pac. Ins. Co.*, 109 Cal. App. 4th 1246 (2003) ........ 10

*Duke Energy Trading & Mktg., LLC v. Davis*, 267 F.3d 1042 (9th Cir. 2001) ........ 4

*Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095 (C.D. Cal. 2006) ........ 11

*F & H Construction v. ITT Hartford Ins. Co.*, 118 Cal. App. 4th 364 (2004) ........ 7

*Fairbanks v. Super. Ct.*, 154 Cal. App. 4th 435 (2007), *petition for review granted*, 68 Cal. Rptr. 3d 273 (2007) ........ 11

*Foster Poultry Farms Inc. v. Suntrust Bank*, 355 F. Supp. 2d 1145 (E.D. Cal. 2004) ........ 2

*Garamendi v. Mission Ins. Co.*, 131 Cal. App. 4th 30 (2005) ........ 8

*Garcia v. Truck Ins. Exch.*, 36 Cal.3d 426 (1984) ........ 2

*Glens Falls Ins. Co. v. Founders' Ins. Co.*, 209 Cal. App. 2d 157 (1962) ........ 7, 8

*Hatchwell v. Blue Shield of Cal.*, 198 Cal. App. 3d 1027 (1988) ........ 2, 3

*Hyatt Chalet Motels, Inc. v. Carpenters Local 1065*, 430 F.2d 1119 (9th Cir. 1970) ........ 6

*Jones v. Aetna Cas. & Sur. Co.*, 26 Cal. App. 4th 1717 (1994) ........ 5

*Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997 (9th Cir. 2001) ........ 4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........ 4

*Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282 (2002) ........ 11

*Newland v. Progressive Corp.*, No. CIV-S-05-01405 DFL, 2006 WL 2536625 (E.D. Cal. Aug. 31, 2006) ........ 11

*Northwestern Mut. Ins. Co. v. Farmers Ins. Group*,
76 Cal. App. 3d 1031 (1978) .......... 2

*Ohio Farmers Indem. Co. v. Interinsurance Exch.*,
266 Cal. App. 2d 722 (1968) .......... 3

*Royal Surplus Lines Ins. Co. v. Ranger Ins. Co.*,
100 Cal. App. 4th 193 (2002) .......... 3

*San Francisco v. Factory Mut. Ins. Co.*,
No. C 04-5307 PJH, 2007 WL 4463949 (N.D. Cal. Dec. 17, 2007) .......... 6

*Schauer v. Mandarin Gems of Cal., Inc.*,
125 Cal. App. 4th 949 (2005) .......... 4, 10

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) .......... 4

*Spott Elec. Co. v. Indus. Indem. Co.*,
30 Cal. App. 3d 797 (1973) .......... 7

*Tyler v. Cuomo*,
236 F.3d 1124 (9th Cir. 2000) .......... 4

*United States v. Hays*,
515 U.S. 737 (1995) .......... 1

*Vitton Constr. Co. v. Pac. Ins. Co.*,
110 Cal. App. 4th 762 (2003) .......... 3

*Waller v. Truck Ins. Exch., Inc.*,
11 Cal.4th 1 (1995) .......... 8

**STATUTES**

Cal. Civ. Code § 1559 .......... 4

Cal. Civ. Code § 1761(d) .......... 10

Cal. Civ. Code § 1761(e) .......... 10

Cal. Civ. Code § 1770(a) .......... 10

## I. INTRODUCTION

Plaintiff Michelle Wahl, an "additional insured" under an insurance contract between EMC Mortgage Corporation ("EMC") and defendant American Security Insurance Company ("ASIC"), does not have standing to sue for any injury EMC may suffer as a result of its contractual relationship with ASIC. Nor does the First Amended Complaint ("FAC") allege that ASIC was the cause of any alleged injury to Ms. Wahl.

