*E-FILED 6-16-08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MICHELLE T. WAHL,

        Plaintiff,

v.

AMERICAN SECURITY INSURANCE COMPANY,

        Defendant.

NO. C 08-00555 RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

## I. INTRODUCTION

In this putative class action, named plaintiff Michele T. Wahl complains of the practices of defendant American Security Insurance Company with respect to so-called "forced placed insurance" property insurance policies it sells. Forced placed insurance policies are those ordered by lenders to insure mortgaged residential properties when borrowers fail to obtain or maintain coverage as required by the terms of their loans. Wahl's basic theory is that although her own insurance policy had been cancelled for non-payment, her lender was still protected under a provision of that policy, and therefore the policy her lender obtained from ASIC was unnecessary and should be deemed cancelled from the moment of its inception. As a result, Wahl contends, ASIC should refund all the premiums it charged on the policy, which were paid through an escrow

account. Because the parties' respective legal arguments are not subject to resolution at the pleading stage, the motion to dismiss will be denied, with the exception of one claim for relief that the Court concludes is not tenable on the facts as alleged.

## II.  BACKGROUND

Wahl alleges that all "typical home mortgages" in California[1] require the borrower to obtain property insurance sufficient to protect the lender's interest, including an endorsement with a "'standard mortgage clause' as stated on Form 438 BFU or its equivalent." First Amended Complaint, ("FAC")¶ 9. That endorsement, the parties agree, is commonly known as the "Lender's Loss Payable Endorsement" ("LLPE") and Wahl alleges it has existed in substantially the same form since 1942. *Id.*

In essence, an LLPE serves to ensure that if a homeowner's insurance policy is cancelled for failure to pay premiums, the *lender*'s interest in the property will continue to be insured for a period of time, to permit the lender either to make the premium payments itself, or to arrange for alternate coverage. Thus, for a specified period after cancellation for non-payment, the lender is entitled to indemnification for any loss, even though the homeowner would have no claim against the insurer.

Wahl's claims in this action all arise from her basic contention that when ASIC issues a "forced placed" policy upon the cancellation of a homeowner's policy, but *before* the lender's protections under an LLPE have expired, the ASIC policy "overlaps" the prior coverage and therefore "provides no actual coverage." FAC, ¶ 1. In Wahl's particular case, she "fell behind" on her insurance premium payments in January of 2006. FAC, ¶ 16. Her insurer, part of the Farmers Insurance Group, notified her that her policy would be cancelled as of the end of that month, unless the premium was paid. *Id.* Wahl did not make the payment, and the policy was cancelled. *Id.*

Wahl's lender, EMC Mortgage Company, notified her that it had purchased a temporary 60-day "binder" of insurance from ASIC, and that she would be charged for that expense. Wahl's

---

[1] Wahl appears to recognize that under typical California practice, borrowers and lenders utilize the device of a deed of trust, rather than a true mortgage. For convenience, the term "mortgage" will be used herein in the colloquial sense it carries in California.

2

1  complaint alleges that although the notice was given on EMC letterhead, it actually was prepared by
2  ASIC, under an agency relationship between the two entities.  Subsequently, ASIC placed an actual
3  insurance policy on Wahl's home, listing EMC as the primary insured, with Wahl named as an
4  "additional insured."  That policy remained in effect for approximately a year and a half, until Wahl
5  replaced it with another policy from Farmers.  The parties' disputes as to the dates on which EMC
6  actually obtained the 60 day binder are discussed further below.

## III. STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  See *Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal under FRCP 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  Hence, the issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim."  *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

## IV. DISCUSSION

### A. Standing

At the outset, ASIC challenges Wahl's standing to pursue any of the claims she has alleged, arguing that she is not a party to the insurance agreement between ASIC and EMC.  Wahl insists that under *Royal Surplus Lines, Ins. Co. v. Ranger Ins. Co.*, 100 Cal.App.4th 193 (2002), her status as an "additional insured" on the policy gives her standing.  In *Royal Surplus*, an "additional

3

insured" was permitted to sue an insurer that failed to provide the plaintiff a defense in certain underlying litigation. *See Royal Surplus,* 100 Cal.App 4th at 200 ("An additional insured has standing to sue an insurer for breach of contract.")

ASIC, however, argues that this case is governed not by *Royal Surplus*, but instead by *Hatchwell v. Blue Shield of California*, 198 Cal.App.3d 1027 (1988). *Hatchwell* upheld the dismissal of a plaintiff-spouse (the wife) in an action challenging the denial of health insurance benefits to the other spouse (the husband), who was the named beneficiary of the policy. The court held that the wife's status as a "co-insured" or "dependent beneficiary" did not make her a "contracting party" with standing to sue for breach of contract based on the denial of benefits to her husband. *See Hatchwell*, 198 CalApp.3d at 1034.

Neither *Royal Surplus* nor *Hatchwell* is precisely on point here. Unlike the *Royal Surplus* plaintiff, Wahl is not suing to enforce her right to benefits under the policy. Unlike the wife in *Hatchwell*, however, Wahl also is not suing to enforce the contracting party's right to benefits under the policy.

At the pleading stage, Wahl has alleged sufficient facts to give rise to standing. As much as ASIC wishes to characterize its policy as a contract only between itself and EMC, entered into and paid for by EMC, the allegations, presumed true for purposes of this motion, are otherwise. In particular, even though there is no dispute that EMC arranged for the ASIC binder and policy to be placed, ASIC's contention that EMC rather than Wahl paid the premiums presents a factual question. Exhibit C to the FAC, for example, indicates that the premiums were to be paid from an "escrow" account. Money held in "escrow" by EMC by definition was *not* EMC's money–it was Wahl's money.

