PETER S. HECKER (Bar No. 66159)
ANNA S. McLEAN (Bar No. 142233)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94104-2878
Telephone: (415) 772-6080
Facsimile: (415) 772-6268
peter.hecker@hellerehrman.com
anna.mclean@hellerehrman.com

FRANK BURT (*Pro Hac Vice*)
DENISE A. FEE (*Pro Hac Vice*)
JORDEN BURT LLP
1025 Thomas Jefferson Street, NW
Washington, DC 20007-0805
Telephone: (202) 965-8140
Facsimile: (202) 965-8104
fgb@jordenusa.com
daf@jordenusa.com

Attorneys for Defendant
AMERICAN SECURITY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHELLE T. WAHL, on behalf of herself and all others similarly situated,<br><br>              Plaintiff,<br><br>       v.<br><br>AMERICAN SECURITY INSURANCE COMPANY; and DOES 1-50, inclusive,<br><br>              Defendant. | Case No. C08-00555-RS<br><br>**DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: April 1, 2009<br>Time:            9:30 a.m.<br>Courtroom:    4 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

NOTICE OF MOTION AND MOTION ................................................................ iv

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 1

I.      INTRODUCTION ...................................................................................... 1

II.     UNDISPUTED FACTS ............................................................................. 1

        A.      The Rationale for Placing Insurance ............................................ 1

        B.      Ms. Wahl's Transaction ............................................................... 2

III.    ALLEGATIONS ....................................................................................... 6

IV.     STANDARD ............................................................................................. 6

V.      ARGUMENT ............................................................................................ 7

        A.      EMC Acted Pursuant to its Contractual and Statutory Rights in
                Placing the ASIC Policy ............................................................... 7

                1.      EMC Purchased the ASIC Policy in Accordance with the
                        Terms of the Deed of Trust .............................................. 8

                2.      EMC Had the Statutory Right to Purchase Other Insurance ............... 9

        B.      The ASIC Policy Insured the Property Beginning on January 27, 2006 ...... 11

                1.      Coverage Began Under the Master Policy on January 27, 2006. ...... 11

                2.      The ASIC Policy Did Not Terminate at Inception ............................. 12

                        a.      Under the Clear Terms of the ASIC Policy, it
                                Did Not Terminate. ................................................ 12

                                (1)      Ms. Wahl Did Not Provide ASIC With
                                         Proof of Other Insurance ........................ 13

                                (2)      The Farmers LLPE was not "another policy
                                         that meets the requirements of the Named Insured".... 15

                        b.      ASIC Could Not Cancel the Policy Without Giving Notice .. 17

        C.      The ASIC Policy Insured the Property Against Loss .................................. 17

                1.      EMC Waived its Coverage under the Farmers LLPE ...................... 17

                2.      The Policy Benefits Were Equitably Prorated .............................. 19

VI.     CONCLUSION ....................................................................................... 20

i

DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. C08-00555-RS

# TABLE OF AUTHORITIES

**CASES**

*Bank of America Nat'l Trust & Sav. Ass'n  v. Allstate Ins. Co.*
    29 F. Supp. 2d 1129 (C.D. Cal. 1998).........................................................................6

*Breland v. All Am. Assurance Co.*
    366 So. 2d 1051 (La. Ct. App. 1978) .......................................................................16

*Carter v. Allstate Indem. Co.*
    592 So. 2d 66 (Miss. 1991) .....................................................................................17

*Century Sur. Co. v. United Pac. Ins. Co.*
    109 Cal. App. 4th 1246 (2003)................................................................................19

*Dart Indus., Inc. v. Commercial Union Ins. Co.*
    28 Cal. 4th 1059 (2002)..........................................................................................19

*Fireman's Fund Ins. Co. v. Appalachian Ins. Co.*
    572 F. Supp. 799 (E.D. Pa. 1983) ...........................................................................17

*Hayes v. Wells Fargo Home Mortgage*
    No. 06-1791, 2006 WL 3193743 (E.D. La. Oct. 31, 2006) .......................................8

*Herd v. Am. Security Ins. Co.*
    501 F. Supp. 2d 1240 (W.D. Mo. 2007).................................................................13

*Klotz v. Old Line Life Ins. Co. of America*
    955 F. Supp. 1183 (N.D. Cal. 1996) .......................................................................17

*Koltar v. Hartford Fire Ins. Co.*
    83 Cal. App. 4th 1116 (2000).................................................................................16

*Maron v. Foster Wheeler Corp.*
    No. C 95-0686 SI, 2002 WL 102605 (N.D. Cal. Jan. 17, 2002)................................6

*Northrop Grumman Corp. v. Factory Mut. Ins. Co.*
    538 F.3d 1090 (9th Cir. 2008).................................................................................6

*Oyola v. Empire Indem. Ins. Co.*
    No. 6:06-cv-510, 2006 WL 3708089 (M.D. Fla. Dec. 14, 2006) ............................14

*Thames v. Piedmont Life Ins. Co.*
    197 S.E.2d 412 (Ga. Ct. App. 1973) .......................................................................16

*Webb v. Chase Manhattan Mortgage Corp.*
    No. 2:05-cv-0548, 2008 WL 2230696 (S.D. Ohio May 28, 2008)............................8

*Williams v. State Farm Fire & Cas. Co.*
    216 Cal. App. 3d 1540 (1990)................................................................................16

**RULES**

Fed. R. Civ. P. 56(c) ...................................................................................................6

ii

1

**STATUTES**

2  Cal. Civ. Code § 1750 *et seq.* ................................................................................................. iv

3  Cal. Civ. Code § 2944.5 ....................................................................................................... 8

4  Cal. Civ. Code § 2955.5 ....................................................................................................... 8

5  Cal. Ins. Code § 677 ........................................................................................................... 16

6  Cal. Ins. Code § 677.4 ........................................................................................................ 16

7  Cal. Ins. Code § 770 ............................................................................................................ 9

8  Cal. Ins. Code § 771 ............................................................................................................ 9

