*E-Filed 6/18/09*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MICHELLE T. WAHL, on behalf of herself and all others similarly situated,

    Plaintiff,

    v.

AMERICAN SECURITY INSURANCE COMPANY; and DOES 1-50, inclusive,

    Defendants.
_____\

Case No. 5:08 CV 0555 RS

ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

## I. INTRODUCTION

This putative class action stems from a breach of contract dispute involving plaintiff Michelle T. Wahl ("Wahl"), defendant American Security Insurance Company ("ASIC"), and Wahl's mortgage lender, EMC Mortgage Corporation ("EMC"). In brief, Wahl is challenging the common practice of "force placed insurance" in a homeowner mortgage context. For the reasons stated below, ASIC's motion for summary judgment is granted in part and denied in part.

## II. BACKGROUND

On May 25, 2004, Wahl signed a $465,000 fixed rate note and an accompanying deed of trust (the "Deed") in favor of EMC's predecessor in interest, Argent Mortgage Company, LLC

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:08 CV 0555 RS

("Argent").  Fixed Rate Note and Deed of Trust, *attached as Exh. B to* Declaration of Stella Matallana, at 147-64.  Under the terms of the Deed, Wahl was required to keep the property "insured against loss," and if she failed to do so, Argent could make its own insurance arrangements at Wahl's expense.  *Id.* at 154 ("Section 5").  The Deed warned, "Lender is under no obligation to purchase any particular type or amount of coverage. . . .  Borrower acknowledges that the cost of the insurance so obtained might significantly exceed the cost of insurance that the Borrower could have obtained.  Any amounts disbursed by Lender under this Section . . . shall become additional debt of Borrower secured by this Security Instrument." *Id.*; *see also* Notice Regarding Hazard Insurance Requirements, *attached as Exh. E to* Matallana Declaration (notification dated a few days before the Deed, providing a similar, more lengthy warning).[1]  Further, the Deed provides:

> The insurance [arranged by Borrower] shall be maintained in amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. . . .  All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies[.]

*Id.*

Effective July 29, 2005, Wahl purchased a homeowners insurance policy through Farmers' Insurance (the "Farmers Policy"), which carried an annual premium of $2,445.48.  Protector Plus Package Policy, *attached as Exh. 23 to* Declaration of Ronald K. Wilson, at 348-414.  It is undisputed that, as long as Wahl maintained the Farmers Policy, she was fulfilling her insurance obligations under the Deed.

---

[1] The procedure described here—whereby the lender contractually reserves the right to purchase separate insurance at a borrower's expense to cover the lender's interest in the event the borrower fails to maintain insurance coverage—is commonly known as "force placed insurance" and is a well-established practice in the insurance and financial industries. *See generally Telfair v. First Union Mortgage. Corp.*, 216 F.3d 1333, 1340-41 (11th Cir. 2000) (describing "force place" insurance in the context of a home loan); *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 642 (7th Cir. 1995) (describing "forced placed" insurance in the context of a car loan).  Although the exact name of the practice differs somewhat from court to court, this order will employ the phrase "force placed insurance."

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:08 CV 0555 RS

2

The Farmers Policy included, among other provisions, a standard Lender's Loss Payable Endorsement clause ("LLPE").  *Id.* at 403-04.  As the Court has explained in an earlier order:  "In essence, an LLPE serves to ensure that if a homeowner's insurance policy is cancelled for failure to pay premiums the *lender's* interest in the property will continue to be insured for a period of time, to permit the lender either to make the premium payments itself, or to arrange for alternate coverage.  Thus, for a specified period after cancellation for non-payment, the lender is entitled to indemnification for any loss, even though the homeowner would have no claim against the insurer."  Order of June 16, 2008, *supra*, at 2.

Wahl concedes she failed to pay the premium on her Farmers' Policy that came due on January 12, 2006.  First Amended Complaint ("FAC"), at 6.  Farmers notified Wahl in mid-January that unless she paid the premium before January 27, 2006, the policy would be cancelled as of that date.  *Id.*  Wahl still did not pay, and on February 6, 2006, Farmers mailed Wahl a notice indicating that her policy had been cancelled and that her home was no longer insured.  FAC, *supra*, Exh. B.  The notice was copied to EMC, who by then was Argent's successor-in-interest.  *Id.*

At the time of these events, EMC had a standing contract for force placed insurance coverage with defendant ASIC.  Wilson Declaration, *supra*, at 1. The agreement between the two companies provided that whenever one of EMC's borrowers failed to keep his or her homeowner's insurance intact, ASIC force placed coverage would come into effect immediately and automatically.  *Id.*; Residential Property Mortgagee's Policy, *attached as Exh. A to* Matallana Declaration, *supra*, at 206; Hazard Plus Insurance Administration Agreement, *attached as Exh. 2 to* Wilson Declaration, *supra*, at 119-20.  Accordingly, ASIC automatically covered EMC's interest in Wahl's property as of January 27, 2006.

