1  PETER S. HECKER (Bar No. 66159)
2  ANNA S. McLEAN (Bar No. 142233)
   SHEPPARD MULLIN RICHTER & HAMPTON, LLP
3  Four Embarcadero Center
   Seventeenth Floor
4  San Francisco, CA  94111-4109
   Telephone:  (415) 774-3155
5  Facsimile:  (415) 403-6224
   phecker@sheppardmullin.com
6  amclean@sheppardmullin.com

7
   FRANK BURT (*Pro Hac Vice*)
8  DENISE A. FEE (*Pro Hac Vice*)
   JORDEN BURT LLP
9  1025 Thomas Jefferson Street, NW
   Suite 400 East
10 Washington, DC  20007-0805
   Telephone:  (202) 965-8140
11 Facsimile:  (202) 965-8104
   fgb@jordenusa.com
12 daf@jordenusa.com

13
14 Attorneys for Defendant
   AMERICAN SECURITY INSURANCE COMPANY

15
16              UNITED STATES DISTRICT COURT

17            NORTHERN DISTRICT OF CALIFORNIA

18                  SAN JOSE DIVISION

19 MICHELLE T. WAHL, on behalf of herself      Case No. C08-00555-RS
   and all others similarly situated,
20                                             **DEFENDANT AMERICAN SECURITY**
21              Plaintiff,                     **INSURANCE COMPANY'S NOTICE OF**
                                               **MOTION AND MOTION FOR LEAVE TO**
        v.                                     **FILE MOTION FOR**
22                                             **RECONSIDERATION OF 6/18/09 ORDER**
23 AMERICAN SECURITY INSURANCE                 **GRANTING IN PART AND DENYING IN**
   COMPANY; and DOES 1-50, inclusive,         **PART SUMMARY JUDGMENT**
24
                Defendant.
25
26
27
28

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that defendant American Security Insurance Company ("ASIC") will and hereby does move this Court to grant ASIC leave to file a motion for reconsideration of the Court's Order Granting in Part and Denying in Part Summary Judgment (Docket No. 69) ("Summary Judgment Order") pursuant to Civil L.R. 7-9.[1]  The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and all evidence and argument adduced in connection with ASIC's motion for summary judgment.

---

[1] ASIC has not set a hearing for this motion because the local rules provide "no hearing will be held concerning a motion for leave to file a motion to reconsider" unless otherwise ordered by the Court. Civil L.R. 7-9(d).

1

## INTRODUCTION

ASIC seeks leave to file a motion for reconsideration of this Court's decision not to grant summary judgment for ASIC on plaintiff's breach of statutory duty to disclose, constructive fraud, and Unfair Competition Law ("UCL") claims (the "remaining claims").[2]   Summary Judgment Order at 10-12 (Docket No. 69).  It appears the parties may have miscommunicated with the Court regarding the scope of ASIC's motion for summary judgment, and thus caused the Court to overlook material facts that would have led it to grant summary judgment on the remaining claims. Accordingly, the Court should revisit its June 18, 2009 Order Granting In Part and Denying In Part Summary Judgment, pursuant to Local Rule 7-9(b)(3).

In the parties' Joint Case Management Statement filed on July 8, 2008 ("Joint CMC Statement," Docket No. 44), ASIC proposed a phased approach to scheduling in this matter, focused at the outset on resolving two potentially dispositive issues—contract interpretation and standing.  Joint CMC Statement at 15-18.  The limitation to these issues was based on the Court's ruling on ASIC's motion to dismiss, in which the Court found, among other things, that while ASIC's contract interpretation arguments "largely present questions of law," further factual development was necessary for the Court to rule on them.  Order Granting in Part and Denying in Part Motion to Dismiss (Docket No. 39) at 6:6-8.  Plaintiff generally agreed with that approach, Joint CMC Statement at 12-15, and the Court's Case Management Scheduling Order, filed July 16, 2008 (Docket 46), implemented a phased schedule for discovery and briefing on ASIC's summary judgment motion, which ASIC proceeded to implement assuming it was limited to the issues presented in the Joint CMC Statement.

