1  PETER S. HECKER (Bar No. 66159)
2  ANNA S. McLEAN (Bar No. 142233)
   SHEPPARD MULLIN RICHTER & HAMPTON, LLP
3  Four Embarcadero Center
   Seventeenth Floor
4  San Francisco, CA 94111-4109
   Telephone: (415) 774-3155
5  Facsimile: (415) 403-6224
6  phecker@sheppardmullin.com
   amclean@sheppardmullin.com
7
   FRANK BURT (*Pro Hac Vice*)
8  DENISE A. FEE (*Pro Hac Vice*)
   JORDEN BURT LLP
9  1025 Thomas Jefferson Street, NW
10 Suite 400 East
   Washington, DC 20007-0805
11 Telephone: (202) 965-8140
   Facsimile: (202) 965-8104
12 fgb@jordenusa.com
   daf@jordenusa.com
13
14 Attorneys for Defendant
   AMERICAN SECURITY INSURANCE COMPANY
15
16              UNITED STATES DISTRICT COURT
17             NORTHERN DISTRICT OF CALIFORNIA
18                  SAN JOSE DIVISION
19
   MICHELLE T. WAHL, on behalf of herself    Case No. C08-00555-RS
20 and all others similarly situated,
                                              **DEFENDANT AMERICAN SECURITY**
21              Plaintiff,                    **INSURANCE COMPANY'S NOTICE OF**
                                              **MOTION AND MOTION FOR**
22        v.                                  **JUDGMENT ON THE PLEADINGS**

23 AMERICAN SECURITY INSURANCE           Hearing Date: March 24, 2010
   COMPANY; and DOES 1-50, inclusive,   Time: 9:30 a.m.
24              Defendant.               Courtroom: 4
25
26
27
28

---

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

INTRODUCTION........................................................................................................ 1

APPLICABLE LEGAL STANDARDS ...................................................................... 3

BACKGROUND.......................................................................................................... 4

ARGUMENT ............................................................................................................... 7

I.      Ms. Wahl Lacks Standing To Represent The Putative Class .................... 7

      A.      Ms. Wahl Does Not Fall Within The Class Definition ................ 7

      B.      Ms. Wahl Cannot Show Good Cause To Belatedly Amend The Class Definition ......................................................................... 9

II.     ASIC Is Entitled To Judgment On The Pleadings As To The Breach Of Statutory Duty And Constructive Fraud Claims ....................................... 9

      A.      ASIC Does Not Owe A Duty Of Disclosure To Third-Party Beneficiaries .............................................................................. 10

      B.      If Ms. Wahl Had A Right To Information, She Waived It By Failing To Make Reasonable Inquiries In Light Of What She Knew About The Coverage ....................................................... 10

      C.      Ms. Wahl Is Not A Party To The Contract And May Not Rescind It......... 11

      D.      Section 332 Does Not Impose A Tort Duty Or Support A Tort Claim ......................................................................................... 12

III.    ASIC Is Entitled To Judgment On The Pleadings As To The UCL Claims .......... 12

      A.      As Go The Breach Of Statutory Duty And Constructive Fraud Claims, So Go Any Other Disclosure-Based UCL Claims That Ms. Wahl May Be Asserting ..................................................... 13

      B.      The Allegedly Unfair Practice Of "Force Placing" Homeowner's Insurance In Lieu Of An LLPE Is EMC's Business Practice, Not ASIC's Business Practice........................................................... 15

      C.      The Alleged Business Practice Of "Force Placing" Homeowner's Insurance In Lieu Of An LLPE Is Not "Unfair" Under The UCL.............. 16

            1.      No legislatively declared policy has been violated.......................... 16

- i -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.  California statutory and regulatory provisions expressly permit EMC and ASIC to place the coverage that EMC deems acceptable ............................................................. 17

3.  Ms. Wahl had reasonably available alternatives to the LPI coverage ....................................................................... 18

4.  Ms. Wahl may not second-guess the Deed as being "unfair".......... 19

IV.  ASIC Is Entitled To Judgment On The Pleadings As To Any Declaratory Relief ..................................................................................... 21

A.  Ms. Wahl Asks The Court To Contradict Its Summary Judgment Order, So The Requested Declaratory Relief No Longer Serves Any Useful Purpose .................................................... 21

B.  No Live Controversy Remains, So The Requested Declaratory Relief Is Moot ................................................................ 22

CONCLUSION ......................................................................................... 23

DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. C08-00555-RS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**CASES**                                                                 **Page**

*In re Actimmune Marketing Litigation*, No. C08-02376 MHP, 2009 WL 3740648
(N.D. Cal. Nov. 6, 2009) .................................................................................... 16

*AHO Enterprises v. State Farm Mutual Automobile Insurance Co.*,
No. C08-4133 SBA, 2008 WL 4830708 (N.D. Cal. Nov. 6, 2008) ...................................... 14

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................ 7

*In re American Funds Securities Litigation*, 556 F. Supp. 2d 1100 (C.D. Cal. 2008) .................... 3

*Astoria Federal Savings & Loan Association v. Solimino*, 501 U.S. 104 (1991) ........................... 4

*Berlowitz v. Nob Hill Masonic Management*, No. C96-1241 MHP,
1996 WL 724776 (N.D. Cal. Dec. 6, 1996) ..................................................................... 9

*Belton  v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224 (2007) .................................... 14

*Berryman v. Merit Property Management, Inc.*, 152 Cal. App. 4th 1544 (2007).............. 12, 13, 15

*Blair v. Shanahan*, 38 F.3d 1514 (9th Cir. 1994)........................................................... 22

*Blanks v. Seyfarth Shaw LLP*, 171 Cal. App. 4th 336 (2009) ......................................... 15

*Buckland v. Threshold Enterprises*, 155 Cal. App. 4th 798 (2007) ................................. 10

*Buller v. Sutter Health*, 160 Cal. App. 4th 981 (2008) ........................................... 13, 14

*Byars v. SCME Mortgage Bankers, Inc.*, 109 Cal. App. 4th 1134 (2003) ...................... 14

*California Grocers Association v. Bank of America*, 22 Cal. App. 4th 205 (1994)...................... 21

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
20 Cal. 4th 163 (1999)................................................................................... 14, 17, 19

*Churchill Village, LLC v. General Electric Co.*, 169 F. Supp. 2d 1119 (N.D. Cal. 2000) ............. 14

*Clark v. Martinez*, 543 U.S. 371 (2005)...................................................................... 14

*Cole v. Oroville Union High School District*, 228 F.3d 1092 (9th Cir. 2000) .............................. 22

*Costelo v. Chertoff*, No. C08-688 JVS, 2009 WL 2223006 (C.D. Cal. July 16, 2009) ................... 9

*Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581 (2009)....................................... 18

*Desert Healthcare District v. PacifiCare FHP, Inc.*, 94 Cal. App. 4th 781 (2001)................ 20, 21

*Eichman v. Photomat Corp.*, 880 F.2d 149 (9th Cir. 1989)........................................... 19

*In re Firearm Cases*, 126 Cal. App. 4th 959 (2005) .................................................... 16

*Flower v. Wachovia Mortgage FSB*, No. C09-343 JF, 2009 WL 975811
(N.D. Cal. Apr. 10, 2009) ............................................................................................. 14

*Garcia v. Truck Insurance Exchange*, 36 Cal. 3d 426 (1984) .......................................... 10

*General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982) ...................... 7

*Goldman v. Standard Insurance Co.*, 341 F.3d 1023 (9th Cir. 2003) .............................. 18

*Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845 (2002) ............................................ 14

*Harris v. Itzhaki*, 183 F.3d 1043 (9th Cir. 1999) ............................................................ 22

*Identity Arts v. Best Buy Enterprise Services, Inc.*, No. C05-4656 PJH,
2007 WL 1149155 (N.D. Cal. Apr. 18, 2007) ................................................................ 3

*Jasper v. C.R. England, Inc.*, No. C08-5266 GW, 2009 WL 873360
(C.D. Cal. Mar. 30. 2009) .............................................................................................. 9

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) ............................ 9

