PETER S. HECKER (Bar No. 66159)
ANNA S. McLEAN (Bar No. 142233)
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
Four Embarcadero Center
Seventeenth Floor
San Francisco, CA  94111-4109
Telephone:  (415) 774-3155
Facsimile:  (415) 403-6224
phecker@sheppardmullin.com
amclean@sheppardmullin.com

FRANK BURT (*Pro Hac Vice*)
DENISE A. FEE (*Pro Hac Vice*)
JORDEN BURT LLP
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington, DC  20007-0805
Telephone:  (202) 965-8140
Facsimile:  (202) 965-8104
fgb@jordenusa.com
daf@jordenusa.com

Attorneys for Defendant
AMERICAN SECURITY INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHELLE T. WAHL, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>AMERICAN SECURITY INSURANCE COMPANY; and DOES 1-50, inclusive,<br><br>                    Defendant. | Case No. C08-00555-RS<br><br>**DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Hearing Date:  March 25, 2010<br>Time:  11:00 a.m.<br>Courtroom:  3 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 1

I.    Ms. Wahl Lacks Standing To Represent The Putative Class ..................................... 1

II.    ASIC Is Entitled To Judgment On The Pleadings As To The Breach Of Statutory Duty And Constructive Fraud Claims ........................................................ 3

    A.    ASIC Does Not Owe A Duty Of Disclosure To Third-Party Beneficiaries ................................................................................................ 3

    B.    If Ms. Wahl Had A Right To Information, She Waived It By Failing To Make Reasonable Inquiries In Light Of What She Knew About The Coverage ......................................................................... 5

    C.    Ms. Wahl Is Not A Party To The Contract And May Not Rescind It ........... 6

    D.    ASIC Does Not Owe A Duty Supporting The Constructive Fraud Claim ......................................................................................................... 7

        1.    The Insurance Code cannot support a constructive fraud claim ........................................................................................... 7

        2.    ASIC does not owe a common law duty, even if one had been pled .................................................................................. 7

III.    ASIC Is Entitled To Judgment On The Pleadings As To The UCL Claims ............. 9

    A.    As Go The Breach Of Statutory Duty And Constructive Fraud Claims, So Go Any Other Disclosure-Based UCL Claims That Ms. Wahl May Be Asserting ................................................................... 9

    B.    The Allegedly Unfair Practice Of "Force Placing" Homeowner's Insurance In Lieu Of An LLPE Is EMC's Business Practice, Not ASIC's Business Practice ...................................................................... 9

    C.    The Alleged Business Practice Of "Force Placing" Homeowner's Insurance In Lieu Of An LLPE Is Not "Unfair" Under The UCL .............. 10

        1.    No legislatively declared policy has been violated......................... 10

        2.    Ms. Wahl may not second-guess the Deed of Trust as being "unfair" ................................................................................ 11

        3.    Ms. Wahl had reasonably available alternatives to the LPI coverage ......................................................................................... 12

DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS; CASE NO. C08-00555-RS

4.   California statutory and regulatory provisions expressly permit EMC and ASIC to place the coverage that EMC deems acceptable ............................................................. 13

IV.   ASIC Is Entitled To Judgment On The Pleadings As To Any Declaratory Relief ......................................................................................... 14

A.   Ms. Wahl Asks The Court To Contradict Its Summary Judgment Order, So The Requested Declaratory Relief No Longer Serves Any Useful Purpose ................................................................... 14

B.   No Live Controversy Remains, So The Requested Declaratory Relief Is Moot ..................................................................................... 14

CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES** **Page**

*Ahern v. Dillenback*, 1 Cal. App. 4th 36 (1991)................................................................. 8

*AHO Enterprises v. State Farm Mutual Automobile Insurance Co.*,
No. C08-4133 SBA, 2008 WL 4830708 (N.D. Cal. Nov. 6, 2008) ...................................... 10

*Aiken v. Obledo*, 442 F. Supp. 628 (E.D. Cal. 1979) ......................................................... 2

*Anderson v. HUD*, 554 F.3d 525 (5th Cir. 2008) ............................................................. 3

*Berlowitz v. Nob Hill Masonic Management*, No. C96-1241 MHP,
1996 WL 724776 (N.D. Cal. Dec. 6, 1996)....................................................................... 2

*Bernhardt v. County of Los Angeles*, 279 F.3d 862 (9th Cir. 2002) ................................. 15

*Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224 (2007) ......................... 10

*Blair v. Shanahan*, 38 F.3d 1514 (9th Cir. 1994)........................................................... 14

*Bova v. City of Medford*, 564 F.3d 1093 (9th Cir. 2009) ................................................. 14

*Buller v. Sutter Health*, 160 Cal. App. 4th 981 (2008) ............................................... 9, 10

*Buss v. Superior Court*, 16 Cal. 4th 35 (1997)................................................................. 4

*Byars v. SCME Mortgage Bankers, Inc.*, 109 Cal. App. 4th 1134 (2003) ..................... 10, 12

*Cal. Indem. Ins. Premium Fin. Co. v. Fireman's Fund Ins. Co.*,
40 Cal. App. 4th 1633 (1995)........................................................................................ 8

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
20 Cal. 4th 163 (1999)............................................................................................ 10, 11

*Churchill Village, LLC v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119
(N.D. Cal. 2000) (Patel, J.)......................................................................................... 10

*Costelo v. Chertoff*, 258 F.R.D. 600 (C.D. Cal. 2009) ...................................................... 2

*Cwiak v. Flint Ink Corp.*, 186 F.R.D. 494 (N.D. Ill. 1999) ............................................... 2

*Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581 (2009)....................................... 13

*Easter v. American West Financial*, 381 F.3d 948 (9th Cir. 2004).................................... 2

*Eichman v. Photomat Corp.*, 880 F.2d 149 (9th Cir. 1989) ............................................. 11

*Flower v. Wachovia Mortgage FSB*, No. C09-343 JF, 2009 WL 975811
(N.D. Cal. Apr. 10, 2009)............................................................................................ 10

*Garcia v. Truck Insurance Exchange*, 36 Cal. 3d 426 (1984) .......................................... 4

- iii -

*Gibson v. GEICO*, 162 Cal. App. 3d 441 (1984) ........................................................... 8

*Gibson v. Local 40, Supercargoes & Checkers of International Longshoremen's & Warehousemen's Union*, 543 F.2d 1259 (9th Cir. 1976) ................................... 2

