1   Stephen F. Yunker (CSB 110159)
    YUNKER & SCHNEIDER
2   655 West Broadway, Suite 1400
    San Diego, California 92101
3   Telephone:  (619) 233-5500
    Facsimile:   (619) 233-5535
4   Email:  sfy@yslaw.com

5   Joseph N. Kravec, Jr. (PA ID No. 68992)
    SPECTER SPECTER EVANS & MANOGUE, P.C.
6   The 26th Floor Koppers Building
    Pittsburgh, PA  15219
7   Telephone:  (412) 642-2300
    Facsimile:   (412) 642-2309
8   Email:  jnk@ssem.com

9   James M. Pietz (PA ID No. 55406)
    PIETZ LAW OFFICE
10  Mitchell Building
    304 Ross Street, Suite 700
11  Pittsburgh, PA  15219
    Telephone:  (412) 288-4333
12  Facsimile:   (412) 288-4334
    Email:  jpietz@jpietzlaw.com

13

14  Attorneys for Plaintiff MICHELLE T. WAHL, on behalf of herself and all
    others similarly situated

15

16              **UNITED STATES DISTRICT COURT**

17  **FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

18  MICHELLE T. WAHL, on behalf of          )   Case No. C08-00555 RS
    herself and all others similarly situated,   )
19                                            )
                  Plaintiff,                   )   **CLASS ACTION**
20                                            )
    v.                                        )   **PLAINTIFF MICHELLE T. WAHL'S**
21                                            )   **REPLY IN SUPPORT OF MOTION**
    AMERICAN SECURITY INSURANCE             )   **FOR CLASS CERTIFICATION**
22  COMPANY; and DOES 1-50, inclusive,      )
                                              )
23                Defendants.                 )   DATE:        3/25/10
                                              )   TIME:        11:00 a.m.
24                                            )   CTRM:        3 (San Francisco)
                                              )
25                                            )
                                              )
26  _____)

27  / / /

28  / / /

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

COUNTER-STATEMENT OF PERTINENT FACTUAL BACKGROUND ...........................1

COUNTER STATEMENT OF APPLICABLE LEGAL STANDARDS .......................................2

ARGUMENT ......................................................................................................2

I.     The Proposed Class Definition Properly Supersedes the FAC, and Satisfies Rule 23 ...............................................................................................................2

II.    Mrs. Wahl's Claims Are Typical of the Class Claims ......................................3

     A.    Mrs. Wahl's UCL Reliance Claim Meets the Binding California Standard for Class Certification, and Should Not Be Decided on the Merits Now, but Is Fully Supported by the Evidence if the Merits Are Considered ...................3

     B.    All Class Members – Including Mrs. Wahl – Have Valid Continuing Interests Justifying Declaratory Relief ................................................................5

III.   Mrs. Wahl and Class Counsel Provide Adequate Representation .......................7

     A.    Mrs. Wahl and Class Counsel Satisfy the Adequate Representation Standards .........................................................................................................7

         1.    Class Representative .................................................................7

         2.    Class Counsel ..........................................................................8

     B.    Any Potential Conflict The Class of 625,000 May Have With The 9,700 Members For Whom Rescission May Not Be Beneficial Is Easily Resolvable By The Court ............................................................................10

IV.   Common Issues Completely Predominate in This Case ................................11

     A.    The Non-Disclosure Claims Require No Individual Inquiry ...............................11

         1.    Whether Borrowers Could Have Discovered The Concealed Information Presents A Common Question ................................11

         2.    The Case Law Demonstrates That Borrowers' Inability To Discover the Concealed Information Is Subject To Common Adjudication ...........................................................................12

         3.    Materiality And Reliance Present  Common Questions Since They Are Based Upon a "Reasonable Person Standard" ...................13

     B.    The Unfair Prong Of Plaintiff's UCL Claim Is Subject To Common Proof .........16

C08-00555 RS

**TABLE OF CONTENTS (cont.)**

**Page**

C.   The "Voluntary Payment Doctrine" Is Totally Inapplicable Here..........................18

D.   Common Evidence Shows That Lenders Paid Less Than Homeowners for the Same Binder Coverage Period .........................................................19

E.   The Monetary Remedies Sought Do Not Undermine Predominance. ...................20

   1.   Individual Monetary Recoveries do not Preclude Class Certification ...........................................................................................20

   2.   Rescission and Punitive Damages Present Common and Easily Manageable Monetary Calculations. .........................................21

V.   A Class Action Here Is Both the Superior and Indeed the Only Viable Method of Adjudication..............................................................................................23

VI.   Hybrid Rule 23(b)(3) and 23(b)(2) Certification Is Fully Justified ...................24

CONCLUSION...........................................................................................................25

C08-00555 RS

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashley v. American Mut. Liability Ins. Co.*,
    167 F.Supp. 125 (N.D. Ca. 1958) ...................................................................21

*Barton v. U.S. Dist. Ct. for the Ctrl. Dist. Of Cal.*
    410 F.3d 1104 (9th Cir. 2005) .....................................................................9

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ..................................................................2, 20

*Bodner v. Oreck Direct, LLC*,
    2007 WL 12237777 (N.D. Cal. 2007) .......................................................9, 10

*Bova v. City of Medford*,
    564 F.3d 1093 (9th Cir. 2009) .....................................................................6

*Buckland v. Threshold Ent., Ltd.*,
    155 Cal.App. 4th 798 (2007) .....................................................................18

*Burkhalter Trav. Agency v. MacFarms Int'l, Inc.*,
    141 F.R.D. 144 (N.D. Cal. 1991)...................................................................8

*Buss v. Superior Court*,
    16 Cal.4th 35 (1997) ..........................................................................14, 15

*Chern v. Bank of America*,
    15 Cal.3d 866 (1976) .............................................................................16

*Coca Cola Bottling Co. v. Columbia Cas. Ins. Co.*,
    11 Cal. App.4th 1176 (1992) ...................................................................14

*Cortez v. Purolator Air Filtration Prod. Co.*,
    23 Cal.4[th] 163 (2000) ...........................................................................19

*Cummings v. Farmers Insurance Exchange*,
    202 Cal. App.3d 1407 (1988) ...............................................................14, 15

*Endres v. Wells Fargo Bank*,
    2008 WL 344204 (N.D. Cal. 2008) ........................................................15, 18

*Eureka Fed. S&L Ass'n v. American Cas. Co.*,
    873 F.2d 229 (9th Cir. 1989) .....................................................................6

1

**TABLE OF AUTHORITIES (cont.)**

2
**Page**

*Evans v. IAC/Interactive Corp.*,
3     244 F.R.D. 568 (C.D. Cal. 2007) ..................................................................8

4
*Feitelberg v. Credit Suisse First Boston, LLC*,
5     134 Cal.App.4th 997 (2005) ......................................................................21

6 *Freeman v. Time, Inc.*
    68 F.3d 285 (9th Cir. 1995) ......................................................................16
7

8 *GEICO v. Dizol*,
    133 F.3d 1220 (9th Cir. 1998) ....................................................................6

9
*Gober v. Ralphs Grocery Co.*,
10     137 Cal.App.4th 204 (2006) ....................................................................23

11 *Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981) ....................................................................................8
12

13 *Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir.1998) ..................................................................23
14

15 *Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ....................................................................2

16
*Hodgers-Durgin v. De La Vina*,
17     199 F.3d 1037 (9th Cir. 1999) ..................................................................6

18 *Holt v. Thomas*,
    105 Cal. 273 (1894) ................................................................................18
19

20 *Hunt v. Check Recovery Systems, Inc.*,
    241 F.R.D. 505 (N.D.Cal.2007)..............................................................25
21

22 *Imperial Cas. & Indem. Co. v. Sogomonian*,
    198 Cal. App.3d 169 (1988) ....................................................................14

23
*In re Adbox, Inc.*,
24     488 F.3d 836 (9th Cir. 2007) ..................................................................18

25 *In re Hotel Telephone Charges*,
    500 F.2d 86 (9th Cir. 1974) ....................................................................24
26

27 *In re Hydrogen Peroxide Antitrust Litig.*
    552 F.3d 305 (3d Cir. 2008)......................................................................2

28

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1

**TABLE OF AUTHORITIES (cont.)**

2

**Page**

*In re Sugar Antitrust Litigation,*
3  559 F.2d 481 (9th Cir. 1977) ............................................................20

4

*In re Tableware Antitr. Litig.,*
5  241 F.R.D. 644 (ND Cal. 2007)............................................................8

6  *In re the Exxon Valdez,*
 296 F.Supp.2d 1071 (D.Alaska 2004) ..............................................22

7

8  *In re Tobacco II Cases,*
 46 Cal. 4th 298 (2009) ................................................................ passim

9

*Iorio v. Allanz Life,*
10  2009 WL 3415703 (S.D. Cal. 2009) ..................................................22

11  *Jefferson v. Ingersoll Intern. Inc.,*
 195 F.3d 894 (7th Cir. 1999) ............................................................25

12

13  *Johnson v. Mitsubishi Digital Elec. America, Inc.,*
 578 F.Supp. 2d 1229 (C.D. Cal. 2008) ...............................................9

14

*Kaldenbach v. Mutual of Omaha Life Insurance Co.,*
15  178 Cal. App.4th 880 (2009) ............................................................12

16  *Kanawai v. Bechtel Corp.,*
 254 F.R.D. 102 (ND Cal. 2008).........................................................8

17

18  *Kline v. Coldwell, Banker & Co.,*
 508 F.2d 226 (9th Cir. 1974) ............................................................24

19

20  *Knisely v. Network Assocs., Inc.,*
 77 F.Supp.2d 1111 (N.D. Cal. 1999) .................................................9

21

*Korea Supply Co. v. Lockheed Martin Corp.,*
22  29 Cal.4th 1134 (2003) ....................................................................22

