*E-Filed 05/10/2010*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MICHELLE T. WAHL, on behalf of herself
and all others similarly situated,

                Plaintiff,

    v.

AMERICAN SECURITY INSURANCE
COMPANY; and DOES 1-50, inclusive,

                Defendants.

_____/

Case No. C 08-00555 RS

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION FOR JUDGMENT ON THE
PLEADINGS AND GRANTING
PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION**

## I.  INTRODUCTION

This putative class action stems from a dispute over force placed insurance ("FPI") between plaintiff Michelle T. Wahl and defendant American Security Insurance Company ("ASIC").  The remaining claims in this lawsuit are Wahl's claims against ASIC for breach of the statutory duty to disclose, constructive fraud, and a violation of the unlawfulness, unfairness, and fraud prongs of California's unfair competition law ("UCL").  ASIC moves for judgment on the pleadings with respect to all three claims.  Wahl opposes the motion and instead seeks class certification.  For the reasons stated herein, ASIC's motion is granted with respect to the statutory duty to disclose and

constructive fraud claims, as well as the unlawfulness and fraud prongs of the UCL.  As to the

unfairness prong of the UCL, however, the motion for judgment on the pleadings is denied.  Wahl's

motion for class certification with respect to the single remaining UCL claim is granted.

## II.      BACKGROUND

The factual background of this case has been discussed in detail in the Court's summary

judgment order and will be reviewed here only briefly.  *See* Order of June 18, 2009, at 1-5.  In 2004,

Wahl signed a note and accompanying deed of trust on her residence in favor of Argent Mortgage

Company, LLC ("Argent").   The deed required, among other things, that Wahl keep the residence

insured.  In accordance with this requirement, Wahl purchased a homeowner's insurance policy

from Farmers' Insurance ("the Farmers Policy").

The Farmers Policy included, among other provisions, a standard Lender's Loss Payable

Endorsement clause ("LLPE"), which provided:

> In the event of failure of [Wahl] to pay any premium . . . [Farmers] agrees to give written
> notice to the Lender of such non-payment of premium after sixty (60) days from and within
> one hundred and twenty (120) days after the due date of such premium and it is a condition
> of the continuance of the rights of the Lender hereunder that the Lender when so notified in
> writing by [Farmers] of the failure of [Wahl] to pay such premium shall pay . . . the premium
> due within ten (10) days following receipt of [Farmers'] demand in writing therefor.

Exh. A to First Amended Complaint ("FAC").  After Wahl failed to pay the premium on her

Farmers Policy that came due on January 12, 2006, Farmers notified Wahl that unless she paid the

premium before January 27, 2006, the policy would be cancelled as of that date.  Wahl still did not

pay, and on February 6, 2006, Farmers mailed Wahl a notice indicating that her policy had been

cancelled and that her home was no longer insured.  This notice was copied to EMC Mortgage

Corporation ("EMC"), who by that time was Argent's successor-in-interest.

At the time of these events, EMC had a standing contract for force placed insurance ("FPI")

coverage with ASIC, which provided that whenever one of EMC's borrowers failed to keep his or

her homeowner's insurance intact, ASIC FPI coverage would come into effect immediately and

automatically.  In accordance with this arrangement, ASIC began covering EMC's interest in

Wahl's property as of January 27, 2006—the cancellation date of the Farmers Policy.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1     On February 27, 2006, EMC sent Wahl a letter indicating that it had secured temporary

2 insurance coverage in the form of a 60-day binder through ASIC.  The letter explained that if she

3 did not supply proof of insurance coverage, EMC would obtain a lengthier FPI policy and charge it

4 to her account.  EMC also sent a follow-up letter on April 3, 2006, which repeated this information.

5 Both letters also cautioned that the FPI obtained by EMC on Wahl's behalf would likely be more

6 expensive than any insurance she could procure herself.

7     Despite these warnings, Wahl failed to secure another insurance policy on her own.  Upon

8 expiration of the 60-day temporary binder, EMC purchased a one-year ASIC policy, effective

9 January 27, 2006 to January 26, 2007, which named EMC as the primary insured and Wahl as an

10 additional insured.  EMC charged the cost of the premium to Wahl's escrow account at the end of

11 the sixty-day temporary binder period.  After Wahl failed to procure her own insurance during the

12 course of the year, EMC renewed the ASIC policy for a second year at Wahl's expense, effective

13 beginning January 27, 2007.  In July 2007, Wahl purchased a new insurance policy of her own

14 through Farmers.  She provided proof of the new policy to EMC, and EMC cancelled the ASIC

15 policy effective July 19, 2007.

