*E-Filed 11/1/10*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MICHELLE T. WAHL,

      Plaintiff,

  v.

AMERICAN SECURITY INSURANCE CO., et al.,

      Defendants.

No. C 08-0555 RS

**ORDER DENYING DEFENDANTS' MOTIONS FOR LEAVE TO FILE: (1) SECOND MOTION FOR JUDGMENT ON THE PLEADINGS; (2) SECOND MOTION TO DISMISS**

## I.  INTRODUCTION

This case is now two years old.  Between the filing of plaintiff's Complaint and the present, this Court has issued a number of substantive orders, including orders on defendants' motion to dismiss, motion for summary judgment, motion for judgment on the pleadings, and motions for reconsideration.  A single claim survives: plaintiff's contention that ASIC engaged in an unfair business practice, in violation of California's Unfair Competition Law ("UCL").  At a Case Management Conference held on August 5, 2010, ASIC voiced its intent to file further dispositive motions.  In light of defendants' history of filing seriatim motions, and in the interest of efficient case management, this Court required ASIC to request permission from the Court before filing any further dispositive motions.  The Court instructed ASIC to explain specifically if the defense is one

that it did not raise in prior dispositive motions and, if not, why the defense was not previously raised. ASIC now requests permission to file two additional motions. The first is a second motion for judgment on the pleadings, wherein ASIC argues it intends to raise a "new" legal defense. Specifically, ASIC suggests California's McBride-Grunsky Insurance Regulatory Act of 1947, Cal. Ins. Code § 1850 *et seq.*, precludes Wahl's UCL claim. Because it is readily apparent that the McBride-Grunsky Act does not foreclose Wahl's claim, ASIC's request is denied. The second is a motion to dismiss Wahl's claim for injunctive and declaratory relief under the UCL. This motion would argue that Wahl lacks standing to pursue prospective relief. Because this Court has already rejected similar standing arguments and because it agrees with Wahl that she has adequately demonstrated Article III standing, ASIC's second request is also denied. No further briefing on these issues will be permitted.

## II. DISCUSSION

A. Request to File Motion for Judgment on the Pleadings: the McBride-Grunsky Act

    a. Summary of ASIC's Theory

ASIC contends that, insofar as Wahl challenges an insurance rate approved by the Insurance Commissioner as "unfair," the McBride-Grunsky Act provides that she can do so only through the administrative procedure outlined in the Act. Wahl counters that ASIC misrepresents the nature of her claim. She insists she does not challenge the rate as unfair or excessive, but instead focuses on ASIC's FPI practice. Because Wahl's explanation is more consistent with the pleadings, with both parties' characterizations of the claim throughout the litigation, and with this Court's analysis of the unfairness argument in its prior orders, it is clear that Wahl challenges the practice of force placing insurance at a moment in time where the coverage would be duplicative. It might even be the case that the particular *rate* exacted is irrelevant to her argument. Accordingly, it is apparent from the Record that she has not attacked the practice of rate *setting*, and she therefore is not limited to the administrative remedy contemplated by the Act.

    b. Statutory Background

As its full title suggests, the McBride-Grunsky Act regulates the business of insurance. Before 1988, insurance regulation in California operated under an "open competition" system, where "rates [were] set by insurers without prior or subsequent approval by the Insurance Commissioner." *Fogel v. Farmer's Group, Inc.*, 160 Cal. App. 4th 1403, 1407 (2008) (internal quotation marks and citation omitted) (alteration in original). In 1988, California citizens voted to amend the Act, via adoption of Article 10 of chapter 9. Beginning on November 8, 1989, "insurance rates subject to [the] chapter" must be "approved by the [C]ommissioner prior to their use." Ins. Code § 1861.01(c). Under the new framework, an insured may challenge approved rates; the Act outlines the specific way he or she must do so. Article 7 of chapter 9 ("Hearings, Procedure and Judicial Review"), provides that anyone aggrieved by a rate charged, rating plan, rating system, or underwriting rule may lodge a challenge but must do so according to the administrative procedure set forth in the statute. The Act also provides for judicial review of the Commissioner's decision: "Any finding, determination, rule, ruling or order made by the [C]ommissioner under this chapter shall be subject to review by the courts of the State and proceedings on review shall be in accordance with the provisions of the Code of Civil Procedure." Ins. Code § 1858.6.