Additionally, the causes of action in the FAC fail to state a legally cognizable claim. All of Ms. Wahl's claims are premised on the erroneous assumption that ASIC provided no coverage to EMC. ASIC provided coverage to EMC either because EMC waived its protection under the express terms of the Lender's Loss Payable Endorsement ("LLPE") to the Fire Insurance Exchange policy ("Farmers policy") that Ms. Wahl permitted to lapse, or because the coverage provided by the ASIC and Farmers policies was equitably prorated.

Finally, Ms. Wahl's claim that ASIC violated the Consumers Legal Remedies Act ("CLRA") must fail because Ms. Wahl never engaged in a protected "consumer transaction," as plaintiff implicitly concedes.

Accordingly, the FAC should be dismissed without leave to amend.

## II. ARGUMENT

### A. Ms. Wahl Lacks Standing

Ms. Wahl has not met her burden of demonstrating that she has standing to pursue the claims alleged in the FAC. *United States v. Hays*, 515 U.S. 737, 743 (1995). Although plaintiff's Opposition to ASIC's Motion to Dismiss ("Opp.") attempts to cloud the issue by discussing possible benefits Ms. Wahl might have received under the ASIC policy, and by reading EMC out of the contract entirely, her legal status is clear: Ms. Wahl is not a party to the contract between EMC and ASIC but is, at most, a third-party beneficiary. As such, she cannot sue for any injury sustained by EMC under the contract, and she cannot sue for rescission. Nor can she sue ASIC for any alleged injury to herself, because she has alleged that EMC – not ASIC – caused her harm.

**1. A Non-Contracting Party May Not Sue for Benefits Allegedly Owed to A Contracting Party**

Plaintiff's standing argument is based on the faulty premise that she is a party to the insurance contract between EMC and ASIC. *See* Opp. at 5-9. Ms. Wahl did not solicit, negotiate, or pay the premiums for the ASIC policy – EMC did.[1] The ASIC policy entitles EMC, not Ms. Wahl, to any return of premiums that, for whatever reason, may have been improperly paid. *See* FAC, Ex. G ("The above Named Insurance Mortgagee, [EMC], is authorized to act for such Additional Insureds, [Michelle Wahl], in all matters pertaining to this insurance including receipt of Notice of Cancellation, and return premium, if any.").

Nor is Ms. Wahl a "named insured" on the ASIC insurance policy; instead, she is identified as an "additional insured." FAC, Exs. F, G. An additional insured, while having some rights under the contract, is not a party to that contract. *Northwestern Mut. Ins. Co. v. Farmers Ins. Group*, 76 Cal. App. 3d 1031, 1041-42 (1978) (an additional insured is not a "contracting party" but rather a "third party beneficiary"). "Someone who is not a party to the contract has no standing to enforce the contract or to recover extra-contract damages for wrongful withholding of benefits to the contracting party." *Hatchwell v. Blue Shield of Cal.*, 198 Cal. App. 3d 1027, 1034 (1988).[2]

---

[1] Plaintiff's assertion that she paid premiums to ASIC should be ignored as it directly contradicts facts established by the exhibits to the FAC. *Foster Poultry Farms Inc. v. Suntrust Bank*, 355 F. Supp. 2d 1145, 1148 (E.D. Cal. 2004) ("Allegations in the complaint may be disregarded if contradicted by facts established by exhibits attached to the complaint"). EMC paid the premiums to ASIC and later charged Ms. Wahl for that amount, as provided by her mortgage agreement. *See* FAC, Exs. C, D, E ("We have incurred expenses in placing this insurance binder and policy on your structure. Such expenses are recoverable by us as stated on your loan documents."); Ex. G ("The above Named Insured Mortgagee is authorized to advance all funds to be recovered from the Additional Insured for the insurance afforded."). In any event, California law provides that a third party beneficiary does not have standing to enforce the rights of the primary insured under an insurance policy, regardless of who may have paid the premiums. *Hatchwell v. Blue Shield of Cal.*, 198 Cal. App. 3d 1027, 1034 (1988).