Additionally, the ASIC binder and subsequent policy provided insurance in the amount of $603,000. EMC's insurable interest in the property was only the amount owed under the deed of trust–$465,000. Thus, $138,000 of the policy limits could only have inured to the benefit of Wahl, not EMC. Thus, as alleged, the ASIC policy was paid for by Wahl and provided certain benefits directly to Wahl alone. Under these circumstances, the Court cannot conclude at the pleading stage

4

1 that Wahl lacks standing.[2]

B. <u>Failure to state a claim</u>

ASIC argues that even if Wahl has standing, she fails to state a cognizable claim. ASIC's arguments, however, all turn on how it believes certain clauses in Wahl's original Farmers' insurance policy and ASIC's subsequent policy should be construed and applied. Put simply, ASIC argues that the LLPE clause in Wahl's original policy permitted EMC to cut off/waive, any coverage under that policy, by choosing to procure acceptable substitute insurance elsewhere. ASIC contends that its binder and subsequent policy constituted such substitute insurance, and that coverage under the LLPE terminated with no period of overlapping coverage.[3]

Wahl, in contrast, argues that the policy provisions should be read in such a way that the ASIC policy never came into effect–that it automatically terminated at inception. Wahl's theory is based on a provision of the ASIC policy providing for it to terminate when alternate insurance is in place; Wahl contends the LLPE constituted such alternate insurance.[4] Wahl further argues that ASIC's arguments fail as a factual matter because EMC did not act to obtain the binder or the ASIC policy until quite sometime *after* the Farmer's policy had expired. Wahl contends the ASIC coverage was only "backdated" to the day that the Farmer's policy expired. As a result, Wahl contends, EMC post-hoc provided unnecessary insurance for at *least* the period of time between the expiration of the Farmer's policy and the *actual* date the ASIC binder was obtained.

ASIC responds to this argument by offering a document it contends is a copy of the binder

---

[2] It may be the facts ultimately will support standing on some theories and claims but not others, and that some of the specific duties ASIC is alleged in the complaint to have breached ran only to EMC. Such matters cannot be parsed out at this juncture.

[3] ASIC argues in the alternative that if both policies were simultaneously in effect for any time period, the law would require pro rata apportionment of any benefits payable under the two policies. Thus, ASIC contends, both the apportionment rule and the fact that the ASIC policy provided benefits greater than the LLPE, mean that any overlapping coverage was not unnecessarily duplicative.

[4] ASIC contends that the provision on which Wahl relies only contemplates the ASIC policy terminating upon a *subsequent acquisition* of replacement insurance. Although such a reading may at first blush appear more natural,ary this is another interpretation issue not subject to determination at the pleading stage.

5

that was originally attached to a letter to Wahl submitted as Exhibit D to the FAC. Wahl objects that the binder is not adequately authenticated for it to be considered on a motion to dismiss. Whether considered or not, it does not resolve the factual question of when EMC acted to procure the ASIC policy. The binder states an "effective date" that is simultaneous with the expiration of the Farmers' policy, but nothing about it rules out the possibility that it was backdated.[5]

Accordingly, even though policy interpretation issues largely present questions of law, ASIC has failed to show that the legal result of the interaction between the two policies can be determined at this juncture in the proceedings. The motion to dismiss will therefore be denied as to all claims other than the seventh claim for relief, brought under the California Consumer Legal Remedies Act. ("CLRA").

That claim presents a different issue. The question of whether insurance contracts are subject to the CLRA *at all* is presently pending before the California Supreme Court. *See Fairbanks v. Superior Court*, 64 Cal.Rptr.3d 623 (Cal.App. 2007), *petition for review granted*, 68 Cal.Rptr. 3d 273 (2007). Regardless of how that court may eventually decide the issue, however, Wahl has not alleged facts sufficient to state a claim within the CLRA, which regulates acts committed in connection with "an agreement between a consumer and any other person." Cal. Civ. Code §§ 1770(a), 1761(e). The code defines "consumer" as an individual who seeks or acquires household services. Cal. Civ. Code § 1761(d). While as noted above, the facts as alleged are sufficient to give Wahl standing to claim that premiums were paid with her money and that those premiums should be returned to her, that does not transform the transaction into one within the definitions of the CLRA. Accordingly, that claim will be dismissed. Although it is not apparent how the claim defect can be cured through amendment, because this is a first motion to dismiss, Wahl may attempt to amend the seventh claim for relief within 20 days of the date of this order, if in good faith she believes additional facts would address the issue set out herein.

---

[5] Indeed, were the binder to be considered as urged by ASIC, it would appear to raise *additional* factual questions related to timing. The Exhibit D cover later, dated April 3, 2006, explained that the 60 day binder "is now 30 days old" and warned Wahl that unless she provided proof of acceptable alternate coverage, EMC would obtain a one-year policy, paid for through her escrow account. The copy of the binder ASIC contends was attached to that letter shows that it had *already* expired, on March 28, 2006.

6

## V.  CONCLUSION

The motion to dismiss is denied, except as to the seventh claim for relief.  Wahl may amend that claim within 20 days of the date of this order.

IT IS SO ORDERED.

Dated: 6-16-08

_____
RICHARD SEEBORG
United States Magistrate Judge