9  Cal. Ins. Code § 861.05 ....................................................................................................... 9

10

**REGULATIONS**

11  Cal. Code Regs. tit. 10, § 107.601 ................................................................................. 9, 15

12  Cal. Code Regs. tit. 10, § 1499 ........................................................................................ 15

13  Cal. Code Regs. tit. 10, § 2181.1 ...................................................................................... 9

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>NOTICE OF MOTION AND MOTION</u>

TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on April 1, 2009, at 9:30 a.m. or as soon thereafter as the matter may be heard, in Courtroom 4 of the above-referenced Court, located at 280 South First Street, San Jose, California 95113, pursuant to Federal Rule of Civil Procedure 56, defendant American Security Insurance Company ("ASIC") will and hereby does move this Court to grant summary judgment in its favor on plaintiff's First Amended Complaint ("FAC"), and the First, Second, Third, Fourth, Fifth, and Seventh Claims thereof.[1]

This motion is made on the grounds that there are no disputed issues as to any material fact relevant to the policy interpretation issues underlying plaintiff's claim of an alleged "overlap" between plaintiff's lapsed Fire Insurance Exchange policy (the "Farmers policy") and the ASIC policy, for the following reasons:  (1) the ASIC policy provided coverage to plaintiff's lender, EMC Mortgage Corporation ("EMC"), beginning as of January 26, 2006, the date plaintiff's Farmers policy lapsed, because plaintiff had not responded to multiple requests for proof of acceptable alternative insurance, and (2) there was no overlap with plaintiff's Farmers policy, because EMC waived any continuing protection under the Farmers Lenders Loss Payable Endorsement ("LLPE"), or, alternatively, benefits under the LLPE and the ASIC policy were equitably prorated as a matter of law.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Stella Matallana, Ronald K. Wilson, and Denise A. Fee in Support of ASIC's Motion for Summary Judgment, and the Proposed Order, all filed herewith, the files and records in this case, and such argument and further filings and evidence as this Court may receive on this motion.

---

[1] The Sixth Cause of Action, for alleged violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.,* was dismissed pursuant to this Court's Order Granting In Part and Denying In Part Motion to Dismiss, dated June 16, 2008 (Docket No. 39), and plaintiff elected not to amend her complaint in response to the defects noted by the Court in its Order.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Despite Michelle Wahl's strained interpretation of the contracts at issue, this is a simple case that raises no genuine issues of material fact. EMC provided Ms. Wahl with a substantial benefit by loaning her $465,000 in exchange for her promise to, among other things, maintain insurance coverage on EMC's collateral—the property.[2] Ms. Wahl failed to perform her end of the bargain, and so EMC obtained an insurance policy from ASIC at Ms. Wahl's expense, as was EMC's right under the terms of the Deed of Trust.[3] Ms. Wahl complains that the ASIC policy provided no benefit to EMC because her cancelled insurance policy contained a provision that potentially extended some coverage to EMC for some period of time after Ms. Wahl's policy was terminated by her insurer.

Ms. Wahl's claims fail as a matter of law. The ASIC policy provided coverage to EMC commencing on the date that Ms. Wahl's prior homeowner's policy was cancelled and continuing until the date the ASIC policy was cancelled, which was nearly a year and a half later. ASIC did not violate any common or statutory law in accepting premiums for that policy from EMC, which EMC later charged to Ms. Wahl's escrow account as provided by the Deed of Trust.

## II. UNDISPUTED FACTS

### A.    The Rationale for Placing Insurance

EMC is the mortgagee, or mortgage servicer, for 81,689 home loans secured by real properties located in California. Declaration of Stella Matallana ("Matallana Decl.") ¶ 4. Without protecting the collateral in these loans, EMC would not be able to provide financing for those mortgage transactions. *Id*. ¶ 5. EMC ensures that its collateral is protected in two ways: first, requiring the mortgagor to maintain acceptable property insurance coverage; and second, contracting with ASIC to obtain insurance on the property

---

[2] The property discussed throughout this Memorandum is 785 Logan Creek Road, Boulder Creek, CA 95008.

[3] "Deed of Trust" and "mortgage" are used interchangeably throughout this Memorandum.

in the event the mortgagor fails to maintain acceptable coverage. *See, e.g.*, Matallana Decl. Ex. B (Ms. Wahl's Deed of Trust) at ASIC-WAHL0000154 ¶ 5 ("Borrower shall keep the improvements now existing or hereafter erected on the Property insured. . . .  If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage.").

To effectuate the second part of that strategy, EMC and ASIC entered into a Master Residential Property Agreement (the "Master Policy") on August 31, 2000, which automatically triggers ASIC insurance coverage whenever a homeowner fails to provide proof of acceptable insurance coverage to EMC. *See* Matallana Decl. ¶¶ 7, 8; Declaration of Ronald K. Wilson ("Wilson Decl.") ¶¶ 4, 5. The Master Policy operates to insure EMC against loss for the period and in the amount provided on the additional insured endorsement issued to a particular mortgagor. Matallana Decl. Ex. A at ASIC-WAHL0000206-07.

**B.     Ms. Wahl's Transaction**

Ms. Wahl refinanced her house in 2004, secured by a Deed of Trust between her and EMC. She signed the Deed of Trust, agreeing to "keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term 'extended coverage,' and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. The insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.   What Lender requires pursuant to the preceding sentences can change during the term of the Loan." Matallana Decl. Ex. B at ASIC-WAHL0000154 ¶ 5; *see* Matallana Decl. ¶ 14.