On February 27, 2006, EMC sent Wahl a letter indicating that it had secured temporary insurance coverage in the form of a 60-day binder through ASIC.  The letter cautioned, "[i]f proof of your insurance is not supplied within 60 days, EMC will be required to obtain adequate insurance coverage at your expense. . . .  Your monthly payments will increase due to the cost of this coverage. Any policy we purchase on your behalf may be cancelled at any time by providing proof of

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:08 CV 0555 RS

3

acceptable insurance coverage." Wilson Declaration, Exh. 10, at 1. The letter went on to warn that "[s]ince [the force placed insurance] will insure your house without inspection, the cost may be much higher than you would normally pay if you purchase a policy from an agent and/or insurance company of your choice. The coverage amount may be less than you had before." *Id.* at 2. EMC also sent a follow-up letter on April 3, 2006, which repeated this information. Letter of April 3, 2006, *attached as Exh. 11 to* Wilson Declaration, *supra*.

Wahl nonetheless failed to procure another insurance policy on her own. Upon expiration of the 60-day temporary binder EMC had arranged through ASIC, EMC purchased a one-year ASIC policy ("the 2006 ASIC Policy"). The 2006 ASIC Policy (a copy of which EMC forwarded to Wahl) was effective for one year as of January 27, 2006—the original beginning date of the temporary binder period, rather than the end date of that binder. The total cost of the annual ASIC premium was $4,052.00. FAC, *supra*, at 7; Residential Property Additional Insured Endorsement (effective 1/27/06), *attached as Exh. 13 to* Wilson Declaration, *supra*, at 46. The policy named EMC as the primary insured and listed Wahl as an additional insured. *Id.* EMC charged the cost of the premium to Wahl's escrow account at the end of the sixty-day temporary binder period.[2] Letter of April 3, 2006, *supra*, at 1.

The 2006 ASIC Policy stayed in place throughout that calendar year. In December 2006, EMC notified Wahl that if she failed to provide proof of other acceptable insurance coverage, the ASIC policy would be renewed for a second year, effective January 27, 2007. Letter of December 29, 2006, *attached as Exh. 14 to* Wilson Declaration, *supra*. When Wahl did not provide such proof, EMC renewed the policy at a cost of $4,052.00, which it again charged to Wahl. Residential Property Additional Insured Endorsement (effective 1/27/07), *attached as Exh. 16 to* Wilson Declaration, *supra*, at 5 ("the 2007 ASIC policy").

---

[2] This was actually the second time Wahl had been down this road with EMC and ASIC. She had already once failed to renew her existing homeowner's insurance in May 2005, which had similarly triggered ASIC's 60-day temporary binder period. In that instance, however, she had both procured a new insurance policy and notified EMC that it was in place, before the 60-day period expired. EMC did not charge any extra expenses to her escrow account based on this occurrence.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:08 CV 0555 RS

4

In July 2007, Wahl purchased a new insurance policy of her own through Farmers, carrying an annual premium of $2,043.87. Farmers Next Generation Homeowners Policy, *attached as Exh. 17 to* Wilson Declaration, *supra*, at 218. The policy became effective on July 19, 2007. *Id.* Wahl provided proof of the new policy to EMC, and EMC cancelled the ASIC policy then in place, effective July 19, 2007. Hazard Insurance Confirmation of Cancellation, *attached as Exh. 18 to* Wilson Declaration, *supra*, at 69.

Wahl now argues that she should not have been charged for ASIC insurance as long as the LLPE in her Farmers' Policy provided adequate coverage to EMC (even though the policy no longer covered Wahl herself). *Id.* As the Court's earlier order denying ASIC's motion to dismiss explains, "Wahl's basic theory is that although her own insurance policy had been cancelled for non-payment, her lender was still protected . . . and therefore the policy her lender obtained from ASIC was unnecessary[.]" Order of June 16, 2008, *supra*, at 1. Specifically, Wahl's FAC states claims against ASIC for breach of contract, breach of statutory duty to disclose, constructive fraud, failure of consideration, and unfair competition. ASIC has moved for summary judgment on all claims.[3]