The Court observed in its Summary Judgment Order, "the parties' briefs devote[d] little substantive coverage to any claim beyond breach of contract."  Summary Judgment Order at 10. ASIC's motion for summary judgment was in fact directed to all claims in plaintiff's Complaint *to the extent they were based on the same "overlap" theory on which plaintiff's breach of contract claim was founded,* based on ASIC's understanding of the case schedule set forth in the Joint CMC Statement.  ASIC intentionally did not address other theories on which plaintiff's remaining claims

---

[2]The Seventh Cause of Action for declaratory relief necessarily fails as well.  *See* section V, *infra*.

might be based, and should have made that limitation clear in its notice of motion and supporting papers.[3]

In its Summary Judgment Order, the Court pointed out that plaintiffs' allegations of disclosure violations may extend beyond the alleged overlap to a purported failure clearly to apprise plaintiff of the coverage and cost of the ASIC policy. *Id.* at 11:4-8. Now that this issue has been framed by the Court, ASIC asks the Court to reconsider its partial denial of summary judgment based on a dispositive piece of evidence in the record: an April 3, 2006 letter enclosing an ASIC binder sent to Ms. Wahl informing her that the premium for the EMC-placed ASIC policy would be $4,052, that the ASIC policy would be effective as of January 17, 2006, and that if EMC did not receive proof of acceptable insurance before the expiration of the enclosed ASIC binder 30 days later, EMC would purchase the coverage, advance the premium to ASIC and charge Ms. Wahl's escrow account. Wilson Decl. Ex. 11.[4] The April 3, 2006 letter and enclosed ASIC binder demonstrate that ASIC satisfied any duty of disclosure it may have owed to Ms. Wahl under the California Insurance Code. Since all of plaintiff's remaining claims depend on an alleged breach of that duty, each of the claims fails as a matter of law.

## STANDARD

A party must obtain leave of court to file a motion for reconsideration. Civil L.R. 7-9(a). Leave will be granted where, among other things, the moving party can show that the Court overlooked or failed to fully appreciate "material facts . . . which were presented to the Court before such interlocutory order." Civil L.R. 7-9(b); *Fredenburg v. County of Santa Clara*, No. C 07-04412 JW, 2009 WL 1814316, at *1 (N.D. Cal. June 25, 2009) (granting leave to file motion for

---

[3] The allegations of plaintiff's First Amended Complaint plainly are susceptible to the interpretation that they are all based on the "overlap" theory, under breach of contract as well as the remaining claims. *E.g.,* First Amended Complaint ¶¶ 33, 38 (statutory duty to disclose), 42 (constructive fraud), 48-53 (UCL).

[4] In support of its motion for summary judgment on contract interpretation, ASIC submitted Declarations of EMC and ASIC employees, as well as numerous other exhibits. The Declaration of Ronald K. Wilson in Support of ASIC's Motion for Summary Judgment (Docket No. 49) is referred to as "Wilson Decl." and the Declaration of Stella Matallana In Support of ASIC's Motion for Summary Judgment (Docket No. 51) is referred to as "Matallana Decl."

reconsideration where "the parties did not have an opportunity to brief" the issue decided by the court); *San Francisco Bay Area Rapid Transit Dist. v. Spencer*, No. C 04-04632 SI, 2006 WL 3751428, at *2 (N.D. Cal. Dec. 19, 2006) (granting leave where plaintiff later clarified their argument underlying initial motion*); see also Gong v. City of Alameda*, No. C 03-5495 TEH, 2007 WL 1223693, at *1 (N.D. Cal. Apr. 24, 2007) (although motion "technically defective" under L.R. 7-9, court grants motion pursuant to its inherent authority to revisit and modify any interlocutory orders prior to final judgment); Fed. R. Civ. P. 54(b).

## SUMMARY JUDGMENT ORDER

The Court granted ASIC's motion for summary judgment and/or dismissed most of plaintiff's claims, but found that the breach of statutory duty to disclose, constructive fraud, and UCL claims were not appropriate for summary adjudication.  Summary Judgment Order at 10-12. The Court construed Ms. Wahl's breach of statutory duty to disclose and constructive fraud claims as arising from ASIC's alleged violation of California Insurance Code section 332.  *Id.* at 10. Specifically, the Court articulated Ms. Wahl's claim as ASIC's alleged violation of "its § 332 duties by failing to disclose details about the coverage and costs of the ASIC Policies *after the premiums had already been charged to Wahl's escrow account* – implying that had she known just how expensive the ASIC Policies would be, and how little coverage they would provide to her, she would have made her own insurance arrangements."  *Id.* at 11 (emphasis supplied).  The Court found that this argument failed for Ms. Wahl's 2007 renewal policy, but might be viable for her 2006 policy.