*Jones Intercable of San Diego, Inc. v. City of Chula Vista*, 80 F.3d 320 (9th Cir. 1996) .............. 22

*Lambros v. Metropolitan Life Insurance Co.*, 111 Cal. App. 4th 43 (2003) ................... 13

*Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494 (1999) ......................................... 15, 17, 18

*Lee v. American National Insurance Co.*, 260 F.3d 997 (9th Cir. 2001) .......................... 7

*Lewis v. Casey*, 518 U.S. 343 (1996) ............................................................................... 8

*Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279 (9th Cir. 1986) ..................... 4

*McQuillion v. Schwarzenegger*, 369 F.3d 1091 (9th Cir. 2004) ..................................... 22

*Mission National Insurance Co. v. Coachella Valley Water District*,
210 Cal. App. 3d 484 (1989) ........................................................................................ 18

*Mitchell v. United National Insurance Co.*, 127 Cal. App. 4th 457 (2005) .................... 12

*Murphy v. Allstate Insurance Co.*, 17 Cal. 3d 937 (1976) .............................................. 10

*Old Line Life Insurance Co. v. Superior Court*, 229 Cal. App. 3d 1600 (1991) ...... 11, 13

*Ortiz v. McNeil-PPC, Inc.*, No. C07-678 MMA, 2009 WL 1322962
(S.D. Cal. May 8, 2009) ................................................................................................ 9

*Perfect 10, Inc. v. Visa International Services Association*, 494 F.3d 788 (9th Cir. 2007) ........... 16

*Public Utilities Commission of California v. FERC*, 100 F.3d 1451 (9th Cir. 1996) ..................... 22

*Rutenschroer v. Starr Seigle Communications, Inc.*, 484 F. Supp. 2d 1144
(D. Haw. 2006) ............................................................................................................... 3

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ..................................... 4

*Schauer v. Mandarin Gems of California, Inc.*, 125 Cal. App. 4th 949 (2005) ............................. 12

*Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917 (2003) ................................................... 14

*Seven Words LLC v. Network Solutions*, 260 F.3d 1089 (9th Cir. 2001) ........................................ 22

*Shadoan v. World Savings & Loan Association*, 219 Cal. App. 3d 97 (1990) .............................. 19

*Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976) ............................... 8

*South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999) ...... 14, 19

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ...................................................................... 6

*Textron Financial Corp. v. National Union Fire Insurance Co.*,
    118 Cal. App. 4th 1061 (2004) ............................................................................................ 14

*United Guaranty Mortgage Indemnity Co. v. Countrywide Financial Corp.*,
    No. C09-1888 MRP, 2009 WL 3199844 (C.D. Cal. Oct. 5, 2009) ................................. 12, 15

*United States v. Geophysical Corp. of Alaska*, 732 F.2d 693 (9th Cir. 1984) ............................... 22

*United States v. Washington*, 759 F.2d 1353 (9th Cir. 1985) ........................................................ 21

*Van Slyke v. Capital One Bank*, No. C07-671 WHA, 2007 WL 3343943
    (N.D. Cal. Nov. 7, 2007) ...................................................................................................... 14

*Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158 (2002) ........................ 13, 14, 19

*Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460 (N.D. Cal. 1978) ................................................... 8

*Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956 (N.D. Cal. 2005) ......................................... 8

**FEDERAL RULES**

Fed. R. Civ. P. 10 ............................................................................................................................. 6

Fed. R. Civ. P. 12 ..................................................................................................................... 1, 3, 4

Fed. R. Civ. P. 16 ............................................................................................................................. 9

Fed. R. Civ. P. 56 ............................................................................................................................. 4

Fed. R. Civ. P. 82 ............................................................................................................................. 7

**STATE STATUTES**

Cal. Civ. Code § 19 ........................................................................................................................ 11

Cal. Civ. Code § 2955.5 ................................................................................................................. 18

Cal. Ins. Code § 330 ....................................................................................................................... 15

Cal. Ins. Code § 331 ....................................................................................................................... 15

DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON
THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. C08-00555-RS

Cal. Ins. Code § 332 ....................................................................................................... *passim*

Cal. Ins. Code § 333 ........................................................................................................... 15

Cal. Ins. Code § 334 ........................................................................................................... 15

Cal. Ins. Code § 335 ........................................................................................................... 15

Cal. Ins. Code § 336 ......................................................................................... 2, 11, 12, 15

Cal. Ins. Code § 337 ........................................................................................................... 15

Cal. Ins. Code § 338 ........................................................................................................... 15

Cal. Ins. Code § 339 ........................................................................................................... 15

Cal. Ins. Code § 771 ........................................................................................................... 17

**STATE REGULATIONS**

10 Cal. Code Regs. § 107.601 ........................................................................................... 17

10 Cal. Code Regs. § 2181.1 .............................................................................................. 17

**OTHER AUTHORITIES**

2 James Wm. Moore, *Moore's Federal Practice* (3d ed. 2009) ......................................... 6

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 24, 2010, at 9:30 a.m. or as soon thereafter as the matter may be heard, in Courtroom 4 of the above Court, located at 280 South First Street, San Jose, California, pursuant to Federal Rule of Civil Procedure 12(c), defendant American Security Insurance Company ("ASIC") will and hereby does move the Court to dismiss the class allegations for plaintiff Michelle T. Wahl's lack of membership in the putative class and her consequent lack of representational standing, and to grant ASIC judgment on the pleadings in its favor as to the Second, Third, Fifth and Seventh Causes of Action in the First Amended Complaint. The Motion is based on the accompanying Memorandum of Points and Authorities, the files and records in this case, and all further evidence and arguments that may be adduced in connection with the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

In June 2009, the Court issued its Order Granting in Part and Denying in Part Summary Judgment ("Summary Judgment Order"). Docket No. 69. In that Order, the Court addressed Ms. Wahl's "basic theory" in this case, which is "that she should not have been charged for ASIC insurance as long as the LLPE [that is, Lender's Loss Payable Endorsement] in her Farmers Policy provided adequate coverage to EMC [Ms. Wahl's lender] (even though the policy no longer covered Wahl herself)," so "the policy her lender obtained from ASIC was unnecessary." Summ. Judg. Order at 5 (alterations supplied). The Court granted summary judgment in ASIC's favor on Ms. Wahl's claims for breach of contract (First Cause of Action) and failure of consideration (Fourth Cause of Action). The Court declined to grant summary judgment on Ms. Wahl's remaining claims for breach of statutory duty (Second Cause of Action), constructive fraud (Third Cause of Action), and alleged violations of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (Fifth Cause of Action), and did not address the request for declaratory relief (Seventh Cause of Action).

ASIC is entitled to dismissal of the class allegations, and to judgment on the pleadings as to the remaining claims. Taking the First Amended Complaint's well-pleaded allegations as true,

1

along with the undisputed facts specified in the Summary Judgment Order, which must be treated as established in this action, it is apparent that Ms. Wahl lacks standing to represent the putative class, and that she fails to state any claim upon which relief can be granted.

First, Ms. Wahl, the sole named plaintiff, is not a member of the putative class she seeks to represent, which is defined to include all California homeowners who paid premiums "for any period of [lender-placed insurance ("LPI")] which *overlapped* prior homeowner insurance still in effect pursuant to the homeowners' LLPEs."   First Am. Compl. ¶ 26 (emphasis supplied). However, the Court ruled in its Summary Judgment Order that EMC waived coverage under the Farmers LLPE by arranging for ASIC to provide automatic coverage upon the expiration of Ms. Wahl's prior homeowner's insurance.  The Court ruled further that the insurance "overlap" alleged by Ms. Wahl *never occurred*.  Under these rulings, Ms. Wahl does not fall within her own class definition, and lacks standing to represent a class affected by a supposed "overlap."