*Goldman v. Standard Insurance Co.*, 341 F.3d 1023 (9th Cir. 2003) .......................... 14

*Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845 (2002) ........................................ 10

*Hagen v. City of Winnemuca*, 108 F.R.D. 61 (D. Nev. 1985) ...................................... 2

*Hartford Cas. Ins. Co. v. Travelers Indem. Co.*, 110 Cal. App. 4th 710 (2003) ............ 4

*Headwaters v. Bureau of Land Mgmt.*, 893 F.2d 1012 (9th Cir. 1989) ........................ 15

*Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) .................................... 15

*Hydranautics v. FilmTec Corp.*, 306 F. Supp. 2d 958 (S.D. Cal. 2003) ........................ 6

*Jasper v. C.R. England, Inc.*, No. C08-5266 GW, 2009 WL 873360 (C.D. Cal. Mar. 30. 2009) ................................................................................... 2

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) ........................ 3

*Jordan v. Paul Financial, LLC*, No. C07-4496 SI, 2009 WL 192888 (N.D. Cal. Jan. 27, 2009) .................................................................................... 2

*Kotlar v. Hartford Fire Insurance Co.*, 83 Cal. App. 4th 1116 (2000) .......................... 4

*Kunert v. Mission Fin. Servs. Corp.*, 110 Cal. App. 4th 242 (2003) ........................... 12

*Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494 (1999) ................................................... 9

*Lierboe v. State Farm Mutual Automobile Insurance Co.*, 350 F.3d 1018 (9th Cir. 2003) ............. 2

*Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007) ...................... 10

*In re Monumental Life Insurance Co.*, 365 F.3d 408 (5th Cir. 2004) ............................ 2

*Merced County Mut. Fire Ins. Co. v. California*, 233 Cal. App. 3d 765 (1991) ............ 4

*Murphy v. Allstate Insurance Co.*, 17 Cal. 3d 937 (1976) ........................................... 4

*Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058 (9th Cir. 2008) ........... 5, 9

*New Plumbing Contractors, Inc. v. Nationwide Mut. Ins. Co.*, 7 Cal. App. 4th 1088 (1992) .................................................................................. 8

*Ortiz v. McNeil-PPC, Inc.*, No. C07-678 MMA, 2009 WL 1322962 (S.D. Cal. May 8, 2009) .................................................................................... 2

*Pastoria v. Nationwide Insurance*, 112 Cal. App. 4th 1490 (2003) ............................. 7

*Pecarovich v. Allstate Ins. Co.*, 80 F. Supp. 2d 1094 (C.D. Cal. 2000), *rev'd on other grounds*, 309 F.3d 652 (9th Cir. 2002) .......................................... 8

*Perfect 10, Inc. v. Visa International Services Association*, 494 F.3d 788 (9th Cir. 2007) ............. 9

*Pickern v. Pier I Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) ........................................ 5, 9

*Pub. Utilities Comm'n of Cal. v. FERC*, 100 F.3d 1451 (9th Cir. 1996) ...................................... 15

*Richard v. Oak Tree Group, Inc.*, No. C06-362 HWB, 2008 WL 421074
    (W.D. Mich. Feb. 12, 2008) ................................................................................................. 2

*Schauer v. Mandarin Gems of California, Inc.*, 125 Cal. App. 4th 949 (2005) ............................... 6

*Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917 (2003) .................................................. 10

*Situ v. Leavitt*, 240 F.R.D. 551 (N.D. Cal. 2007) ........................................................................ 2

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009
    (N.D. Cal. 2007) ....................................................................................................... 7, 9

*South Bay Chevrolet v. General Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999) ................................................................................ 10, 11, 13

*Spiegler v. Home Depot USA, Inc.*, 552 F. Supp. 2d 1036 (C.D. Cal. 2008) .............................. 11

*Spirtos v. Allstate Inc.*, No. C02-8798 RGK, 2003 WL 25900368
    (C.D. Cal. Jan. 10, 2003), *aff'd*, 173 F. App'x 538 (9th Cir. 2006) ...................................... 8

*State Farm Fire & Casualty Co. v. Nationwide Mutual Insurance Co.*,
    596 F. Supp. 2d 940 (E.D. Va. 2009) ....................................................................................... 4

*Textron Financial Corp. v. National Union Fire Insurance Co.*,
    118 Cal. App. 4th 1061 (2004) .............................................................................................. 10

*United Guaranty Mortgage Indemnity Co. v. Countrywide Financial Corp.*,
    660 F. Supp. 2d 1163 (C.D. Cal. 2009) ................................................................................... 7

*Van Slyke v. Capital One Bank*, No. C07-671 WHA, 2007 WL 3343943
    (N.D. Cal. Nov. 7, 2007) ................................................................................................. 10, 11

*Vyn v. Nw. Cas. Co.*, 47 Cal. 2d 89 (1956) ............................................................................... 4

*Young v. Ill. Union Ins. Co.*, No. C07-5711 SBA, 2008 WL 5234052
    (N.D. Cal. Dec. 15, 2008) ..................................................................................................... 8

**FEDERAL RULES**

Fed. R. Civ. P. 56 ........................................................................................................................ 1

**STATE STATUTES**

Cal. Civ. Code § 2955.5 ............................................................................................................. 13

Cal. Ins. Code § 332 ........................................................................................................... *passim*

Cal. Ins. Code § 333 .................................................................................................................... 6

- v -

Cal. Ins. Code § 336 ................................................................................................ 6

Cal. Ins. Code § 771 .............................................................................................. 13

**STATE REGULATIONS**

10 Cal. Code Regs. § 107.601 ............................................................................... 13

10 Cal. Code Regs. § 2181.1 ................................................................................. 13

**OTHER AUTHORITIES**

Douglas R. Richmond, *The Additional Problems of Additional Insureds*,
    33 Tort & Ins. L.J. 945 (1998) ..................................................................... 4

Mark Pomerantz, *Recognizing the Unique Status of Additional Named Insureds*,
    53 Fordham L. Rev. 117 (1984) ................................................................... 4

## INTRODUCTION

*Wahl contends that ASIC violated its § 332 duties by failing to disclose details about the coverage and costs of the ASIC Policies after the premiums had already been charged to Wahl's escrow account – implying that had she known just how expensive the ASIC Policies would be, and how little coverage they would provide to her, she would have made her own insurance arrangements.*

Order Granting in Part and Denying in Part Summary Judgment ("Summary Judgment Order") at 11, Doc. No. 69.