23  *Lavie v. Procter & Gamble Co.,*
 105 Cal.App.4th 496 (2003) .............................................................16

24

25  *Lierboe v. State Farm Mut. Auto. Ins. Co.,*
 350 F.3d 1018 (9th Cir. 2003) ............................................................6

26

27  *Lozano v. AT & T Wireless Services, Inc.*
 504 F.3d 718 (9th Cir. 2007) ............................................................16

28

C08-00555 RS

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1

**TABLE OF AUTHORITIES (cont.)**

2
**Page**

*Massachusetts Mutual Life Insurance Company v. Superior Court*,
 97 Cal. App.4th 1282 (2002) ......................................................................12, 13

*Meachum v. Outdoor World Corp.*,
 654 N.Y.S. 2d 240 (1996) ........................................................................10

*Mitchell v. United Nat'l Ins. Co.*,
 127 Cal. App.4th 457 (2005) ..............................................................1, 14, 15

*Motors, Inc. v. Times Mirror Co.*,
 102 Cal.App.3d 735 (1980) ....................................................................16, 17

*Nelsen v. King County*,
 895 F.2d 1248 (9th Cir. 1990) ...................................................................6

*Nieto v. Blue Shield of Cal. Life & Health Ins. Co.*,
 181 Cal. App.4th 60 (2010) .....................................................................14

*O'Connor v. Boeing N. Am., Inc.*,
 184 F.R.D. 311 (C.D. Cal. 1998) .................................................................3

*Parris v. Superior Court*,
 109 Cal.App.4th 285 (2003) .....................................................................9

*Quezada v. Loan Center of California, Inc., EMC*,
 2009 WL 5113506 (E.D. Cal. 2009).............................................................15

*Richmond v. Dart Industries, Inc.*,
 29 Cal.3d 462 (1981) ..........................................................................22

*Rodriguez v. Hayes*,
 591 F.3d 1105 (9th Cir. 2010) ...................................................................6

*Sanchez v. Wal Mart Stores, Inc.*,
 2009 WL 1514435 (E.D.Cal.)....................................................................10

*Societe de Conditionnement v. Hunter Eng. Co., Inc.*,
 655 F.2d 938 (9th Cir. 1981) .....................................................................6

*South Bay Chevrolet v. General Motors Acceptance Corp.*,
 72 Cal.App. 4th 861 (1999) ......................................................................16

*Steroid Hormone Product Cases*,
 181 Cal. App. 4th 145, 154 (2010) ...............................................................14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

**TABLE OF AUTHORITIES (cont.)**

Page

*Sullivan v. Chase Inv. Services of Boston, Inc.*,
    79 F.R.D. 246 (N.D. Cal. 1978).................................................................................20

*Surowitz v. Hilton Hotels Corp.*,
    383 U.S. 363 (1963)..........................................................................................................8

*Tain v. Hennessey*,
    2009 WL 4544130 (S.D.Cal.2009) .............................................................................22

*Tober v. Charnita, Inc.*,
    58 F.R.D. 74 (M.D. Pa.1973).......................................................................................22

*United Steel, Paper & Forestry v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010) ....................................................................................2, 4

*Varacallo v. Massachusetts Mutual Life Insurance Company*,
    752 A.2d 807 (N.J. App. Div. 2000).........................................................................13

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256, n. 20 (2009).........................................................................................24

*Walker v. Countrywide Home Loans*,
    98 Cal.App. 4th 1158 (2002) ......................................................................................18

*Wallis v. Superior Court*,
    160 Cal.App.3d 1109 (1984) ................................................................................21, 22

*Wells Fargo Bank, N.A. v. Gump*,
    1 Cal. App.4th 582 (1991) ...........................................................................................15

*Western Gulf Oil Co. v. Title Ins. and Tr. Co.*,
    92 Cal.App.2d 257 (1949) ............................................................................................18

*Williams v. Marshall*,
    37 Cal.2d 445 (1951) .....................................................................................................22

*Xiufang Situ v. Leavitt*,
    240 F.R.D. 551 (N.D. Cal. 2007)..................................................................................3

*Yokoyama v. Midland Nat. Life Ins. Co.*,
    2010 WL 424817 (9th Cir.2010) ................................................................................20

*Zauderer v. Ofc. Of Disciplinary Counsel*,
    471 U.S. 626 (1985)..........................................................................................................8

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

# TABLE OF AUTHORITIES (cont.)

**Page**

*Zinser v. Accufix Research Institute, Inc.*,
   253 F.3d 1180 (9th Cir. 2001) .................................................................................24

**Statutes**

28 USC § 2201(a) ...........................................................................................................6

California Business & Professions Code §§ 6157-6159.2.............................................9

California Civil Code § 1689(b)(1)..............................................................................21

California Civil Code § 1689(b)(7)..............................................................................10

California Civil Code § 1692.................................................................................10, 21

California Civil Code § 3294.........................................................................................23

California Insurance Code § 331 .....................................................................10, 21, 22

California Insurance Code § 1692 ................................................................................10

California Insurance Code § 2070 ................................................................................14

California Insurance Code § 2071 ................................................................................14

California Insurance Code § 330, *et seq* ...............................................................14, 15

California Insurance Code § 332 ..................................................................................19

California Insurance Code § 334 ............................................................................13, 14

California Insurance Code §§ 336 ................................................................................12

Federal Rules of Civil Procedure Rule 8(c)(1) ...........................................................18

**Other Authorities**

Camisa, "*The Const. Right to Solicit Potential Class Members in a Class Action,*"
   25 Gonzaga L.Rev. 95 (1989/1990)..........................................................................9

7 Wright and Miller, *Federal Practice and Procedure,* Civil, Class Actions, § 1760 ....................3

Restatement 2d Torts § 826 .........................................................................................17

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

# INTRODUCTION

American Security Insurance Company's ("ASIC") Opposition to Mrs. Wahl's Motion for Class Certification (Electronic Case Filing # 118, "ECF 118") rarely focuses on the lone issue presented to the Court,  namely whether this putative class may be properly certified pursuant to Rule 23.  Rather, ASIC persistently argues the merits, raises issues of monetary relief, imports standards from other circuits or thin air that are disapproved in the Ninth Circuit, makes remarkable *ad hominem* attacks on Mrs. Wahl and her counsel, and generally fails to focus on the proper standards for class certification.

On the other hand, ASIC barely contests the standard practices and misconduct set out in Mrs. Wahl's moving papers, and the resulting simple issues of common proof affecting Mrs. Wahl and putative class members.  Mrs. Wahl respectfully submits that few cases more clearly merit class action treatment than this one.

# COUNTER-STATEMENT OF PERTINENT FACTUAL BACKGROUND

Mrs. Wahl has shown a common core of material facts that give rise to the claims of all class members, including Mrs. Wahl herself.  These facts include <u>standard practices and misconduct</u> by ASIC that are almost entirely undisputed.  ASIC's <u>undisputed standard practices</u> are: (i) ASIC operates a uniform FPI program in California affecting all homeowners alike in all material respects, regardless of their varying lenders (ECF 93 pp. 4-8); (ii) the program uses a standard suite of policies, binders, endorsements and contracts (ECF 93, pp. 6-8); and (iii) about 625,000 potential class members – including Mrs. Wahl – were uniformly subjected to the program since January 28, 2004 (ECF 93 pp. 6).

ASIC's <u>undisputed standard misconduct</u> – affecting all potential class members alike – is: (i) all homeowners had an LLPE in effect before ASIC imposed FPI on them (ASIC Opp. Br. ECF 118 at p. 3); (ii) none of them got any benefit from their LLPE because it was canceled when ASIC imposed the FPI and deemed the LLPE coverage to be unacceptable (ASIC Opp. Br. ECF 118 at p. 4. ); (iii) all of them paid for double coverage of their lenders under both the LLPE and the FPI (ECF 118 at p. 4.); and (iv) ASIC backdated the FPI coverage to include the initial binder period (ECF 93 pp. 9-10).

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

ASIC raises only two contentions as to these facts.  First, ASIC does not deny that it uniformly fails to disclose all of the material facts recited above, but instead ASIC argues that homeowners could discover those facts on their own.  (ECF 118 at p. 4-7.)  Second,  ASIC disputes that it charges the borrower for the Binder period at a *higher* premium rate than already paid by the lenders, but the class certification record supports Mrs. Wahl's contention.  (*See* Section  IV. D.  herein.)

## COUNTER STATEMENT OF APPLICABLE LEGAL STANDARDS

ASIC improperly argues Third Circuit legal standards for class certification never adopted by the Ninth Circuit.  Quoting *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 307 (3d Cir. 2008), ASIC argues that "factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence."  (ECF 118, p. 10.)  The Ninth Circuit does not follow this standard. Instead, the party seeking class certification must simply establish a *prima facie* showing of each prerequisite set by Rule 23(a), and must establish appropriate grounds for a class action under one of three categories permitted by Rule 23(b).  *See Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).  This burden is met by giving the Court a sufficient basis for forming a "reasonable judgment" on each requirement.  *See, e.g., Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir. 1975).

ASIC also improperly relies on *Hydrogen Peroxide* to argue that the Court must predict how "specific issues will play out" on the merits.  (ECF 118, p. 11.)  ASIC fails to tell the Court that the Ninth Circuit just recently rejected this suggestion, and instead reaffirmed the standard that has always applied in this circuit.  *United Steel, Paper & Forestry v. ConocoPhillips Co*. 593 F.3d 802, 809 (9th Cir. 2010) ("*ConocoPhillips Co*.").   The applicable standard remains as follows: "[N]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies [Rule 23]."  *Id.*, *citing Blackie v. Barrack,* 524 F.2d at 901.