16     Based on these events, Wahl filed a putative class action alleging seven claims, three of

17 which have survived to this stage of the litigation: breach of statutory duty to disclose, constructive

18 fraud, and violation of California's unfair competition law.  ASIC has moved for judgment as a

19 matter of law on these remaining claims.  Wahl, meanwhile, requests class certification.  The

20 motions were heard on March 25, 2010.

21                              III.     DISCUSSION

22  A.    ASIC's Motion for Judgment on the Pleadings Under Rule 12(c)

23          1.     Legal Standard

24     ASIC's motion for judgment on the pleadings is governed by Federal Rule of Civil

25 Procedure 12(c), which provides:  "After pleadings are closed—but early enough not to delay trial—

26 a party may move for judgment on the pleadings."  Rule 12(d) adds that "If, on a motion under Rule

27 . . . 12(c), matters outside the pleadings are not excluded by the court, the motion must be treated as

28 one for summary judgment under Rule 56."  The standard governing a Rule 12(c) motion is

essentially the same as that governing a Rule 12(b)(6) motion. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); *Qwest Comm'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002) (explaining that "Rules 12(b)(6) and 12(c) are substantially identical; both permit challenges to the legal sufficiency of the opposing party's pleadings. However, unlike Rule 12(b)(6), a Rule 12(c) motion for judgment on the pleadings may be made by either party."). "The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. . . . [Otherwise,] the motions are functionally identical." *Dworkin*, 867 F.2d at 1192.

Thus, a Rule 12(c) motion will only be granted when, viewing the facts as presented in the pleadings in the light most favorable to the plaintiff, and accepting those facts as true, the moving party is entitled to judgment as a matter of law. *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1301 n.2 (9th Cir. 1992) ("In reviewing the defendants' motions under Fed. R. Civ. P. 12(c), the district court views the facts as presented in the pleadings in the light most favorable to the plaintiffs, accepting as true all the allegations in their complaint and treating as false those allegations in the answer that contradict the plaintiffs' allegations."). It must, moreover, be clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint before the motion can be granted. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Uncontested allegations to which the other party had an opportunity to respond are taken as true. *Qwest Communications*, 208 F.R.D. at 291. Also, materials properly attached to the pleadings as exhibits may be considered. *Amfac Mtg. Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 429 & n.2 (9th Cir. 1978); Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

In *Ashcroft v. Iqbal*, the Supreme Court emphasized that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949. The Supreme Court further stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. "The plausibility standard . . . asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* at 1949. A handful of district courts have

ORDER
No. C 08-00555 RS

found that, since the Rule 12(c) analysis mirrors the Rule 12(b) analysis, the Supreme Court's *Iqbal* ruling is equally applicable when considering a Rule 12(c) motion. *E.g.*, *Janis v. Nelson*, No. CR 09-5019-KES, 2009 WL 5216902, at *2 n.2 (D.S.D. Dec. 30, 2009); *Villalobos v. Guertin*, 2009 WL 2579041, at *4 (E.D. Cal. Aug. 19, 2009).

### 2.   Breach of Statutory Duty to Disclose

ASIC first requests judgment on the pleadings with respect to Wahl's claim for breach of statutory duty to disclose. The California Insurance Code provides that "[e]ach party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining." Cal. Ins. Code § 332. Neglect to communicate that which a party knows, and ought to communicate, is concealment. *Id.* § 330. Concealment, whether intentional or unintentional, entitles the injured party to rescind the contract. Cal. Ins. Code § 331. Thus, under the statute, negligent or even innocent concealment warrants rescission. *Barrera v. State Farm Mut. Auto. Ins. Co.*, 71 Cal.2d 659, 666 n.4 (1969). Any alleged misrepresentation or concealment must be with respect to a "material fact." *Holz Rubber Co. v. Am. Star Ins. Co.*, 14 Cal. 3d 45, 61 (1975). "Materiality is determined by the probable and reasonable effect that truthful disclosure would have had upon the [parties] in determining the advantages of the proposed contract." *Id.*