The amendment also added language to Chapter 9 regarding the applicability of other laws to the business of insurance and consumer participation in the rate making process. *See Fogel*, 160 Cal. App. 4th at 1409. Section 1861.03 provides, in part, that "[t]he business of insurance shall be subject to the laws of California applicable to any other business, including, but not limited to . . . the antitrust and unfair business practices laws . . . ." *Fogel*, 160 Cal. App. 4th at 1409-10 (*quoting* Ins. Code § 1861.03(a)). Also embedded in Chapter 9 are sections 1860.1 and 1860.2. Section 1860.1 predates the 1988 amendment and is the provision on which ASIC relies for its argument that a plaintiff like Wahl cannot challenge an approved rate outside the Act's administrative process. That section provides that "[n]o act done, action taken or agreement made pursuant to the authority conferred by this chapter shall constitute a violation of or grounds for prosecution or civil proceedings under any other law of this State heretofore or hereafter enacted which does not specifically refer to insurance." Ins. Code § 1860.1. Section 1860.2, in turn, states that, "[t]he

NO. C 08-0555 RS
ORDER

3

administration and enforcement of this chapter shall be governed solely by the provisions of this chapter.  Except as provided in this chapter, no other law relating to insurance and no other provisions in this code heretofore or hereafter enacted shall apply to or be construed as supplementing or modifying the provisions of this chapter unless such other law or other provision expressly so provides and specifically refers to the sections of this chapter which it intends to supplement or modify." Ins. Code § 1860.2.  Reading sections 1860.1 and 1860.2 in combination, California courts have concluded that the practice of rate *setting* is indeed exempt "from the remainder of the Insurance Code, Ins. Code, § 1860.2, and all California laws outside the chapter itself, Ins. Code, § 1860.1." *MacKay v. Superior Court*, 115 Cal. Rptr. 3d 893, 904 (2010).  As another California appellate court explained, "[h]istorically, these sections have been interpreted to provide exclusive original jurisdiction over issues related to ratemaking to the [C]ommissioner." *Walker v. Allstate Indem. Co.*, 77 Cal. App. 4th 750, 755 (2000).

These sections would appear to conflict with section 1861.03(a), which makes all of "the laws of California applicable to any other business" applicable to "[t]he business of insurance."  The court in *MacKay* held that section 1861.03(a) can be harmonized with the instruction of sections 1860.1 and 1860.2.  *See MacKay*, 115 Cal. Rptr. 3d at 905-06.  Effectively, challenges to the reasonableness of an approved rate fall within the exclusive ambit of the chapter and are exempt from the requirements of other laws.  Otherwise, those engaged in the business of insurance must comport with California laws, including the UCL.  *See Krumme v. Mercury Ins. Co.*, 123 Cal. App. 4th 924, 936-37 (2004) ("The Insurance Code does not, however, displace the UCL except as to . . . activities related to rate setting. . . .  In general, a claim that directly challenges a rate and seeks a remedy to limit or control the rate prospectively or retrospectively is an attempt to regulate rates, but a claim that directly challenges some other activity, such as false advertising . . . is not rate regulation.") (internal quotation marks and citations omitted).

As the *MacKay* court went on to clarify, its holding was both narrow and straightforward: "Insurance Code section 1860.1 protects from prosecution under laws outside the Insurance Code only 'act[s] done, action[s] taken [and] agreement[s] made pursuant to the authority conferred by'

the ratemaking chapter. It does not extend to insurer conduct *not* taken pursuant to that authority." *MacKay*, 115 Cal. Rptr. 3d at 910-11 (*quoting* Ins. Code § 1860.1) (emphasis in original). *See also Krumme*, 123 Cal. App. 4th at 937 ("A claim predicated on a violation of the Insurance Code not related to ratemaking may thus be framed as a claim under the UCL."). Here, ASIC argues Wahl's unfairness claim improperly attacks as "unfair" or "unfairly excessive" an insurance rate approved by the Commissioner. If this were so, the analyses in both *MacKay* and *Walker* could certainly suggest her remedy would only be available through the Act's administrative process. Wahl, in contrast, insists she does not attack the *rate* at all. The fair reading of Wahl's UCL claim as alleged and as defended in her many opposition motions supports her argument that the claim is directed at ASIC's allegedly unfair conduct and not at the Commissioner's rate. In plaintiff's words, the allegedly unfair practice involved "ASIC's unfair conduct in charging the FPI premium for a period of time that would have been covered by the LLPE or, alternatively, the 60-day binder." As Wahl correctly indicates, *MacKay*, *Walker* and the various other cases on which ASIC relies for its McBride Act "defense," as it were, were limited to situations where a plaintiff challenged a charged rate as excessive per se, and effectively asked the Court to calculate an alternative rate it deemed more "fair." This is not the situation here, and further briefing is therefore not warranted.[1] ASIC's request to submit a second motion for judgment on the pleadings is denied.