[2] Plaintiff purports to distinguish *Northwestern Mutual* and *Garcia v. Truck Ins. Exch.*, 36 Cal.3d 426, 435-36 (1984) by claiming that those cases involve additional insureds who were not specifically named in the policy contract. Plaintiff offers no authority for the proposition that there is a distinction between a specifically identified additional insured and someone falling within the class of persons designated as additional insureds by the policy language. There is no such distinction under California law. Whether an individual is specifically named or not, he or she is "insured under the terms of the policy." *Northwestern Mut. Ins. Co.*, 76 Cal. App. 3d at 1042. California courts allow individuals falling within a class of additional insureds to bring claims for *coverage*, even if they were not named specifically in the contract. *See Vitton Constr. Co. v. Pac. Ins. Co.*, 110 Cal.

The court in *Hatchwell* examined the rights of a non-contracting additional insured at length, and held that such a person could not advance claims relating to a party's rights under the policy. That case involved a wife's claims against a health insurer for bad faith and violation of the Insurance Code for failure to pay for services rendered to its named insured, her husband. *Id*. at 1029. The wife was identified as a "Dependent Subscriber" and was entitled to receive benefits under the insurance contract. *Id*. at 1034. The court found that her status was "not sufficient to establish standing to sue for breach of contract and bad faith based upon the denial of benefits to [the named insured]. A nonparty who is nevertheless entitled to policy benefits, such as an 'insured' person under the terms of the policy or an express beneficiary, has standing only if she is the *claimant* whose benefits are wrongfully withheld." *Id*. (emphasis in the original). The court reasoned that coverage as an additional insured "does not give her standing to enforce [the named insured's] contract rights." *Id*. at 1035.

Similarly, while Ms. Wahl enjoyed some benefits under the contract between EMC and ASIC, those benefits do not include "giv[ing] her standing to enforce [EMC's] contract rights." *Id*. EMC was the "named insured" under the ASIC policy, EMC paid the premiums, and if any premiums were inappropriately charged, they were charged to EMC. *See* FAC, Ex. G. Just as additional insured Ms. Hatchwell had no standing to sue the insurance company for its allegedly wrongful failure to pay for services rendered to her named insured husband, Ms. Wahl lacks standing to sue ASIC for any alleged failure to refund premiums to EMC.[3]

---

App. 4th 762 (2003); *Ohio Farmers Indem. Co. v. Interinsurance Exch.*, 266 Cal. App. 2d 722 (1968).

[3] *Hatchwell*, a case determining that an additional insured does not have standing to assert the named insured's contract rights, 198 Cal. App. 3d at 1030, is directly on point. Plaintiff relies on dicta in *Royal Surplus Lines Ins. Co. v. Ranger Ins. Co.*, 100 Cal. App. 4th 193, 196 (2002), concerning whether an insured and an insurer may be sued in the same action. *See* Opp. at 6. There, however, the additional insured *was suing to collect on its own claim under the policy*, not seeking to enforce contract rights belonging to the primary insured, as is the case here. *Hatchwell*, and not *Royal Surplus Lines*, governs this situation.

**2. Ms. Wahl Has Alleged No Injury Resulting from the Actions of ASIC**

Even assuming that an additional insured could have standing to sue an insurance company unrelated to her benefits under the policy, Ms. Wahl cannot point to any harm that is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). The Opposition attempts to obfuscate this fatal flaw by claiming, incorrectly, that Ms. Wahl paid the premiums to ASIC that she says should be refunded to her. Opp. at 7-8. The FAC exhibits establish that EMC, not Ms. Wahl, paid the premiums to ASIC, and it was to EMC that ASIC is bound to refund any overpayments. FAC, Exs. C, D, E, G. Further, it was EMC that sought and obtained the insurance coverage from ASIC on its terms. Consequently, Ms. Wahl has no standing to sue ASIC.[4]

**3. Ms. Wahl May Not Sue to Rescind A Contract to Which She Was Not a Party**

It is a fundamental tenet of contract law that "only the parties to the contract may rescind it." *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 959 (2005) ("the proposition is self-evident"). Ms. Wahl was an additional insured, and she has the rights of an additional insured, which do not include the right to enforce benefits allegedly due the named insured or the right to rescind a contract between EMC and ASIC to which she was not a party. *See* Cal. Civil Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him [or her] at any time *before the parties thereto rescind it.*") (emphasis supplied).