To fulfill that contractual obligation, Ms. Wahl purchased the Farmers policy in July 2005 to insure the property for one year, paying half of the premium at inception and agreeing to pay the other half six months later. The Farmers policy contained a Lenders Loss Payable Endorsement, in accordance with the requirements of Ms. Wahl's Deed of Trust, protecting EMC's interest in the property separate and apart from Ms. Wahl's interest. The LLPE contains a cancellation provision, which states that "[t]his Company

2

reserves the right to cancel this policy at any time, as provided by its terms, but in such case this policy shall continue in force for the benefit of the Lender for ten (10) days after written notice of such cancellation is received by the Lender and shall then cease."[4]  Wilson Decl. Ex. 23 at ASIC-WAHL0000404 ¶ 6.  The LLPE also permits the Lender to waive any post-cancellation coverage under it: "[t]his policy shall remain in full force and effect as to the interest of the Lender for a period of ten (10) days after its expiration unless an acceptable policy in renewal thereof with loss thereunder payable to the Lender in accordance with the terms of this Lender's Loss Payable Endorsement, shall have been issued by some insurance company and accepted by the Lender."  *Id.* ¶ 7.

In 2005, EMC received a notice cancelling Ms. Wahl's prior insurance policy effective July 29, 2005, but did not receive proof that Ms. Wahl purchased new coverage. Wilson Decl. Ex. 5.  EMC notified Ms. Wahl on August 3, 2005 that there was no proof of adequate insurance and therefore EMC had arranged for temporary coverage from ASIC. Wilson Decl. Ex. 6.  Ms. Wahl then provided that proof and EMC cancelled the temporary binder of insurance on August 15, 2005.  *See* Wilson Decl. Ex. 8 (EMC "has received information regarding your current insurance policy and the temporary binder EMC placed to protect your home has been cancelled, effective with the above cancellation date.  There has been no charge to your escrow account for this binder coverage.").

Six months later, Ms. Wahl's second premium on her Farmers policy became due. On January 13, 2006, Ms. Wahl received a "Cancellation Notice (Non-Payment of Premium)" from Farmers, which stated that "[t]he payment to keep your policy in force was not received by 1-12-06.  *Your policy is cancelled effective* 1-27-06 *at* 12:01 A.M. . . .  *If we receive your payment of* $1,228.74 *by* 1-27-06, *your policy will continue without interruption of coverage*."  Declaration of Denise A. Fee ("Fee Decl.") Ex. 1.  Despite her

---

[4] The Farmers policy allows Farmers to "cancel this policy only for the following reasons: (1) Non-payment of premium, whether payable to us or our agent.  We may cancel at any time by notifying you at least 10 days before the date cancellation takes effect."  Wilson Decl. Ex. 23 at ASIC-WAHL0000383.

obligation to maintain insurance on the property, Ms. Wahl did not pay the premium to Farmers and her policy was cancelled on January 27, 2006. Farmers notified her of that fact in a February 6, 2006 letter, which also was sent to and received by EMC the next day. *See* FAC Ex. B ("YOUR POLICY IS OUT OF FORCE") (Docket No. 14); Wilson Decl. Ex. 5 (cancellation letter received by EMC on February 7, 2006); Wilson Decl. Ex. 22 at ASIC-WAHL0001281 ("we received the notification in February") and ASIC-WAHL0001287 ("we then received a cancellation from Farmers due to nonpayment").

Upon notification that the Farmers policy had cancelled, EMC on three separate occasions solicited evidence of acceptable coverage from Ms. Wahl. The first letter, dated February 27, 2006, stated that EMC had not "received a new or renewal policy covering your house. It appears that you do not have any insurance coverage as of the expiration date above. Please contact your agent or company and purchase coverage. If you have already done so, please request proof of coverage and send it to the address below. . . . Until we receive your policy, we have secured temporary insurance coverage in the form of a sixty-day binder through ASIC. . . . If proof of insurance is not supplied within 60 days, EMC will be required to obtain adequate insurance coverage at your expense. . . . Any policy we purchase on your behalf may be cancelled at any time by providing proof of acceptable insurance coverage." Wilson Decl. Ex. 10.

The second letter, dated April 3, 2006, echoed the first, and also stated that "[i]f you do not provide us with proof of insurance coverage before the end of the binder period, we will be required to obtain a one-year policy on your property." Wilson Decl. Ex. 11. The April 3, 2006 letter also advised that "[a]ny policy purchased on your behalf may be cancelled at any time by providing proof of acceptable insurance." *Id*. Attached to the letter was a binder of insurance issued by ASIC, which covered the property effective January 27, 2006, the day Ms. Wahl's Farmers policy lapsed, and reiterated that a full-year policy would be issued "if you do not give [EMC] proof of insurance on your house." *Id*. at WAHL0043.

Not receiving proof of other insurance, EMC finally purchased a one-year policy

from ASIC, insuring the property from January 27, 2006 to January 27, 2007. *See* Wilson Decl. Exs. 12 & 13. EMC contacted Ms. Wahl a third time, notifying her on May 12, 2006 of the one-year ASIC policy and again informing her of her option to obtain a policy of her choice: "[y]ou have the right to obtain insurance coverage from an agent/insurance company of your choice. By providing evidence that you have obtained acceptable insurance coverage, this concern can be eliminated. . . . Please contact your agent or company and purchase coverage. If you have already done so, please request proof of coverage and send it to the address below." Wilson Decl. Ex. 12.[5]

Nearly a year later, in a letter dated December 29, 2006, EMC contacted Ms. Wahl for a fourth time about her property insurance obligation, notifying her that the ASIC policy would be renewed unless she provided proof of other acceptable insurance coverage. EMC reminded Ms. Wahl that it "originally placed this policy on your property because acceptable proof of coverage was not provided. . . . Any policy purchased on your behalf may be cancelled at any time by providing EMC with proof of other acceptable insurance. . . . Upon receipt of proof of coverage, this policy will not renew or will promptly be cancelled." Wilson Decl. Ex. 14. Not receiving proof of other insurance, EMC renewed the ASIC policy and informed Ms. Wahl of that fact in March 2007. *See* Wilson Decl. Ex. 15 ("**Please contact your agent or company and purchase coverage.** If you have already done so, please request proof of coverage and send it to us at the address below.").