### III. STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The purpose of summary judgment "is to

---

[3] Wahl has also filed a motion for leave to file a sur-reply. As noted at oral argument, this motion is granted, in light of the new issues raised in ASIC's reply in support of its summary judgment motion. Wahl has also moved to strike portions of the declarations of Stella Matallana and Ronald K. Wilson, and exhibits thereto, which ASIC filed in support of its motion for summary judgment. Wahl's motion is based principally on her contention that these individuals lack personal knowledge about certain matters to which their declarations purport to speak, and instead represent only their opinions. This argument, however, ignores the case law holding that personal knowledge can be inferred from a declarant's position within a company. *See, e.g.*, *Barthelemy v. Air Line Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir.1990) (CEO's personal knowledge of various corporate activities could be presumed). Similarly, here, Matallana is a vice president at EMC, and Wilson is a vice president at Assurant Specialty Property, who manages EMC's mortgage insurance. Matallana Declaration at 1; Wilson Declaration at 1. Therefore there is sufficient evidence in the record to support personal knowledge of the statements set forth in the Matallana and Wilson declarations. The motion to strike is therefore denied.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:08 CV 0555 RS

5

isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Id.* at 323.

If the moving party meets its initial burden, it then shifts to the non-moving party to present specific facts showing that there is a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. The evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986). Summary judgment is not appropriate if the nonmoving party presents evidence from which a reasonable jury could resolve the disputed issue of material fact in his or her favor. *Anderson*, 477 U.S. at 248; *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th CIr. 1991). Nonetheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted).

## IV. DISCUSSION

A. <u>Breach of Contract</u>

"Under California law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damage to plaintiff." *EPIS, Inc. v. Fidelity & Guaranty Life Ins. Co.*, 156 F. Supp. 2d 1116, 1124 (N.D. Cal. 2001) (citing *Reichert v. General Ins. Co.*, 68 Cal.2d 822, 830 (1968)). In this case, the dispute revolves around the third element—the existence of a breach.[4] Wahl's

---

[4] ASIC argues in its reply brief that Wahl lacks standing to sue on a breach of contract claim. Reply Memorandum, filed March 16, 2009, at 4-9. The Court concluded that this argument lacked merit at the motion to dismiss phase because Wahl's complaint successfully alleged third-party beneficiary status. *See* Order of June 16, 2008, *supra*, at 3-5. ASIC has offered no compelling reason to revisit that conclusion here in the summary judgment phase.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:08 CV 0555 RS

6

principal claim alleges that ASIC breached the terms of the 2006 and 2007 ASIC Policies by accepting payment for the period of time between January 27, 2006, and the end of EMC's (alleged) coverage under the Farmers' Policy LLPE.[5]  She contends that the ASIC Policies "provided in effect that ASIC would not charge premiums, and/or that ASIC would refund premiums that were charged, for any period of time during which the [force placed insurance] overlapped with any prior homeowner insurance."  FAC, *supra*, at 14.  As evidence for this assertion, Wahl points to the cancellation clause in the 2007 ASIC Policy,[6] which states that coverage is automatically cancelled "when the Named Insured has been provided with another policy that meets the requirements of the Named Insured as set forth in the mortgage agreement applicable to the Described Property."  2007 ASIC Policy, *supra*, at 25 (emphasis added).  Here, that agreement takes the form of the Deed of Trust, which simply states, "Borrower shall keep the improvements now existing or hereafter erected on the property insured against loss[.]"  Section 5, *supra*.  Section 5 of the Deed is not specific as to whether "insured against loss" means that Wahl's interest in the property must remain insured or that only EMC's interest must remain so.  Inasmuch as the ASIC Policies incorporate provisions of the Deed by reference, the question whether ASIC breached the 2006 and 2007 ASIC Policies turns on the meaning attached to this phrase in the Deed.

The task of interpreting the Deed is guided by its choice of law provision, which states: "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located"—in this case, California.  Deed, *supra*, at 159.  Generally, California courts "interpret an insurance policy using the same rules of interpretation applicable to other contracts." *GGIS Servs., Inc. v. Superior Court*, 168 Cal. App. 4th 1493, 1506 (Cal. Ct. App. 2008).  "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at

---

[5] The period of time for which the LLPE purportedly covered EMC after January 27, 2006, is in dispute.

[6] The filed copy of the 2006 ASIC Policy, Exhibit 13 to the Wilson Declaration, appears incomplete and does not contain the cancellation clauses.  With the absence of that clause excepted, the 2006 and 2007 ASIC Policies appear nearly identical, and no one disputes that the original 2006 ASIC Policy contained the same phrasing relative to cancellation.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:08 CV 0555 RS

7

the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636.  That intention is gleaned "solely from the written contract if possible." *GGIS Services*, 168 Cal. App. 4th at 1506.  California statutory law further provides that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."  Cal. Civ. Code § 1641.