Plaintiff's remaining UCL claim alleges "that force placed insurance is an unfair business practice . . . because it essentially forces homeowners to pay for double coverage for their lender's benefit. . . .  In this case, defendants have not demonstrated, as a matter of law, that the practice of force placing insurance during the LLPE period cannot rise to the level of an unfair business practice, and without more, summary judgment is inappropriate."  *Id.* at 12.

## MATERIAL FACTS PRESENTED TO THE COURT

The summary judgment record demonstrates that Ms. Wahl was notified in at least two mortgage documents and six letters that any insurance purchased by EMC might be more expensive

3

and have less coverage than her chosen homeowner's policy.[5]  Ms. Wahl received five such notifying documents before EMC obtained the 2006 ASIC policy.

Ms. Wahl also was specifically told the amount of the ASIC premium *a month before* any such premium was charged to her escrow.  On April 3, 2006, Ms. Wahl was sent a letter that (i) included an ASIC temporary binder, (ii) alerted her that a policy would be placed, (iii) disclosed that the amount of ASIC premiums to be charged would be $4,052, and (iv) advised that the effective inception date would be January 27, 2006.  Wilson Decl. Ex. 11.  The April 3, 2006 letter notified Ms. Wahl that if she did not provide proof of insurance before expiration of the binder period "we will be required to obtain a one-year policy on your property.  *The full year premium for this policy is shown on the attached binder.  This premium will be charged to your escrow account at the end of the binder period*."  *Id*. at WAHL0041 (emphasis supplied).  Ms. Wahl was not charged any premium until 30 days later when she failed to provide evidence of her own insurance and EMC purchased a full year ASIC policy.  *See* Wilson Decl. Ex. 4 at ASIC-WAHL0000183 ("EMC does not bill for lapses that occur while lender place coverage is in binder status"); Plaintiff's Ex. 5 at EMC-WAHL 00011 (Customer Account Activity Statement with EMC indicating insurance premium charged to Ms. Wahl's escrow on May 3, 2006).

---

[5] Ms. Wahl's Deed of Trust provides: "Borrower acknowledges that the cost of the insurance so obtained might significantly exceed the cost of insurance that the Borrower could have obtained." Matallana Decl. Ex. C at ASIC-WAHL0000154.  The "Hazard Insurance Requirements" document provided in connection with the origination of Ms. Wahl's mortgage states that "[t]he costs of the insurance may be more than the cost of insurance you may be able to obtain on your own."  *Id.* Ex. E & ¶ 18.  Ms. Wahl also received at least six letters informing her that "[s]ince this policy will insure your house without inspection, the cost may be much higher than you would normally pay if you obtain coverage through an agent of your choice.  The coverage provided may be less than you had before."  Wilson Decl. Exs. 6, 10, 11, 12, 14 & 15.

4

**ARGUMENT**

The Court should grant ASIC leave to file a motion for reconsideration on plaintiff's remaining claims because dispositive facts were before it that defeat Ms. Wahl's breach of statutory duty, constructive fraud, and UCL claims as a matter of law. *See* Civil L.R. 7-9(b).

**I.   The Amount Of Premium That Would Be Charged To Ms. Wahl's Escrow Was Disclosed To Her A Month *Before* That Premium Was Charged To Her Escrow Account.**

The Court declined to grant summary judgment on plaintiff's statutory duty to disclose and constructive fraud claims. The Court stated it was "not obvious, as a matter of law" that the letters sent to Ms. Wahl sufficiently disclosed the actual cost and coverage of the ASIC policy, and suggested that such disclosure may not have been made until "*after* the premiums had already been charged to Wahl's escrow account." Summary Judgment Order at 11 (emphasis supplied). The Court's subsequent analysis of Ms. Wahl's breach of statutory duty, constructive fraud, and UCL claims is based upon this mistaken assumption, and as a result the Court should grant ASIC leave to file a motion for reconsideration. The April 3, 2006, letter and enclosed ASIC binder directly contradict that assumption. A month *before* the premiums were charged to her escrow, the letter and enclosed ASIC binder notified Ms. Wahl that the premium for a one-year policy would be $4,052. Wilson Decl. Ex. 11; Plaintiff's Ex. 5.