Second, ASIC is entitled to judgment on the breach of statutory duty and constructive fraud claims.  ASIC does not owe a statutory duty of disclosure under California Insurance Code § 332 to third-party beneficiaries like Ms. Wahl.  The duty extends only to a *party* to an insurance contract. Moreover, even if Ms. Wahl had a statutory right to information, she waived it under Insurance Code § 336 by failing to make reasonable inquiries in light of what she knew about the potential and actual cost of the EMC LPI coverage.  Ms. Wahl was warned repeatedly that the LPI coverage would be substantially more expensive than any homeowner's insurance she might purchase on her own.  In addition, as a third-party beneficiary who is not a party to the ASIC-EMC insurance contract, Ms. Wahl is not entitled to rescind it.  Finally, Section 332 does not impose a tort duty (as distinguished from a contract duty), and thus cannot support the constructive fraud claim.

Third, ASIC is entitled to judgment on the UCL claims.  To the extent Ms. Wahl asserts UCL claims based on the alleged nondisclosure of information required to be disclosed by Section 332, the claims fail for the same reasons as the breach of statutory duty and fraudulent concealment claims.  To the extent Ms. Wahl asserts a UCL claim based on the supposedly "unfair" practice of placing full replacement value insurance in lieu of an LLPE, the claim fails because that is a business practice of EMC, not ASIC.  Further, placing full replacement value insurance in lieu of an

LLPE is not "unfair" within the meaning of the UCL. Ms. Wahl has failed to identify any legislatively declared policy impinged upon by this practice. In fact, the California Insurance Code and applicable regulations affirmatively grant EMC and ASIC a "safe harbor" to place the coverage allowed by a lender's mortgage instrument. And, since Ms. Wahl could have reasonably avoided any purported "injury" by simply complying with her Deed of Trust and purchasing acceptable coverage, she fails to state a claim for relief under the UCL's unfairness prong. Nor may Ms. Wahl second-guess as "unfair" the provisions of her Deed of Trust, which the Court held authorizes EMC to determine the adequacy of any insurance coverage, and to charge for any replacement insurance.

Fourth, ASIC is entitled to judgment on the requested declaratory relief. In light of the Summary Judgment Order, ASIC could not have acted contrary to the "rights and duties under the provisions of ASIC's FPI policies imposed on homeowners as insureds or additional insureds, and the homeowners' LLPEs," First Am. Compl. ¶ 68, so the requested declaratory relief no longer serves any useful purpose. In any event, the request for declaratory relief is moot since Ms. Wahl is no longer covered under any ASIC insurance policy.

## APPLICABLE LEGAL STANDARDS

"A motion for judgment on the pleadings challenges the legal sufficiency of the opposing party's pleadings, and the allegations contained therein. The standard applied by the court in treating a motion for judgment on the pleadings is the same as that applied by the court in considering motions to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)." *Identity Arts v. Best Buy Enter. Servs., Inc.*, No. C05-4656 PJH, 2007 WL 1149155, at *4 (N.D. Cal. Apr. 18, 2007). However, "if a party raises an issue as to the court's subject matter jurisdiction on a motion for a judgment on the pleadings, the district judge will treat the motion as if it had been brought under Rule 12(b)(1)." *Rutenschroer v. Starr Seigle Communications, Inc.*, 484 F. Supp. 2d 1144, 1148 (D. Haw. 2006) (internal quotation marks omitted).

Under the Rule 12(b)(6) standard, a plaintiff's well-pleaded factual allegations are taken as true but, "in considering the motion, this Court may take judicial notice of its own orders and of records in a case before it." *In re Am. Funds Secs. Litig.*, 556 F. Supp. 2d 1100, 1103 (C.D. Cal. 2008); *see also Identity Arts*, 2007 WL 1149155, at *4 n.3 (in ruling on a motion for judgment on

3

the pleadings, taking judicial notice of a prior order on a motion for preliminary injunction in the same case); *cf. Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Savs. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) ("On a motion to dismiss, however, a court may take judicial notice of facts outside the pleadings."). Here, the Court and the parties are bound by the facts determined in the Summary Judgment Order. In resolving ASIC's summary judgment motion, the Court "issue[d] an order specifying what facts" are "not genuinely at issue. The facts so specified must be treated as established in the action." Fed. R. Civ. P. 56(d)(1).

Under the Rule 12(b)(1) standard, "a jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. The court need not presume the truthfulness of the plaintiff's allegations." *Id.* (internal citation omitted).

## BACKGROUND

The facts herein are derived from the First Amended Complaint, the exhibits appended to the First Amended Complaint, and the Court's Summary Judgment Order. On May 25, 2004, Ms. Wahl signed a $465,000 fixed rate note and an accompanying Deed of Trust ("Deed") in favor of Argent Mortgage Company, LLC ("Argent"). Summ. Judg. Order at 1. Under the Deed's provisions, Ms. Wahl was required to keep the property's improvements "insured against loss by fire" and other "hazards," and if she failed to do so, Argent could make its own insurance arrangements at Ms. Wahl's expense. *Id.* at 2. The Deed warned: "Lender is under no obligation to purchase any particular type or amount of coverage. . . . Borrower acknowledges that the cost of the insurance so obtained might significantly exceed the cost of insurance that the Borrower could have obtained. Any amounts disbursed by Lender under this Section . . . shall become additional debt of Borrower secured by this Security Instrument." *Id.* The Deed provides further:

4

The insurance [arranged by Borrower] shall be maintained in amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. . . .  All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies[.]

Effective July 29, 2005, Ms. Wahl purchased a homeowner's insurance policy through Farmers Insurance Exchange ("Farmers Policy"), for an annual premium of $2,445.48.  *Id.*  The Farmers Policy included an LLPE clause.  *Id.* at 3; First Am. Compl. ¶ 9; First Am. Compl. Ex. A.  However, Ms. Wahl failed to pay the premium on her Farmers Policy that came due on January 12, 2006.  Summ. Judg. Order at 3; First Am. Compl. ¶ 16(a).  Farmers notified her in mid-January that unless she paid the premium before January 27, 2006, the policy would be cancelled.  Summ. Judg. Order at 3; First Am. Compl. ¶ 16(a).  Ms. Wahl still did not pay, and on February 6, 2006, Farmers mailed her a notice indicating that the policy had been cancelled and that her home was no longer insured.  Summ. Judg. Order at 3; First Am. Compl. ¶ 16(a)-(b); First Am. Compl. Ex. B.  The notice was copied to EMC, which had become Argent's successor-in-interest by that time.  Summ. Judg. Order at 3; First Am. Compl. ¶ 16(c).

At the time of these events, EMC had standing agreements and a master policy with ASIC for lender-placed insurance.  Summ. Judg. Order at 3.  These agreements provided that whenever one of EMC's borrowers failed to maintain their homeowner's insurance, the LPI coverage would come into effect immediately and automatically.  *Id.*  Under the agreements, ASIC automatically covered all interests in Ms. Wahl's property as of January 27, 2006.  *Id.*; *see* First Am. Compl. ¶ 16(c); First Am. Compl. Ex. G ("Conditions" section of "Residential Property Policy," ¶ 3).

On February 27, 2006, Ms. Wahl received a letter indicating that EMC had secured temporary insurance in the form of a sixty-day binder through ASIC.  Summ. Judg. Order at 3; First Am. Compl. ¶ 16(c); First Am. Compl. Ex. C.  The letter cautioned:  "If proof of your insurance is not supplied within 60 days, EMC will be required to obtain adequate insurance coverage at your expense. . . . Your monthly payments will increase due to the cost of this coverage.  Any policy we purchase on your behalf may be cancelled at any time by providing proof of acceptable insurance coverage."  Summ. Judg. Order at 3-4; First Am. Compl. Ex. C.  The letter went on to warn that

5

"[s]ince this policy will insure your house without inspection, the cost may be much higher than you would normally pay if you purchase a policy from an agent and/or insurance company of your choice.  The coverage amount may be less than you had before."  Summ. Judg. Order at 4; First Am. Compl. Ex. C.  EMC sent a follow-up letter on April 3, 2006, which repeated this information and enclosed an ASIC insurance binder.  Summ. Judg. Order at 4; First Am. Compl. Ex. D.