*ASIC misstates these facts to the Court by pretending that the nondisclosures at issue concerned the increased cost and reduced coverage of FPI.*

Plaintiff's Opposition to Motion for Judgment on the Pleadings ("Pl.'s Opp.") at 11, Doc. No. 122.

Ms. Wahl cannot get her story straight.  Her case against defendant American Security Insurance Company ("ASIC") now consists of new claims which were never pled, and which flatly contradict the allegations made in the First Amended Complaint and characterized in the Court's Summary Judgment Order.  Before, Ms. Wahl's claims depended on her proving that ASIC's lender-placed insurance ("LPI") did *not* waive, cancel, or terminate coverage under a Lender's Loss Payable Endorsement ("LLPE").  Now, after the Summary Judgment Order, her newly-minted claims depend on just the opposite.  Pleadings, however, exist for a reason:  to give litigants fair notice of the claims asserted against them.  They are the seminal documents in a civil case and cannot be ignored or changed at whim.  Yet even after purporting to restate her legal theories through her briefing, Ms. Wahl continues to fail to state a claim upon which relief may be granted.

## ARGUMENT[1]

### I.   Ms. Wahl Lacks Standing To Represent The Putative Class.

As an initial matter, Ms. Wahl is not a member of the putative "overlap" class defined in the First Amended Complaint, and lacks standing to represent it.  As a party, she cannot overhaul the

---

[1] Ms. Wahl asserts repeatedly that ASIC's Motion for Judgment on the Pleadings is really a motion for reconsideration, Pl.'s Opp. at 1-4, but fails to point to a single issue previously argued to this Court.  She also suggests that ASIC's Motion is improper because it recites facts that were specified as undisputed in the Summary Judgment Order.  ASIC's reliance on those facts is not only permitted, it is *mandated* by Rule 56's express language.  Fed. R. Civ. P. 56(d)(1) (in ruling on summary judgment, the Court "should then issue an order specifying what facts – including items of damages or other relief – are not genuinely at issue.  *The facts so specified must be treated as established in the action*.") (emphasis supplied).

class definition through her Motion for Class Certification. This sort of "bait and switch" is consistently rejected by courts in this Circuit, and elsewhere. *See, e.g.*, *Jordan v. Paul Fin., LLC*, No. C07-4496 SI, 2009 WL 192888, at *6 (N.D. Cal. Jan. 27, 2009); *Costelo v. Chertoff*, 258 F.R.D. 600, 604-05 (C.D. Cal. 2009); *Ortiz v. McNeil-PPC, Inc.*, No. C07-678 MMA, 2009 WL 1322962, at *2 (S.D. Cal. May 8, 2009); *Jasper v. C.R. England, Inc.*, No. C08-5266 GW, 2009 WL 873360, at *6 (C.D. Cal. Mar. 30, 2009); *Richard v. Oak Tree Group, Inc.*, No. C06-362 HWB, 2008 WL 421074, at *1 (W.D. Mich. Feb. 12, 2008); *Cwiak v. Flint Ink Corp.*, 186 F.R.D. 494, 497 (N.D. Ill. 1999); *Berlowitz v. Nob Hill Masonic Mgmt.*, No. C96-1241 MHP, 1996 WL 724776, at *2 (N.D. Cal. Dec. 6, 1996). It is unfair to force ASIC to litigate new class definitions long after the Court-ordered deadline for amending has passed.[2]

The cases on which Ms. Wahl relies are inapposite. They present situations in which one or all of the following occurred: (1) the *court*, not the plaintiff, (2) *refined or narrowed*, not transformed or expanded, (3) the definition of a *certified*, not uncertified, class. For example, in *Gibson v. Local 40, Supercargoes & Checkers of Int'l Longshoremen's & Warehousemen's Union*, the Ninth Circuit narrowed the definition of a certified class. 543 F.2d 1259, 1264 (9th Cir. 1976). In *Hagen v. City of Winnemuca*, the district court, not the plaintiff, refined and narrowed a class definition, and ultimately rejected certification of its own definition. 108 F.R.D. 61, 63-64 (D. Nev. 1985). Likewise, in both *Situ v. Leavitt*, 240 F.R.D. 551, 558-59 (N.D. Cal. 2007), and *Aiken v. Obledo*, 442 F. Supp. 628, 658 (E.D. Cal. 1979), the district courts narrowed the class definition, and did not change the factual premise on which certification was sought. The same is true of *In re Monumental Life Insurance Co.*, 365 F.3d 408 (5th Cir. 2004), supposedly Ms. Wahl's "best and most applicable guidance." Pl.'s Opp. at 5. The plaintiffs in *Monumental Life* "narrowed the class"

---

[2] Ms. Wahl questions the propriety of challenging her standing to represent, and membership in, the putative class via the Motion for Judgment on the Pleadings. Pl.'s Opp. at 4. That challenge is moot because ASIC also raises these issues in opposing her Motion for Class Certification. And she is wrong anyway. Standing and class membership are issues correctly decided before deciding the issue of class certification. *See Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("The issues of predominance, superiority, typicality, and other challenges to [the named plaintiff's] class representation need not be considered if she is not in the subject class.").

– they did not switch class theories altogether.  365 F.3d at 413-14.  Not one of Ms. Wahl's cited cases permit that which is attempted here:  a plaintiff's unilateral transformation of a putative class definition through her briefing based on allegations that do not exist in the pleadings.

Ms. Wahl's reliance on Fifth Circuit precedent is particularly ironic in light of *Anderson v. HUD*, where the Fifth Circuit stated:

> [A] complaint must put the defendant on notice as to what conduct is being called for defense in a court of law.  Here, the complaint does not mention the voucher program or reference the defendants' conduct in administering the voucher program.  Rather, the claims pleaded in the complaint are based on a totally different course of conduct. . . .   These claims are not sufficient to put HANO and HUD on notice that they must defend the voucher program.  *Essentially, by defining the class based on treatment under the voucher program and limiting the class claims to those regarding the voucher program, the district court changed the nature of the lawsuit and rendered the complaint inadequate.*  Therefore, we hold that the district court abused its discretion by certifying a class based on claims not pleaded in the complaint.  The district court's authority to certify a class under Rule 23 does not permit it to structure a class around claims not pled.  Although this problem may be remedied on remand by allowing the Residents to amend their complaint, we leave it to the district court to determine the propriety of doing so.