## ARGUMENT

### I.    The Proposed Class Definition Properly Supersedes the FAC, and Satisfies Rule 23

ASIC repeats its argument made in the Motion For Judgment On The Pleadings ("MJP") that Mrs. Wahl's proposed class definition is invalid because this Court purportedly is bound by the

definition alleged over <u>two years</u> ago in the First Amended Complaint – before this Court ruled on any dispositive motions, and before any class discovery was undertaken.  (*Cf.* ECF 118 pp. 12-14 & ECF 99, pp. 7-9.)  As explained in Mrs. Wahl's opposition to the MJP, ASIC's argument is wrong as a matter of law.  (ECF 122, pp. 3-6)  Mrs. Wahl is entitled, and indeed obligated, to propose a workable class definition based on the course of litigation and the findings of class discovery.  Ninth Circuit and District Court cases routinely allowing class definitions differing from those alleged in a complaint are cited at length in Mrs. Wahl's opposition to the MJP.  (*Id.* at pp. 5-6.)

The only proper inquiry at this point in the case is whether Mrs. Wahl has proposed a class definition that satisfies Rule 23.  A satisfactory definition makes it "administratively feasible" for the Court to determine if a particular individual is a member of the class. *See, e.g., Xiufang Situ v. Leavitt,*  240 F.R.D. 551, 558-559 (N.D. Cal. 2007); 7 Wright and Miller, *Federal Practice and Procedure,* Civil, Class Actions, § 1760.  To meet this standard, the class definition "should be precise, objective, and presently ascertainable." *O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 319 (C.D. Cal. 1998).  ASIC does not contend that the proposed class definition is imprecise, subjective, or unascertainable.

## II.    Mrs. Wahl's Claims Are Typical of the Class Claims

### A.    Mrs. Wahl's UCL Reliance Claim Meets the Binding California Standard for Class Certification, and Should Not Be Decided on the Merits Now, but Is Fully Supported by the Evidence if the Merits Are Considered

ASIC argues that Mrs. Wahl cannot prove reliance on anything material done or not done by ASIC, and hence her UCL reliance claim cannot be "typical" of class members making that same claim.  (ECF 118, pp. 23-24.)  But proof of reliance is not required for all types of UCL claims. Indeed, the California Supreme Court recently clarified that UCL claims based on "unfair" conduct as opposed to concealment or misrepresentation do not require proof of reliance by the named plaintiff or any class member, but instead require only proof of causation and injury.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009).  Thus, Mrs. Wahl's UCL claim based upon ASIC's "unfair"

/ / /

/ / /

/ / /

3                                    C08-00555 RS

conduct in placing back-dated FPI during the binder period, waiving her LLPE, and making her double pay for the same coverage, do not require any proof of reliance under *Tobacco II*.[1]

As for UCL claims based on "fraudulent practices," the California Supreme Court recently held that only the named class representative had to allege and prove reliance based on concealment or misrepresentation under the UCL, in order for the entire class to proceed with that claim. *Tobacco II* at 320, 324. The Court further held that reliance could be established by presumption using the "reasonable man" objective standard whenever the facts concealed or misrepresented were material. *Id.* at 327. Finally, the Court held that the determination of materiality was for the jury unless the facts in question were "so obviously unimportant that the jury could not reasonably find a reasonable man would have been influenced" by them. *Id.* (citation omitted).

ASIC ignores this law, never cites *Tobacco II*, and instead turns the opinion on its head by arguing that – because Mrs. Wahl must prove reliance as the class representative, and the other class members do not – her UCL claims are not "typical" of theirs. (ECF 118, p. 15.) Taken seriously, this argument would mean that no UCL class action involving reliance could ever be certified. The Supreme Court intended no such thing, and said so by explaining that its clarification of the class representative's burden of proof would <u>not</u> create a unique defense, nor prevent certification. *In re Tobacco II*, 46 Cal. 4th at 320, 329. Consequently, for class certification, Mrs. Wahl need only allege reliance individually for her fraud-based UCL claim, with facts that meet the "reasonable man" standard, and she (and the class) can then take the case to the jury. ASIC's arguments about the evidence improperly ask the Court to "make a preliminary inquiry into the merits" at the certification stage, which is prohibited in the Ninth Circuit. *ConocoPhillips Co.*, 593 F.3d at 809.

But if the Court nevertheless considers Mrs. Wahl's evidence of her reliance, it is compelling and certainly meets the "reasonable man" standard. The material facts concealed from Mrs. Wahl are that ASICs placement of FPI cancelled or waived the LLPE coverage, and that as a result of ASIC's undisclosed waiver of the LLPE Mrs. Wahl would pay <u>twice</u> for the <u>same</u> coverage, but

---

[1] It is also noteworthy that reliance is not an element of Mrs. Wahl's claim under Cal. Ins. Code §330 *et seq.*, and is presumed for her constructive fraud claim as discussed in Section IV.A. *infra.*

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1   would only receive the benefit of one of the two coverages. ASIC admits it has no evidence

2   whatsoever that these material facts were ever disclosed to Mrs. Wahl or any other class member.

3   Pietz Dec., Ex. 14 (ASIC's Responses to Requests 15-20).  In fact, the "Other Insurance" clause in

4   ASIC's FPI Policy issued to Mrs. Wahl affirmatively states that her pre-existing coverages would

5   continue to apply, thereby concealing from Mrs. Wahl that ASIC's placement of FPI waived the

6   LLPE coverage.  ASIC Policy, FAC, Ex. G, "Conditions," ¶ 2 (Wahl 0022).  These undisclosed facts

7   are certainly "not so obviously unimportant" that the Court could decide Mrs. Wahl had no reliance

8   as a matter of law, or that the presumption of reliance based on these material non-disclosures should

9   not apply.

10        ASIC cannot escape this outcome by pointing to irrelevant testimony from Mrs. Wahl that

11  she was not in a position to buy another policy to avoid ASIC's issuance of FPI in 2006, or that her

12  husband was monitoring the premium at the time.   First, ASIC never asked Mrs. Wahl in deposition

13  or otherwise about the waiver of her LLPE, and if she [or her husband] would have done anything

14  differently had ASIC disclosed that fact to them at the time.  Second, while Mrs. Wahl may not have

15  been able to pay for an alternative insurance policy to avoid issuance of ASIC's FPI policy

16  altogether, had she [or her husband] known the truth about the waiver of the LLPE, she could have

17  insisted the FPI be placed after the LLPE coverage expired, or that her LLPE coverage not be

18  waived.  ASIC then robbed Mrs. Wahl of that opportunity by its material omission.  ASIC now seeks

19  to rob her of her claim by referencing irrelevant testimony that fails to address this material non-

20  disclosure, or overcome the presumption of reliance therefrom.

21        **B.     All Class Members – Including Mrs. Wahl – Have Valid Continuing Interests
22                 Justifying Declaratory Relief**

23        ASIC argues that Mrs. Wahl "no longer has [FPI] coverage, so her own claims for

24  declaratory and injunctive relief are moot."  (ECF 118, pp. 10 & 17.)  ASIC made this exact same

25  argument in its MJP.  (ECF 99, pp. 3 & 22.)  The argument, though equally without merit in both

26  motions, is also procedurally barred in this motion for class certification.  "In fact, mootness of the

27  [plaintiff's] claim is not a basis for denial of class certification, but rather is a basis for dismissal of

28  / / /

1 [plaintiff's] action. *Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010).  Mrs. Wahl has already

2 shown in her MJP opposition that this argument cannot support a dismissal.  (ECF 122, pp. 23-25.)

3       On the merits, ASIC's mootness argument is easily refuted.   The Declaratory Judgment Act

4 allows the Court to "bring[] to the present a litigable controversy, which otherwise might only be

5 triable in the future," and thus enables a defendant to avoid guessing at liability by getting a ruling

6 before the questioned performance.  28 USC § 2201(a); *Societe de Conditionnement v. Hunter Eng.*

7 *Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981).  Although the Court has some discretion to decline

8 consideration of declaratory relief issues, the Ninth Circuit favors that consideration when it will

9 clarify legal relationships in dispute, and will end uncertainty and controversy.  *Eureka Fed. S&L*

10 *Ass'n v. American Cas. Co.*, 873 F.2d 229, 231 (9th Cir. 1989).  Such consideration may indeed be

11 required in the Ninth Circuit when other monetary claims are also raised in the action.  *See, e.g.,*

12 *GEICO v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).

13       In both the MJP and this motion, ASIC attempts to avoid this settled law by citing totally

14 inapplicable cases with unique fact patterns that made declaratory relief premature, useless, or

15 downright impossible. [2]  The newly added cases for this motion are: *Bova v. City of Medford*, 564

16 F.3d 1093, 1096-97 (9th Cir. 2009) (city employees sought to enjoin city policy of ending medical

17 insurance upon retirement, <u>but</u>: (i) the employees had not yet retired; and (ii) a state court action was

18 pending to strike down policy); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th

19 Cir. 2003) (class rep sought dec. relief, but case dismissed when state supreme court struck down

20 rep's only claim); *Nelsen v. King County*, 895 F.2d 1248, 1255 (9th Cir. 1990) (former prisoner

21 discharged from drug rehab denied dec. relief re conditions at facility when court declined to assume

22 he would commit crime and return to facility); *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045

23 (9th Cir. 1999) (two plaintiffs stopped by Border Patrol twice in 10 years denied dec. relief  re stops

24 when court declined to assume they would be suspected of crime and stopped again).

25

26

---

27 [2] All the cases cited by ASIC in the MJP mootness argument involved plaintiffs who would never

28 need a court order to protect them from future harm.  None of those plaintiffs had claims under Ins. Code § 332 or the UCL either.  (*See* ECF 122, p. 23, n. 11.)