ASIC's first contention is that it had no duty to disclose anything to Wahl under § 332 because Wahl was not a party to the insurance contract. The policy, however, listed her as an "additional insured," and the property thus insured was her own residence. Moreover, as the Court has previously observed, "the ASIC binder and subsequent policy provided insurance in the amount of $603,000. EMC's insurable interest in the property was only the amount owed under the deed of trust—$465,000. Thus, $138,000 of the policy limits could only have inured to the benefit of Wahl, not EMC. Thus, as alleged, the ASIC policy was paid for by Wahl and provided certain benefits directly to Wahl alone." Order of June 16, 2008, at 4. Under these circumstances, Wahl qualifies as a party to the insurance contract, and it cannot be said that ASIC was without disclosure duties flowing in her direction.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

The question remains whether, when the facts presented in the pleadings are viewed in the light most favorable to Wahl and accepted as true, ASIC is entitled to judgment as a matter of law under Rule 12(c). Notifications attached to the FAC show that Wahl was notified by ASIC[1] on February 27, 2006, and April 3, 2006, that FPI obtained by EMC on Wahl's behalf would likely be more expensive than any insurance she could procure herself. The notification letters stated: "Since [the FPI] will insure your house without inspection, the cost may be much higher than you would normally pay if you obtain coverage through an agent of your choice. The coverage provided may be less than you had before." Letters from EMC to Wahl dated Feb. 27, 2006, and April 3, 2006, attached as Exh. C & D to FAC. While the February letter did not disclose the exact cost of the threatened FPI, the April letter did so.[2]

These disclosures are sufficient for purposes of § 332—not because they put Wahl on some kind of inquiry notice,[3] but because the notifications themselves give someone in Wahl's position an

---

[1] Although the notifications were on EMC letterhead, the FAC alleges they were actually sent from ASIC. FAC at 6-7.

[2] The April letter, which is attached to the FAC, states: "If you do not provide us with proof of insurance coverage before the end of the binder period, we will be required to obtain a one-year policy on your property. The full year premium for this policy is shown on the attached binder." FAC, Exh. D. Although the FAC does not attach the binder that was included with the April letter and referenced therein, ASIC has provided it to the Court, and it may properly be considered in the Rule 12(c) analysis. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (holding that, in order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based, "a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned").

[3] ASIC alternately contends Wahl was on "inquiry notice" of the cost and other consequences of the FPI contract, by virtue of ASIC's repeated warnings that the costs could be high. California courts, however, have generally held that inquiry notice is insufficient for these purposes. *See Kirsh v. Unum Life Ins. Co. of Am., Inc.*, No. B152445, 2002 WL 1293016, at *7 (Cal. Ct. App. June 12, 2002) (insured who disclosed the fact of his hernia surgery to his life insurance company but failed to disclose the fact of his cancer diagnosis breached his duty under § 332, even if notice of surgery could be presumed to put insurance company on inquiry notice of cancer diagnosis); *see also Gen. Accident, Fire & Life Assur. Corp. v. Indus. Accident Comm'n*, 237 P. 33 (Cal. 1925) (holding that under the ancient common law "an applicant [for insurance] is bound to disclose a fact material to the risk, even though no specific inquiry is made on that subject"). ASIC's argument that Wahl was on inquiry notice, even if true, does not establish the absence of a breach of the duty to disclose under §332.

indication of the exact cost of FPI and even offer a reason for its comparatively high expense. Section 332 required ASIC to "communicate to [Wahl], in good faith, all facts within [its] knowledge which are . . . material to the contract . . . , and which [Wahl] has not the means of ascertaining."  If a letter of notification setting forth the exact cost of the threatened FPI and offering an explanation for its price is insufficient under this standard, it is hard to ascertain what *would* constitute sufficient notice.  For this reason, the facts alleged in the FAC, even if taken as true and viewed in the light most favorable to Wahl, fail to amount to a claim for a § 332 violation.  ASIC's Rule 12(c) motion therefore must be granted with respect to Wahl's claim for violation of the statutory duty to disclose.