B. Request to File Motion to Dismiss: the Standing Argument

---

[1] On a related note, Wahl suggests that nothing would have prohibited ASIC from raising this argument in one of its prior motions. ASIC denies this was possible and insists that only "*after* ASIC's prior dispositive motions were decided by this Court, did Ms. Wahl articulate new parameters of her restitution claim . . . ." (Def.'s Mot. at 1:19-20.) ASIC notes that in her Complaint, Wahl sought restitution of the "full amount of the [LPI] premiums paid by [plaintiffs] to ASIC during periods of time in which ASIC's [LPI] policies overlapped with the homeowners' prior insurance still in effect . . . ." (FAC ¶ 53.) It then argues that Wahl materially altered this theory of recovery in a letter exchanged between counsel. In its motion, ASIC quotes Wahl's language in the letter directly. The plain language, combined with Wahl's insistence in her opposition motion, suggests only that she seeks restitution equal to the amount of the FPI premium relating "to the unfair practice of placing FPI coverage where the LLPE would have provided coverage." This is entirely consistent with the relief sought in the FAC. Accordingly, Wahl's point that ASIC has not adequately explained why it waited to bring the McBride argument is well-taken.

Wahl, acting on behalf of a certified class, seeks declaratory and injunctive relief that would effectively preclude ASIC from cancelling borrowers' LLPEs and from continuing to issue FPI policies prior to the actual cancellation of a borrower's LLPE.  ASIC asserts now that Wahl lacks standing to pursue either claim because the ASIC-issued LPI policy that was purchased, placed, and renewed in Wahl's case was long ago cancelled.  ASIC reasons that this unequivocally establishes that Wahl does not face the "real or immediate threat of irreparable injury" required in the context of injunctive and declaratory relief.  *Clark v. City of Lakewood*, 259 F.3d 95, 105 (9th Cir. 2001) (stating standard); *Truth v. Kent School Dist.*, 542 F.3d 634, 642 (9th Cir. 2008) (noting that injury requirement applies also to declaratory relief claims).  Wahl responds by pointing out—at length and in some detail—that ASIC has already advanced similar, unsuccessful standing arguments at various points throughout the litigation.  These need not be repeated, however, as Wahl's simplest argument is equally persuasive.  She avers that her mortgage with EMC still falls within a pool of mortgages covered under a continuing Master Policy issued by ASIC to EMC.  As she explains, if she were to miss a single homeowner's insurance payment, she would again be subjected to the FPI practice that is the underlying subject of this lawsuit and that she seeks to enjoin.  Accordingly, while ASIC may be right that Wahl does not currently have a "contractual relationship" with ASIC, it too narrowly ignores that she remains in a position to fall into an identical situation vis-à-vis ASIC and its FPI practice.[2]  Accordingly, Wahl has adequately shown a "realistic threat" of a repeated

---

[2] ASIC also appears to argue that Wahl's claims for relief must fail on standing grounds in part because she has not averred any injury stemming from ASIC's conduct.  As it has on several occasions in the past, ASIC again insists that Wahl's injury was caused by EMC's actions, not ASIC's.  This argument was explicitly rejected by this Court in, for example, its Summary Judgment Order of June, 2009, when it stated, "[D]efendants have not demonstrated, as a matter of law, that the practice of force placing insurance during the LLPE period cannot rise to the level of an unfair business practice . . . ."  June 18, 2009 Order, at 12.  Then as now, the Court's analysis assumed that ASIC—and not merely EMC—participated in the practice.  In the May 10, 2010 Order on ASIC's motion for judgment on the pleadings, this Court also recognized that, "[t]he FAC alleges that, upon the expiration of Wahl's Farmers Policy, ASIC, in cooperation with EMC, cancelled the Farmers Policy's LLPE and substituted its own FPI—a practice which, although within the bounds of the Deed of Trust, was singularly disadvantageous to Wahl and unsupported by any apparent reason other than the fact that ASIC and EMC both stood to benefit financially from the immediate placement of FPI."  May 10, 2010 Order, at 10.  To the extent ASIC appears to argue now that this Court's prior factual findings preclude a finding that ASIC's conduct harmed Wahl, this is simply not so.

violation, *see City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983), and ASIC's latest standing argument fails. Further briefing is not warranted and ASIC's request to file a further motion to dismiss is denied.

IT IS SO ORDERED.

Dated: 11/1/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

No. C 08-0555 RS
ORDER

7