---

[4] The authorities upon which plaintiff relies for standing are inapposite. Opp. at 8-9; *see Duke Energy Trading & Mktg., LLC v. Davis*, 267 F.3d 1042, 1046 (9th Cir. 2001) (although defendant had the right to liquidate the contract at any time, plaintiff was a *party* to the underlying contract); *Tyler v. Cuomo*, 236 F.3d 1124, 1134 (9th Cir. 2000) (plaintiffs had a specific, enumerated right under the contract that was ignored by the defendant); *Barrett Computer Servs., Inc. v. PDA, Inc.*, 884 F.2d 214, 217 (5th Cir. 1989) (plaintiff had standing to sue because it was assigned the contract rights and thus had privity of contract with defendant). In fact, the *Lee* case expressly supports ASIC's position that Ms. Wahl may not sue a third party that caused her no injury. *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001) (a *party to a contract* can sue the other party, but not the other party's related corporate entities because the suing party "did not suffer any injury due to [the other entity's] conduct."); Opp. at 9.

Plaintiff's argument that ASIC's coverage of Ms. Wahl's $138,000 interest in her property "alone evidence[d] a direct contractual relationship under the policy," is without merit. Opp. at 7.[5] To the contrary, that EMC and ASIC negotiated a contract under which Ms. Wahl was to receive some benefit speaks merely to her status as a third party beneficiary. *Jones v. Aetna Cas. & Sur. Co.*, 26 Cal. App. 4th 1717, 1724 (1994) ("A third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that third party and such intent appears on the terms of the contract."). Because Ms. Wahl lacks standing to sue for rescission, the FAC's second, third and fourth causes of action must be dismissed.

**B. The FAC Fails to State a Claim Upon Which Relief May Be Granted**

The Opposition makes clear that all of Ms. Wahl's causes of action rest on the faulty premise that the ASIC policy provided no coverage to EMC. *See* Opp. at 1 ("ASIC failed to refund premiums paid by Plaintiff and the Class and instead kept those premiums ignoring the fact that its policy automatically cancelled and was no longer in force"). By purchasing replacement coverage from ASIC, EMC waived any continuing coverage under the Farmers policy. Thus, the Court need not reach the novel "cancellation-at-inception" theory that plaintiff proffers. And should the Court find that EMC did not waive coverage under the Farmers policy, the cancellation-at-inception theory nonetheless fails because it is contrary to the plain meaning of the ASIC policy, and because the coverage provided by both policies was equitably pro-rated.

**1. EMC Waived its Coverage Under the Farmers Policy**

The terms of the Farmers LLPE expressly set forth the conditions for a waiver of any continuation of Farmer's Lender coverage. Because EMC's purchase of the ASIC policy

---

[5] Plaintiff's attempt to bolster her standing argument by acknowledging that she received some benefit under the ASIC policy, demonstrates that it is Ms. Wahl who wants to "have [her] cake and eat it too." *See* Opp. at 12 n.4. Later in the Opposition, where that separate coverage undermines her cancellation-at-inception argument, plaintiff claims that, although "ASIC intimates in its brief" that it provided coverage to Ms. Wahl, "whether ASIC's policy provided Ms. Wahl extra coverage is irrelevant since all coverage including the purported extra coverage to Ms. Wahl ceased when the ASIC policy by its express terms automatically cancelled." *Id.* at 14 n.9. She cannot have it both ways.

precisely satisfied those requirements, EMC waived any continuing protection under the Farmers LLPE.