After EMC purchased the one-year renewal ASIC policy, Ms. Wahl secured a new Farmers policy in July 2007 and notified EMC of that fact. EMC then promptly cancelled the ASIC policy as of the effective date of Ms. Wahl's new Farmers policy. *See* Wilson Decl. Ex. 18 ("The reason for this cancellation is: You provided evidence of other insurance coverage."). The following year, Ms. Wahl again notified EMC that she had purchased

---

[5] The ASIC policy contains a cancellation provision: "Coverage under this policy shall automatically and without prior notice, cancel when the Named Insured . . . has been provided with another policy that meets the requirements of the Named Insured as set forth in the mortgage agreement applicable to the Described Property." Wilson Decl. Ex. 16 at WAHL0025.

DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. C08-00555-RS

insurance on the property.  *See* Wilson Decl. Ex. 22 at ASIC-WAHL0001298 ("I am calling you to provide you evidence of insurance for this policy.").

## III.  ALLEGATIONS

Ms. Wahl brings claims for breach of contract, breach of statutory duty to disclose, constructive fraud, failure of consideration, and violation of the Unfair Competition Law against ASIC, not EMC.  Each of those causes of action arises from a claimed "overlap" in coverage between the cancelled Farmers policy LLPE and the ASIC policy purchased by EMC.  Because of that supposed overlap, Ms. Wahl alleges that the ASIC policy either terminated at inception or provided her with no benefits and, consequently, ASIC acted wrongfully in accepting premiums from EMC that EMC later charged to Ms. Wahl pursuant to her Deed of Trust.[6]

## IV.  STANDARD

Summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Issues of policy interpretation are particularly well suited for summary judgment. *See Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, 538 F.3d 1090, 1098 (9th Cir. 2008).  Summary judgment is granted where the non-moving party fails to offer material evidence contradicting "the defendant's 'amply supported' interpretation of the contract." *Maron v. Foster Wheeler Corp.*, No. C 95-0686 SI, 2002 WL 102605, at *2 (N.D. Cal. Jan. 17, 2002) (attached as Fee Decl. Ex. 2); *see Bank of America Nat'l Trust & Sav. Ass'n v. Allstate Ins. Co.*, 29 F. Supp. 2d 1129, 1139 (C.D. Cal. 1998) ("when the nonmoving party has no evidence to support a contradictory interpretation of an instrument, summary judgment is appropriate").

---

[6] *See* FAC ¶ 1 (alleging that the ASIC policy "overlaps with the consumers' prior homeowner insurance, and therefore provides no actual coverage under the terms of defendant's own FPI policies; [c]harging premiums for FPI during the overlap is a breach under the terms of defendant's own FPI policies; [and f]ailing to disclose the overlap is a violation of defendant's statutory duties under the Insurance Code, and is constructive fraud").

## V.  ARGUMENT

The ASIC policy insured Ms. Wahl's property commencing on the date that the Farmers policy cancelled and continuing until the date Ms. Wahl purchased a later Farmers policy.   ASIC coverage began on January 26, 2006 as provided by the Master Policy between ASIC and EMC.   Notwithstanding the LLPE in the cancelled Farmers policy, coverage commenced and remained in force under the ASIC policy for at least two independently dispositive reasons: (1) by purchasing the ASIC policy, EMC waived any continuing protection under the Farmers LLPE; and (2) the ASIC policy and the Farmers LLPE were equitably prorated as a matter of law.   ASIC did not act in derogation of common or statutory law by receiving premium from EMC that EMC later charged to Ms. Wahl's escrow account, or by not informing her of the supposed "overlap" in coverage.

### A.   EMC Acted Pursuant to its Contractual and Statutory Rights in Placing the ASIC Policy.

While Ms. Wahl mischaracterizes lender-placed insurance as costly and inferior, FAC ¶ 14, lender-placed insurance plays a valuable role in mortgage transactions, as recognized by the California legislature, Department of Insurance, and the contracting parties themselves.

#### 1.   EMC Purchased the ASIC Policy in Accordance with the Terms of the Deed of Trust.

When Ms. Wahl failed to provide proof of acceptable insurance, EMC acted within its contractual rights in obtaining insurance from ASIC.   The Deed of Trust provides that "[i]f Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.   Lender is under no obligation to purchase any particular type or amount of coverage. . . .   Borrower acknowledges that the cost of the insurance so obtained might significantly exceed the cost of insurance that Borrower could have obtained."   Matallana Decl. Ex. B at ASIC-WAHL0000154 ¶ 5.  In connection with her mortgage transaction, Ms. Wahl also received a document from Argent, the predecessor in interest to EMC, notifying her that "[i]f you do

not provide us with evidence of the insurance coverage as required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. . . .  You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement."  Matallana Decl. Ex. E.

Other courts interpreting the same contract language have concluded that lenders may properly obtain other insurance in these circumstances.  In *Webb v. Chase Manhattan Mortgage Corp.*, No. 2:05-cv-0548, 2008 WL 2230696, at *17 (S.D. Ohio May 28, 2008) (attached as Fee Decl. Ex. 3), the lender "contacted Plaintiff Webb to request his current insurance information.  Plaintiff Webb failed to respond to [the lender's] request for information, ignored correspondence from MIG directing him to send all insurance information, including insurance bills to [the lender], and disregarded a stream of correspondence from TFI alerting him that his premium was due, then overdue."  The *Webb* court found that the lender "did not breach any of Plaintiff Webb's mortgage documents in securing replacement insurance coverage on Plaintiff's property.  Rather, the fault appears to lie with Plaintiff Webb."  *Id.* at *19; *see also Hayes v. Wells Fargo Home Mortgage*, No. 06-1791, 2006 WL 3193743, at *4 (E.D. La. Oct. 31, 2006) (finding that the lender was "within its contractual rights under the Mortgage Agreement" to place an insurance policy upon the failure of the insured to obtain adequate insurance) (attached as Fee Decl. Ex. 4).