Here, ASIC concedes that EMC "would potentially have [had] some limited protection under the cancelled Farmers Policy LLPE."  ASIC's Motion for Summary Judgment at 16.  Nonetheless, ASIC contends that EMC was entitled to enter into the 2006 and 2007 ASIC Policies at Wahl's expense as of January 27, 2006 (the date Farmers terminated Wahl's policy), because that "limited protection" under the Farmers Policy did not meet EMC's criteria for acceptable insurance.  On this view, EMC became entitled to arrange for force placed insurance at Wahl's expense immediately upon expiration of the Farmers Policy, to ensure, as ASIC put it, "seamless" coverage (for EMC, at least).  Motion for Summary Judgment, *supra*, at 10.  In support of this position, ASIC cites those provisions of Section 5 which give EMC broad license to disapprove insurance providers chosen by Wahl and to change its criteria for such providers.

As noted above, a cardinal principle of contract interpretation under California law is that the "whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, *each clause helping to interpret the other*."  Cal. Civ. Code § 1641(emphasis added).  Applying this holistic approach, it is apparent from the provisions cited above that the Lender—here, EMC—retained the right to determine the adequacy of the homeowner's insurance arranged by Wahl.  These provisions essentially gave EMC free rein to change the Borrower's insurance obligations at any point during the lifetime of the loan.  For example, as noted above, the Deed states that "[w]hat Lender requires [as to insurance] can change during the term of the Loan," and that "[a]ll insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies."  Section 5, *supra*.  When the requirement that Wahl keep the property "insured against loss" is considered in light of such expansive language, it becomes apparent that EMC was acting within its rights under the contract when it concluded that the

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:08 CV 0555 RS

8

1 cancellation of the Farmers Policy put Wahl in non-compliance with her insurance obligations,
2 notwithstanding the LLPE's continued limited coverage of EMC's interest.  The Deed gave EMC the
3 prerogative to determine what insurance policies would satisfy it, and EMC exercised that
4 prerogative when it deemed the cancellation of Wahl's Farmers Policy to be inadequate.  These
5 considerations warrant the conclusion that, as a matter of law, ASIC did not breach the 2006 and
6 2007 ASIC Policies when it force placed insurance on Wahl's property.

7       This result is consistent with case law from other jurisdictions holding that the purchase of a
8 second insurance policy through force placed insurance necessarily waives any residual lender
9 protection that may have lingered for a period of time under the earlier policy.  *See, e.g.*, *Fireman's*
10 *Fund Ins. Co. v. Appalachian Ins. Co.*, 572 F. Supp. 799, 901-02 (E.D. Pa. 1983) (holding that the
11 first insurer's obligation to the lender was by definition cancelled as of the date the second insurer
12 assumed coverage, and therefore the first insurer was not liable for the loss of the insured property).
13 Here, EMC waived any coverage under the Farmers LLPE by arranging for ASIC to provide
14 "seamless" coverage as of the date Wahl's policy expired.  Thus the insurance "overlap" alleged by
15 Wahl did not in fact occur, and the imposition of force placed insurance as of January 27, 2006, did
16 not breach the ASIC Policies.

17       Wahl nonetheless argues that EMC made a point of requiring Wahl to obtain a homeowner's
18 policy with an LLPE clause, and such a requirement makes no sense unless EMC anticipated that it
19 would need the coverage provided by the LLPE in the event of Wahl's failure to pay her premiums.
20 Plaintiff's Response in Opposition to Summary Judgment, at 15.  It follows, Wahl contends, that
21 EMC could not have intended for Wahl's non-payment of the Farmers premium to trigger the force
22 placed insurance.  *Id.*  Left ignored by this argument is the fact that EMC reserved the right to
23 change its insurance criteria at any time.  In other words, even if EMC anticipated at the time it
24 entered into the Deed that it might rely on an LLPE, it was empowered under the terms of the
25 contract to make unilateral adjustments later and deem an LLPE inadequate for its coverage needs.

26       In light of the broad language of the Deed and the ASIC Policies, and the lack of any genuine
27 issues of material fact as to the meaning of those provisions, Wahl's breach of contract claim is not

28 ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:08 CV 0555 RS

9

1 viable. Accordingly summary judgment will be entered in ASIC's favor on the first claim for relief
2 (breach of contract) in the FAC.