**II.   ASIC's Disclosure Mandates The Dismissal Of Plaintiff's Breach Of Statutory Duty Claim.**

ASIC complied with any duty it had under California Insurance Code section 332, which requires each party to an insurance contract communicate all facts within its knowledge that are material to the contract and "which the other has not the means of ascertaining." Cal. Ins. Code § 332. A party is not bound to communicate information that the other party knows, or "in the exercise of ordinary care, the other ought to know, and of which the party has no reason to suppose him ignorant," or information that the other party waives. Cal. Ins. Code § 333; *see also* Cal. Civ. Code § 19 ("[e]very person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact"). The right to information may be

5

waived by "neglect to make inquiries as to such facts, where they are distinctly implied in other facts of which information is communicated."  Cal. Ins. Code § 336; *see also Old Line Life Ins. Co. v. Super. Ct.*, 229 Cal. App. 3d 1600, 1606 (1991) (a party's "right to disclosure of material facts may be waived by its own failure to follow up obvious leads").

ASIC fully complied with its statutory duties.  <u>First</u>, ASIC's binder disclosed to Ms. Wahl what the premium would be for the full-year ASIC policy before any amount was ever charged to her escrow.  Cal. Ins. Code § 332.  <u>Second</u>, ASIC had no duty to communicate information which, in the exercise of ordinary care, Ms. Wahl ought to have known.  Cal. Ins. Code § 333.  Ms. Wahl was told the cost of the EMC-placed ASIC policy in advance, and any failure by Ms. Wahl to investigate that cost defeats any claim for breach of a duty to disclose.  Alternatively, Ms. Wahl waived the right to any further information because she neglected to inquire into facts that, at a minimum, were "distinctly implied" in the many communications to her.  Cal. Ins. Code § 336.[6]

### III.   ASIC's Disclosure Mandates Dismissal Of Plaintiff's Constructive Fraud Claim.

Because ASIC did not breach any duty owed to Ms. Wahl, it similarly did not commit constructive fraud.  Plaintiff's constructive fraud claim is based on California Civil Code section 1573 (First Amended Complaint ¶ 41), which defines constructive fraud as either "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault . . . by misleading another to his prejudice" or "any such act or omission as the law specially declares to be fraudulent."  Cal. Civ. Code § 1573.  The duty upon which Ms. Wahl's claim is predicated is the "duty to disclose material facts under the California Insurance Code."  Summary Judgment Order at

---

[6] Ms. Wahl is bound by, and charged with knowledge of, the terms of the April 2006 binder whether she read it or not.  *See, Aetna Cas. & Sur. Co. v. Richmond*, 76 Cal. App. 3d 645, 652 (1977) (it is "a general rule that the receipt of [the] policy . . . binds the insured as well as the insurer and he cannot thereafter complain that he did not read it or know its terms.  It is the duty of the insured to read his policy"); *Sarchett v. Blue Shield of Cal.*, 43 Cal. 3d 1, 14-15 (1987) ("When a court is reviewing claims under an insurance policy, it must hold the insured bound by clear and conspicuous provisions in the policy even if evidence suggests that the insured did not read or understand them."); *Williams v. Cal. Physicians' Serv.*, 72 Cal. App. 4th 722, 739 (1999) ("it is a general rule a party is bound by contract provisions and cannot complain of unfamiliarity of the language of a contract." ); *Chase v. Blue Cross of Cal.*, 42 Cal. App. 4th 1142, 1154 (1996) ("[t]he principle that both parties are bound by the terms of the contract, even though one of them may misunderstand its terms, has substantial precedent.").

10. Because ASIC did not violate that duty, and Ms. Wahl was timely supplied with the relevant facts, including the cost of the 2006 ASIC policy, her constructive fraud claim fails.

## IV.   ASIC's Disclosure Mandates The Dismissal Of Plaintiff's UCL Claim.

While plaintiff's UCL claim is primarily devoted to the "unlawful" prong, the Complaint generally asserts that ASIC is engaged in an "unfair, unlawful, and/or fraudulent business practice." First Amended Complaint ¶ 57.   The evidence presented to the Court on ASIC's summary judgment motion demonstrates that plaintiff cannot succeed under any of the three UCL prongs.

### A.   Plaintiff has no viable "unlawful" UCL claim.

Plaintiff contends that ASIC acted "unlawfully" because ASIC violated statutory duties under "California Insurance Code section 330 *et seq*." *Id*. ¶ 50.  There can be no UCL "unlawful" prong claim, however, where there is no violation of a statute: "a UCL cause of action borrows the substantive portion of the borrowed statute to prove the 'unlawful' prong of that statute," *Blanks v. Seyfarth Shaw LLP*, 171 Cal. App. 4th 336, 364 (2009), so "a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong."  *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007).  Plaintiff's UCL "unlawful" prong claim necessarily fails because no violation of the borrowed statute, Cal. Ins. Code section 332, has been – or can be – shown.