The insurance binder accompanying the April 3, 2006 letter informed Ms. Wahl that the premium for the LPI coverage would be $4,052.  Docket No. 35-2 (ASIC's Notice of Filing of Complete Exhibit D in Support of Motion to Dismiss).[1]  The binder states that the LPI coverage would be effective as of January 27, 2006, and states further:  "The premium shown above is for a fully one year policy.  The lender will place a policy for you if you do not give them proof of insurance on your house.  You will be charged for each day that you do not have your own insurance policy."  *Id.*

Ms. Wahl failed to procure another insurance policy on her own, and upon expiration of the sixty-day temporary binder EMC had arranged through ASIC, EMC purchased a one-year LPI policy from ASIC.  Summ. Judg. Order at 4.  The policy (a copy of which was forwarded to Ms. Wahl) was effective as of January 27, 2006 – the original beginning date of the temporary binder period, rather than the end date of that binder.  *Id.*; First Am. Compl. ¶ 16(e)-(f).  The total cost of the annual premium was $4,052.  Summ. Judg. Order at 4; First Am. Compl. ¶ 16(f).  The policy named EMC as the primary insured and listed Ms. Wahl as an additional insured.  Summ. Judg. Order at 4; First Am. Compl. ¶ 16(e).  In this capacity, Ms. Wahl was a "third-party beneficiary"

---

[1] Ms. Wahl attached the April 3, 2006 letter as Exhibit D to her First Amended Complaint, but she failed to *also* attach the binder that was sent with, and referenced in, the letter.  Among other things, the April 3, 2006 letter states:  "The full year premium for this policy is shown on the attached binder."  The binder identifies the same coverage period as the period stated in the April 3, 2006 letter – the "Subject" of the letter reads "Hazard Insurance:  01/27/2006," which is the same as the inception date identified on the binder.  Consideration of the binder is proper on this Motion.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  "A pleader may not avoid the consequences of an entire document by quoting from it selectively in the pleading, but not attaching the document as a whole to the pleading."  2 James Wm. Moore, *Moore's Federal Practice* § 10.05[5] (3d ed. 2009); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (holding that when the plaintiff fails to introduce a pertinent letter as part of his pleading, the defendant may introduce the letter as part of its motion attacking the pleading).

under the ASIC insurance contract.  Summ. Judg. Order at 6 n.4.  EMC charged the cost of the premium to Ms. Wahl's escrow account at the end of the sixty-day temporary binder period.  *Id.* at 4; First Am. Compl. ¶ 16(g).

The LPI policy stayed in place throughout 2006.  Summ. Judg. Order at 4; First Am. Compl. ¶ 16(g).  In December 2006, EMC notified Ms. Wahl that if she failed to provide proof of other acceptable insurance coverage, the coverage would be renewed for a second year, effective January 27, 2007.  Summ. Judg. Order at 4.  When Ms. Wahl did not provide such proof, EMC renewed the policy at a cost of $4,052, which EMC again advanced and charged to Ms. Wahl.  *Id.*; First Am. Compl. ¶ 16(g).  In July 2007, Ms. Wahl purchased a new insurance policy of her own through Farmers, which became effective on July 19, 2007.  Summ. Judg. Order at 5; First Am. Compl. ¶ 16(g).  Ms. Wahl provided proof of the new policy to EMC, and EMC cancelled the LPI coverage effective July 19, 2007.  Summ. Judg. Order at 5.

## ARGUMENT

### I.   Ms. Wahl Lacks Standing To Represent The Putative Class.

#### A.   Ms. Wahl Does Not Fall Within The Class Definition.

Ms. Wahl, the sole named plaintiff, is not a member of the defined putative class.  She therefore lacks standing to represent it.

Article III of the Constitution limits the jurisdiction of the federal courts to "cases and controversies," "a restriction that has been held to require a plaintiff to show, *inter alia*, that he has actually been injured by the defendant's challenged conduct."  *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001 (9th Cir. 2001).  Nothing about the class action device relaxes the "cases and controversies" limitation.  Rather, "Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right,' 28 U.S.C. § 2072(b)."  *Amchem Prods. Inc., v. Windsor*, 521 U.S. 591, 612-13 (1997); *see also* Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts.").

Consequently, a named plaintiff like Ms. Wahl "must be part of the class and possess the same interest and suffer the same injury as the class members."  *Gen. Tel. Co. of the Southwest v.*

7

DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. C08-00555-RS

*Falcon*, 457 U.S. 147, 156 (1982); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("'That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)). "The purpose of defining a plaintiff class, through dates or otherwise, is to limit the class of plaintiffs to those ascertainable individuals who have standing to bring the action." *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 966 (N.D. Cal. 2005).

A plaintiff who does not fall within the class definition is not a member of the putative class and therefore lacks standing to sue on its behalf. "Logic as well as authority dictate this result. To permit a plaintiff to assert the claims of a class of which he is not a part and to seek relief in which he has no concrete individual interest is to sanction a sham class action and to abandon any substantial role for the named plaintiff himself, as distinguished from his attorney." *Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 477 (N.D. Cal. 1978) (refusing to permit a named plaintiff who was not a member of the class, and thus lacked standing, to represent the class).

In her First Amended Complaint, Ms. Wahl proposes to represent a class composed of:

a.  All current and former California homeowners who were insureds or additional insureds under an ASIC FPI policy; and

b.  Who paid premiums for an ASIC FPI policy; and

c.  Such payments for the ASIC FPI policy included premiums for any period of FPI which *overlapped* prior homeowner insurance still in effect pursuant to the homeowners' LLPEs.

Docket No. 14 (emphasis supplied).

Ms. Wahl is not a member of this putative class since she was never subject to an insurance "overlap." In its Summary Judgment Order, the Court held that "EMC waived any coverage under the Farmers LLPE by arranging for ASIC to provide 'seamless' coverage as of the date Wahl's policy expired. *Thus the insurance 'overlap' alleged by Wahl did not in fact occur*, and the imposition of force placed insurance as of January 27, 2006, did not breach the ASIC Policies." Summ. Judg. Order at 9 (emphasis supplied). Because Ms. Wahl is not a part of the putative class she herself defined, she lacks standing to represent it.

**B.     Ms. Wahl Cannot Show Good Cause To Belatedly Amend The Class Definition.**

Further, Ms. Wahl may not modify the putative class definition without amending her pleadings.  "The court is bound by the class definition provided in the complaint," so the Court may "not consider certification of the class beyond the definition provided in the complaint unless plaintiffs choose to amend it."  *Berlowitz v. Nob Hill Masonic Mgmt.*, No. C96-1241 MHP, 1996 WL 724776, at *2 (N.D. Cal. Dec. 6, 1996).[2]  Ms. Wahl's deadline for amending has passed, *see* Docket No. 46 (ordering that "amendments to the pleadings or the joinder of additional parties shall be completed on or before August 14, 2008"), and she cannot show "good cause" for which the Court should allow a belated amendment.  *See* Fed. R. Civ. P. 16(b)(4); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992) (once a district court files a scheduling order establishing deadlines for amending pleadings, the Rule 16 "good cause" standard applies, not the more liberal Rule 15 standard).  Ms. Wahl affirmed in the *Second* Joint Case Management Statement that "the parties require no additional time to amend their pleadings."  Docket No. 76 at 8.  Indeed, in the *seven months* since the Summary Judgment Order was entered, Ms. Wahl has made no effort to file an amended pleading.  Allowing an amendment eliminating the class definition's reference to the so-called "overlap" also would prejudice ASIC, which engaged in extensive discovery and summary judgment briefing as to whether such an "overlap" existed.  If Ms. Wahl had an alternative way of defining the class, she should have done so long ago.

**II.     ASIC Is Entitled To Judgment On The Pleadings As To The Breach Of Statutory Duty And Constructive Fraud Claims.**

In addition to being unable to represent the defined putative class, Ms. Wahl fails to state a claim upon which relief can be granted in her First Amended Complaint.