554 F.3d 525, 528-29 (5th Cir. 2008) (emphasis supplied).

In short, the Court should not transform the class definition simply on Ms. Wahl's say-so.[3]

## II.     ASIC Is Entitled To Judgment On The Pleadings As To The Breach Of Statutory Duty And Constructive Fraud Claims.

### A.     ASIC Does Not Owe A Duty Of Disclosure To Third-Party Beneficiaries.

Among other reasons, the nondisclosure claims fail for lack of a duty to disclose.  By its terms, no duty of disclosure by an insurer extends to a third-party beneficiary under Insurance Code § 332; rather, the duty extends only to a "party to a contract of insurance."  This is not disputed.  Instead, Ms. Wahl argues *ipse dixit* that because she is made an additional insured under the LPI policy by virtue of a "Residential Property Additional Insured Endorsement," she "unquestionably is a *contracting party* to the ASIC Policy under its plain terms."  Pl.'s Opp. at 7-8 (emphasis supplied).

---

[3] Recognizing her dilemma, Ms. Wahl seeks to amend her pleadings, citing Rule 15.  Pl.'s Opp. at 6.  The Court, however, cannot grant leave under Rule 15's standards, because Rule 16's "good cause" and "due diligence" standards now control the amendment process.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).

3

Ms. Wahl is mistaken. She is indeed an additional insured, but an "additional insured added by endorsement is a third-party beneficiary of the insurance contract," *Merced County Mut. Fire Ins. Co. v. California*, 233 Cal. App. 3d 765, 775 (1991), and a third-party beneficiary is not a "party to a contract of insurance," *Garcia v. Truck Ins. Exchange*, 36 Cal. 3d 426, 436 (1984); *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 944 (1976); *see also Hartford Cas. Ins. Co. v. Travelers Indem. Co.*, 110 Cal. App. 4th 710, 716 (2003) (addressing the "requirement" that the "contracting parties must clearly manifest the intent to name a third-party beneficiary such as an additional insured in an insurance policy").[4] There was no "meeting of the minds" between ASIC and Ms. Wahl at the time the "insurance contract" was formed between ASIC and EMC Mortgage Corporation ("EMC"). *See Vyn v. Nw. Cas. Co.*, 47 Cal. 2d 89, 93 (1956). ASIC and EMC met, negotiated upon terms, and agreed upon an insurance contract in 2000 – five years before ASIC issued Ms. Wahl an additional insured endorsement pursuant to that contract already in force and not because of any agreement with Ms. Wahl. Moreover, there was no payment of premiums by Ms. Wahl to ASIC. ASIC did not charge Ms. Wahl a premium; it charged EMC (the insured) a premium which, after payment, EMC in turn *separately charged* to Ms. Wahl under the terms of the Deed of Trust between *them*. Summ. Judg. Order at 4. As a result, Ms. Wahl's reliance on the definition of "insurance policy" as stated in *Buss v. Superior Court*, 16 Cal. 4th 35 (1997), is misplaced. And she cites no authority, California or otherwise, holding that an additional insured is a contracting party.[5]

---

[4] *Accord State Farm Fire & Cas. Co. v. Nationwide Mut. Ins. Co.*, 596 F. Supp. 2d 940, 946 (E.D. Va. 2009) ("An additional insured is not a party to the insurance contract but is entitled to coverage under the policy, and is thus akin to a third-party beneficiary under general principles of contract law."); Douglas R. Richmond, *The Additional Problems of Additional Insureds*, 33 Tort & Ins. L.J. 945, 947 (1998) ("There are two parties to an insurance contract (policy): the insurer (promisor) and the named insured (promisee). . . . Because only the insurer and named insured are parties to the insurance contract, additional insureds necessarily are third-party beneficiaries.") (cited approvingly in *Kotlar v. Hartford Fire Ins. Co.*, 83 Cal. App. 4th 1116, 1121 n.3 (2000)); Mark Pomerantz, *Recognizing the Unique Status of Additional Named Insureds*, 53 Fordham L. Rev. 117, 124 (1984) ("The additional named insured is not a party to the insurance contract.").

[5] Ms. Wahl cites *Byrnes v. Mutual Life Insurance Co. of New York* for the proposition "that it would be possible to draw a contract of insurance in which the beneficiary would become the contracting party," 217 F.2d 497, 506 n.3 (9th Cir. 1955), but she does not identify any circumstances allowing her to claim party status. Pl.'s Opp. at 8. Again, merely being an additional insured is insufficient.

---

Ms. Wahl's misconceptions notwithstanding, *see* Pl.'s Opp. at 10, the Court has never found that she is a contracting party.  To the contrary, the Court found that Ms. Wahl is a third-party beneficiary.  Summ. Judg. Order at 6 n.4.  While she may have had "standing to sue on a breach of contract claim" in that capacity, *id.*, that does not make her a "party to a contract of insurance," so ASIC did not owe her a statutory duty of disclosure.

> **B.**    **If Ms. Wahl Had A Right To Information, She Waived It By Failing To Make Reasonable Inquiries In Light Of What She Knew About The Coverage.**

Ms. Wahl next pretends her nondisclosure claim has *always* been that ASIC did not inform her that "placement of [LPI] canceled any coverage Ms. Wahl had under her LLPE."  Pl.'s Opp. at 11.  Not so – *that* claim was invented in her latest briefs, and flatly contradicts her earlier position in this case.  The Opposition ignores:  (1) the allegations of the First Amended Complaint (*viz.*, paragraphs 1, 23, 24, 33, 48, 49, 53); (2) the Court's characterization of the nondisclosure claims (quoted in the Introduction, *supra*);[6] and (3) Ms. Wahl's prior arguments that LPI placement did *not* cancel coverage under the LLPE.  For example, in opposing summary judgment, Ms. Wahl wrote that "neither EMC nor ASIC notified Farmers that EMC wished to cancel (or waive) coverage under Farmers Policy or its LLPE, or that ASIC had issued an [LPI] Policy with a coverage period overlapping the Farmers Policy and LLPE.  *Therefore, cancellation or waiver was a factual impossibility*."  Doc. No. 54 at 22 (internal citation omitted; emphasis supplied).

A plaintiff may not add new claims through her briefing, *see Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008); *Pickern v. Pier I Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006),[7] but Ms. Wahl's new nondisclosure claims fail anyway, since she

---

[6] As noted in the Introduction, Ms. Wahl now denies that "the nondisclosures at issue concerned the increased cost and reduced coverage" of LPI.  Pl.'s Opp. at 11.