                  C08-00555 RS

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

None of ASIC's cases remotely address the facts presented by Mrs. Wahl here, because none of those cases involved plaintiffs with a reasonable risk in the future of the same harm they sought to enjoin. By contrast, Mrs. Wahl and every class member had FPI imposed on them in the past, some still have FPI in force today, and all face a reasonable risk of having FPI imposed on them again in the future. Mrs. Wahl herself already has had two brushes with FPI since 2006 as the Court's summary judgment decision details. (EFC 69, pp. 3-5.) Common sense tells us that people having trouble paying for their homeowners insurance during a recession are likely to struggle financially for months if not years – absent winning the lottery. [3]

### III. Mrs. Wahl and Class Counsel Provide Adequate Representation

#### A. Mrs. Wahl and Class Counsel Satisfy the Adequate Representation Standards

ASIC's attack on Mrs. Wahl as a "figurehead plaintiff" who was "improperly solicited" by her counsel has no merit. (ECF 118, pp. 2, 8-10, 17-18.) Mrs. Wahl is a qualified representative, and her counsel's pre-litigation communications with her were lawful and indeed routine.

#### 1. Class Representative

The "figurehead plaintiff" argument primarily boils down to ASIC's contention that Mrs. Wahl defers to her counsel on legal decisions, and yet wants to sue EMC along with ASIC, and her counsel did not do so. (ECF 118, p. 9.) ASIC also faults Mrs. Wahl for knowing nothing about her LLPE rights before her lawyers explained them, and for supposedly not being aware of the Court's summary judgment ruling. (*Id.* at 9-10.) The problem with ASIC's contentions is they are borne of creative quotation of snippets of Mrs. Wahl's deposition testimony, and ignore the substantial testimony quoted in her opening brief detailing her knowledge of the claims, her devotion to her duty as class representative to ensure that the attorneys continue to act in the best interests of the class, her continuing commitment of time to monitor the progress of the case, and her desire to right a wrong for herself and all class members. (ECF 93, pp. 16-17.)

---

[3] There are two more binding grounds for upholding Mrs. Wahl's claim for declaratory relief, namely "transitory" bad acts, and California law re UCL remedies as stated in *In re Tobacco II Cases,*, 46 Cal.4th 298, 314 (2009). Both are covered in detail in Mrs. Wahl's opposition to the MJP (ECK 122, pp. 24-25). ASIC did not even address the issues of "transitory" bad acts or the *Tobacco II* holding in this motion, or in the MJP.

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Mrs. Wahl far exceeds the modest standard of understanding and involvement demanded of lay people serving as class representatives in complex cases like this one. "A named plaintiff does not need to have special knowledge of the case or possess a detailed understanding of the legal or factual basis on which a class action is maintained." *Kanawai v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008), *citing Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1963) *and In re Tableware Antitr. Litig.*, 241 F.R.D. 644, 649-50 (N.D. Cal. 2007) (". . . the representatives must have some minimal familiarity with the litigation, although a detailed understanding of the theories and facts of the case is not required."). Nothing in this standard suggests that Mrs. Wahl must pick defendants.[4] Moreover, despite ASIC's insinuations, Mrs. Wahl sufficiently understands the claims remaining in this case after summary judgment, testifying "my understanding as a layperson, is that the question of how ASIC conducts business is still to be decided." Pietz Dec., Ex. 58 (Wahl Dep., pp. 179:25-180:2). Mrs. Wahl is an adequate class representative.

## 2. Class Counsel

ASIC does not attack Plaintiff's Counsel's qualifications or competency. ASIC instead attacks their ethics based on purported "improper solicitation," namely a pre-litigation mail-out of about 1700 letters to California homeowners who had been unable to pay their mortgages at some point in 2007. (ECF 118, pp. 8-9.) However, Plaintiff's Counsel clearly have been authorized by law to make such solicitations for the past twenty-five years.

Lawyers have a First Amendment right to contact potential plaintiffs or class members. In *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-103 (1981), the Court allowed class action counsel to solicit class members by means of a privately mailed leaflet which urged them to contact counsel. Then, in *Zauderer v. Ofc. Of Disciplinary Counsel*, 471 U.S. 626, 639-647 (1985), the Court struck down Ohio state sanctions against an attorney who placed public ads in 36 newspapers soliciting

---

[4] The two cases cited by ASIC in which District Courts found class representatives were inadequate based on poor understanding of the case fell amazingly below even this modest standard. *Burkhalter Trav. Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 154 (N.D. Cal. 1991) (representative could not identify defendants, nor describe the class members, and had no understanding of the material pricing policies at his company or in the industry); *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 577-78 (C.D. Cal. 2007) (representatives never read the disputed sales materials, were not misled by them, and filed declarations contradicting their depositions).

1   clients for Dalkon Shield litigation, so long as the ads were not deceptive or misleading.  Both cases

2   upheld the First Amendment rights of counsel to solicit clients.  Camisa, "*The Const. Right to Solicit*

3   *Potential Class Members in a Class Action*," 25 Gonzaga L.Rev. 95, 95-100 (1989/1990).  These

4   cases allowed for the reality that "[t]he solicitation of potential class members is, in many cases, an

5   important requisite for successfully maintaining the suit." *Id.* at 95.[5]

6        The Ninth Circuit has further recognized that solicitations of class representatives and

7   members is not only proper, but indeed is routine.  *See, e.g., Barton v. U.S. Dist. Ct. for the Ctrl.*

8   *Dist. Of Cal.*, 410 F.3d 1104, 1109 (9th Cir. 2005) (holding forms on counsel's website filled out by

9   potential class members were privileged, noting similar ads had been permitted since the 1970s, and

10  noting the common new practice of internet solicitations.)  *See also, Johnson v. Mitsubishi Digital*

11  *Elec. America, Inc.*, 578 F.Supp. 2d 1229, 1234 (C.D. Cal. 2008) (class rep recruited by "email

12  solicitation" from counsel) and *Knisely v. Network Assocs., Inc.*, 77 F.Supp.2d 1111, 1114-115 (N.D.

13  Cal. 1999) (even if purported "notice" sent by counsel to members of competing class was violation

14  of prof. rules, counsel still "adequate").

15       Plaintiff's Counsel acted reasonably and carefully by obtaining ethics opinions prior to

16  proceeding with their mailing. *See* Yunker Declaration submitted herewith, ¶¶ 3-4.  ASIC, however,

17  ignores this dispositive law guiding Plaintiff's Counsel's actions, but instead relies on two

18  unpublished District Court cases to argue that solicitation of class members is *per se* improper, and

19  grounds for non-certification.  Both of those unpublished cases cite only to the same 1996 New York

20  appellate court case, but that New York case cited no authority at all.  Moreover, its pertinent

21  language is mere dicta because the court concluded that the suspected solicitation was not proved.

22  *See Bodner v. Oreck Direct, LLC*, 2007 WL 12237777, *2 (N.D. Cal. 2007) and *Sanchez v. Wal*

23

24  [5] Although this First Amendment right is subject to reasonable regulation by the states, California
25  law specifically recognizes that lawyers may use mass mailings so long as they comply with the
    requirements of the code. *See* Cal. Bus. & Prof. Code §§ 6157-6159.2.  *See also Parris v. Superior*
26  *Court*  109 Cal.App.4th 285, 299 (2003) (finding that the Cal. Const. permits pre-certification
    communications with potential class members).  *Parris* further points out that the California ethics
27  rules permit such communications. *Id.* at 298 fn. 6 ("Because neither the proposed notice to class
    members nor the web site prepared by plaintiffs' counsel is to be 'delivered in person or by
28  telephone,' it is not prohibited by rule 1-400").  ASIC does not contend that Plaintiff's Counsel
    violated any of these provisions.

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1   *Mart Stores, Inc.*, 2009 WL 1514435 *3 (E.D.Cal.) citing to *Meachum v. Outdoor World Corp.*, 654

2   N.Y.S. 2d 240, 251 (1996). ASIC's cases are non-binding on this Court, and in fact should be

3   disregarded as contrary to the binding law of California, the Ninth Circuit, and the Supreme Court.[6]

**B.  Any Potential Conflict The Class of 625,000 May Have With The 9,700 Members For Whom Rescission May Not Be Beneficial Is Easily Resolvable By The Court**

6   ASIC argues at length that Mrs. Wahl has a conflict of interest with potential class members

7   who were paid on claims made during their period of FPI coverage. The theory is that – if her

8   remedy of rescission is upheld on heir behalf – they might have to return their FPI claim payments.

9   (ECF 118, pp. 18-20.) This could be a valid point in theory, but it is close to meaningless in reality.

10  First, ASIC itself concedes that the total number of such claimants identified so far is only

11  about 9,700. (*Id*. at 20.) By contrast, the total number of potential class members identified so far is

12  about 625,000. (Pietz Dec., Ex. 15 (Supp. Interrog. Answer No. 5)). In other words, ASIC is

13  arguing that an issue affecting 1.5% of the potential class members should prevent certification of a

14  class for the other 98.5% – the proverbial "tail wagging the dog".

15  Second, considering the minute scale of this "problem," it is easily resolved by the Court. At

16  least four solutions are obvious: (i) the Court could eliminate any conflict by simply using its power

17  under Cal. Civ. Code § 1692 to provide the 9,700 members with an alternative form of relief such as

18  disgorgement of profit or other damages;[7] (ii) the Court could permit those 9,700 members to elect at

---

[6] The *Meachum*, *Bodner*, and *Sanchez* courts were all very understandably upset with truly egregious behavior by class counsel entirely apart from any "solicitation": *Meachum*, 654 N.Y.S. 2d at 358-74 (counsel secretly recorded phone conf. with def. employee outside presence of def. counsel, used his mother to contact one class rep., and other reps. were counsel's employees); *Bodner*, 2007 WL 123777 *2-3 (counsel's firm had practice of naming firm atty. or relative as class rep., rep. in instant case knew nothing about it, and case itself was a re-filing of same case just dismissed in another district); *Sanchez*, 2009 WL 1514435 *2-3 (counsel did not prosecute personal injury claims of class members, incl. class rep., because odds of cert. low).