### 3. Constructive Fraud

As the Court has previously explained, Wahl's constructive fraud claim follows closely on the heels of her § 332 claim because, under California law, a § 332 violation can give rise to a fraud claim.  *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1499 (Cal. App. 2003); Order of June 18, 2009, at 10-11.  As it has been determined here that no § 332 violation occurred, and as Wahl has offered on other theory on which a constructive fraud claim could be based, ASIC's Rule 12(c) motion must be granted with respect to Wahl's constructive fraud claim.

### 4. Unfair Competition Law

California's unfair competition law ("UCL") prohibits acts or practices that are (1) fraudulent, (2) unlawful, or (3) unfair.  Cal. Bus. & Prof. Code § 17200.  Each prong of the UCL constitutes a separate and distinct theory of liability.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).   Wahl argues all three theories here.

As no statutory violation has been found to have taken place, Wahl's "unlawful" claim is untenable.  *See Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007) (noting that the alleged conduct "must violate a law . . . in order for Plaintiffs to state a claim for relief under Section 17200's 'unlawful' prong").  Likewise, Wahl's constructive fraud claim, as previously noted, is not viable, and therefore Wahl cannot rely on the fraud prong of UCL.

As to the "unfair" prong of the UCL, California courts traditionally have applied a balancing test.  Under that test, "the determination of whether a particular business practice is unfair

United States District Court
For the Northern District of California

necessarily involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.  In brief, the court . . . weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victims." *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980); *see also People v. Casa Blanca Convalescent Homes Inc.*, 159 Cal. App. 3d 509, 530 (1984) (stating that a practice in California is unfair "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.").  In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, however, the California Supreme Court rejected that test and instead held that in a claim brought by a competitor, "any finding of unfairness . . . [must] be tethered to some legislatively declared policy."  20 Cal.4th 163, 185 (1999).  Yet, because *Cel-Tech* expressly limited its holding to competitor lawsuits, *id.* at 187 n.12, the appropriate test to determine whether a practice is "unfair" in a consumer case under California law remains uncertain.  *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) (explaining that "California's unfair competition law, as it applies to consumer suits, is currently in flux"); *Molina v. Washington Mut. Bank*, No. 09-CV-00894-IEG, 2010 WL 431439, at *9 (S.D. Cal. Jan. 29, 2010) (noting split of authority); *Paulus v. Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659, 679-80 (2006) (same).  *Compare, e.g.*, *Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App. 4th 700, 720 n.23 (2001) ("we are not to read *Cel-Tech* as suggesting that such a restrictive definition of 'unfair' should be applied in the case of an alleged consumer injury"), *with, e.g.*, *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003) (requiring, under *Cel-Tech*, that a UCL claim be tethered to a legislatively declared policy).

The Ninth Circuit has observed that these two options—to apply *Cel-Tech* directly to consumer cases and require that the unfairness be tied to a "legislatively declared" policy, *e.g.*, *Scripps Clinic*, 108 Cal. 4th at 940, or to adhere to the former balancing test as stated in cases such as *Motors, Inc.* 102 Cal. App. 3d at 740—are not mutually exclusive.  *Lozano*, 504 F.3d at 736; *see Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144 (2000) (reversing the dismissal of a complaint in an unfair competition case where the alleged unfairness was both tethered to a legislatively declared policy and the plaintiff could prove facts showing that the harm was not outweighed by the utility).

United States District Court

For the Northern District of California

Here, as in *Schnall*, the FAC alleges facts sufficient to support both theories of liability under the UCL's "unfair" prong.  The *Cel-Tech* test—which requires that the alleged unfairness be tethered to a legislatively declared policy—is satisfied by reference to the California Insurance Code § 790.03, entitled "Prohibited Acts."   While the California Supreme Court has declared that this section does not afford a private right of action, *Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal. 3d 287 (1988), it nonetheless may be interpreted as a declaration of legislative intent for purposes of a general UCL claim.  The section provides, in pertinent part:  "The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance. . . . (c) Entering into any agreement to commit, or by any concentrated action committing, any act . . . of coercion . . . resulting in or tending to result in unreasonable restraint of, or monopoly in, the business of insurance."  The coercion contemplated in subsection (c) is "coercion in the antitrust sense, [or] conduct which constitutes the improper use of economic power to compel another to submit to the wishes of one who wields it."  *Greenberg v. Equitable Life Assur. Soc.*, 34 Cal. App. 3d 994, 999 (1973).