**(a) The Issue of Waiver May Be Decided as a Matter of Law**

"[A]ffirmative defenses, even though not appearing on the face of the complaint, may be established upon a motion to dismiss or for summary judgment when . . . a set of undisputed facts is revealed upon which the moving party is entitled to judgment as a matter of law." *Hyatt Chalet Motels, Inc. v. Carpenters Local 1065*, 430 F.2d 1119, 1120 (9th Cir. 1970) (citation omitted); *see San Francisco v. Factory Mut. Ins. Co.*, No. C 04-5307 PJH, 2007 WL 4463949, at *1 (N.D. Cal. Dec. 17, 2007) (granting a motion to dismiss based on the express waiver of contract clauses). The clause in the Farmers policy providing the method of cancelling the LLPE is found in an exhibit to the FAC, and EMC's conduct upon learning of Ms. Wahl's default is set forth at length in the FAC and its exhibits. *See* FAC ¶¶ 16, 17, 20, 23, Exs. A, B, C, D. Consequently, this Court may decide the issue based upon the allegations in, and the exhibits to, the FAC.

**(b) EMC Cancelled the Farmers Policy Pursuant to its Own Terms**

Plaintiff repeatedly acknowledges that an insured may cancel an insurance policy by the "terms of the policy," and that the Farmers' LLPE "provides the method for continuing and then cancelling EMC's coverage." Opp. at 19, 20. But she disregards that EMC cancelled the Farmers LLPE under its own terms by procuring another insurance policy. The LLPE expressly identifies the conditions for cancellation of any continuation of Lender coverage: "This policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration ***unless*** ***an*** acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, ***shall have been issued by some insurance company and accepted by the Lender***." FAC, Ex. A ¶ 7 (emphasis supplied). All of the express conditions for cancellation by substitution were met: EMC purchased a policy acceptable to it that was issued by ASIC.

Plaintiff's argument that EMC may only cancel its coverage by first renewing her

lapsed Farmers policy, purportedly because the cancellation clause describes an acceptable replacement policy as one "in renewal thereof," cannot be correct. That interpretation not only is strained, it ignores the immediately following language of the LLPE, which expressly contemplates that substitute coverage in favor of the lender may be issued by a different insurer. Plainly, the "renewal" coverage in favor of EMC was not limited to the Farmers policy, since the descriptor "***some*** insurance company" is not limited to Farmers. *Id.* (emphasis supplied). Additionally, if the renewal underwriter were limited to Farmers, the clause would not allow for cancellation by "***an*** acceptable policy." *See also* Opp. at 11 (citing *F & H Construction v. ITT Hartford Ins. Co.*, 118 Cal. App. 4th 364, 376-77 (2004) ("when construing the terms of an insurance contract, a court may not render some words meaningless")).[6]

The holding in *Glens Falls Ins. Co*. does not compel a different outcome. *See* Opp. at 19, citing *Glens Falls Ins. Co. v. Founders' Ins. Co.*, 209 Cal. App. 2d 157 (1962). The *Glens Falls* court held that an existing insurance contract, which provided that coverage could only be cancelled by a request from the insured or notice from the insurance company, was not cancelled by the insured's procurement of another insurance policy. *Id*. at 168. The court reached that conclusion because "an insurance contract can only be cancelled pursuant to its terms." *Id*. at 169.

Here, the cancellation terms expressly included the insured (EMC) obtaining another policy, and thus, did not preclude waiving coverage under the initial policy (Farmers LLPE) by securing the subsequent policy (ASIC). *See Spott Elec. Co. v. Indus. Indem. Co.*, 30 Cal. App. 3d 797, 806 (1973) (citing *Glens Falls Ins. Co.*, 209 Cal. App. 2d at 169, for the proposition that the insured cancelled the first policy "pursuant to its terms" by procuring another policy where the policy allowed cancellation by substitution). The Farmers LLPE,

---

6 Plaintiff's argument that cancellation would only be effective upon Farmers' receipt of written notice from ASIC is groundless. Opp. at 22. The provisions to which plaintiff cites are found not in the LLPE but in the declarations of the Farmers policy – provisions superseded by the more directly applicable LLPE. *See* FAC, Ex. B (cancellation date of January 27, 2006); Burt Declaration, Ex. 2 at 58 ("No other change or waiver in this policy is valid *except by endorsement*") (emphasis supplied).

unlike the policy at issue in *Glens Falls*, specifically permits EMC to cancel its coverage by obtaining another policy, and EMC, by procuring another "acceptable policy," thereby cancelled the LLPE "pursuant to its terms." *Glens Falls Ins. Co.*, 209 Cal. App. 2d at 169.