## 2. EMC Had the Statutory Right to Purchase Other Insurance.

The California legislature, recognizing the important role lender-placed insurance plays in ensuring the continued availability of mortgages, has acknowledged that mortgagees have a right to purchase insurance on their collateral.  The California Insurance Code contains numerous provisions delineating what a mortgagee may or may not require in an insurance contract.[7]  Despite such limitations, the statutes do not preclude the exercise

---

[7] *See* Cal. Civ. Code § 2944.5 (no mortgagee "shall refuse to accept a policy issued by an admitted insurer solely because the policy is issued for a continuous period without a fixed expiration date"); Cal. Civ. Code § 2955.5(a) (no lender shall require a borrower "to provide hazard insurance coverage against risks to the improvements on that real property in an amount exceeding the (*footnote continued on following page*)

by a lender "of his *right* to furnish such insurance or to renew any insurance required by the contract of sale or trust deed or other loan agreement if the borrower or purchaser shall have failed to furnish the insurance or renewal thereof within such reasonable time or form as may be specified in the sale or loan agreement."   Cal. Ins. Code § 771(a) (entitled "Permissible actions") (emphasis supplied).   Similarly, a lender has a statutorily-recognized "*right* to furnish such insurance or to renew such insurance, *and to charge the account of the borrower or purchaser with the costs thereof*, if the borrower or purchaser fails to *deliver to the lender* such insurance at least 30 days prior to the expiration of the policy." Cal. Ins. Code § 771(d) (emphasis supplied).[8]

Not only has the California legislature recognized the right of lenders to purchase insurance covering their collateral, the California Department of Insurance specifically reviewed and approved ASIC's lender-placed program.  For example, in submitting its rates for approval, the Department of Insurance requested, and ASIC provided, a mortgage service program manual describing the ASIC program: "[t]his program is designed to allow financial institutions to place dwelling fire coverage on those mortgages which are not protected by insurance coverage under the mortgage agreement. . . .  Flat cancellation if duplicate coverage exists."  Wilson Decl. Ex. 20 at ASIC-WAHL0000042.  The Department approved ASIC's filings and stated that ASIC "may immediately issue policies pursuant to this approval."   Wilson Decl. Ex. 21 ("The Department has completed its review of the application for the above line of insurance or program and has determined that the rates at this time are in conformance with Section 1861.05(a) of the California Insurance Code").

**B.    The ASIC Policy Insured the Property Beginning on January 27, 2006.**

The ASIC policy insured the Wahl property commencing on January 27, 2006, as

---

replacement value of the improvements on the property."); Cal. Ins. Code § 770 (no mortgagee can require the mortgagor to "negotiate any insurance or renewal thereof covering such property through a particular insurance agent or broker.").

[8] *See also* Cal. Code Regs. tit. 10, § 107.601(a) (a lender "shall have the right to furnish or renew such insurance if the borrower or purchaser shall have failed to furnish the insurance or renewal thereof within such reasonable time or form as may be specified in the sale or loan agreement."); § 2181.1(a) (same).

9

provided by the Master Policy between EMC and ASIC.  The ASIC policy did not terminate at inception as Ms. Wahl contends, because Ms. Wahl never provided EMC with proof of other acceptable insurance sufficient to cancel the ASIC policy.

**1.      Coverage Began Under the Master Policy on January 27, 2006.**

EMC entered into the Master Policy with ASIC to provide seamless coverage between the termination of a homeowner's prior insurance and the coverage under an ASIC policy.  Matallana Decl. ¶ 8; Wilson Decl. ¶ 5.  The Master Policy requires ASIC to provide coverage "to each individual covered property during the policy period specified on each individual Additional Insured Endorsement."      Matallana Decl. Ex. A at ASIC-WAHL0000207.  The servicing Agreement between EMC and ASIC clarifies that coverage exists under the Master Policy even if a loss occurs after the termination of the homeowner's chosen insurance but no separate ASIC policy has issued: "if there is a loss to residential Eligible Property that would have been covered under the Hazard PLUS Policy, and if (i) Acceptable Hazard Insurance covering that Eligible Property has terminated prior to loss, (ii) no Hazard PLUS Policy was in effect on the date of loss, and (iii) Hazard Insurance has not been waived by Servicer, Company will issue a Hazard PLUS Policy effective as of the date Acceptable Hazard Insurance terminated."  Matallana Decl. Ex. C at ASIC-WAHL0000120.

Ms. Wahl's Additional Insured Endorsement lists the inception date of coverage as of January 27, 2006, the date the Farmer's coverage cancelled.  Wilson Decl. Ex. 11 at WAHL0043; Wilson Decl. ¶¶ 26, 28.  Ms. Wahl recognized this seamless transition in a phone call with an EMC representative: "Q. Did you not have your own insurance in 2006? A. We did.  And then it lapsed.  It was like Farmers in Capitola.  And then it lapsed.  And then we had yours.  And then we got on board again with Farmers."  Wilson Decl. Ex. 22 at ASIC-WAHL0001290.  Had there been a loss on or after January 27, 2006, it would have been covered by ASIC.  *See id.* at ASIC-WAHL0001287 (the ASIC policy "was effective January 27 of 2006. . . .  If there was a loss that was sustained during that time period, it would be covered by our policy"); Wilson Decl. Ex. 4 at ASIC-WAHL0000166

("Whenever mortgagors' outside insurance expires on a homeowner or fire policy, the dwelling is covered by an [ASIC] policy.").

Because ASIC would have insured EMC in the event of a loss anytime on or after January 27, 2006, Ms. Wahl's additional insured endorsement was not "backdated" but rather reflected the actual obligation that ASIC assumed under the Master Policy.  *See* Wilson Decl. ¶ 28 ("If there had been a covered loss on the property anytime between January 26, 2006 and July 19, 2007 . . . ASIC would have reimbursed EMC for the loss and would not have sought indemnification from the Fire Insurance Exchange"); Matallana Decl. ¶¶ 11, 12 ("If there had been a covered loss on the Property between January 27, 2006 and July 19, 2007, EMC would have made a claim to ASIC and not to the Fire Insurance Exchange under any LLPE").