B.  Other Claims in the FAC

In addition to breach of contract, the FAC also states claims against ASIC and unnamed defendants for failure of consideration, breach of statutory duty to disclose, constructive fraud, and unfair competition. Although ASIC's motion purports to seek summary judgment on all outstanding claims, *see* Motion for Summary Judgment, *supra*, at iv, the parties' briefs devote little substantive coverage to any claim beyond breach of contract. While a denial of the motion on that basis alone would be defensible, the merits as to those remaining claims will be addressed below.

1.  Failure of Consideration

The contentions in the FAC concerning failure of consideration are tied closely to Wahl's breach of contract arguments. Her position is that the 2006 and 2007 ASIC Policies barred ASIC from instituting force placed insurance when her Farmers Policy LLPE provided coverage to EMC, and therefore any such insurance was ineffective and provided no benefit. As discussed above, the ASIC Policies did not bar the "force placing" of ASIC insurance effective January 27, 2006. Therefore, summary judgment is appropriate as to this claim.

2.  Breach of Statutory Duty to Disclose and Constructive Fraud

Two other claims—breach of statutory duty and constructive fraud—are closely tied to one another, but unlike failure of consideration, do not stand or fall on the strength of the breach of contract claim alone. Both claims arise from Wahl's allegation that ASIC violated its duty to disclose material facts under the California Insurance Code. The pertinent Code section provides: "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining." Cal. Ins. Code § 332. In order for the fraud and breach of statutory duty claims to be viable, the "misrepresentation or concealment must be with respect to a material fact." *Holz Rubber Co. v. Am. Star Ins. Co.*, 14 Cal.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:08 CV 0555 RS

10

3d 45 (Cal 1975). Materiality is determined by the probable and reasonable effect that truthful disclosure would have had upon the parties in determining the advantages of the proposed contract. *Id.*

Here, Wahl contends that ASIC violated its § 332 duties by failing to disclose details about the coverage and costs of the ASIC Policies after the premiums had already been charged to Wahl's escrow account—implying that had she known just how expensive the ASIC Policies would be, and how little coverage they would provide to her, she would have made her own insurance arrangements. This argument is unpersuasive as to the 2007 ASIC policy, of course, because it is undisputed that at the time that policy was imposed Wahl had long before received a copy of the 2006 ASIC Policy, with identical coverage and premium cost.

Wahl's claim is somewhat stronger, however, with respect to the 2006 ASIC Policy. On the one hand, it is undisputed that EMC's string of warning letters, as well as the Deed itself, cautioned Wahl repeatedly that force placed insurance was likely to be substantially more expensive than independent homeowner insurance and that it may or may not cover the homeowner's full interest in the property. On the other hand, the 2006 and 2007 ASIC Policies cost nearly twice what the 2007 Farmers Policy cost ($4,052.00 vs. $2,043.87), while simultaneously providing less coverage to Wahl. It is not obvious, as a matter of law, from the face of the pleadings and the evidence advanced on this motion, whether EMC's warnings of the possibility of substantially higher cost and lesser coverage were adequate to meet ASIC's statutory disclosure obligations under the Insurance Code. It is therefore impossible to conclude that summary judgment should be imposed with respect to the breach of statutory duty and constructive fraud claims.

3. <u>Unfair Competition</u>

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:08 CV 0555 RS

11

The final claim remaining from the FAC[7] is that force placed insurance is an unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.*, because it essentially forces homeowners to pay for double coverage for their lender's benefit.  Briefly, a § 17200 claim arises from "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising," and California law allows courts both to provide restitutition deterring such behavior and to issue injunctions preventing it.  *Id.* §§ 17203, 17206.  *See generally In re Tobacco II Cases*, 46 Cal.4th 298 (Cal. 2009) (explaining the parameters of § 17200 litigation).  In this case, defendants have not demonstrated, as a matter of law, that the practice of force placing insurance during the LLPE period cannot rise to the level of an unfair business practice, and without more, summary judgment is inappropriate.

## V.  CONCLUSION

For the reasons set forth above, ASIC's motion for summary judgment is granted as to Wahl's claim for relief based on breach of contract and failure of consideration.  Summary judgment is denied as to the claims for unfair competition, breach of statutory duty to disclose, and constructive fraud.

IT IS SO ORDERED.

Dated:  6/18/09

_____
RICHARD SEEBORG
United States Magistrate Judge

---

[7] The FAC also lists a separate claim for violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq.  This claim was dismissed without prejudice but Wahl has not revived it.  Order of June 16, 2008, *supra*, at 6.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
CASE NO. 5:08 CV 0555 RS

12