### B.   Plaintiff has no viable "fraudulent" UCL claim.

"To establish an unfair competition claim under the fraudulent prong, plaintiffs must show that these representations were false or were likely to have misled 'reasonable consumers.'" *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1241 (2007).  Where, as here, "the material facts [are] undisputed, the court may decide as a matter of law whether members of the public were likely to be deceived."  *Id.*  A UCL fraud prong claim cannot survive where it is evident that the operative facts were actually disclosed.  *See, e.g.*, *id.* at 1242 (rejecting UCL fraud claim since, based on rate cards, a "reasonable consumer would understand that the requirement that every subscriber purchase the basic cable service, in order to receive any other service, was imposed by Comcast"); *Plotkin v. Sajahtera, Inc.*, 106 Cal. App. 4th 953, 966 (2003) (affirming summary judgment on UCL fraud claim where the allegedly deceptive valet parking ticket provided

7

advance notice of charges); *Shvarts v. Budget Group, Inc.*, 81 Cal. App. 4th 1153, 1160 (2000) (rejecting car renters' claim that a refueling charge for cars returned without a full gas tank was deceptive, since the amount per gallon was clearly printed in the rental agreement); *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 888-89 (1999) (holding there is nothing deceptive about a lender calculating interest under the 365/360 method if the borrower has been made aware of such practice).  Moreover, "there is no requirement that reasonable notice has to be the best possible notice" to satisfy the UCL.  *Plotkin*, 106 Cal. App. 4th at 966.

Applying these principles here, it is apparent there is no possible deception because Ms. Wahl was advised – expressly and in advance – of the cost of the 2006 ASIC policy in the April 3, 2006 letter and enclosed ASIC binder.[7]

**C.      Plaintiff has no viable "unfair" UCL claim.**

Nor is there any "unfairness" here.  *See, e.g.*, *Speyer v. Avis Rent A Car Sys., Inc.*, 242 F. App'x 474, 475 (9th Cir. 2007) ("Defendants' conduct is not unfair or fraudulent as plaintiffs do not contest that the total price is clearly disclosed to the consumer with each rate quote."); *South Bay Chevrolet*, 72 Cal. App. 4th at 887-88 (holding there is nothing unfair about lender's interest calculation method if the borrower was made aware of the practice).   In determining what constitutes an unfair business practice, California courts "require that the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions."  *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002); *see also Buller v. Sutter Health*, 160 Cal. App. 4th 981, 991 (2008); *Belton*, 151 Cal. App. 4th at 1239; *Scripps Clinic v. Super. Ct.*, 108 Cal. App. 4th 917, 940 (2003); *Byars v. SCME Mortg. Bankers, Inc.*, 109 Cal.

---

[7] The Deed of Trust and other documents supplied to Plaintiff clearly state that the lender placed insurance would be obtained at a higher cost to Plaintiff.  *See Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1178 (2002) ("That the deed of trust does not expressly state that property inspection fees may be charged to the borrower after default does not preclude Countrywide from doing so when the deed of trust unambiguously permits the lender to charge the delinquent borrower for 'whatever' is necessary to protect the property's value, 'including' attorney fees and entering the property to make repairs, and puts the borrower on notice that property inspections may be performed.  The deed of trust is not deceptive or likely to deceive borrowers with regard to property inspection fees.") (internal citation omitted).

1    App. 4th 1134, 1147 (2003).[8]  Because Ms. Wahl cannot make out a viable claim for nondisclosure

2    or concealment based on Section 332, her UCL unfair prong claim is not "tethered" to any

3    legislatively expressed policy, and is therefore subject to summary disposition.

4           To the extent that this Court interprets plaintiff's claim to be that the "practice" of placing

5    policies during the LLPE period is unfair, that claim is not linked to any specific constitutional,

6    statutory, or regulatory provision.  More fundamentally, the "practice" is EMC's – not ASIC's.

7    ASIC merely supplied the insurance; it did not require Ms. Wahl to pay for it.  Indeed, the Court

8    has stressed that "*EMC . . . retained the right to determine the adequacy of the homeowner's*

9    *insurance arranged by Wahl*," Summary Judgment Order at 8; "that *EMC* was acting within its

10   rights under the contract when it concluded that the cancellation of the Farmers Policy put Wahl in

11   non-compliance with her insurance obligations, notwithstanding the LLPE's continued limited

12   coverage of EMC's interest," *id.* at 8-9; "that *EMC* made a point of requiring Wahl to obtain a

13   homeowner's policy with an LLPE clause," *id.* at 9; and that "*EMC* charged the cost of the

14   premium to Wahl's escrow account," *id.* at 4 (emphasis supplied throughout).