---

[2] *See also Costelo v. Chertoff*, No. C08-688 JVS, 2009 WL 2223006, at *4 (C.D. Cal. July 16, 2009) ("The Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond the."); *Ortiz v. McNeil-PPC, Inc.*, No. C07-678 MMA, 2009 WL 1322962, at *2 (S.D. Cal. May 8, 2009) (quoting *Berlowitz* and denying motion for leave to file a belated amended complaint modifying the class definition); *Jasper v. C.R. England, Inc.*, No. C08-5266 GW, 2009 WL 873360, at *6 (C.D. Cal. Mar. 30, 2009) (holding that "Plaintiff would have to seek to amend his Complaint before the Court even reaches th[e] issue" of whether a narrower class definition could satisfy Rule 23).

**A.   ASIC Does Not Owe A Duty Of Disclosure To Third-Party Beneficiaries.**

Ms. Wahl's claims for breach of statutory duty and constructive fraud "are closely tied to one another," and both claims "arise from Wahl's allegation that ASIC violated its duty to disclose material facts under the California Insurance Code," specifically Insurance Code § 332.  Summ. Judg. Order at 10.  However, Ms. Wahl only has "third-party beneficiary status," *id.* at 6 n.4, as an additional insured under the insurance contract, First Am. Compl. ¶ 16(e); she is not a party to the contract.  By its terms, the Insurance Code imposes upon a "party to a contract of insurance" a duty of disclosure only to another *party* to the contract.  Cal. Ins. Code § 332 ("Each party to a contract of insurance shall communicate to the other [party to the contract], in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining.") (alterations supplied).

In California, "to establish fraud through nondisclosure or concealment of facts, it is necessary to show that the defendant was under a legal duty to disclose them."  *Buckland v. Threshold Enters.*, 155 Cal. App. 4th 798, 807 (2007) (internal quotation marks omitted).  No duty of disclosure extends to third-party beneficiaries.  Nor is a third-party beneficiary a "party to a contract of insurance."  *See Garcia v. Truck Ins. Exchange*, 36 Cal. 3d 426, 436 (1984) ("Whatever rights Dr. Lewis holds under this policy are the rights of a third-party beneficiary.  Dr. Lewis was not a party to the insurance contract between Queen of Angels Hospital and its insurance carrier.  A putative third party's rights under a contract are predicated upon the contracting parties' intent to benefit him."); *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 944 (1976) (stating that a third-party beneficiary to an insurance contract "is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him").  Ms. Wahl therefore fails to state a claim against ASIC insofar as ASIC never owed her a statutory duty of disclosure.

**B.   If Ms. Wahl Had A Right To Information, She Waived It By Failing To Make Reasonable Inquiries In Light Of What She Knew About The Coverage.**

Even assuming ASIC owed Ms. Wahl a duty under the Insurance Code, her disclosure-based claims fail for an alternative reason.  The Code qualifies the duty of disclosure, providing that "[t]he right to information of material facts may be waived . . . by neglect to make inquiries as to

10

such facts, where they are distinctly implied in other facts of which information is communicated." Cal. Ins. Code § 336; *see also* Cal. Civ. Code § 19 (deeming a person to have "constructive knowledge" when she "has actual notice of circumstances sufficient to put a prudent man upon inquiry" and where "by prosecuting such inquiry, he might have learned such fact."). That is, a person's "right to disclosure of material facts may be waived by [her] own failure to follow up obvious leads." *Old Line Life Ins. Co. v. Superior Court*, 229 Cal. App. 3d 1600, 1606 (1991).

Here, Ms. Wahl was on inquiry notice of the potential and actual cost of the EMC LPI coverage, as well as the potential scope of the coverage; she simply neglected to investigate further. The Court found it "undisputed that EMC's string of warning letters, as well as the Deed itself, cautioned Wahl repeatedly that force placed insurance was likely to be substantially more expensive than independent homeowner's insurance and that it may or may not cover the homeowner's full interest in the property." Summ. Judg. Order at 11; *see, e.g.*, First Am. Compl. Exs. C & D. Indeed, the binder enclosed with the April 3, 2006 letter expressly informed Ms. Wahl that the premium for the LPI coverage would be $4,052 – exactly the amount she was later charged by EMC. Docket No. 35-2. These facts "distinctly implied" to Ms. Wahl that the EMC LPI coverage would be substantially more expensive than any coverage she might obtain on her own, but she did not "make inquiries as to such facts." Cal. Ins. Code § 336. She therefore waived any statutory right to further information as a matter of law.

## C. Ms. Wahl Is Not A Party To The Contract And May Not Rescind It.

As a third-party beneficiary – not a party – to the ASIC insurance contract, Ms. Wahl is not entitled to rescind that contract, which is the sole remedy she seeks under her breach of statutory duty and constructive fraud claims. *See* First Am. Compl. at 14 & 16 ("Second Cause of Action for Rescission for Breach of Statutory Duty to Disclose"; "Third Cause of Action for Rescission for Constructive Fraud"). Put simply, the rescission remedy is unavailable as a matter of law to a third-party beneficiary:

> Civil Code section 1559 grants a third-party beneficiary the right to enforce the contract, not rescind it, and Civil Code section 1689 limits its grant of rescission rights to the contracting parties. Not only do the relevant statutes demand making rescission unavailable to a third-party beneficiary, but common sense compels the conclusion. The interest of the third-party beneficiary is as the intended recipient of

11

the benefits of the contract, and a direct right to those benefits, *i.e.*, specific performance, or damages in lieu thereof, will protect the beneficiary's interests. Rescission, on the other hand, extinguishes a contract between the parties. Plaintiff, not having participated in the agreement, not having undertaken any duty or given any consideration, is a stranger to the agreement, with no legitimate interest in voiding it.

*Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 959-60 (2005) (internal citation omitted).

### D.   Section 332 Does Not Impose A Tort Duty Or Support A Tort Claim.

Regarding the constructive fraud claim, Ms. Wahl "contends that ASIC violated its § 332 duties by failing to disclose details about the coverage and costs of the ASIC Policies after the premiums had already been charged[.]" Summ. Judg. Order at 11. As shown by the April 3, 2006 letter and accompanying ASIC binder, this allegation is untrue – it is undisputed that EMC did not charge the ASIC premium to Ms. Wahl's escrow account until May 3, 2006.

But even if it were true, Section 332 does not impose a duty of disclosure upon which a tort claim may rest. In fact, one federal court recently dismissed a negligent misrepresentation claim founded upon a supposed violation of Section 332, holding that the "plain text" of Section 332 and its related Insurance Code provisions, Cal. Ins. Code §§ 330-339, "speak only to *contractual* duties and rights." *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, No. C09-1888 MRP, 2009 WL 3199844, at *15 (C.D. Cal. Oct. 5, 2009) (emphasis supplied). The court explained that "these statutes have long been held to provide contract rules that supplement, but do not replace, ordinary contract rules" and "serve to 'safeguard the parties' freedom to contract.'" *Id.* (quoting *Mitchell v. United Nat'l Ins. Co.*, 127 Cal. App. 4th 457, 469 (2005)). "These provisions should not hinder that freedom by threatening tort remedies for ordinary contractual breach." *Id.* & *22 n.38. In short, "the 'duty' imposed in Insurance Code § 332 is a contractual, not tort, duty." *Id.* The Court should likewise reject Ms. Wahl's attempt to invent a tort claim based on Section 332.

### III.   ASIC Is Entitled To Judgment On The Pleadings As To The UCL Claims.

The UCL establishes three varieties of unfair competition – acts or practices which are fraudulent, unlawful, or unfair. *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). Although Ms. Wahl's First Amended Complaint invokes all three varieties, her UCL claims universally fail. To the extent Ms. Wahl asserts that the UCL was violated by a failure to

12

DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON
THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; CASE NO. C08-00555-RS

disclose the terms of the ASIC coverage, that claim is foreclosed for the same reasons her breach of statutory duty and constructive fraud claims are foreclosed. *See* Section III.A, *infra*. To the extent Ms. Wahl asserts "that force placed insurance is an unfair business practice under [the UCL] because it essentially forces homeowners to pay for double coverage for their lender's benefit," Summ. Judg. Order at 12, the Court should grant judgment in ASIC's favor because the alleged conduct was EMC's business practice, not ASIC's, *see* Section III.B, *infra*, and the practice is not "unfair" under the UCL, *see* Section III.C, *infra*.