[7] Among other new claims impermissibly added by Ms. Wahl is the assertion that "the 'Other Insurance' clause in ASIC's Policy . . . is enough to lull her into believing that her 'other [LLPE] insurance' would apply as well."  Pl.'s Opp. at 12.  Even assuming the Court could consider this unpled assertion, the "Other Insurance" clause could not have lulled Ms. Wahl into accepting LPI since she received the ASIC policy only *after* EMC purchased it.  *See* First Am. Compl. ¶ 16.  The "Other Insurance" clause could not have affected a decision Ms. Wahl had already made.  Moreover, her alleged reliance on the "Other Insurance" clause is irrelevant because EMC would have required Ms. Wahl to pay for acceptable coverage regardless, and the LLPE is not acceptable coverage.  Reliance on the clause, therefore, did not cause her alleged injuries.

neglected to make reasonable inquiries in light of the available information.  *See* Cal. Ins. Code §§ 333 & 336.  The Deed of Trust and LLPE put her on notice of the allegedly undisclosed "material facts," explaining that:  (1) the LLPE will terminate unless the lender pays for the LLPE to continue, *viz.*, "it is a condition of the continuance of the rights of the Lender" under the LLPE that the lender "pay or cause to be paid the premium," First Am. Compl. Ex. A; but (2) the lender is under no obligation to purchase insurance coverage of any kind, Summ. Judg. Order at 2 (quoting the Deed).  The Deed of Trust explains further that:  (3) the lender has the right to determine the adequacy of coverage ("All insurance . . . shall be subject to Lender's right to disapprove," *id.*); (4) the scope of adequate coverage can change during the term of the loan ("What Lender requires . . . can change," *id.*); and (5) adequate coverage must be maintained at the borrower's expense, not the lender's ("amounts disbursed by Lender . . . shall become additional debt of Borrower," *id.*).

Ms. Wahl is presumed to have knowledge of the contracts she signs.  *Hydranautics v. FilmTec Corp.*, 306 F. Supp. 2d 958, 963 (S.D. Cal. 2003).  From these sources, Ms. Wahl was on notice that EMC might neither accept nor elect to maintain LLPE coverage after lapse, and that she may be required to pay for lender-approved homeowner's insurance in lieu of the LLPE.  By virtue of the Deed of Trust, she should have understood that "even if EMC anticipated at the time it entered into the Deed that it might rely on an LLPE, EMC was empowered under the terms of the contract to make unilateral adjustments later and deem an LLPE inadequate for its coverage needs." Summ. Judg. Order at 9.  The Deed's "expansive" and "broad language" make it "apparent" that a lapse in her homeowner's insurance could "put Wahl in non-compliance with her insurance obligations, notwithstanding the LLPE's continued limited coverage of EMC's interest." *Id.* at 8-9. Ms. Wahl therefore waived any statutory right to further information as a matter of law.

### C.     Ms. Wahl Is Not A Party To The Contract And May Not Rescind It.

Ms. Wahl is not a party to the insurance contract, but a third-party beneficiary.  Thus, she has no right of rescission as a matter of law.  *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 959-60 (2005).

**D.  ASIC Does Not Owe A Duty Supporting The Constructive Fraud Claim.**

**1.  The Insurance Code cannot support a constructive fraud claim.**

That no duty of disclosure exists is evident for other reasons. The "duty" imposed in Insurance Code § 332 is a contractual, not tort, duty, and cannot support a constructive fraud claim. *See United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1194 n.38 (C.D. Cal. 2009). Section 332's "plain text speaks only to *contractual* duties and rights." *Id.* at 1186 (emphasis supplied). Citing an unrelated passage from the opinion, Ms. Wahl attempts to distinguish the *United Guaranty* case on the ground that it involved "sophisticated businesses," Pl.'s Opp. at 13-14, but she fails to explain how the same statutory language means one thing for sophisticated parties, but an entirely different thing for others. Further, Ms. Wahl's reliance on *Pastoria v. Nationwide Insurance*, 112 Cal. App. 4th 1490 (2003), is misplaced. As the *United Guaranty* court observed, the *Pastoria* court merely "allowed a fraudulent inducement theory to go forward, citing the Insurance Code's concealment provisions as *support for* [a] disclosure duty that amounts to the uncontroversial 'duty' not to commit fraud extrinsic to, and in the inducement of, a contract." 660 F. Supp. 2d at 1186 n.25 (emphasis supplied).

**2.  ASIC does not owe a common law duty, even if one had been pled.**

Ms. Wahl's attempt to impose a common law *fiduciary* duty of disclosure on ASIC also flounders, for three independently dispositive reasons. Pl.'s Opp. at 14-15. First, this case is not now and never has been about a common law fiduciary duty. The First Amended Complaint relies exclusively on a *statutory* duty to disclose. First Am. Compl. ¶ 40 (invoking "Insurance Code section 330 *et seq.*" to support the constructive fraud claim). No common law duty is pled. *See Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1021 (N.D. Cal. 2007) ("[F]acts supporting a claim for constructive fraud must be alleged with particularity under Rule 9(b)."). Indeed, the Court's Summary Judgment Order explains that Ms. Wahl's claims for "breach of statutory duty and constructive fraud" are "closely tied to one another," and both claims uniformly "arise from Wahl's allegation that ASIC violated its duty to disclose material facts *under the California Insurance Code*." Summ. Judg. Order at 10 (emphasis supplied).

7

Second, constructive fraud "requires the existence of a fiduciary relationship," but "California law is clear that [ASIC], as the insurer, does not create a fiduciary duty to its policyholders by simply entering into a contract to supply insurance coverage." *Spirtos v. Allstate Inc.*, No. C02-8798 RGK, 2003 WL 25900368, at *3 (C.D. Cal. Jan. 10, 2003), *aff'd*, 173 F. App'x 538, 540 (9th Cir. 2006). An insurer does not owe a fiduciary duty to its insured. *Young v. Ill. Union Ins. Co.*, No. C07-5711 SBA, 2008 WL 5234052, at *3 (N.D. Cal. Dec. 15, 2008). To the extent quasi-fiduciary duties exist, they are limited to those governed by the insurance contract itself, *and do not encompass a pre-contract duty of disclosure. See Ahern v. Dillenback*, 1 Cal. App. 4th 36, 42 (1991); *Gibson v. GEICO*, 162 Cal. App. 3d 441, 452-53 (1984). "Even assuming a fiduciary-type relationship exists, neither the duty nor the covenant of good faith and fair dealing extend beyond the terms of the insurance contract in force between the parties." *New Plumbing Contractors, Inc. v. Nationwide Mut. Ins. Co.*, 7 Cal. App. 4th 1088, 1096 (1992). Numerous courts, therefore, have dismissed constructive fraud claims predicated on purported fiduciary duties between insurers and insureds. *See, e.g., Spirtos*, 2003 WL 25900368, at *3; *Young*, 2008 WL 5234052, at *3; *Pecarovich v. Allstate Ins. Co.*, 80 F. Supp. 2d 1094, 1100 (C.D. Cal. 2000), *rev'd on other grounds*, 309 F.3d 652 (9th Cir. 2002); *Gibson*, 162 Cal. App. 3d at 452-53.