[7] Mrs. Wahl brought her claims for rescission under Cal. Ins. Code § 331 and Cal. Civ. Code §§ 1689(b)(7)) and 1692. FAC, ¶¶ 37-35. Cal. Civ. Code § 1692 applies to all contract rescissions permitted under California law, and it permits the Court to decide to provide an alternative relief where rescission is not appropriate. *See* Cal. Ins. Code § 1692 ("the court may grant any party to the action any other relief to which he may be entitled under the circumstances." "A claim for damages is not inconsistent with a claim for rescission. The aggrieved party shall be awarded complete relief, including restitution . . .").

1   trial an alternative remedy to rescission (*see* Section IV. D. *supra.*); (iii) the Court could direct that

2   the opt-out Class notice required by Rule 23(c)(2)(B) advise of the risks of not opting-out if they had

3   or have a claim on their FPI; and (iv) the Court could simply exclude the 9,700 people for whom

4   ASIC paid a claim.  This would not affect certification of the remaining 615,000 class members.

5   However, given the other options that eliminate any conflict and keep the 9,700 FPI claimants in the

6   class, their exclusion would seem unnecessary.  All of these options are within this Court's power to

7   direct.  Each would avoid any potential conflict between the rescission relief class members, and the

8   9,700 members ASIC identifies as having been paid claims on their FPI.

9   **IV.   Common Issues Completely Predominate in This Case**

10      **A.   The Non-Disclosure Claims Require No Individual Inquiry**

11          ASIC's contention that Mrs. Wahl's non-disclosure claims necessitate case-by-case inquiries

12   into each class members' knowledge, expectations, and reliance is wrong.  ASIC misstates the

13   evidence, the law, and the only material non-disclosure at issue.

14          **1.   Whether Borrowers Could Have Discovered The Concealed Information**
                 **Presents A Common Question**

15

16          ASIC contends that Mrs. Wahl and Class Members could have discovered the concealed

17   information, but that very contention presents a predominately common issue.  The non-disclosure at

18   issue is ASIC's failure to disclose that its placement of FPI cancelled or waived Class members'

19   LLPEs.  There is not one shred of evidence can ASIC point to that disclosed this fact to any Class

20   member.  Indeed, not one of the hundreds of policies, agreements, procedure, manuals, cycle letters

21   or other documents ASIC produced in discovery  concerning the FPI issued to borrowers says

22   anything about ASIC's placement of FPI waiving or cancelling LLPEs.  ASIC admitted it has no

23   such documents.  (Pietz Dec., Ex. 14 (ASIC's Responses to Requests 15-20).)

24          On the other hand, the FPI Policy ASIC issued to borrowers actually contains an "Other

25   Insurance" clause that expressly states other existing insurance coverages would continue to apply.

26   (ASIC Policy, FAC, Ex. G, "Conditions," ¶ 2 (Wahl 0022)).  Moreover, the Hazard Plan

27   Administration Agreements between ASIC and lenders say that no FPI would be placed if existing

28   coverages were waived.  (*See, e.g.,* ECF 49, Wilson Dec., Ex. 2, ¶ II. C).  Oddly, ASIC cites to the

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1   proposition that "individuals are presumed to have knowledge of the contracts they sign," but then

2   proceeds to ignore the plain language of its own contracts.  ASIC Br., pp. 20-21, *citing Hydranautics*

3   *v. FilmTec Corp.*, 306 F.Supp.2d 958, 963 (S.D. Cal. 2003).

4          The only documents ASIC points to in its brief are the Deeds of Trust and the LLPEs.  ASIC

5   argues that these documents supposedly put borrowers on notice, but they have absolutely no

6   indication in them whatsoever that ASIC's placement of FPI would waive LLPE coverage.  Indeed,

7   ASIC's own quotations of the Deeds of Trust and LLPEs show that all they said was a lender could

8   deem an LLPE inadequate and place FPI, and that the LLPE expires at the end of its coverage period

9   if the lender does not pay the homeowner's insurance premium.  (ASIC Br., p. 21.)  No notice, actual

10  or inquiry, of the waiver of LLPEs is provided by the only two documents ASIC cites.  A full

11  discussion of inquiry notice, and its non-existence in this case under Cal. Ins. Code §§ 336, is

12  contained in Plaintiff's Memorandum in Opposition to Defendant's Motion for Judgment on the

13  Pleadings.  (ECF 122, pp. 11-13.)  ASIC's contention that any reasonable person in Mrs. Wahl's or

14  the class members' position could have uncovered ASIC's concealment is totally implausible, but, in

15  any event, it is subject to common adjudication.

16          **2.    The Case Law Demonstrates That Borrowers' Inability To Discover the
                   Concealed Information Is Subject To Common Adjudication**

17

18          ASIC's reliance on *Kaldenbach v. Mutual of Omaha Life Insurance Co.*, 178 Cal. App.4th

19  830 (2009) is instructive.  That case involved a vanishing premium life insurance claim under the

20  UCL and common law fraud based upon misleading computer illustrations and uniform sales

21  materials.  *Id.* at 834, 836.  The *Kaldenbach* court refused to certify a class because it found that the

22  facts of the case showed that sales agents had knowledge of the insurer's dividend practice they

23  could have used to provide class members with fuller information, and thus could have led to

24  varying oral sales presentations.  *Id.* at 846-847.

25          By contrast, the Court of Appeal certified a nearly identical UCL and common law fraud

26  vanishing premium class in *Massachusetts Mutual Life Insurance Company v. Superior Court*, 97

27  Cal. App.4th 1282 (2002) ("MassMutual").  The chief difference in *MassMutual* was that "there is

28  nothing in the record which shows that MassMutual's own assessment of discretionary dividends

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

was disclosed to any class member." *Id.* at 1295.  The record which the *MassMutual* court

referenced was the same record as was before the court in *Varacallo v. Massachusetts Mutual Life

Insurance Company*, 752 A.2d 807 (N.J. App. Div. 2000), which decision the *MassMutual* court

cited in support of its inference of reliance finding.  *MassMutual*, 97 Cal. App.4th at 1292-93.  In

*Varacallo*, the Court expressly noted "that plaintiffs contend the agents of MassMutual had no

knowledge as to these material facts.  Thus, no member of the class will claim that the agents told

them more than what was represented in the literature."  752 A.2d at 816.

A similar situation to *MassMutual* exists here.  The only representation made to class

members about the continuation of their existing LLPE coverage was made in the "Other Insurance"

clause in ASIC's standard form policy.  There is simply no contract, agreement, document or other

evidence created before this litigation that suggests in any way, shape or form that ASIC's placement

of FPI would waive borrowers' LLPE coverages.  ASIC concedes this fact.  (Pietz Dec., Ex. 14

(ASIC's Responses to Requests 15-20).)  In fact, ASIC's Hazard Plus Administration Agreements

with lenders state that ASIC would not place FPI if there was a waiver of prior coverages.  (ECF 49,

Wilson Dec., Ex. 2, ¶ II. C.)  The absence of any evidence that the LLPE waiver was disclosed, and

the uniform policy contracts stating no waiver of existing coverage was to occur, put this case on all

fours with *MassMutual*.  It should likewise be certified.

### 3. Materiality And Reliance Present  Common Questions Since They Are Based Upon a "Reasonable Person Standard"

ASIC next contends there are individual issues concerning what each borrower knew,

expected, agreed to and relied upon regarding FPI and LLPE coverages, purportedly because "the

test of materiality stated in Insurance Code § 334 is <u>subjective</u> . . . not on some 'average reasonable'

person." (EFC 118, p. 22.)  ASIC is simply wrong.

<u>First</u>, the California Supreme Court recently affirmed that the test for materiality under the

UCL is an objective "reasonable man" one.  *Tobacco II*, 46 Cal.4th at 327 ("A misrepresentation is

judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence

in determining a choice of action in the transaction in question . . .").  Moreover, the Supreme Court

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1   held that absent class members need not establish reliance under the UCL.  *Id.* at 320, 324.  *See also*

2   *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 154 (2010).

3         <u>Second</u>, as for Mrs. Wahl's claim under Cal. Ins. Code § 330, *et seq.*, ASIC is incorrect in

4   stating the materiality standard is a <u>subjective</u> one in this case.  The cases ASIC cites to support its

5   <u>subjective</u> materiality test under Cal. Ins. Code § 334 are all cases dealing with alleged

6   misrepresentations by ***an insured made in an application drafted by the insurer***.  ECF 118 p. 22,

7   citing *Nieto v. Blue Shield of Cal. Life & Health Ins. Co.*, 181 Cal. App.4th 60 (2010); *Mitchell v.*

8   *United Nat'l Ins. Co.*, 127 Cal. App.4th 457, 468-69 (2005); *Coca Cola Bottling Co. v. Columbia*

9   *Cas. Ins. Co.,* 11 Cal. App.4th 1176, 1189 n.4 (1992); *Imperial Cas. & Indem. Co. v. Sogomonian,*

10  198 Cal. App.3d 169, 181 (1988).  These cases obviously are inapplicable here.

11        ASIC curiously fails to cite *Cummings v. Farmers Insurance Exchange*, 202 Cal. App.3d

12  1407, 1415 n. 7 (1988), which is on point and instructive.  In *Cummings*, the Court of Appeal

13  acknowledged that cases dealing with misrepresentations in applications by the insurer had a

14  ***subjective*** standard because the effect on the particular insurer that drafted the application is at issue.