*Greenberg* was decided prior to *Moradi-Shalal*'s removal of the private right of action under § 790.03, but it nonetheless remains instructive for purposes of understanding the kind of behavior that the statute condemns.  In *Greenberg*, the defendant insurance company promoted home loans to plaintiff and members of his putative class which were to be secured by deeds of trust.  As a condition of the loan, the borrower had to purchase a life insurance policy from the insurance company.   The life insurance policy's face amount was identical to the home loan and functioned as further security for the indebtedness, even though plaintiff could have secured other forms of life insurance from other insurers at less cost than the policy sold as a condition to the loan.  The appellate court overturned the district court's denial of leave to amend the complaint, opining that even though the complaint had some defects, it nonetheless "contain[ed] allegations which suggest[ed] a cause of action for restraint of trade prohibited by Insurance Code section 790.03."  *Id.* at 998.  The court reasoned that the complaint had successfully alleged the existence of a "tie-in agreement," that is, "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product."  *Id.* at 999.  Such agreements, observed the court,

"coerce the buyer into taking a product he doesn't want , . . . [and as a result] buyers are forced to forego their free choice between competing products." *Id.* at 999 n.3.  This, the court concluded, was a "coercive use of economic power to create an unreasonable restraint of trade." *Id.* at 999.

Here, while there is no suggestion that an illegal tie-in arrangement existed, taking the averments of the FAC in the light most favorable to Wahl suggests ASIC engaged in similarly coercive behavior.[4]  The FAC alleges that, upon the expiration of Wahl's Farmers Policy, ASIC, in cooperation with EMC, cancelled the Farmers Policy's LLPE and substituted its own FPI—a practice which, although within the bounds of the Deed of Trust, was singularly disadvantageous to Wahl and unsupported by any apparent reason other than the fact that ASIC and EMC both stood to benefit financially from the immediate placement of FPI.  Moreover, according to the FAC, these business practices were the direct result of a pre-existing contract between ASIC and EMC, to which Wahl was not a party and of which she presumably had no knowledge.  The applicable standard of review requires that all reasonable inferences in this situation be drawn in Wahl's favor, and it is reasonable to infer that the sum total of these practices constitutes the " improper use of economic power to compel another to submit to the wishes of one who wields it," under the *Greenberg* interpretation of § 790.03.  Thus, the FAC has successfully alleged that ASIC's FPI practices, taken as a whole, arise from unfairness "tethered to [a] legislatively declared policy"—specifically, the policy stated in § 790.03 of the California Insurance Code.  *Cel-Tech*, 20 Cal.4th at 185.

A similar result ensues under the older balancing test.  As explained above, a practice is unfair under this test if the harm in ASIC's conduct outweighs the conduct's utility.  *Motors Inc.*, 102 Cal. App. 3d at 740.  The analysis involves "an examination of [the alleged practices'] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Id.*  A fact-based analysis of the impacts on, and motives of, the parties in this case cannot be conducted when, as here, the Rule 12(c) standard of review restricts the Court to the pleadings.  Rather, the Court may examine only the FAC to ascertain whether it sufficiently alleges

---

[4] Of course, in the post- *Moradi-Shalal* era, Wahl lacks the ability to bring an action directly under § 790.03, but there is nothing in the case law that precludes reference to this section for purposes of a general UCL analysis—especially when the existence of a legislatively declared policy is a crucial step in analyzing the "unfair" prong under the *Cel-Tech* test.

**United States District Court**
For the Northern District of California

that the harm of ASIC's business practices outweigh their utility—a showing Wahl has successfully advanced in her operative complaint.  While the societal utility of FPI, as a whole, cannot be denied, it is not apparent from the face of the FAC what utility, if any, derives from immediately replacing the LLPE in the Farmer's Policy with the ASIC FPI.  The harm, on the other hand, is apparent from the averments in the FAC alleging that Wahl, and homeowners like her, do not receive the benefit of an LLPE which they have previously paid for, and instead are charged for expensive FPI.  Thus, even if *Cel-Tech*'s more stringent "legislatively declared policy" test is rejected in favor of the more traditional balancing test for unfairness under the UCL, the FAC survives ASIC's Rule 12(c) challenge.  Consequently, ASIC's Rule 12(c) motion for judgment on the pleadings is denied with respect to unfairness prong of the UCL.