**2. Absent EMC's Waiver of Coverage, Both Policies Provided Coverage Under the Doctrine of Equitable Proration**

Plaintiff opposes the equitable apportionment doctrine with a novel "cancellation-at-inception" theory which, she argues, caused the ASIC policy never to take effect in the first place. Not only is the plaintiff's interpretation a departure from the plain meaning of the cancellation clause found in the ASIC policy, but the Farmers policy did not satisfy the requirements found in the clause sufficient to trigger any such cancellation. Consequently, the ASIC and the Farmers policies both provided coverage to EMC under the California doctrine of equitable proration.

**(a) The Cancellation Provision Applies Only to Subsequently Provided Policies**

As plaintiff acknowledges, courts must read contracts to effectuate their "plain meaning." Opp. at 11 (citing *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995)). Plaintiff's novel "cancellation-at-inception" theory is a tortured reading of Section 18(a) of the ASIC policy and is contrary to common sense. Section 18(a) provides that "[c]overage under this policy shall automatically and without prior notice, cancel when the Named Insured . . . has been provided with another policy that meets the requirements of the Named Insured as set forth in the mortgage agreement." FAC, Ex. F at AMSBG107. The future tense language of this section ("when … provided"; "shall … cancel") must mean that it operates to cancel only ***when*** EMC is ***provided*** with evidence of an ***acceptable*** policy subsequent to the effective date of the ASIC policy. "[A] reasonable person in the position of [EMC] would have understood the words of the policy to mean" that the ASIC policy would be cancelled after it became effective upon ***subsequent*** proof of an acceptable policy. *Garamendi v. Mission Ins. Co.*, 131 Cal. App. 4th 30, 42 (2005) (citation omitted). It is illogical to claim that the ASIC policy cancels itself at inception based on purported

coverage under the Farmers' LLPE already in EMC's possession, where EMC plainly found such coverage insufficient – otherwise EMC would not have taken affirmative steps to purchase the ASIC policy and pay the premium for that policy. Even plaintiff recognizes that the LLPE and the subsequent policy are intended to provide for a fluid transition in coverage. Opp. at 2 (the LLPE provides a contractual method "for a FPI policy to be *substituted* without any overlap in coverage").

**(b) Ms. Wahl Did Not Provide EMC with Another Policy that Met its Requirements**

Even if the Section 18(a) cancellation provision could logically be argued to have some application to a policy provided to EMC prior to the effective date of the ASIC policy, EMC was not "provided with another policy that meets the requirements of the Named Insured as set forth in the mortgage agreement." FAC, Ex. F at AMSBG107. The letter sent by EMC to Ms. Wahl when it first learned that the Farmers policy had been cancelled, states that EMC has "not received a new or renewal policy covering your house. It appears that you do not have any insurance coverage as of the expiration date above." FAC, Ex. C. EMC certainly did not believe that it had been "provided with another policy" sufficient to trigger the ASIC cancellation provision.

Additionally, the Wahl Deed of Trust, which sets forth EMC's "requirements" for coverage under an insurance policy, provides that the "Lender is under no obligation to purchase any particular type or amount of coverage," "[a]ll insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies," and an acceptable insurance policy "shall ***include*** a standard mortgage clause." Burt Declaration, Ex. 1 at 8 (emphasis added). Thus, the Deed of Trust confirms that EMC was free to reject continuing coverage under the Farmer's LLPE, and that the purported continuation of that coverage ***alone*** - was not an "acceptable policy" to EMC. Because EMC was not "***provided with another policy***" that met its requirements after Ms. Wahl allowed the Farmers policy to lapse, the ASIC policy could not have "cancelled-at-inception."