### 2. The ASIC Policy Did Not Terminate at Inception.

#### a. Under the Clear Terms of the ASIC Policy, it Did Not Terminate.

In the Motion to Dismiss briefing, Ms. Wahl advanced a novel theory – that the existence of the Farmers LLPE cancelled the ASIC policy at inception – based on the ASIC policy's cancellation provision.  The ASIC policy provides that "[c]overage under this policy shall automatically and without prior notice, cancel when the Named Insured . . . *has been provided with* another policy that meets the requirements of the Named Insured as set forth in the mortgage agreement applicable to the Described Property." Wilson Decl. Ex. 16 at WAHL0025 (emphasis supplied).  Plaintiff argues that the pre-existence of the Farmers LLPE cancelled the ASIC policy at its inception because it was "another policy" about which EMC already was aware.  However, Ms. Wahl failed to provide any evidence of coverage to EMC after Farmers cancelled her policy, and the Farmers LLPE was not "another policy that meets the requirements of the named insured."  Moreover, the contracting parties did not intend for the ASIC policy to cancel at inception, even if there was some potential for continuing coverage under the Farmers policy LLPE.  *See* Wilson Decl. ¶ 27.

11

**(1)    Ms. Wahl Did Not Provide ASIC With Proof of Other Insurance.**

In signing the Deed of Trust, Ms. Wahl did not merely agree to keep the property insured; she agreed to provide EMC with proof of acceptable insurance upon request. Matallana Decl. Ex. B at ASIC-WAHL0000154 ¶ 5 (Ms. Wahl agreed to "promptly give to Lender all receipts of paid premiums and renewal notices.").   That requirement was acknowledged in nearly every document Ms. Wahl received from EMC.  For example, as part of the initial mortgage transaction, Ms. Wahl was provided a document entitled "Hazard Insurance Requirements," which stated that "as a condition of receiving or maintaining a loan with the lender shown above, you will be required to provide proof of hazard insurance coverage in an amount equal to the unpaid principal balance owing on the loan or the replacement value of all improvements located on the collateral property, **whichever is less**. . . .  If you do not provide us with evidence of the insured coverage as required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. . . .  You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement."  Matallana Decl. Ex. E.

The necessity for Ms. Wahl to provide proof of insurance was reiterated time and time again in the many letters sent by EMC to Ms. Wahl.  The very first letter on February 27, 2006 noted that EMC had "not *received* a new or renewal policy covering your house. . . . Please contact your agent or company and purchase coverage.  If you have already done so, please *request proof of coverage and send it to the address below*. . . .  Until we *receive* your policy, we have secured temporary insurance coverage in the form of a sixty-day binder through ASIC. . . . If *proof of insurance is not supplied* within 60 days, EMC will be required to obtain adequate insurance coverage at your expense. . . . Any policy we purchase on your behalf may be cancelled at any time by *providing proof* of acceptable insurance coverage."  Wilson Decl. Ex. 10 (emphasis supplied).  All subsequent letters

echoed these requirements.[9]

Not only was Ms. Wahl required to provide EMC with evidence of other acceptable insurance, but the ASIC policy did not cancel unless and until EMC "*has been provided with another policy* that meets the requirements of the Named Insured." Wilson Decl. Ex. 16 at WAHL0025. The court in *Herd v. Am. Security Ins. Co.*, 501 F. Supp. 2d 1240, 1251 (W.D. Mo. 2007), interpreting the very same language and addressing the same issue, found on summary judgment that a nearly identical ASIC policy was in force because the mortgagor had not provided the lender with proof of other insurance coverage. The *Herd* court found:

> Given the repeated letters from EMC notifying the Herds of its belief that they did not have insurance coverage, it cannot be said that the Herds had made available, furnished, supplied, afforded, or yielded another policy to EMC. The mere fact that the Herds had insurance coverage all along does not mean that they 'provided EMC with another policy' that met its requirements. Given EMC's May 1, 2006, letter warning that 'If you do not provide us with proof of insurance coverage before the end of the binder period, we will be required to obtain a one-year policy on your property,' and given the fact that EMC went on to procure the annual policy, *no reasonable juror could find that the Herds had provided EMC*

_____

[9] *See* Wilson Decl. Ex. 11 at WAHL0041-42 (EMC "notified you that our records indicate that we had not received a new or renewal insurance policy covering your house. . . . Any policy purchased on your behalf may be cancelled at any time by providing proof of acceptable insurance. . . . If you do not provide us with proof of insurance coverage before the end of the binder period, we will be required to obtain a one-year policy on your property. . . . Upon receipt of your policy, this binder will be promptly cancelled."); Wilson Decl. Ex. 11 at WAHL0043 ("The lender will place a policy for you if you do not give them proof of insurance on your house."); Wilson Decl. Ex. 12 ("By providing evidence that you have obtained acceptable insurance coverage, this concern can be eliminated. . . . Please contact your agent or company and purchase coverage. If you have already done so, please request proof of coverage and send it to the address below."); Wilson Decl. Ex. 14 (EMC "originally placed this policy on your property because acceptable proof of coverage was not provided. . . . Any policy purchased on your behalf may be cancelled at any time by providing EMC with proof of other acceptable insurance. . . . Upon receipt of proof of coverage, this policy will not renew or will promptly be cancelled. . . . Please contact your agent or company and purchase coverage. If you have already done so, please request proof of coverage and send it to the address below."); Wilson Decl. Ex. 15 (EMC "originally placed this policy on the property because acceptable proof of coverage was not provided. . . . **Please contact your agent or company and purchase coverage.** If you have already done so, please request proof of coverage and send it to the address below. . . . Upon receipt of proof of coverage, this policy will be promptly cancelled. . . . Any policy purchased on your behalf may be cancelled at any time by providing us with proof of other acceptable insurance.").