15          A UCL unfair practices claim cannot be predicated on vicarious liability.  Rather, a

16   defendant's liability must be based on its "personal participation" in, and "unbridled control" over,

17   the offending practice.  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007).

---

18   [8] In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, the California Supreme
19   Court rejected the so-called "balancing test" for determining whether a practice was unfair under
     the UCL.  20 Cal. 4th 163 (1999).  This arose in the context of a suit between business competitors.
20   The earlier "balancing test" involved balancing the harms to the consumer against the utility of the
     defendant's practice to determine whether the practice was unfair.  *See South Bay Chevrolet*, 72
21   Cal. App. 4th at 815.  *Cel-Tech* required that an "unfair" policy must be "tethered" to a legislatively
     declared policy or a showing of an actual or threatened impact on competition.  20 Cal. 4th at 186.
22   The court reserved the question of whether its new definition would apply in consumer cases as
     well as competitor cases.  *Id.* at 187 n.12.  Reading *Cel-Tech* literally, some courts have found *Cel-*
23   *Tech* applicable only to cases involving competitors, and not to consumer actions, and have
     continued using the "balancing test."  However, most courts have held that the rationale of *Cel-*
24   *Tech* compels the conclusion that the unfairness prong must be tethered to a defined legislative
     policy; "otherwise the courts will roam across the landscape of consumer transactions picking and
25   choosing which they like and which they dislike." *Van Slyke v. Capital One Bank*, No. C 07-00671
     WHA, 2007 WL 3343943, at *11 (N.D. Cal. Nov. 7, 2007).  Further, there is only one term,
26   "unfair," used in the statute; the Legislature did not set forth one definition for competitor cases and
     another for consumer cases.  Thus, the same word "unfair" has to mean the same thing for all
27   purposes.  "To give these same words a different meaning for each category would be to invent a
     statute rather than interpret one."  *Clark v. Martinez*, 543 U.S. 371, 378 (2005).

28

---

9

Here, ASIC's right and ability to supply insurance coverage to EMC does not equate to a right and ability to force place insurance on a delinquent mortgagor.  Only EMC, as the mortgagee, maintained that prerogative.  Nor does the First Amended Complaint allege anything to the contrary.

## V.    The Court's Rulings Foreclose The Requested Declaratory Relief.

Finally, Ms. Wahl is not entitled to declaratory relief, which she seeks in her Seventh Cause of Action.  "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."  *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985) (en banc).  Declaratory relief no longer serves a "useful purpose" in this litigation.  Ms. Wahl's request requires the Court to find that ASIC acted contrary to the "rights and duties under the provisions of ASIC's FPI policies imposed on homeowners as insureds or additional insureds, and the homeowners' LLPEs, and the resulting obligations between the parties to pay or return FPI premiums."  First Amended Complaint ¶ 68.

In ruling on the breach of contract and failure of consideration claims, however, the Court foreclosed such a finding.  The Court held that the Deed of Trust's provisions "essentially gave EMC free rein to change the Borrower's insurance obligations at any point during the lifetime of the loan," so "even if EMC anticipated at the time it entered into the Deed that it might rely on an LLPE, it was empowered under the terms of the contract to make unilateral adjustments later and deem an LLPE inadequate for its coverage needs."  Summary Judgment Order at 8-9.  In short, the Court has already "determine[d] the rights and duties which exist between the parties to ASIC's FPI policies."  First Amended Complaint ¶ 70.

## <u>CONCLUSION</u>

For all of the foregoing reasons, ASIC respectfully requests that this Court grant ASIC leave to file a motion for reconsideration of its Order Granting in Part and Denying in Part Summary Judgment.

10

1

Dated:  July 8, 2009                    JORDEN BURT LLP

2

                                        By:  */s/ Frank G. Burt*

3                                             FRANK G. BURT

4                                       Attorney for Defendant

5                                       AMERICAN SECURITY INSURANCE COMPANY

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S MOTION FOR LEAVE TO FILE MOTION
FOR RECONSIDERATION OF 6/18/09 ORDER GRANTING IN PART AND DENYING IN PART SUMMARY
JUDGMENT; CASE NO. C08-00555-RS