### A. As Go The Breach Of Statutory Duty And Constructive Fraud Claims, So Go Any Other Disclosure-Based UCL Claims That Ms. Wahl May Be Asserting.

As an initial matter, no viable UCL "fraud" claim exists for a disclosure-based violation. A UCL "fraud" prong claim cannot lie where a party has no duty to disclose the operative fact. *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 987 (2008); *Berryman*, 152 Cal. App. 4th at 1557. Here, not only was there no duty incumbent upon ASIC to disclose information to a third-party beneficiary, Ms. Wahl waived her right to the information by neglecting to "follow up obvious leads." *Old Line*, 229 Cal. App. 3d at 1606. Again, the Deed, the April 3, 2006 letter and binder, and other warning letters supplied to Ms. Wahl state clearly that the LPI coverage could and would be obtained at a higher cost than any coverage she might obtain on her own. Summ. Judg. Order at 11; Docket No. 35-2; *see Lambros v. Metro. Life Ins. Co.*, 111 Cal. App. 4th 43, 50 (2003) (rejecting insured's UCL "fraud" claim that defendant life insurance company did not refund premiums after surrender of the policy since the policy set forth the method of calculation of the cash surrender value, thus informing plaintiff that premiums would not be refunded); *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1178 (2002) ("That the deed of trust does not expressly state that property inspection fees may be charged to the borrower after default does not preclude Countrywide from doing so when the deed of trust unambiguously permits the lender to charge the delinquent borrower for 'whatever' is necessary to protect the property's value, 'including' attorney fees and entering the property to make repairs, and puts the borrower on notice that property inspections may be performed. The deed of trust is not deceptive or likely to deceive borrowers with regard to property inspection fees.") (internal citation omitted).

---

13

1  Next, a disclosure-based UCL claim cannot rest on the "unfair" prong.  In determining what

2  is "unfair" in UCL consumer cases, courts have required that the cause of action be "tethered" to

3  specific constitutional, statutory or regulatory provisions.[3]  No violation of an expressed legislative

4  policy (*e.g.*, Section 332) exists here.  In any event, because the LPI coverage's actual and potential

5  costs were disclosed to Ms. Wahl, there is no possible "unfairness."  *See Walker*, 98 Cal. App. 4th

6  at 1177 (rejecting UCL "unfair" claim where the deed of trust put plaintiff on notice that the lender

7  would charge for the cost of property inspections required by plaintiff's delinquency); *South Bay*

8  *Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 887-88 (1999) (rejecting UCL

9  "unfair" claim where the plaintiff had been made aware of the defendant lender's allegedly unfair

10  method of calculating interest).

11  There also is no viable UCL "unlawful" claim for a disclosure-based violation.  It is

12  elementary that "a UCL cause of action borrows the substantive portion of the borrowed statute to

---

13  [3] *See, e.g.*, *Flower v. Wachovia Mortg. FSB*, No. C09-343 JF, 2009 WL 975811, at *7 (N.D. Cal.

14  Apr. 10, 2009); *AHO Enters. v. State Farm Mut. Auto. Ins. Co.*, No. C08-4133 SBA, 2008 WL 4830708, at *4 (N.D. Cal. Nov. 6, 2008); *Van Slyke v. Capital One Bank*, No. C07-671 WHA, 2007

15  WL 3343943, at *11 (N.D. Cal. Nov. 7, 2007); *Churchill Village, LLC v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1130 & n.10 (N.D. Cal. 2000); *Buller*, 160 Cal. App. 4th at 991; *Belton v. Comcast*

16  *Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1239 (2007); *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co.*, 118 Cal. App. 4th 1061, 1072 (2004); *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th

17  917, 940 (2003); *Byars v. SCME Mortg. Bankers, Inc.*, 109 Cal. App. 4th 1134, 1147 (2003); *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002).

18  In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, the California

19  Supreme Court rejected the so-called "balancing test" for determining whether a practice was unfair under the UCL.  20 Cal. 4th 163 (1999).  This arose in the context of a suit between business

20  competitors.  The "balancing test" involved weighing the harms to the plaintiff against the utility of the defendant's practice to determine whether the practice was unfair.  *Cel-Tech* required that an

21  unfair practice must be "tethered" to a legislatively declared policy or a showing of an impact on competition.  *Id.* at 186.  The court reserved the question of whether its new definition would apply

22  in consumer cases as well as competitor cases.  *Id.* at 187 n.12.  Reading *Cel-Tech* narrowly, some courts have found *Cel-Tech* applicable only to cases involving competitors, and have continued

23  using the "balancing test."  However, since 1999, most courts have held that the rationale of *Cel-Tech* compels the conclusion that the "unfair" prong must be tethered to a legislative policy;

24  "otherwise the courts will roam across the landscape of consumer transactions picking and choosing which they like and which they dislike."  *Van Slyke*, 2007 WL 3343943, at *11.  "Even in cases

25  which are not 'competition' cases, the 'tethering' requirement still applies."  *AHO Enters.*, 2008 WL 4830708, at *4.  This view also makes sense as a matter of statutory construction.  There is

26  only one word, "unfair," used in the statute; the Legislature did not set forth one definition for competitor cases and another for consumer cases.  The word "unfair" must mean the same thing for

27  all purposes.  "To give the same word[] a different meaning for each category would be to invent a statute rather than interpret one."  *Clark v. Martinez*, 543 U.S. 371, 378 (2005).

28

prove the 'unlawful' prong of that statute," *Blanks v. Seyfarth Shaw LLP*, 171 Cal. App. 4th 336, 364 (2009), so "a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Berryman*, 152 Cal. App. 4th at 1554.  Plaintiff's UCL "unlawful" prong claim necessarily fails because no violation of the borrowed statute, Section 332, can be shown. *See Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1507 (1999).  Moreover, Section 332 is not the type of statute that can be "violated" so as to give rise to an "unlawful" act or practice under the UCL.  "Section 332 is part a series of statutes concerning insurance contract negotiations. Together, the statutes 'entitle' a party to rescind a contract for 'concealment.'" *United Guar.*, 2009 WL 3199844, at *22 (citing Cal. Ins. Code §§ 330-339).  "Section 332 defines the general disclosure duty for this contractual remedy." *Id.* "The statutes establish a default 'right' held by a contracting party – a right the party may waive, contract away, elect not to invoke, or otherwise impair.  It is somewhat unusual to say that default contract rules can be 'violated' so as to constitute an 'unlawful' business act." *Id.* (internal citations omitted).

### B.   The Allegedly Unfair Practice Of "Force Placing" Homeowner's Insurance In Lieu Of An LLPE Is EMC's Business Practice, Not ASIC's Business Practice.

Turning to the claim that the alleged practice of "force placing" insurance during the pendency of an LLPE period is an "unfair" business practice, Ms. Wahl has targeted the wrong company.  The practice is EMC's – not ASIC's.  ASIC merely supplied the insurance coverage at EMC's request; ASIC did not require Ms. Wahl to either acquire or pay for it.  Specifically, the Court found in its Summary Judgment Order:

- "*EMC* purchased a one-year ASIC policy" effective January 2006, Summ. Judg. Order at 4;
- "*EMC* charged the cost of the premium to Wahl's escrow account at the end of the sixty-day temporary binder period," *id.*;
- "*EMC* notified Wahl that if she failed to provide proof of other acceptable insurance coverage, the ASIC policy would be renewed for a second year," *id.*;
- when Ms. Wahl "did not provide such proof, *EMC* renewed the policy at a cost of $4,052.00," *id.*;
- "*EMC* . . . retained the right to determine the adequacy of the homeowner's insurance arranged by Wahl," *id.* at 8;
- the Deed "gave *EMC* free rein to change the Borrower's insurance obligations at any point during the lifetime of the loan," *id.*;

15

- "*EMC* was acting within its rights under the contract when it concluded that the cancellation of the Farmers Policy put Wahl in non-compliance with her insurance obligations, notwithstanding the LLPE's continued limited coverage of *EMC's* interest," *id.* at 8-9;

- the Deed "gave *EMC* the prerogative to determine what insurance policies would satisfy it, and *EMC* exercised that prerogative when it deemed the cancellation of Wahl's Farmers Policy to be inadequate," *id.* at 9;

- "*EMC* waived any coverage under the Farmers LLPE by arranging for ASIC to provide 'seamless' coverage as of the date Wahl's policy expired," *id.*; and

- "*EMC* made a point of requiring Wahl to obtain a homeowner's policy with an LLPE clause," *id.*

(Emphases supplied.)