Third, just as there is no statutory duty of disclosure between an insurer and an additional insured, there also is no common law duty owed to an additional insured arising out of a fiduciary or quasi-fiduciary relationship. *See Cal. Indem. Ins. Premium Fin. Co. v. Fireman's Fund Ins. Co.*, 40 Cal. App. 4th 1633, 1641 (1995) (finding "no legal duty on the part of an insurer which would reach beyond the scope of its relationship with its insured, and would extend to advising a third party regarding financial transactions"). Ms. Wahl cites no case holding that an *additional insured, third-party beneficiary* is in the same position as an insured. Nor would such a holding make sense: unlike an insured, an additional insured does not repose any trust in *contracting* for insurance.

In the absence of a cognizable duty, the constructive fraud claim fails as a matter of law.

8

DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS; CASE NO. C08-00555-RS

**III.     ASIC Is Entitled To Judgment On The Pleadings As To The UCL Claims.**

    **A.     As Go The Breach Of Statutory Duty And Constructive Fraud Claims, So Go Any Other Disclosure-Based UCL Claims That Ms. Wahl May Be Asserting.**

Ms. Wahl's UCL claims also fail. She pegs her UCL "fraud" and "unlawful" prong nondisclosure claims to her deficient breach of statutory duty and constructive fraud claims. *See* Pl.'s Opp. at 16-17. A UCL "fraud" claim will not lie, however, without a duty to disclose, *see Buller v. Sutter Health*, 160 Cal. App. 4th 981, 987 (2008), and a UCL "unlawful" claim will not lie without a violation of a predicate statute, *see Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1507 (1999). These UCL variants fail to state viable claims as a matter of law.[8]

    **B.     The Allegedly Unfair Practice Of "Force Placing" Homeowner's Insurance In Lieu Of An LLPE Is EMC's Business Practice, Not ASIC's Business Practice.**

The Court should further grant ASIC judgment on the UCL "unfair" prong claim because ASIC merely supplied the insurance coverage at EMC's request; ASIC did not require Ms. Wahl to either acquire or pay for it. Although mischaracterized by Ms. Wahl, the "evidence" adduced in her Opposition shows nothing more than ASIC supplies LPI, and that *EMC* requires LPI in lieu of an LLPE. *See* Pl.'s Opp. at 20-22. The Court's Summary Judgment Order repeatedly places responsibility for the alleged business practice with EMC, including observing that *EMC* "concluded that the cancellation of the Farmers Policy put Wahl in non-compliance with her insurance obligations, notwithstanding the LLPE[.]" Summ. Judg. Order at 8-9. The Court found that *EMC* made the determination to require LPI coverage, purchased the coverage from ASIC, charged Ms. Wahl for it, and later renewed it. ASIC did not have the requisite "unbridled control," *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007), over whether LPI would be placed. Only EMC had that authority, which was granted through the Deed of Trust. The Deed "gave *EMC* the prerogative to determine what insurance policies would satisfy it, and *EMC*

---

[8] Ms. Wahl asserts in a footnote that "ASIC's conduct is unlawful also because it would constitute 'twisting' under Cal. Ins. Code § 781." Pl.'s Opp. at 17 n.6. This allegation does not appear in the First Amended Complaint, had never been raised before the footnote, and is never addressed anywhere else in Ms. Wahl's Opposition. A complaint asserting "a claim based on the unlawful prong must identify the particular section of the statute that was allegedly violated, and must describe with reasonable particularity the facts supporting the violation." *Sonoma Foods*, 634 F. Supp. 2d at 1022. Moreover, a party cannot add new claims through a brief. *See Navajo Nation*, 535 F.3d at 1080; *Pickern*, 457 F.3d at 968-69.

exercised that prerogative when it deemed the cancellation of Wahl's Farmers Policy to be inadequate."  Summ. Judg. Order at 9 (emphases supplied).

C.    **The Alleged Business Practice Of "Force Placing" Homeowner's Insurance In Lieu Of An LLPE Is Not "Unfair" Under The UCL.**

1.    **No legislatively declared policy has been violated.**

The UCL "unfair" prong claim further fails because it is not tethered to a constitutional, statutory, or regulatory provision that would prohibit EMC from requiring homeowner's insurance that EMC deemed adequate, or ASIC from supplying it.  Citing *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007), Ms. Wahl argues that, instead of applying the "tethering" test articulated in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999), and adopted by numerous California courts,[9] "the courts may apply an older balancing test established in *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999)."  Pl.'s Opp. at 18.  Judge Alsup has explained, however, that "*Lozano* did not require using the balancing test, so using *Cel-Tech*'s tethering standard is still appropriate and, indeed, necessary as this Court sees the development of the state law under Section 17200."  *Van Slyke v. Capital One Bank*, No. C07-671 WHA, 2007 WL 3343943, at *11 (N.D. Cal. Nov. 7, 2007).  Many other judges in this District have reached the same conclusion both before and after *Lozano*, and require that a UCL "unfair" claim be predicated on an expressed legislative policy.[10]

Ms. Wahl does not contend that any particular statute or regulation prohibits lenders or insurers from requiring LPI notwithstanding an LLPE.  Instead, in a footnote, she argues that the practice "violates the important legislative policies against misrepresentation, deception, and overreaching in the context of placement of consumer property insurance, demonstrating that *Cel-*

---

[9] *See, e.g.*, *Buller*, 160 Cal. 4th at 991; *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1239 (2007); *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co.*, 118 Cal. App. 4th 1061, 1072 (2004); *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003); *Byars v. SCME Mortg. Bankers, Inc.*, 109 Cal. App. 4th 1134, 1147 (2003); *Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002).