15  *Cummings*, however, distinguished that situation from one involving whether an insured's false

16  statements violate a standard clause paraphrased from the standard form fire policy language

17  specified in Cal. Ins. Code § 2071.  *Id.* at 1412 n. 2 and 1415 n. 7.  *Cummings* held that "[t]he

18  materiality of the statement [under a standard clause in a standard form fire policy] will be

19  determined by the ***objective*** standard of its affect upon a ***reasonable*** insurer."  *Id.* at 1415 n. 7.

20        A similar rule was stated by the California Supreme Court in *Buss v. Superior Court*, 16

21  Cal.4th 35, 45 (1997).  There, the Supreme Court explained that a standard form policy is not a

22  product of "any actual agreement between a given insurer and a given insured."  *Id.*  Thus, the

23  Supreme Court concluded that when the provisions of a standard policy ***"are examined solely on a***

24  ***form,"*** the clear language must be applied and any ambiguity must be read ***"in the sense that***

25  ***satisfies the hypothetical insured's objectively reasonable expectations."*** *Id.*

26        As noted above, the only statement ASIC made concerning the continuation of existing

27  coverages upon its placement of FPI was in the "Other Insurance" clause of its FPI Policy, which is

28  a standard form fire policy.  ASIC Policy, FAC, Ex. G.  *Compare* Cal. Ins. Code §§ 2070 and 2071.

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

*See also Mitchell v. United National Insurance Company*, 127 Cal. App.4th 457, 472 (2005) (§§ 2070 and 2071 mandate a standard form policy).  Under *Cummings* and *Buss*, the "Other Insurance" clause of ASIC's standard form FPI policy – stating that other insurance coverages will continue to apply – must be interpreted under <u>the objective reasonable man</u> standard.  No subjective test applies to this issue, or to this case.

Nor is there any reliance requirement under Cal. Ins. Code § 330, *et. seq.*  Tellingly, ASIC has failed to cite to any authority saying that there is.

ASIC also cites two unpublished district court opinions that are not applicable here. ECF 118 pp. 24-25, citing *Quezada v. Loan Center of California, Inc., EMC*, 2009 WL 5113506, *8 (E.D. Cal. 2009; *Endres v. Wells Fargo Bank*, 2008 WL 344204, *12 (N.D. Cal. 2008).  In *Quezada*, because of borrowers' varying interpretations of loan documents, and different experiences with mortgage brokers and products, the district court denied class certification <u>only</u> as to borrowers' common law fraud claim that required proof of individualized reliance.  2009 WL 5113506, *8.  The *Quezada* court did <u>not</u> apply this same reasoning to the UCL claim, but instead found individual issues on a <u>different</u> basis – i.e., statute of limitation and equitable tolling, which are not at issue here.  *Id.* at *9.  Moreover, unlike *Quezada*, Mrs. Wahl does not have a common law fraud claim, but instead has a constructive fraud claim under which "the reliance element is relaxed . . . to the extent we may presume reliance upon the misrepresentation or nondisclosure . . ." *Wells Fargo Bank, N.A. v. Gump*, 1 Cal. App.4th 582, 601 (1991)(citations omitted).

In *Endres*, the District Court said the CLRA, UCL and National Banking Act claims <u>collectively</u> created individual statute of limitations and liability issues "on whether and when particular class members heard or read the alleged misrepresentation," and thus implicated the customer's state of mind.  2008 WL 344204, *12.  While class members' individual reliance is an element of a CLRA claim, it is not an issue for the UCL.  Indeed, the California Supreme Court in its *Tobacco II* opinion issued more than a year <u>after</u> *Endres* clearly found absent class members do <u>not</u> need to prove individualized reliance for the UCL claim.  *Tobacco II*, 46 Cal.4th at 324.  *Endres* is thus no longer good authority for a UCL claim.

/ / /

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

**B.    The Unfair Prong Of Plaintiff's UCL Claim Is Subject To Common Proof**

ASIC agrees that the appropriate test to determine a violation of the "unfair" prong of the UCL is the standard set forth in *South Bay Chevrolet v. General Motors Acceptance Corp.,* 72 Cal.App. 4th 861 (1999).  This standard was recently upheld in *Lozano v. AT & T Wireless Services, Inc.* 504 F.3d 718, 736 (9th Cir. 2007).  However, ASIC argues that the *South Bay* test invariably requires <u>individualized</u> inquiries because – as part of its balancing test – it requires an examination of the unfair practice's impact on its alleged victim.  (ECF 118, p. 26.)   Thus, ASIC further argues that the individualized inquiry prevents commonality and class certification here.

This is not the law – indeed the law is exactly the opposite.  The principles underpinning the *South Bay* standard and its required application are based upon <u>generalized</u> evidence and an <u>objective "reasonable person" standard</u> – both of which <u>prevent</u> any need for individualized proof.

The standard to be applied under the UCL when the victims are consumers is that of the "reasonable consumer."  *Lavie v. Procter & Gamble Co*., 105 Cal.App.4th 496, 511-512, (2003). This is an objective standard based upon how a reasonably prudent consumer would have acted under similar circumstances.  *See, e.g., Freeman v. Time, Inc.* 68 F.3d 285, 289 (9th Cir. 1995).  In concluding that the reasonable consumer standard applies, the *Lavie* court specifically cited and relied upon the opinion in *South Bay,* recognizing *that South* Bay had applied that standard.  *Lavie,* 105 Cal.App.4th at 511-512. ("Read together, *Chern v. Bank of America*, 15 Cal.3d 866 (1976) and *South Bay* . . . support our conclusion that the standard applied in UCL and false advertising cases is that of the ordinary consumer acting reasonably under the circumstances.")  In short, when *South Bay* calls for examination of the impact of the unfair practice on the victim, the court is referring to the impact on the "reasonably prudent consumer," *i.e.,* an objective standard based on generalized proof.  There is no hint of ASIC's "individualized proof."

This conclusion is buttressed by an examination of the source of the *South Bay* standard. The *South Bay* court derived its balancing test from the decision in *Motors, Inc. v. Times Mirror Co.*  102 Cal.3d 735, 740 -741 (1980).  *See South Bay,* 72 Cal.App.4th at 886 (1999).  In turn, *Motors, Inc.* derived the balancing test from the law of nuisance.  *See Motors, Inc. v. Times Mirror Co.,* 102 Cal.App.3d at 740 -741. Under this balancing approach, the reasonable person standard is always

16                                    C08-00555 RS

applied. *See* Restatement 2d Torts § 826, comment c ("*The point of view.* The unreasonableness of an intentional invasion is determined from an <u>objective point of view</u>. The question is not whether the plaintiff or the defendant would regard the invasion as unreasonable, but whether <u>reasonable persons generally</u>, looking at the whole situation impartially and objectively, would consider it unreasonable.") (emphasis added).

Therefore, *South Bay* envisions an adjudication based upon generalized evidence that often may be determined by a motion for summary judgment. Plaintiff must first present a *prima facie* case of harm arising out of an apparently unfair business practice. *Motors, Inc*. 102 Cal.App.3d at 740 -741. Defendant then must present its business justification for the practice. *Id.* If the utility of the conduct clearly justifies the practice, a simple motion for summary judgment is called for. *Id.*

That procedure has already taken place here, but ASIC did not prevail on summary judgment on the UCL claim. In her opposition to that motion, Mrs. Wahl proffered a *prima facie* case demonstrating that ASIC's FPI Program causes significant, unnecessary financial harm to homeowners. (ECF 54, pp. 4-11.) When the Court ruled that Mrs. Wahl's showing precluded summary judgment on the UCL claim, the Court recognized that ASIC had not presented any viable business justification for its practices. (*See* ECF 69, p. 12, finding that, "In this case, defendants have not demonstrated, as a matter of law, that the practice of force placing insurance during the LLPE period does not rise to the level of an unfair business practice, and without more, summary judgment is inappropriate.")

Now, in this certification motion, Mrs. Wahl has presented further evidence that ASIC's FPI program was standardized conduct for all the homeowners with FPI imposed on them. (ECF 93, pp. 3-10.) She respectfully submits that this evidence satisfies the first prong of the *South Bay* test: a reasonable person looking objectively at ASIC's conduct would find it completely unreasonable, unfair, and over-reaching. Once this case reaches trial of the merits, ASIC certainly is free to try to refute the *prima facie* demonstration that ASIC's FPI program seriously harms consumers. However, any such proof by ASIC will also be generalized based upon ASIC's own business justification for its conduct. In sum, adjudication of the UCL unfair prong clearly presents a

/ / /

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

common question because it is based upon generalized, not individualized, proof.[8]  *See also Mass*

*Mutual,* 97 Cal.App.4th 1282, 1291-92  (finding that whether Mass Mutual's dividend rate practices

violated the UCL unfair prong was subject to common proof).

### C.    The "Voluntary Payment Doctrine" Is Totally Inapplicable Here

One of ASIC's shorter "throwaway" arguments is that the so-called "voluntary payment

doctrine" is an equitable affirmative defense "which may bar any claims by class members who

continued to incur and voluntarily pay" FPI premiums.  (ECF 118, p. 26.)  This purported defense

does not bar class certification here for three reasons.  *First*, ASIC never asserted this affirmative

defense its answer (ECF 41) as required by law, and hence it has been waived.  FRCP Rule 8(c)(1);

*In re Adbox, Inc.*, 488 F.3d 836, 841-42 (9th Cir. 2007).

*Second,* even if the voluntary payment doctrine had not been waived, its adjudication is still

subject to common proof.   The doctrine applies *only if* the payment was "voluntarily made, with

knowledge of the facts." *Western Gulf Oil Co. v. Title Ins. and Tr. Co.*, 92 Cal.App.2d 257, 266

(1949), *quoting Holt v. Thomas*, 105 Cal. 273, 276 (1894).  Here, Mrs. Wahl has presented common

proof that any FPI premiums paid by her or Class members were paid without them knowing the true

facts due to ASIC's uniform non-disclosure and concealment of its waiver of their LLPEs.  (*See*

Section IV above).[9]  This common proof for the entire Class establishes payments of FPI by the

Class could never be characterized as "voluntarily made, with knowledge of the facts," and thus the

voluntary payment doctrine is inapplicable for the entire Class.