     5.     <u>Declaratory Relief</u>

As noted in the June 2009 summary judgment order, the declaratory judgment arguments in this case are largely remedial rather than pertinent to a stand-alone claim.  Under the Declaratory Judgment Act ("DJA"), a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  As noted above, the FAC in this case has succeeded in stating a claim for a violation of the UCL's unfairness prong, and any remedies that the DJA would provide based on such a claim will accordingly also survive ASIC's Rule 12(c) challenge.

**B.**    <u>Wahl's Motion for Class Certification</u>

As the unfairness prong of Wahl's UCL claim survives ASIC's Rule 12(c) motion, the question shifts to the propriety of class certification.  Wahl proposes the following class definition:

    a.    All current and former California insureds or additional insureds named under an ASIC FPI Policy issued at any time since January 28, 2004;

    b.    Who were charged premiums for an ASIC FPI Policy; and

    c.    Such payments for the ASIC FPI Policy included premiums for any period during which prior homeowner insurance would have been in effect for the mortgage lender pursuant to the homeowners' Lender's Loss Liability Endorsement ("LLPE") had it not been cancelled by ASIC's placement of FPI.

Wahl's Motion for Class Certification at vi.

     1.     <u>Legal Standard</u>

**United States District Court**
For the Northern District of California

1    The decision as to whether to certify a class is committed to the discretion of the district

2    court and guided by Rule 23 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 23; *see*

3    *also Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003).  A court may certify a class if a

4    plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have

5    been met, as well as at least one of the requirements of Federal Rule of Civil Procedure 23(b).  *See*

6    Fed. R. Civ. P. 23; *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

7    Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must

8    be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that

9    are common to the class, (3) the claims or defenses of the representative parties are typical of the

10   claims or defenses of the class, and (4) the representative parties will fairly and adequately protect

11   the interests of the class.  Fed. R. Civ. P. 23(a).  A plaintiff must also establish that one or more of

12   the grounds for maintaining the suit are met under Rule 23(b), including (1) that there is a risk of

13   substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the

14   class as a whole would be appropriate; or (3) that common questions of law or fact predominate and

15   the class action is superior to other available methods of adjudication.  Fed. R. Civ. P. 23(b).

16   Here, Wahl's motion focuses on both Rule 23(b)(2) and (b)(3).  Subsection (b)(3)

17   encompasses "those cases in which a class action would achieve economies of time, effort, and

18   expense, and promote uniformity of decision as to persons similarly situated, without sacrificing

19   procedural fairness or bringing about other undesirable results."  Fed. R. Civ. P. 23 1966 advisory

20   committee's note.  Subsection (b)(2), by contrast, is appropriate when "class members complain of a

21   pattern or practice that is generally applicable to the class as a whole, even if some class members

22   have not been injured by the challenged practice."  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir.

23   1998).

24   In determining the propriety of a class action, the question is not whether the plaintiffs have

25   stated a claim for relief that will prevail on the merits, but, rather, whether the requirements of Rule

26   23 have been met.  *See Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003); *see also Eisen v.*

27   *Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  The Court is obliged to accept as true the

28   substantive allegations made in the complaint.  *See In re Petroleum Prods. Antitrust Litig.*, 691 F.2d

ORDER
No. C 08-00555 RS

1335, 1342 (9th Cir. 1982); *see also Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Therefore the class order is speculative in one sense because the plaintiff may not be able to later prove the allegations. *See Blackie*, 524 F.2d at 901 n.17. Nonetheless, although the Court may not require preliminary proof of the claim, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements. Courts may also consider the legal and factual issues presented by plaintiff's complaint." *Pablo v. ServiceMaster Global Holdings, Inc.*, No. C 08-03894 SI, 2009 WL 2524478, at *4 (internal quotation marks omitted). Sufficient information must be provided to form a reasonable informed judgment on each of the requirements of Fed. R. Civ. P. 23. *See Blackie*, 524 F.2d at 901 n.17. In order to safeguard due process interests and the judicial process, the Court conducts an analysis that is as rigorous as necessary to determine whether class certification is appropriate. *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005); *see also Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

      2.   <u>Rule 23(a) Requirements</u>

As noted above, Rule 23(a) requires that (1) the class must be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. ASIC does not dispute Wahl's arguments regarding numerosity or commonality (#1 and #3), but it does contend Wahl herself is not typical of the class she proposes to represent (#2) and therefore she cannot fairly and adequately protect the putative class's interests (#4).