**(c) The ASIC Policy Was Equitably Prorated**

Both the ASIC policy and the Farmers policy provided coverage to EMC while the Farmers LLPE was in effect. As fully discussed in ASIC's Motion to Dismiss, because both policies included "other insurance" clauses, California courts require both insurers to provide prorated coverage as a matter of law. Mot. at 10-14; *see Century Sur. Co. v. United Pac. Ins. Co.*, 109 Cal. App. 4th 1246, 1260 (2003) ("the only proper result is to ignore all of the clauses and require some equitable pro rata apportionment"). Plaintiff does not dispute that ASIC provided coverage to EMC according to the doctrine of equitable apportionment; rather, she dismisses ASIC's argument as "irrelevant." Opp. at 10. The ASIC policy was not "cancelled-at-inception" – indeed, it provided coverage at inception, and that coverage included the "other insurance" clauses that triggered the equitable proration between the ASIC and Farmers policies.

**3. The CLRA Does Not Apply to Ms. Wahl's Claims**

Ms. Wahl may not bring a claim under the CLRA as she did not engage in a consumer transaction to purchase insurance, and insurance is not a "good or service" as defined by the CLRA.

**(a) Ms. Wahl Did Not Engage in a Consumer Transaction**

Plaintiff devotes the entirety of her CLRA argument to contesting the CLRA's applicability to insurance, and fails to address the point that the CLRA has no application to Ms. Wahl's claims because she personally never engaged in a consumer transaction. EMC purchased an insurance contract from ASIC which provided ancillary benefits to Ms. Wahl. Ms. Wahl was not a party to the insurance contract. The CLRA prohibits only certain activities committed in connection with "an agreement between a consumer and any other person." Cal. Civ. Code §§ 1770(a), 1761(e). A consumer is an *individual* who seeks or acquires household services. Cal. Civ. Code § 1761(d). Consequently, EMC's contractual agreement with ASIC does not fall under the definitions of the CLRA. *See Schauer*, 125 Cal. App. 4th at 960 (finding that the CLRA does not protect a plaintiff whose goods were "not acquired as a result of her own consumer transaction with defendant").

**(b) The CLRA Does Not Apply to Insurance**

Plaintiff suggests that the California Supreme Court has decided that the CLRA applies to insurance; however, the case she cites is inapposite, and all of the cases to actually consider the issue have determined that the purchase of insurance is not a "good or service" falling within the protections of the CLRA.

Plaintiff implies that the California Supreme Court decided that the CLRA applies to insurance in *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066 (1999). In *Broughton*, however, the only issue decided by the Court was whether a claim brought under the CLRA was subject to arbitration. *Id.* at 1072. There is no indication that any party raised a question as to whether insurance is a good or service under the CLRA, and the Court did not address the issue.[7] Additionally, when the Court of Appeal expressly found that insurance did not fall within the definition of "goods and services" in the CLRA, it did not consider *Broughton* to be controlling law. *Fairbanks v. Super. Ct.*, 154 Cal. App. 4th 435 (2007), *petition for review granted*, 68 Cal. Rptr. 3d 273 (2007).

In contrast, all of the cases to actually decide the issue have found that the CLRA does not apply to insurance. *See Bacon v. Am. Int'l Group*, 415 F. Supp. 2d 1027, 1035-36 (N.D. Cal. 2006); *Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095, 1108-09 (C.D. Cal. 2006); *Newland v. Progressive Corp.*, No. CIV-S-05-01405 DFL, 2006 WL 2536625, at *5 (E.D. Cal. Aug. 31, 2006).

---

[7] Similarly, there is no indication that the issue of whether the CLRA applies to insurance was before the court in *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282 (2002).

## III. CONCLUSION

For the reasons set forth above and in ASIC's Memorandum of Points and Authorities in Support of its Motion to Dismiss, this Court should dismiss the FAC because: (1) Ms. Wahl lacks standing to pursue her claims, and (2) the FAC fails to state a claim upon which relief can be granted.

Dated: April 30, 2008

HELLER EHRMAN LLP

By: *_/s/ Peter S. Hecker_*
PETER S. HECKER

Attorneys for Defendant
AMERICAN SECURITY INSURANCE COMPANY