13

*with another policy that met its requirements.*

*Id.* (citations omitted) (emphasis supplied).  This outcome is consistent with the language of the ASIC policy at issue here.[10]

Ms. Wahl understood this process, as she had been through it once before.  In August 2005, EMC placed an ASIC policy on the property, and then cancelled it upon receiving notification that the property was acceptably insured by Farmers.  Wilson Decl. Ex. 8. When Ms. Wahl purchased her second Farmers policy, EMC cancelled the ASIC policy upon notification of that new policy.  Wilson Decl. Ex. 18 ("The reason for this cancellation is: You provided evidence of other insurance coverage."); *see* Wilson Decl. Ex. 22 at ASIC-WAHL0001298 ("I am calling you to provide you evidence of insurance for this policy.").

Before EMC would cancel the ASIC policy, the Deed of Trust required Ms. Wahl to provide proof of other acceptable insurance.  It is undisputed that Ms. Wahl did not do so until nearly a year and a half later, when she purchased a second Farmers policy.  Thus, as a matter of law, the ASIC policy did not terminate at inception because Ms. Wahl had not satisfied the terms of her Deed of Trust by providing EMC with proof that she obtained other acceptable insurance.

> **(2)     The Farmers LLPE was not "another policy that meets the requirements of the Named Insured."**

Both the Deed of Trust and the California regulatory scheme contain guidelines for what constitutes acceptable insurance.  The Deed of Trust required Ms. Wahl to maintain insurance "in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan. . . .  All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a

---

[10] *See also Oyola v. Empire Indem. Ins. Co.*, No. 6:06-cv-510, 2006 WL 3708089, at *2 (M.D. Fla. Dec. 14, 2006) ("Empire now seeks to have the cancellation provision interpreted so that it would be given legal effect (and cancel its policy) on the first date that other coverage is found to have existed.  But such is not the language employed by Empire in drafting this provision.  To activate the cancellation, Empire *required the provision of an acceptable policy, not merely the existence of coverage*.") (emphasis supplied) (attached as Fee Decl. Ex. 5).

1  standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss

2  payee." Matallana Decl. Ex. B at ASIC-WAHL0000154 ¶ 5.[11]

3         The California Insurance Code and related regulations recognize grounds for

4  refusing to accept a particular insurance policy.  For example, reasonable cause exists to

5  reject an insurance policy if the policy fails "to stipulate on the face of the policy or the

6  declarations page that the term of the policy shall be continuous until cancelled or

7  nonrenewed or for no less than three years, although premium payments may be on an

8  annual basis for a three year policy."  Cal. Code Regs. tit. 10, § 107.601(b)(4).  A lender

9  may similarly disapprove of a policy if it fails to "[a]fford the customary coverage required

10 by the lender for the class of property involved including the loss payable endorsement

11 required by the lender."  Cal. Code Regs. tit. 10, § 1499(b)(4).

12        The Farmers LLPE, without more, fails to satisfy either the Deed of Trust or these

13 statutory requirements.  Matallana Decl. ¶ 16.  Additionally, the term of the LLPE was not

14 one year or continuous until cancelled, but was rather some specific and delineated time

15 after a particular occurrence.  *See* Wilson Decl. Ex. 23 at ASIC-WAHL0000403-04 ¶ 3

16 (coverage may continue for 70 – 130 days after non-payment of premium), ¶ 6 (coverage

17 may continue for ten days after cancellation).  Moreover, the numerous documents requiring

18 that the policy "contain" an LLPE indicate plainly that continuing coverage under an LLPE

19 alone does not constitute acceptable insurance.  *See* Matallana Decl. Ex. B at ASIC-

20 WAHL0000154 ¶ 5; Wilson Decl. Exs. 10-12, 14-15.

21             **b.    ASIC Could Not Cancel the Policy Without Giving
                       Notice.**

22

23        Plaintiffs' "cancellation-at-inception" theory is an impossibility under California

24 law, as cancellation is not valid until the insurer gives notice to the parties and in the time

25 frame prescribed by statute.  Before a policy insuring residential property may be cancelled,

26 _____

27 [11] The numerous letters sent to Ms. Wahl urging her to purchase her own insurance also reminded
    her that a replacement policy would only be acceptable if it ***included*** an LLPE naming EMC as the
    mortgagee.  *See* Wilson Decl. Exs. 10-12, 14-15 ("Please be sure your policy includes your loan
    number and a Mortgagee Clause or Lender Loss Payable Endorsement made out to: [EMC].").

28

the insurer must provide the insured with notice of the cancellation.  *See* Cal. Ins. Code § 677 ("All notices of cancellation shall be in writing, mailed to the named insured at the address shown in the policy"); § 677.4 (stating that the notice must be delivered 20 days prior to the cancellation for most cancellation grounds); *Williams v. State Farm Fire & Cas. Co.*, 216 Cal. App. 3d 1540, 1544 (1990) (notice of cancellation must be in writing).  The statutory prerequisites apply even where a policy contains an automatic termination provision.[12]  Thus, a policy cannot cancel at inception – at the earliest it may be cancelled only upon written notice.  The ASIC policy was not cancelled until Ms. Wahl purchased the later Farmers policy and ASIC sent its notice of cancellation to Ms. Wahl.  *See Koltar v. Hartford Fire Ins. Co.*, 83 Cal. App. 4th 1116, 1121 (2000) ("[i]f a cancellation is defective, the policy remains in effect").

### C.    The ASIC Policy Insured the Property Against Loss.

Since the ASIC policy did not cancel at inception, but rather commenced and continued coverage on the property starting on January 26, 2006, the ASIC policy provided benefit to EMC.  It did so because EMC waived the potentially continuing protection of the Farmers LLPE by purchasing the ASIC policy, or because both insurers would be required to contribute on a pro rata basis in the event of a loss.