A defendant's liability under the UCL must be based on its "personal participation" in, and "unbridled control" over, the alleged business practice.  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007) (affirming dismissal of UCL claim where defendant financial institutions processed credit card payments to websites that allegedly infringed plaintiff's copyright and trademark rights); *In re Firearm Cases*, 126 Cal. App. 4th 959, 982-85 (2005) (rejecting UCL claim asserting that firearms manufacturers' and distributors' conduct enabled criminals to acquire handguns because the "only business practice the defendants in this case have engaged in is marketing their product in a lawful manner to federally licensed dealers").  "[P]assive business interactions with an entity that might be violating the UCL is not sufficient to establish aiding and abetting liability."  *In re Actimmune Mkt'g Litig.*, No. C08-02376 MHP, 2009 WL 3740648, at *19 n.4 (N.D. Cal. Nov. 6, 2009).  Here, ASIC's supplying insurance coverage to EMC under its standing agreements with EMC is a "passive business interaction" and does not equate to a right to "force place" insurance on a delinquent borrower.  Only EMC, as the lender, had that prerogative, which was granted by Ms. Wahl in the Deed of Trust.

### C. The Alleged Business Practice Of "Force Placing" Homeowner's Insurance In Lieu Of An LLPE Is Not "Unfair" Under The UCL.

The UCL "unfair" claim fails for other reasons.

#### 1. No legislatively declared policy has been violated.

Ms. Wahl's inability to identify the infringement of a constitutional, statutory or regulatory provision that would prohibit EMC from requiring homeowner's insurance that EMC deemed adequate, or ASIC from supplying it, is fatal to her claim.  A UCL "unfair" theory must be tied to

16

specific constitutional, statutory or regulatory provisions. *See* footnote 3, *supra*. The claim thus fails because it is not tethered to the violation of any legislative policy.

2. **California statutory and regulatory provisions expressly permit EMC and ASIC to place the coverage that EMC deems acceptable.**

Rather than imposing legal restrictions, the California Insurance Code and its implementing regulations *affirmatively permit* EMC to place whatever insurance is deemed required by a deed of trust or other mortgage instrument, up to the replacement value of the improvements on the property. Ms. Wahl may not contravene the Legislature's intent by imposing new, judicially created restrictions on that right under the guise of "enforcing" the UCL.

"Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Cel-Tech*, 20 Cal. 4th at 182; *see also Lazar*, 69 Cal. App. 4th at 1505-06 ("The UCL does not apply if the Legislature has expressly declared the challenged business practice to be lawful in other statutes.").

Here, multiple statutes and regulations provide a "safe harbor" to require the homeowner's insurance of EMC's choosing. The Insurance Code affords lenders the statutory "*right* to furnish such insurance or to renew any insurance required by the contract of sale or trust deed or other loan agreement if the borrower or purchaser shall have failed to furnish the insurance or renewal thereof within such reasonable time or form as may be specified in the sale or loan agreement." Cal. Ins. Code § 771(a) (emphasis supplied). Similarly, lenders have a statutory "*right* to furnish such insurance or to renew such insurance, and to charge the account of the borrower or purchaser with the costs thereof, if the borrower or purchaser fails to deliver to the lender such insurance at least 30 days prior to the expiration of the policy." *Id.* § 771(d) (emphasis supplied); *see also* 10 Cal. Code Regs. § 107.601(a) (granting "the *right* to furnish or renew such insurance if the borrower or purchaser shall have failed to furnish the insurance or renewal thereof within such reasonable time or form as may be specified in the sale or loan agreement.") (emphasis supplied); *id.* § 2181.1(a) (same). Lenders also may "require a borrower, as a condition of receiving or maintaining a loan

secured by real property, to provide hazard insurance coverage against risks to the improvements on that real property," as long as the insured amount does not exceed "the replacement value of the improvements on the property."  Cal. Civ. Code § 2955.5(a).  None of these provisions deny or limit these rights if an LLPE exists.

Since the Deed "gave EMC the prerogative to determine what insurance policies would satisfy it," Summ. Judg. Order at 8-9, the "safe harbor" created by these statutes and regulations constitutes a complete defense to the UCL "unfair" claim.  *See, e.g.*, *Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1036 (9th Cir. 2003) (holding that statute permitting disability insurers to deny coverage on the basis of an insured's mental impairment if the rejection is based on actuarial principles or claims experience provided a "safe harbor" from liability in a UCL claim alleging that a mentally impaired insured was wrongfully denied coverage); *Lazar*, 69 Cal. App. 4th at 1505-06 (holding that statute authorizing vehicle rental companies to require renters to have attained a minimum age precluded a UCL claim alleging wrongful imposition of a minimum age requirement).  ASIC is affirmatively permitted by law to place the insurance at EMC's request.   "A business practice cannot be unfair if it is permitted by law."  69 Cal. App. 4th at 1505.  If anything, it is Ms. Wahl's UCL claim that infringes upon public policy:  "In the absence of any general declaration of public policy we discern no reason to interfere with the parties' full freedom to contract for coverage on any terms not specifically prohibited by statute."  *Mission Nat'l Ins. Co. v. Coachella Valley Water Dist.*, 210 Cal. App. 3d 484, 497 (1989) (internal quotation marks omitted).

### 3.    Ms. Wahl had reasonably available alternatives to the LPI coverage.

Ms. Wahl's alleged injury was entirely avoidable.  She could have obtained alternative insurance from an insurer of her choosing.  That she chose not to, at her own risk, does not convert EMC's practice of requiring adequate insurance at a higher cost, or ASIC's provision of that insurance, into an "unfair" business practice.  The availability of reasonable alternatives to an otherwise improper business practice is a complete defense to a UCL "unfair" claim.  *See Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581 (2009) (rejecting UCL "unfair" claim because the imposition of late fees for successive months reasonably could have been avoided had plaintifff made his monthly payments timely "in accordance with his obligations under the contract"; holding

18

that "Davis reasonably could have avoided the alleged injury" so "Davis has not, and cannot, state a claim under the unfairness prong of the UCL."); *Shadoan v. World Savs. & Loan Ass'n*, 219 Cal. App. 3d 97, 103 (1990) (rejecting UCL "unfair" claim where borrower plaintiffs alleged no facts indicating that they were unable to receive more favorable terms from another lender, and thus "alleged no facts from which it could be concluded that they lacked true bargaining power").

### 4.      Ms. Wahl may not second-guess the Deed as being "unfair."

There is nothing "unfair" about placing LPI coverage.  The Deed expressly permits EMC to place whatever homeowner's insurance EMC deems adequate, even if at a higher cost to its borrowers.  As the Court found, the Deed's provisions "gave EMC free rein to change the Borrower's insurance obligations at any point during the lifetime of the loan," so it "becomes apparent that EMC was acting within its rights under the contract when it concluded that the cancellation of the Farmers Policy put Wahl in non-compliance with her insurance obligations, notwithstanding the LLPE's continued limited coverage of EMC's interest."  Summ. Judg. Order at 8-9.  "In other words, even if EMC anticipated at the time it entered into the Deed that it might rely on an LLPE, it was empowered under the terms of the contract to make unilateral adjustments later and deem an LLPE inadequate for its coverage needs."  *Id.* at 9.