[10] *See, e.g.*, *Flower v. Wachovia Mortg. FSB*, No. C09-343 JF, 2009 WL 975811, at *7 (N.D. Cal. Apr. 10, 2009) (Fogel, J.); *AHO Enters. v. State Farm Mut. Auto. Ins. Co.*, No. C08-4133 SBA, 2008 WL 4830708, at *4 (N.D. Cal. Nov. 6, 2008) (Armstrong, J.); *Churchill Village, LLC v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1130 & n.10 (N.D. Cal. 2000) (Patel, J.).

DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS; CASE NO. C08-00555-RS

*Tech* is satisfied." Pl.'s Opp. at 18 n.8. Her unfairness claim, however, relates to the *practice* of placing insurance, not whether the practice is *disclosed*, misleading, or deceptive. Tellingly, Ms. Wahl does not cite a single provision of positive law prohibiting the practice, relying instead on a vague, unarticulated "policy" against "overreaching." *Id.* This is precisely why "the unfairness prong must also be tethered to some legislative policy; otherwise the courts will roam across the landscape of consumer transactions picking and choosing which they like and which they dislike." *Van Slyke*, 2007 WL 3343943, at \*11. The UCL "unfair" claim fails *Cel-Tech*'s "tethering" test.

### 2.   Ms. Wahl may not second-guess the Deed of Trust as being "unfair."

The claim also fails *South Bay Chevrolet*'s "balancing" test. As an initial matter, exercising a right granted in a contract is not "unfair." *See Eichman v. Photomat Corp.*, 880 F.2d 149, 168 (9th Cir. 1989); *Spiegler v. Home Depot USA, Inc.*, 552 F. Supp. 2d 1036, 1046 (C.D. Cal. 2008) (rejecting "unfair" claim where defendants "complied with the express terms of the contracts, and charged plaintiffs in accordance with their terms"); *South Bay Chevrolet*, 72 Cal. App. 4th at 887-88 (rejecting "unfair" claim where dealer's use of a particular interest calculation method was "contractually authorized"). The Court has already found "that EMC was acting within its rights under the contract when it concluded that the cancellation of the Farmers Policy put Wahl in non-compliance with her insurance obligations, notwithstanding the LLPE's continued limited coverage of EMC's interest." Summ. Judg. Order at 8-9. "The 'unfairness' prong of the UCL does not give the courts a general license to review the fairness of contracts." *Spiegler*, 552 F. Supp. 2d at 1046.

Ms. Wahl argues, in essence, that an LLPE should be "good enough" for the lender. *See* Pl.'s Opp. at 19. The Court is not in a position to determine whether LLPEs are "good enough," but there are excellent reasons why lenders, borrowers, and the public do not want to rely on LLPE coverage. ASIC already explained that if a loan's principal balance is repaid after a casualty loss, as under LLPE coverage, the loan ceases to perform, and the lender loses its source of profits from collecting interest. Ms. Wahl responds that "these same objectives could be achieved simply by placing [LPI] coverage at that point in time when the LLPE and the binder coverages have expired." *Id.* at 19. *This misses the point entirely – if a lender is relying on an LLPE, upon a casualty, the loan balance will be repaid early.* The same is not true of LPI coverage. The LLPE

11

thus minimally protects the unpaid loan balance, but harms the lender's long-term ability to recoup its costs of making the loan. And it is not "unfair" for the lender to preserve the loan's profitability when the borrower breaches *her* obligation to maintain adequate insurance in the first place. A lender should not be left without recourse because of the borrower's dereliction. *See Kunert v. Mission Fin. Servs. Corp.*, 110 Cal. App. 4th 242, 265 (2003) (finding the "unfair" prong was not intended to eliminate retailers' profits in an action challenging payment of a dealer reserve).

ASIC also explained that borrowers benefit from LPI coverage because, if coverage exists only to protect the lender's interest by paying off the loan, as under LLPE coverage, the borrower could be left with an extensively damaged property and no insurance proceeds with which to rebuild. Ms. Wahl does not dispute this point. ASIC explained further that uninsured borrowers are more likely to abandon or neglect the homes in their damaged condition, and that society has an interest in preventing neighborhood blight. Ms. Wahl does not dispute this point either.

Moreover, placement of LPI in lieu of an LLPE is not an aberrant business practice. To the contrary, this "practice" is common within the industry, as Ms. Wahl's own pleadings demonstrate:

> Notwithstanding the well-known and universal terms of the LLPE, it is commonly ignored by institutional mortgage lenders in California. Instead, those lenders typically contract with [LPI] insurers to serve as their agents monitoring the homeowner insurance of their mortgage borrowers, demanding payment by the homeowners when the premiums for that insurance are not kept current, putting [LPI] in place if the demand is not met[.]

First Am. Compl. ¶ 14; *see Byars*, 109 Cal. App. 4th at 1149 (lender's payment of a yield spread premium to a broker was not "unfair" under the UCL because, among other things, such payments "are widespread and commonly used as a method to compensate mortgage brokers for services provided to borrowers and the lender").

### 3. Ms. Wahl had reasonably available alternatives to the LPI coverage.

Ms. Wahl's alleged injury was entirely avoidable. Ms. Wahl responds that she "could not avoid an unfair act she knew nothing about," Pl.'s Opp. at 18 n.9, but this assertion is illogical. Once informed that EMC would purchase LPI coverage replacing her own lapsed homeowner's insurance policy, Ms. Wahl could have simply renewed that former policy, or purchased alternate insurance on her own. Nothing required her to obtain or pay for the ASIC LPI, and certainly not

the *full-term* policy. *See Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 598 (2009) (rejecting UCL "unfair" claim because the imposition of late fees for successive months reasonably could have been avoided had plaintiff made his monthly payments timely "in accordance with his obligations under the contract"; holding that "Davis reasonably could have avoided the alleged injury" so "Davis has not, and cannot, state a claim under the unfairness prong of the UCL").

Ms. Wahl further responds that whether a borrower could have avoided the challenged practice is irrelevant to the *South Bay Chevrolet* "balancing" test, but she fails to explain why that is so. Ms. Wahl is mistaken. By its terms, the "balancing" test examines the "justifications and motives of the alleged wrongdoer." 72 Cal. App. 4th at 888. If the alleged victim could have reasonably avoided the challenged practice, that aids in justifying the alleged wrongdoer's continuance of the practice. Whether a borrower could have avoided LPI charges by obtaining alternate homeowner's insurance is thus highly relevant to whether it was "unfair" to place the LPI.