---

[8] Although ASIC relies upon *Walker v. Countrywide Home Loans,* 98 Cal.App. 4th 1158, 1175-78
(2002)) (ECF 118, p. 25), this case supports Mrs. Wahl  because it demonstrates that the unfair
prong is subject to adjudication by generalized evidence.  In *Walker,* the California Court of Appeal
considered whether Countrywide's practice of charging delinquent borrowers a property inspection
fee was an "unfair" practice, and concluded the practice's justification or utility could be determined
as a matter of law based evidence submitted by Countrywide. *Ibid.*

[9] ASIC's cases are distinguishable because, unlike here, they each involve a free and voluntary
payment made with full knowledge of the material facts.  *Western Gulf*, 92 Cal.App. 2d at 265-66
(tenant paid disputed rent over 200 days to avoid forfeiting lease); *Buckland v. Threshold Ent., Ltd.*,
155 Cal.App. 4th 798, 818-19 (2007) (plaintiff intentionally bought known defective cosmetic to gain
standing to sue for defect); *Endres v. Wells Fargo Bank*, 2008 WL 344204 *11-12 (ND Cal.) (class
certification denied in part because some bank customers may have knowingly and intentionally
incurred repeated overdraft charges).

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

*Third*, even if the Court concludes the doctrine might conceivably apply to some class members, this defense cannot be asserted against the UCL claim under binding California law. *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal.4th 163, 179 (2000). The reason is that it would be unjust for an equitable claim of restitution and declaratory relief to be overcome by an equitable defense of the wrongdoer. *Id.* at 182. Although Mrs. Wahl was not able to find case law reaching the same holding for the Ins. Code § 332 claim, she respectfully submits that the identical rationale should apply to those statutory claims for rescission – another equitable remedy.

### D. Common Evidence Shows That Lenders Paid Less Than Homeowners for the Same Binder Coverage Period

On summary judgment, this Court found Mrs. Wahl stated a claim in the Complaint for ASIC's failure to disclose the costs of its FPI coverage. (ECF 69, Order, p. 11.) Later, it was revealed in discovery that lenders pay less for the 60 day binder coverage period than borrowers pay for that same 60 day period once ASIC's back-dated one-year policy is issued. (*See* Pltf's Cl. Cert Br. ECF 93 pp.5, 9.) Mrs. Wahl respectfully suggests that allegations broadly implicating FPI cost are broad enough to reach the newly discovered binder cost disparity as well.

ASIC's next contention that there is no evidence that lenders pay less for the binder period than borrowers paid for the same period on the FPI policy, is simply untrue. In fact, there is common evidence to this effect. Specifically, ASIC concedes the binders were issued under the Master Policies between ASIC and lenders. (Pietz Dec., Ex. 1 (ASIC-WAHL 0001519-1521); Kravec Dec., Ex. 1 (Frobose Dep., 13:2-13:13).) Each Master Policy lists the amount the lender pays for coverage thereunder for each borrower. (Pietz Dec., Exs. 30-35; Wilson Dec., Ex. 1.) For example, in Mrs. Wahl's case her lender, EMC paid 54 cents under the Master Policy for the 60 day binder coverage for each borrower, whereas Mrs. Wahl was charged $675.33 for that same 60-day period based on her yearly $4,052 premium on the FPI policy. (Wilson Dec., Ex. 1 (EMC Master Policy at ASIC-WAHL 0000208); FAC, Ex. G.) In addition, ASIC represented to the California Department of Insurance – that when it is determined that a borrower under an ASIC FPI program has not provided proof of insurance – ASIC effects Binder Coverage and then charges the Mortgagee a flat fee of $15.00. (Pietz Dec., Ex. 1 ASIC-Wahl 0001519.) Thereafter, when an

C08-00555 RS

1  individual policy is then issued, the premium is withdrawn from the borrower's escrow account.

2  (Pietz Dec., Ex. 1 ASIC-Wahl 0001520.)

3      Each Master Policy thus identifies the premium lenders pay for each binder.  ASIC does not

4  dispute that it has records showing the premium paid by each borrower.  Thus, proof of the

5  differential between the lenders' binder cost and the borrowers' FPI premium can be calculated and

6  established on a classwide basis by common proof.

7      **E.      The Monetary Remedies Sought Do Not Undermine Predominance.**

8          **1.      Individual Monetary Recoveries do not Preclude Class Certification**

9      ASIC argues that Mrs. Wahl's monetary restitution and punitive damages claims present

10  individual issues and prevent common adjudication.  This argument ignores controlling law. The

11  Ninth Circuit recently reaffirmed the long-standing principle in this circuit that monetary remedy

12  calculations alone cannot defeat certification. *Yokoyama v. Midland Nat. Life Ins. Co*.  2010 WL

13  424817 * 6 (9th Cir. 2010) ("We have said that "[t]he amount of damages is invariably an individual

14  question and does not defeat class action treatment. . .").  Likewise, hypothetical conflicts that might

15  arise at the remedies stage do not defeat class certification.  *See Blackie v. Barrack,* 524 F.2d 891,

16  909 (9th Cir. 1975) (". . . courts have generally declined to consider conflicts, particularly as they

17  regard damages, sufficient to defeat class action status at the outset unless the conflict is apparent,

18  imminent, and on an issue at the very heart of the suit."); *In re Sugar Antitrust Litigation*, 559 F.2d

19  481, 483 -484 (9th Cir. 1977).  Here, as in *Blackie,* the potential "conflict, if any, is peripheral, and

20  substantially outweighed by the class members' common interests." *Ibid.*

21      Moreover, Mrs. Wahl contends that the monetary remedy issues in this case will be subject to

22  common proof.  The courts recognize that class certification is clearly justified where class

23  members' monetary remedies can be calculated using a common formula. *Sullivan v. Chase Inv.*

24  *Services of Boston, Inc.* 79 F.R.D. 246, 264 (N.D. Cal. 1978) *citing Blackie v. Barrack*, 524 F.2d at

25  905 ("Under these circumstances where damages are 'capable of mathematical or formula

26  calculation,' common questions of damages predominate.").  Here, all monetary remedies would be

27  based on restitution of FPI premiums charged by ASIC to homeowners over known periods of

28  coverage – amounts which ASIC has stipulated are known exactly and can be proven.  (ECF 117,

1    Pltf. Sealed Ex. 13, ¶ 2.)  Consequently, class members' damages are readily susceptible to a

2    common formula.[10]

3          Even ASIC recognizes that Mrs. Wahl's's monetary claims for rescission are subject to

4    determination by a common formula, albeit an erroneous one.  (ECF 118, p. 29.)  ASIC contends

5    that rescission in this context would require a return of premiums paid by class members less the

6    value of coverage actually received.  (Id.)   However, as explained in footnote 10, California law

7    does not recognize an insurer's right to recoup the "value of insurance coverage provided" where the

8    insurer has engaged in concealment against the other party.

9                  2.       **Rescission and Punitive Damages Present Common and Easily**
                            **Manageable Monetary Calculations.**
10

11         ASIC argues that awarding rescission or punitive damages undermines class certification.

12   (ECF 118, p.19.)  This argument overlooks the applicable law, which is to the contrary.

13         To begin, ASIC ignores California law applicable to the rescission of insurance contracts,

14   and instead mistakenly relies on federal Truth In Lending cases, or real estate transaction cases, from

15   other jurisdictions.  (ECF 118, pp.28-29.)  The unwinding of an insurance contract obtained by

16   reason of an insurer's concealment is easy and straightforward under California law as demonstrated

17   in footnote 10.  Moreover, ASIC overlooks the doctrine of election of remedies which allows the

18   class to pursue inconsistent remedies even through the course of trial.  Generally speaking, election

19   of remedies is the act of choosing between two or more concurrent but inconsistent remedies based

20   upon the same state of facts. *Wallis v. Superior Court*  160 Cal.App.3d 1109, 1114 (1984).

21   _____

22   [10] For example, under the Ins. Code and Constructive Fraud claims, Mrs. Wahl seeks rescission of
     the FPI policy pursuant to Cal. Ins. Code § 331 and Cal. Civ. Code §1692 and 1689(b)(1).).  FAC at
23   ¶¶ 37-38.  Rescission under these provisions is held to mean the return of premiums paid and the
     giving of notice to the insurer.  *Ashley v. American Mut. Liability Ins. Co*.  167 F.Supp. 125,
24   128 (N.D. Cal. 1958).  Under the UCL claim, Mrs. Wahl claims to have suffered financial harm in
     the amount FPI premium paid during any period where their ASIC policy covered period that would
25   have been covered by prior LLPE coverage. FAC at p. ¶53.  "[I]n the UCL context ... restitution
     means the return of money to those persons from whom it was taken or who had an ownership
26   interest in it."  *Feitelberg v. Credit Suisse First Boston, LLC*  134 Cal.App.4th 997, 1012-1013
     (2005).  Thus, damages under the UCL claim may be calculated using the following formula: the
27   number of days where the LLPE would have covered the same period as ASIC's FPI Policy x the
     applicable premium charged for that period.
28

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1    Ordinarily a plaintiff need not elect, and cannot be compelled to elect between inconsistent remedies

2    until the conclusion of of trial.  *Id., citing Williams v. Marshall,* 37 Cal.2d 445, 457 (1951). *See also,*

3    *Tain v. Hennessey*  2009 WL 4544130 * 5  (S.D.Cal.2009).[11]

4            Similarly, the calculation of punitive damages under California law is readily manageable.

5    The question of the amount of punitive damages is limited to the Third Cause of Action for

6    Constructive Fraud. [12]  ASIC contends that punitive damages present overriding individualized

7    questions because: 1) the proportionality of punitive damages to actual damages requires