As to typicality, ASIC contends Wahl currently does not have an ASIC FPI homeowner insurance policy, and therefore she cannot represent persons whose homes are presently covered by an ASIC FPI. This argument is unpersuasive, because subsection (a) of the class definition makes it clear that the putative class includes individuals who had their LLPEs revoked by ASIC's placement of FPI at any point since January 28, 2004. It is undisputed that Wahl's Farmer's Policy expired in January 2006 and was replaced with ASIC FPI at that time, and therefore she falls within this category. Similarly, Wahl appears as well-positioned as anyone to satisfy the requirements of #4, namely, fairly and adequately protecting the class's interests.

United States District Court
For the Northern District of California

### 3.   Rule 23(b) Requirements

Wahl argues that certification under Rule 23(b)(3) is appropriate because this is a case "in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Fed. R. Civ. P. 23 1966 advisory committee's note.  ASIC counters that Wahl has failed to meet the standard described in (b)(3) because there is a "host of individualized questions" regarding, for example, whether ASIC owed each putative class member a duty of disclosure, and what each putative class member knew or did not know about their LLPE and subsequent FPI coverage.  Notwithstanding these arguments, Wahl has introduced evidence gleaned from discovery indicating that each borrower who experienced ASIC's imposition of FPI was treated to the same procedures in terms of notice and LLPE cancellation.  ASIC, moreover, has produced no evidence to the contrary.  These borrowers share sufficient similarities such that economies of time, effort, and expense will be achieved if their UCL claims are tried together.  Any risks to procedural fairness are not apparent at this time.[5]  Consequently, certification of Wahl's proposed class is appropriate and her motion will be granted.

## IV.   ORDER

1.   ASIC's motion to dismiss under Rule 12(c) is granted with respect to Wahl's breach of statutory duty to disclose and constructive fraud claims.  With respect to the UCL, the motion to dismiss is granted as to the fraud and unlawfulness prongs but denied as to the unfairness prong.

2.   Wahl's motion for class certification is granted as to the remaining UCL unfairness claim.

3.   The Court certifies the following class:

    a.   All current and former California insureds or additional insureds named under a force placed insurance ("FPI") Policy issued by American Security Insurance Company ("ASIC") at any time since January 28, 2004;

    b.   Who were charged premiums for an ASIC FPI Policy; and

---

[5] As Rule 23(b)(3) provides an adequate basis for class certification, the Court will not reach Wahl's arguments for certification under Rule 23(b)(2).

ORDER
NO. C 08-00555 RS

United States District Court
For the Northern District of California

   c.   Such payments for the ASIC FPI Policy included premiums for any period during which prior homeowner insurance would have been in effect for the mortgage lender pursuant to the homeowners' Lender's Loss Liability Endorsement ("LLPE") had it not been cancelled by ASIC's placement of FPI.

3.   The Court appoints Michelle Wahl as the class representative, and James Pietz, Joseph N. Kravec Jr., and Stephen Francis Yunker to act as class counsel.

4.   Class counsel shall prepare a proposed form of class notice and shall meet and confer with defense counsel concerning the same.  Any agreed-upon notice shall be presented to the Court for approval within thirty (30) days of the date of this order.  In the event the parties cannot agree upon the form of notice, each side shall file their proposed version for consideration within 60 days of the date of this order.  The Notice shall permit class members to opt-out of the class if they so desire within 45 days of notice having been sent.

5.   Notice shall be provided to the class via U.S. Mail to the last known address reflected on defendants' records.  Defendants shall cooperate with class counsel in preparing a computerized mailing list as required.

6.   Class Counsel shall establish a website to assist with communication with members of the class, and to permit members of the class to provide updated address information.

7.   A Case Management Conference will be held on **July 15, 2010, at 10:00 a.m.**  in Courtroom 3, 17th Floor, United States Courthouse, 450 Golden Gate Avenue, San Francisco, California.   The parties should submit an updated joint case management statement no later than **July 8, 2010**, which sets forth a proposed pretrial and trial schedule.


   IT IS SO ORDERED.


Dated: 05/10/2010

                                         RICHARD SEEBORG
                                         UNITED STATES DISTRICT JUDGE