### 1.    EMC Waived its Coverage under the Farmers LLPE.

EMC's purpose in entering into the Master Policy and servicing Agreement was to ensure that an ASIC policy would protect its interest whenever the homeowner's insurance was not in force.  Understanding that it would potentially have some limited protection under the cancelled Farmers policy LLPE, EMC nevertheless decided to insure the property with ASIC and to waive any residual lender protection under the terminated policy.  EMC's actions fit the textbook definition of waiver: "there must be an existing right, a knowledge of its existence, and actual intention to relinquish it, or conduct so inconsistent with the

---

[12] *See Breland v. All Am. Assurance Co.*, 366 So. 2d 1051, 1053 (La. Ct. App. 1978); *Thames v. Piedmont Life Ins. Co.*, 197 S.E.2d 412, 414 (Ga. Ct. App. 1973) (the notice statutes become part of the contract).

intent to enforce the right as to induce a reasonable belief that it has been relinquished." Pl's Opp. to Mt. to Dismiss at 19 (citing *Klotz v. Old Line Life Ins. Co. of America*, 955 F. Supp. 1183, 1186 (N.D. Cal. 1996)) (Docket No. 27).

Two cases have addressed this very issue – whether the homeowner's mortgagee clause continues in effect when the first policy has been cancelled as to the mortgagor and another policy is purchased.  Both courts found that only the second policy insured the property.  In *Fireman's Fund Ins. Co. v. Appalachian Ins. Co.*, 572 F. Supp. 799, 801-02 (E.D. Pa. 1983), *aff'd* 738 F.2d 422 (1984), the first insurer "admitted that no notice of cancellation was ever sent to the Bank as mortgagee. . . .  Given the existence of the [second] policy, however, [the first insurer] argues that its obligation to the Mortgagee was cancelled as of the date [the second insurer] assumed coverage, and therefore [the second insurer] is not entitled to seek contribution from [the first insurer] for the loss claimed by the Mortgagee.  The Court agrees."  The court found that in obtaining the second policy, the mortgagee "extinguished" its rights against the first insurer.  *Id*. at 802.  Similarly, in *Carter v. Allstate Indem. Co.*, 592 So. 2d 66, 71 (Miss. 1991), the first insurer cancelled the policy but admitted that it did not send the mortgagee a copy of the cancellation notice.  The Court nonetheless found that the first policy was cancelled: "[t]he purpose of the union or standard mortgage clause is to protect the mortgagee from *loss* occurring after the mortgagor or owner has caused a lapse in insurance coverage.  In the case sub judice, however, there was no detrimental lapse in insurance coverage.  A policy issued by Lexington, which exceeded the coverage originally provided by Allstate, was in force at the time of the fire.  Absent the Bank's undertaking of a new agreement with Carter, there would have been no loss whatsoever to the Bank."  *Id*. at 71-72 (citations omitted).

Here, EMC knew that the Farmers policy had been cancelled, as it was copied on the cancellation letter.  *See* Wilson Decl. Ex. 5 ("02/07/06 14:24:33 … CANCELLATION DUE TO NON-PAY INSCO: FARMERS INSURANCE. POLICY NO: 927231941 CANCEL DT: 1/27/06").  When the Farmers policy cancelled, the ASIC coverage automatically took effect by operation of the Master Policy, and EMC then purchased a full-

17

year full-coverage policy through ASIC.   In doing so, EMC waived any continuing coverage under the Farmers LLPE.

## 2.     The Policy Benefits Were Equitably Prorated.

Even if this Court finds that EMC did not waive its protection under the Farmers LLPE and that the Farmers LLPE continued to provide some coverage, the ASIC policy also insured the property because, as a matter of California law, the two policies provided pro rata coverage.

Both the Farmers LLPE and the ASIC policy contain clauses addressing what coverage will be provided in the event the property is insured by another policy.   The Farmers LLPE provided that "[i]f there be any other insurance upon the within described property, this Company shall be liable under this policy as to the Lender for the proportion of such loss or damage that the sum hereby insured bears to the entire insurance of similar character on said property under policies held by, payable to and expressly consented to by the Lender."  Wilson Decl. Ex. 23 at ASIC-WAHL0000403 ¶ 5.  The ASIC policy has two different clauses addressing the consequence of other insurance on the property.  The Other Insurance Endorsement operates to terminate coverage on the effective date of other insurance, and states that "[i]n no event shall this insurance apply as excess or contributing insurance when other applicable insurance that is in force on the date of loss."  Wilson Decl. Ex. 16 at WAHL0014.  The ASIC policy also states that, "[i]f there is any other valid or collectible insurance which would attach if the insurance under this policy had not been effected, this insurance shall apply only as excess and in no event as contributing insurance and then only after all other insurance has been exhausted."  *Id*. at WAHL0022.

California courts repeatedly have reaffirmed that the effect of competing "other insurance" clauses, such as the ones at issue here, is to require coverage to be equitably prorated under both policies.  California law "require[s] equitable contributions on a pro rata basis from all primary insurers regardless of the type of 'other insurance' clause in their

18

policies." *Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28 Cal. 4th 1059, 1080 (2002).[13]

Conflicting other insurance clauses

> are mutually repugnant. If we enforce [the excess/escape] clause, then we cannot enforce the clauses of the other primary insurers. Thus, the only proper result is to ignore all of the clauses and require some equitable pro rata apportionment. This result is consistent with the public policy disfavoring escape clauses whereby promised coverage evaporates in the presence of other insurance.

*Century Sur. Co. v. United Pac. Ins. Co.*, 109 Cal. App. 4th 1246, 1260 (2003).  As a matter of law, therefore, ASIC was obligated to provide coverage to EMC for the entire period the ASIC policy was in effect, notwithstanding any prior existing coverage under the Farmers LLPE.  Accordingly, the ASIC policy was neither cancelled at inception nor duplicative of plaintiff's prior coverage under the Farmers policy, and plaintiff's "overlap" theory fails as a matter of law.

## VI. <u>CONCLUSION</u>

For all of the foregoing reasons, this Court should grant ASIC's Motion for Summary Judgment.

Dated:  October 1, 2008                    HELLER EHRMAN LLP


                                     By:  */s/ Peter S. Hecker*            
                                       PETER S. HECKER

                                     Attorneys for Defendant
                                     AMERICAN SECURITY INSURANCE
                                     COMPANY

---

[13] For a more detailed discussion of this issue, *see* ASIC's Motion to Dismiss (Docket No. 20) at 11-13.