Ms. Wahl may not engage in *post hac* criticism of her lender's contractual prerogative to require homeowner's insurance in lieu of an LLPE.  Exercising a right under a contract is not "unfair."  *See Eichman v. Photomat Corp.*, 880 F.2d 149, 168 (9th Cir. 1989); *Walker*, 98 Cal. App. 4th at 1177 (rejecting UCL "unfair" claim where "the deed of trust 'unequivocally permits' Countrywide to charge the Walkers with the reasonable cost of the property inspections" in the event of default); *South Bay Chevrolet*, 72 Cal. App. 4th at 887-88 (rejecting UCL "unfair" claim where dealer's use of a particular interest calculation method was "contractually authorized").  Vague notions of "fairness" do not suffice.  "The 'unfairness' element of the unfair competition law does not give the courts a general license to review the fairness of contracts."  *Walker*, 98 Cal. App. 4th at 1177 (internal quotation marks omitted).  "Although the unfair competition law's scope is sweeping, it is not unlimited.  Courts may not simply impose their own notions of the day as to what is fair or unfair."  *Cel-Tech*, 20 Cal. 4th at 182.

19

The Court need venture no further than the Deed itself, but it warrants observing that requiring homeowner's insurance in lieu of an LLPE advances legitimate business and societal interests. First, there is nothing "unfair" about earning a profit. Lenders profit by the interest earned on loans to borrowers. It is therefore to a lender's benefit if the loans in its portfolio continue to perform, and are not repaid early. If the cost of replacing damaged improvements is covered by homeowner's insurance, then the borrower will repair the damage, the loan will continue to perform, and the lender will continue to collect interest payments. But if the loan's principal balance is repaid after a casualty loss, as under LLPE coverage, then the loan will cease to perform, and the lender will have lost its source of profits. Nor is it "unfair" for the lender to preserve the loan's profitability when the borrower breaches *her* obligation to maintain insurance in the first place. A lender should not be left without recourse simply because the borrower fails to live up to her end of the bargain.

Second, the maintenance of replacement cost coverage also benefits the borrower. If coverage exists only to protect the lender's interest by paying off the loan, the borrower would be left with a property which may be extensively damaged or destroyed, and faced with the task of trying to obtain financing to rebuild. The borrower may not be able to secure financing on terms as favorable as the prior loan, or indeed may not be able to secure such financing at all.

Third, Californians at large gain by the practice of requiring homeowner's insurance in lieu of an LLPE since the practice encourages borrowers to repair severely damaged homes. *Uninsured* borrowers are less likely to have insurance proceeds to rehabilitate their homes, and are more likely to abandon or neglect the homes in their damaged condition. Neighborhoods would become blighted. To deter uninsured borrowers' perverse incentive of abandoning or neglecting damaged homes, and to instead incentivize restoration, there is a societal interest in requiring borrowers to remain insured for the replacement value of their properties' improvements.

Unlike the Legislature, the Court is not in a position to determine whether LLPEs are "good enough" to protect lenders. Nuanced business and social issues are at play, so the Court should abstain from attempting to set economic policy. *See, e.g.*, *Desert Healthcare Dist. v. PacifiCare FHP, Inc.*, 94 Cal. App. 4th 781, 795 (2001) (rejecting judicial review of a UCL "unfair" claim

based on health service plan's practice of requiring providers to waive rights, stating that "the trial court would have to determine the appropriate levels of capitation and oversight," "an economic arena that courts are ill-equipped to meddle in"); *Cal. Grocers Ass'n v. Bank of America*, 22 Cal. App. 4th 205, 218 (1994) (rejecting judicial review of a UCL "unfair" claim based on the unconscionability of check processing fees as "an entirely inappropriate method of overseeing bank service fees").   "[B]ecause the remedies available under the UCL, namely injunctions and restitution, are equitable in nature, courts have the discretion to abstain from employing them. Where a UCL action would drag a court of equity into an area of complex economic policy, equitable abstention is appropriate." *Desert Healthcare*, 94 Cal. App. 4th at 795.

## IV.   ASIC Is Entitled To Judgment On The Pleadings As To Any Declaratory Relief.

### A.   Ms. Wahl Asks The Court To Contradict Its Summary Judgment Order, So The Requested Declaratory Relief No Longer Serves Any Useful Purpose.

Finally, Ms. Wahl is not entitled to declaratory relief, which she seeks in her Seventh Cause of Action.   "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985) (en banc).   Declaratory relief cannot serve a "useful purpose" in this litigation.   Ms. Wahl asks the Court to find that ASIC acted contrary to the "rights and duties under the provisions of ASIC's FPI policies imposed on homeowners as insureds or additional insureds, and the homeowners' LLPEs, and the resulting obligations between the parties to pay or return FPI premiums."   First Am. Compl. ¶ 68.   In ruling on the breach of contract and failure of consideration claims, the Court foreclosed such a finding.   The Court held that the Deed's provisions "gave EMC free rein to change the Borrower's insurance obligations at any point during the lifetime of the loan," so "even if EMC anticipated at the time it entered into the Deed that it might rely on an LLPE, it was empowered under the terms of the contract to make unilateral adjustments later and deem an LLPE inadequate for its coverage needs."   Summ. Judg. Order at 8-9.   The Court should decline to issue a declaratory judgment at odds with its earlier rulings.

**B.**     **No Live Controversy Remains, So The Requested Declaratory Relief Is Moot.**

The request for declaratory relief fails independently because Ms. Wahl is no longer covered by an ASIC insurance policy, and no LPI coverage "overlaps" with an LLPE.  A declaratory judgment "determin[ing] the rights and duties which exist between the parties to ASIC's FPI policies," First Am. Compl. ¶ 68, calls for an opinion on a moot issue.

"A federal court cannot issue a declaratory judgment if a claim has become moot." *Pub. Utilities Comm'n of Cal. v. FERC*, 100 F.3d 1451, 1459 (9th Cir. 1996).  "A claim is moot if it has lost its character as a present, live controversy." *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 698 (9th Cir. 1984).  That is, where the conduct sought to be prevented has already occurred, and declaratory relief cannot undo what already has been done, the relief is moot, and must be denied. *See Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1095 (9th Cir. 2001). A plaintiff's own actions terminating the challenged conduct can render moot a claim for declaratory relief. *See Harris v. Itzhaki*, 183 F.3d 1043, 1050 (9th Cir. 1999) (tenant's claims for declaratory relief were mooted by the tenant's departure from his apartment complex); *Jones Intercable of San Diego, Inc. v. City of Chula Vista*, 80 F.3d 320, 328 (9th Cir. 1996) (cable television operator's claims for declaratory relief were moot because the operator had disposed of the cable infrastructure at issue); *Blair v. Shanahan*, 38 F.3d 1514, 1519-20 (9th Cir. 1994) (former panhandler's claims for declaratory relief invalidating an aggressive panhandling statute were moot because the panhandler had obtained employment and stopped begging for money).

Here, there is no continuing breach, violation or other harm at issue.  Ms. Wahl purchased from Farmers a new insurance policy of her own, and the 2006 and 2007 ASIC insurance policies are no longer in force.  *See* Summ. Judg. Order at 4-5; First Am. Compl. ¶ 16(g).  That Ms. Wahl demands monetary relief for ASIC's past actions does not "cure" the mootness.  Declaratory relief may be moot even if the plaintiff nonetheless has a valid claim for monetary relief. *See McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1095 (9th Cir. 2004); *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1099 (9th Cir. 2000).   A "declaratory judgment without the possibility of *prospective* effect would be superfluous." *McQuillion*, 369 F.3d at 1095 (emphasis supplied).

1

**CONCLUSION**

2      For all of the foregoing reasons, ASIC respectfully requests that this Court dismiss the class

3 allegations for Ms. Wahl's lack of membership in the putative class and her consequent lack of

4 representational standing, and grant ASIC judgment on the pleadings in its favor as to the Second,

5 Third, Fifth and Seventh Causes of Action in the First Amended Complaint.

6 Dated:  January 27, 2010            JORDEN BURT LLP

7                                     By:  */s/ Frank G. Burt*_____
                                          FRANK G. BURT
8

9                                     Attorney for Defendant
                                      AMERICAN SECURITY INSURANCE COMPANY
10

11

12

13

14

15

16

17

18

19

20

21     216162v13DC

22

23

24

25

26

27

28

23