### 4. California statutory and regulatory provisions expressly permit EMC and ASIC to place the coverage that EMC deems acceptable.

Multiple statutes and regulations provide a "safe harbor" to require homeowner's insurance of the lender's choosing, thereby limiting the Court's power to declare the practice at issue "unfair." The California Insurance Code and its implementing regulations *affirmatively permit* EMC to place whatever insurance is deemed required by a Deed of Trust or other mortgage instrument, up to the replacement value of the improvements on the property. *See* Cal. Ins. Code § 771(a) & (d); Cal. Civ. Code § 2955.5(a); 10 Cal. Code Regs. §§ 107.601(a) & 2181.1(a). Ms. Wahl does not dispute this. Instead, she argues that "ASIC cites no authority that immunizes the manner and method of its placement of [LPI], nor the resulting cancellation, as opposed to the fact of force-placement." Pl.'s Opp. at 20 (emphasis in original omitted). Ms. Wahl's essential quarrel is that the provisions on which ASIC relies do not *specifically* permit a lender to place LPI when there is an LLPE.

This degree of specificity is unnecessary. The statutory right to place whatever homeowner's insurance is permitted under the Deed of Trust is unconditional. These provisions encompass *all* circumstances of LPI placement, including where LLPE coverage might exist, if the Deed of Trust authorizes the placement. Just as the Ninth Circuit has held that a statute permitting

13

disability insurers to deny coverage on the basis of an insured's mental impairment if the rejection is based on actuarial principles or claims experienced constituted a UCL "safe harbor," *Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1036 (9th Cir. 2003), so this Court should hold that a statute permitting lenders to place LPI coverage if the mortgage instrument authorizes the placement also constitutes a "safe harbor."

**IV.     ASIC Is Entitled To Judgment On The Pleadings As To Any Declaratory Relief.**

> **A.     Ms. Wahl Asks The Court To Contradict Its Summary Judgment Order, So The Requested Declaratory Relief No Longer Serves Any Useful Purpose.**

The Court should grant ASIC judgment on the demand for declaratory relief.  The First Amended Complaint's demand is explicitly premised on, and limited to, the allegation "that ASIC's charges for [LPI] premiums during periods of time in which ASIC's [LPI] policies overlap with the homeowner's prior insurance still in effect pursuant to their LLPEs," First Am. Compl. ¶ 69, but the Court has rejected the "overlap" theory.  *See* Summ. Judg. Order at 8-9.  Ms. Wahl cannot expand her case beyond the pleadings, so the Court cannot grant the relief requested.

> **B.     No Live Controversy Remains, So The Requested Declaratory Relief Is Moot.**

In any event, there is no justiciable claim for declaratory relief.  Past exposure to allegedly illegal conduct does not in itself show a present case or controversy if unaccompanied by any continuing, present adverse effects.  *Blair v. Shanahan*, 38 F.3d 1514, 1519 (9th Cir. 1994).  Ms. Wahl does not have an ASIC LPI policy, and it is uncertain that she will be subject to LPI coverage again.  She argues only that she "*could* have it imposed" on her "in the *future*."  Pl.'s Opp. at 24 (emphases supplied).  A claim is not ripe for adjudication, however, if it rests upon contingent future events that may not occur as anticipated, or may not occur at all.  *See Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (holding unripe employees' action for declaratory relief challenging employer's policy of discontinuing health insurance coverage after retirement; future injury was contingent upon the employees' retirement and the employer's subsequent enforcement of the policy).  "That is so because, if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing." *Id.*  Here, a prospective injury is not certain to occur, but is contingent

14

DEFENDANT AMERICAN SECURITY INSURANCE COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS; CASE NO. C08-00555-RS

on two events:  (1) a lapse of Ms. Wahl's homeowner's insurance; and (2) her lender's imposition of ASIC LPI coverage on her.  "It is possible that neither of the two events will occur."  *Id.*  For example, before a future lapse occurs – if it occurs at all – Ms. Wahl's lender at the time of the lapse could have retained an insurance company other than ASIC to supply LPI coverage.

Finally, Ms. Wahl invokes the status of putative class members, but they are irrelevant to the justiciability analysis.  Because Ms. Wahl is not personally entitled to seek prospective relief, she may not represent a class seeking such relief.  *See Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).  Potential injury to absent class members is "simply irrelevant" to whether the named plaintiff is entitled to prospective relief.  *Id.*[11]

### CONCLUSION

For all of the foregoing reasons, and for the reasons set forth in its opening Memorandum, ASIC respectfully requests that this Court dismiss the class allegations for Ms. Wahl's lack of membership in the putative class and her consequent lack of representational standing, and grant ASIC judgment on the pleadings in its favor as to the Second, Third, Fifth and Seventh Causes of Action in the First Amended Complaint.

Dated:  March 10, 2010

JORDEN BURT LLP

By:  */s/ Frank G. Burt*
     FRANK G. BURT
Attorney for Defendant
AMERICAN SECURITY INSURANCE COMPANY

---

[11]  Ms. Wahl also argues, Pl.'s Opp. at 24-25, that her claim is "capable of repetition, yet evading review."  *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002); *Pub. Utilities Comm'n of Cal. v. FERC*, 100 F.3d 1451, 1459 (9th Cir. 1996); *Headwaters v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1016 (9th Cir. 1989).  "Under this exception, federal courts may exercise jurisdiction over otherwise moot matters in which the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and there is a reasonable expectation that the same complaining party would be subjected to the same action again."  893 F.2d at 1016 (internal quotation marks omitted).  However, the "repetition/evasion" exception is a narrow one, and applies only in "exceptional situations."  *Pub. Utilities Comm'n*, 100 F.3d at 1459; *Headwaters*, 893 F.2d at 1016.  In this case, the "repetition/evasion" exception does not apply.  First, there is no suggestion that Ms. Wahl will again be subjected to ASIC LPI coverage.  Second, even if the alleged conduct were likely to recur, the courts would be capable of redressing any future injury at that time.  Indeed, because Ms. Wahl contends that there are other putative class members being harmed, there would be other litigants capable of challenging ASIC's alleged practices.  *See Bernhardt*, 279 F.3d at 872 ("As a practical matter, we also note that other litigants are capable of challenging the County's alleged policy.").

225589v2DC