8    examination of each individual's unique loss; and 2) determination of the "financial vulnerability"

9    sub-factor for assessing the reprehensibility of defendant's conduct requires proof related to each

10   class member's particular financial circumstances.  (ECF 118, pp. 29-30.)  However, ASIC

11   overlooks recent cases rejecting these contentions.  In *Iorio v. Allanz Life,* 2009 WL 3415703 *6

12   (S.D. Cal. 2009), the court rejected this argument when raised by the same defense counsel as here,

13   stating that: "The Court has already found that the computation of damages for each plaintiff in this

14   case is manageable in its July 8, 2008 Order denying decertification. . . .  After compensatory

15   damages have been assessed, a ratio between punitive and compensatory damages can be calculated

16   based on the factors set forth in *Campbell.*"  The *Iorio* court further explained that the uniformity of

17   defendant's conduct made the punitive damage awards susceptible to easy determination.  *Ibid.*

18           Likewise, the "financial vulnerability" sub-factor does not create the specter of individual

19   litigation. The "financial vulnerability" analysis does not apply to the determinations made by the

20   jury; it applies to the court's determination as to whether a jury award satisfies the requirements of

21   due process. *In re the Exxon Valdez*  296 F.Supp.2d 1071, 1093 (D.Alaska 2004) ("These factors are

22

23   [11] Although not applicable in this context, the rationale of the TILA and real estates cases cited by
24   ASIC is rejected by courts applying California law.  *See Richmond v. Dart Industries, Inc.*  29 Cal.3d
     462, 477 (1981) citing and following the approach adopted in *Tober v. Charnita, Inc.*  58 F.R.D. 74,
25   80 (M.D.Pa.1973).  The *Richmond* court found that the " . . . *Tober* rule is the more prudent rule to
     adopt . . ." *Ibid.*

26   [12] Punitive damages are not available under the UCL. *Korea Supply Co. v. Lockheed Martin Corp.,*
27   29 Cal.4th 1134, 1148 (2003).  Nor are they available under Cal. Ins. Code § 331, for which the
     statutory remedies are limited to rescission or restitution.

28

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1    objective criteria which the court employs to evaluate the jury's subjective appraisal of the quality of

2    a defendant's conduct."). The standard for determining punitive damages under California law is set

3    forth in Cal. Civ.Code § 3294. This standard focuses on the conduct of the defendant and, therefore,

4    may be established by common, generalized evidence about the <u>single</u> defendant here. [13]

5    ## V.   <u>A Class Action Here Is Both the Superior and Indeed the Only Viable Method of Adjudication</u>

6

7        ASIC argues that class action litigation of this case is not "superior" to any other option –

8    presumably including 625,000 individual lawsuits up and down California.  (ECF 118, pp. 31-33.)

9    However, ASIC fails to demonstrate why such a multiplicity of individual suits is the preferable

10   form of adjudication.  The superiority inquiry under Rule 23(b)(3) requires determination of whether

11   the objectives of the particular class action procedure will be achieved in the particular case.  *Hanlon*

12   *v. Chrysler Corp*., 150 F.3d 1011, 1023 (9th Cir.1998). This determination necessarily involves a

13   comparative evaluation of alternative mechanisms of dispute resolution which, in this instance, boil

14   down to individual claims for restitution and rescission.

15       Here, ASIC obviously would prefer individual litigation of borrowers' claims because most

16   would be economically deterred from that course of action.  However, as *Hanlon* explains, "Even if

17   efficacious, these claims would not only unnecessarily burden the judiciary, but would prove

18   uneconomic for potential plaintiffs. In most cases, litigation costs would dwarf potential recovery."

19   *Ibid.*  That is true here, and ASIC fails to explain how individual litigation is economical and

20   efficient.[14]

21   _____

22   [13] However, even assuming financial vulnerability is part of the jury's determination, it is subject to

23   common adjudication.  *See Gober v. Ralphs Grocery Co.*  137 Cal.App.4th 204, 220 (2006) (court

24   focused on a comparison of finances as between the claimant group as a whole and the defendant).

25   [14] ASIC also cites three Ninth Circuit cases that denied certification partly on superiority grounds,

     none of which have any bearing on this case because their facts, issues, and administrative burdens

26   were entirely different than those before this Court. These three inapposite cases are: *In re Hotel*

     *Telephone Charges*, 500 F.2d 86, 90-92 (9th Cir. 1974) (nationwide class action against 47 hotel

27   chains seeking recovery of phone surcharges on behalf of about 40 million hotel guests, for whom

     the <u>max</u>. indiv. award would be about $6); *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 228-29

28   (9th Cir. 1974) (LA Cty-wide class action against about 2000 brokers seeking <u>joint and several</u>

     recovery of commissions paid on about 400,000 widely varying real estate transactions); *Zinser v.*

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1    Contrary to ASIC's characterization, Mrs. Wahl has demonstrated that her claims are

2  predominately subject to common proof.  Mrs. Wahl's moving papers provide a detailed analysis of

3  each of the elements of the class claims, and the proof by which these elements may be established.

4  (ECF 93, pp. 17-23.)  In this context a trial plan is not required.  *Zinser v. Accufix Research Institute,*

5  *Inc.* 253 F.3d 1180, 1189 (9th Cir. 2001) (trial plan is only required where certification is sought of a

6  nationwide class for which the law of forty-eight states potentially applies).[15]

7    ASIC barely mentions the factors for determining superiority in Rule 23(b)(3).  (See ECF 93,

8  p. 24.)  ASIC argues that class members who had claims paid by FPI would have "a strong interest

9  in controlling their own claims."  (ECF 118, p. 33.)  However, that tiny 1.5% of the class was

10  already addressed and resolved above in Section III(B).  As for the other 98.5% of the class, the

11  obvious cost-benefit realities of the case tell us that individual claims would be economic lunacy.

12  ASIC has not identified any other pending litigation involving the same issues and parties. This

13  district is ideal for a statewide case, limited to California law, against an insurer who does business

14  nationwide, with the lone class representative domiciled in the District.  Moreover, ASIC has never

15  yet raised the issue of *forum non conveniens*.  Most of ASIC's arguments  are actually a rehash of

16  the "commonality" issues already covered in Section IV(A)-(E) above.  ASIC's few additional

17  arguments actually addressing "manageability," and hence superiority, rely on the inapplicable

18  *Telephone Charges*, *Kline*, and *Zinser* class actions disposed of in Note 14.

19  ## VI.    Hybrid Rule 23(b)(3) and 23(b)(2) Certification Is Fully Justified

20    Contrary to ASIC's assertions, the FAC seeks both retrospective and prospective relief.

21  (FAC at ¶¶ 45-46, 54-55, 70, Prayer at ¶¶ 2-4, 6-11.)  The prospective relief sought is not merely an

22  afterthought, but an important remedial component.  At core, Mrs. Wahl seeks to enjoin ASIC's

23  practice of force-placing FPI and thereby canceling a borrower's LLPE – which is prospective relief.

---

25  *Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1184-86 (9th Cir. 2001) (nationwide medical prod. liab.
26  class action seeking PI recoveries: "Our circuit has recognized the potential difficulties of
   'commonality' and 'management' inherent in certifying products liability class actions.").

27  [15] The 11th Cir. *Vega* case ASIC cites for the argument that a trial plan is required specifically
   refused to require a trial plan for certification.  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, n. 20
28  (2009).

PLAINTIFF MICHELLE T. WAHL'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

Then, she seeks to obtain <u>retrospective</u> relief in the form of rescission and restitution of FPI premiums.   Although ASIC contends that Rule 23(b)(2) certification is not available because the retrospective monetary relief purportedly is  "primary" to the prospective  remedy (ECF 118 p. 34-35), the question of which relief predominates is not yet readily apparent.  In truth, arguments can be made that either one is predominant, and their relative "value" must await adjudication.

Therefore, Mrs. Wahl has proposed "hybrid" certification, which is recognized in the Ninth Circuit. *See* Plaintiff's Class Br. (ECF 93) at pp. 24-25.  For example, in *Hunt v. Check Recovery Systems, Inc*. 241 F.R.D. 505, 512 (N.D.Cal. 2007) the Court granted "divided certification" finding that certification under Rule 23(b)(2) was appropriate on the issues of liability, declaratory relief, and statutory damages, and that certification under Rule 23(b)(3) was appropriate on the issue of actual damages.  Likewise, the Court here may grant certification under Rule 23(b)(2) on the issue of declaratory relief, and under Rule 23(b)(3) on the issue of monetary relief.  *See e.g. Jefferson v. Ingersoll Intern. Inc.*  195 F.3d 894, 898 (7th Cir. 1999)("It is possible to certify the injunctive aspects of the suit under Rule 23(b)(2) and the damages aspects under Rule 23(b)(3), achieving both consistent treatment of class-wide equitable relief and an opportunity for each affected person to exercise control over the damages aspects.").

ASIC does not object to this approach.  It instead contends that Rule 23(b)(2) certification is not available because the requirement of predominace is not satisfied, and the damages aspect of the case predominates over the declaratory relief aspect.  However, Mrs. Wahl has demonstrated that the class claims satisfy Rule 23. Since either the monetary or declaratory relief aspect of the case could predominate, divided certification is appropriate.

## **CONCLUSION**

Mrs. Wahl respectfully requests that her motion for class certification be granted.

Dated:  March 10, 2010

Respectfully submitted,
SPECTER SPECTER EVANS & MANOGUE, P.C.
PIETZ LAW OFFICE
YUNKER & SCHNEIDER

By:   _____/s/_____
Stephen F. Yunker, one of the attorneys for
Plaintiff Michelle T. Wahl and the Plaintiff Class